IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE, <br><br>           Plaintiff, <br><br>     **v.** <br><br> ENGINE MANUFACTURERS ASSOCIATION, D/B/A TRUCK & ENGINE MANUFACTURERS ASSOCIATION, <br><br> STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, *et al.* <br><br>           Defendants. | **Case Number**: 3:24-cv-50504 <br><br> **Judge**: Hon. Iain D. Johnston <br><br> **Magistrate Judge**: Michael F. Iasparro |

**DEFENDANT STEVEN S. CLIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

I.  Vehicle Emissions in California Threaten Public Health and Welfare....................1

II. California's Regulation of Heavy-Duty Vehicle Emissions and the Clean Air Act ................................................................................................................2

III. The Clean Truck Partnership ...................................................................................3

STANDARD OF REVIEW .............................................................................................................4

ARGUMENT ...................................................................................................................................5

I.  The Court Lacks Personal Jurisdiction over Defendant Cliff..................................5

A.  This Suit Arises from Conduct Directed at California, Not Illinois ............5

B.  Defendant Cliff's Other Alleged Conduct Is Not Relevant to AmFree's Claim and, Regardless, Does Not Establish Specific Jurisdiction .................................................................................................8

C.  Traditional Notions of Fair Play and Substantial Justice Advise Against Personal Jurisdiction in Illinois ...................................................10

D.  The Case Should be Dismissed Absent Defendant Cliff ...........................11

II. The Court Should, Alternatively, Dismiss for Lack of Venue or Transfer this Case to a District Court in California...............................................................12

A.  Venue Is Improper ....................................................................................12

B.  If Venue Is Proper, Transfer Is Warranted................................................13

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*
751 F.3d 796 (7th Cir. 2014) ...................................................................5, 6, 7, 10

*Advanced Turf Solutions, Inc. v. Johns*
223 F. Supp. 3d 786 (S.D. Ind. 2016) .................................................................15

*Alaska Wilderness League v. Jewell*
99 F. Supp. 3d 112 (D.D.C. 2015) ......................................................................14

*Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*
80 F. Supp. 3d 870 (N.D. Ill. 2015) ....................................................................12

*Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.*
588 F. Supp. 2d 935 (S.D. Ind. 2008) .................................................................15

*Bogard v. TikTok Inc.*
725 F. Supp. 3d 897 (S.D. Ind. 2024) ............................................................14, 15

*Brook v. McCormley*
873 F.3d 549 (7th Cir. 2017) ................................................................................9

*Diamond Alternative Energy v. EPA,*
145 S. Ct. 2121 (2025)..........................................................................................3

*Fahy v. Minto Dev. Corp.*
722 F. Supp. 3d 784 (N.D. Ill. 2024) ..............................................................13, 14

*Fuld v. Palestine Liberation Org.*
145 S. Ct. 2090 (2025)........................................................................................10

*In re Nat'l Presto Indus.*
347 F.3d 662 (7th Cir. 2003) ..............................................................................14

*In re Sheehan*
48 F.4th 513 (7th Cir. 2022) .................................................................................5

*Interlink Prods. Int'l, Inc. v. Crowfoot*
No. 20-CV-10566, 2020 WL 6707946 (D. N.J. Nov. 16, 2020) ............................15

*J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*
965 F.3d 571 (7th Cir. 2020) .............................................................................5, 9

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Lexington Ins. Co. v. Hotai Ins. Co.*
938 F.3d 874, 882 (7th Cir. 2019) ........................................................................7

*Matlin v. Spin Master Corp.*
921 F.3d 701 (7th Cir. 2019) ................................................................................7

*MB Fin. Bank, N.A. v. Walker*
741 F. Supp. 2d 912 (N.D. Ill. 2010) ............................................................4, 12, 13

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*
627 F.2d 1095 (D.C. Cir. 1979) ............................................................................2

*MSA Realty Corp. v. State of Ill.*
990 F.2d 288 (7th Cir. 1993) ................................................................................5

*Ohio v. EPA*
98 F.4th 288 (D.C. Cir. 2024) ...............................................................................2

*Rogers v. City of Hobart*
996 F.3d 812 (7th Cir. 2021) ...........................................................................10, 11

*Schoeps v. Sompo Holdings, Inc.*
736 F. Supp. 3d (N.D. Ill. 2024) .........................................................................11

*Stroman Realty, Inc. v. Wercinski*
513 F.3d 476 (5th Cir. 2008) ...........................................................................10, 15

*Tamburo v. Dworkin*
601 F.3d 693 (7th Cir. 2010) ........................................................................4, 10, 11

*U.S. ex rel. Hall v. Tribal Dev. Corp*
100 F.3d 476 (7th Cir. 1996) ...............................................................................11

*Van Dusen v. Barrack*
376 U.S. 612 (1964) ...........................................................................................15

*Vera Bradley Designs, Inc. v. Denny*
No. 1:18-CV-70-TLS, 2018 WL 3633986 (N.D. Ind. July 30, 2018) ...................12

*Walden v. Fiore*
571 U.S. 277 (2014) ........................................................................................7, 10

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Wilderness Workshop v. Harrell*
676 F. Supp. 3d 1 (D.D.C. 2023) ............................................................................14

*World-Wide Volkswagen Corp. v. Woodson*
444 U.S. 286 (1980) ................................................................................................11

**STATUTES AND REGULATIONS**

United States Code
28 U.S.C. § 1391(b)(2) ............................................................................................12
28 U.S.C. § 1404 .....................................................................................................13
42 U.S.C. § 7507 .......................................................................................................2
42 U.S.C. § 7521(a)(1) ..............................................................................................2
42 U.S.C. § 7543(a) ..................................................................................2, 5, 9, 13
42 U.S.C. § 7543(b)(1) ..............................................................................................2

Code of Federal Regulations
40 C.F.R. pt. 52, subpts. B–ZZ .................................................................................7
40 C.F.R. § 52.172 .....................................................................................................7

California Health and Safety Code
§ 38566 ......................................................................................................................2
§ 43000(a) ..................................................................................................................1
§ 43000(b) ..............................................................................................................1, 2
§ 38550 ......................................................................................................................2

Illinois Compiled Statutes
415 Ill. Comp. Stat. 5/28 ...........................................................................................8

**COURT RULES**

Federal Rule of Civil Procedure
12(b)(2) ......................................................................................................................1
12(b)(3) ...................................................................................................................1, 4
19(b) .........................................................................................................................12

**OTHER AUTHORITIES**

Conflict of laws, 1 Nichols Ill. Civ. Prac. § 5:3 .......................................................15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

United States District Courts - National Judicial Caseload Profile,
    https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile033
    1.2025.pdf ................................................................................................................15

**INTRODUCTION**

Plaintiff American Free Enterprise Chamber of Commerce ("AmFree"), an Iowa-based organization, has attempted to hale Defendant Steven S. Cliff, in his official capacity as a California state official, into court in Illinois to face a preemption challenge. The subject of AmFree's lawsuit is an agreement that Defendant Cliff, negotiated and signed in California, in his official role as the Executive Officer of the California Air Resources Board ("CARB"). The part of the agreement AmFree alleges is preempted concerns emission levels of trucks and other heavy-duty vehicles sold in California and a handful of other states, and has nothing to say about sales in Illinois.

Because AmFree's preemption challenge does not arise from any conduct by Defendant Cliff that occurred in or otherwise targeted Illinois, AmFree cannot meet its burden of establishing that this Court has personal jurisdiction over Defendant Cliff. Nor can AmFree show that any substantial part of the events giving rise to its preemption claim occurred in this district, as required to establish venue. Defendant Cliff respectfully requests that the Court dismiss the case against him for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for improper venue under Federal Rule of Civil Procedure 12(b)(3). In the alternative, Defendant Cliff requests the Court transfer this case to a federal district court in California.

**BACKGROUND**

I.    **VEHICLE EMISSIONS IN CALIFORNIA THREATEN PUBLIC HEALTH AND WELFARE**

California's Legislature has determined that "[t]he emission of air pollutants from motor vehicles is the primary cause of air pollution in many parts of the state." Cal. Health & Safety Code § 43000(a). Reducing vehicle emissions in California, including heavy-duty-vehicle emissions, is of "prime importance for the protection and preservation of the public health and

well-being." *Id.* § 43000(b). Although California has made substantial progress reducing emissions of, *inter alia*, fine particulate matter and smog precursors such as oxides of nitrogen, California continues to suffer from the highest particulate matter and smog levels in the country. Defendant Cliff's Req. for Judicial Notice (RJN), Exh. 1 at 024, 0125. And California communities near areas of high truck traffic (e.g. ports and railyards) continue to experience particularly acute levels of pollution and associated health risks as a result. *Id.* at 0124–25.

Heavy-duty vehicles are also significant sources of California's contributions to climate-changing greenhouse gases. *Id.* at 0012. California's Legislature has assigned CARB to take steps to reduce the State's contributions to greenhouse gas emissions, *e.g.*, Cal. Health & Safety Code § 38550, to at least 40 percent below 1990 levels by the end of 2030, *id.* § 38566.

## II.    CALIFORNIA'S REGULATION OF HEAVY-DUTY VEHICLE EMISSIONS AND THE CLEAN AIR ACT

Congress, too, has concluded that vehicular pollution poses a threat to public health and welfare. Accordingly, the Clean Air Act requires the U.S. Environmental Protection Agency to promulgate emission standards to control harmful pollution from new motor vehicles. 42 U.S.C. § 7521(a)(1). Congress also chose to preempt States from adopting such standards. *Id.* § 7543(a). But, recognizing both the air pollution challenges California faces and the value of California's role as a laboratory of innovation in the field of motor-vehicle emission control, Congress required EPA to waive that preemption for California, unless the evidence supports one of three bases for declining to do so. *Id.* § 7543(b)(1); *see also Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109–10 (D.C. Cir. 1979) (describing history of waiver provision). Other States may choose to adopt California's standards as their own under Section 177 of the Clean Air Act, subject to certain conditions. 42 U.S.C. § 7507. Seventeen States have chosen to adopt some of California's standards. *Ohio v. EPA*, 98 F.4th 288, 296 n.3 (D.C. Cir. 2024) (*rev'd in part on*

2

*other grounds sub nom. Diamond Alternative Energy v. EPA*, 145 S. Ct. 2121 (2025)). These States are often referred to as "Section 177 States." Illinois is not a Section 177 State, as it has never adopted any California motor-vehicle emission standards. RJN Exh. 2 & ¶ 2.

Three CARB standards are relevant to this litigation. All regulate emissions of new heavy-duty vehicles sold in California. CARB's Omnibus regulation primarily establishes more stringent standards for exhaust emissions of fine particulate matter and oxides of nitrogen from new medium- and heavy-duty vehicles and engines sold in California. Second Amended Complaint, ECF No. 104 (SAC), ¶ 74. CARB's Advanced Clean Trucks (ACT) rule requires manufacturers to increase California sales of trucks designed to have zero tailpipe emissions of harmful air pollutants ("zero-emission trucks"). *Id*. ¶ 62. And, as relevant here, CARB's Advanced Clean Fleets rule (ACF) requires manufacturers to reach 100 percent zero-emission trucks by 2036. *Id*. ¶ 94. One or more of these regulations have also been adopted by eight Section 177 States, none of them Illinois. *Id*. ¶¶ 65, 88.

## III. THE CLEAN TRUCK PARTNERSHIP

In 2023, some manufacturers of heavy-duty vehicles or engines expressed concerns about these regulations' effect on their ability to serve the California market. To address those concerns while preserving the emission-reduction benefits for California that the regulations were designed to provide, CARB reached an agreement with those manufacturers and their trade association, Defendant Truck and Engine Manufacturers Association (EMA). That agreement is called the Clean Truck Partnership ("Partnership"), and certain provisions of it are the subject of AmFree's suit here.

Among other things, in return for CARB committing to consider certain amendments to Omnibus and ACT, the manufacturers agreed that their vehicle sales *in California* would be

3

consistent with those amended requirements, without regard to whether CARB had a relevant preemption waiver authorizing enforcement of those requirements. The manufacturers made a similar commitment about Omnibus (but not ACT or ACF) in Section 177 States that adopted that regulation. SAC Exh. A, p. 17, ¶ B. With respect to ACT in Section 177 States that adopted it, manufacturers committed only to use "best efforts to sell as many zero-emission vehicles as reasonably possible." *Id*. at 17, ¶ F. In States like Illinois, which have not adopted the relevant standards, manufacturers made no sales commitments whatsoever. The manufacturers and EMA also agreed not to bring or join litigation challenging the legality of these standards, and not to oppose other States' adoption of these California regulations.

The Partnership was signed in late June and early July 2023, *id.* at 5–7, following an all-day meeting at CARB's offices in Sacramento, California on March 8, 2023. *See* Exh. A, Decl. of Kimberly Ayn Heroy-Rogalski ¶ 3. Defendant Cliff signed the Partnership in Sacramento, California, and neither he nor any other CARB official or employee traveled to Illinois to negotiate the Partnership. *Id*. ¶ 6.

A year and a half after the Partnership was signed, AmFree filed this lawsuit, claiming that the Partnership's sales commitments are preempted by the Clean Air Act.

## STANDARD OF REVIEW

"The plaintiff has the burden of establishing personal jurisdiction." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Likewise, when venue is challenged under Federal Rule of Civil Procedure 12(b)(3), "the plaintiff bears the burden of establishing it filed its case in the proper district." *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 915 (N.D. Ill. 2010) (collecting cases).

**ARGUMENT**

I.    **THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT CLIFF**

Defendant Cliff is a California official who is not at home in Illinois. Thus, as AmFree recognizes, SAC ¶ 18, it must establish specific personal jurisdiction over Defendant Cliff by showing that he had sufficient "minimum contacts" with Illinois related to this litigation. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 800–01 (7th Cir. 2014). AmFree cannot carry its burden.

A.    **This Suit Arises from Conduct Directed at California, Not Illinois**

AmFree cannot establish that this Court has personal jurisdiction over Defendant Cliff because AmFree's claims do not arise out of any conduct by Defendant Cliff that is "expressly aimed" at Illinois. *In re Sheehan*, 48 F.4th 513, 525 (7th Cir. 2022). "[I]n determining whether a plaintiff's claims arise out of a defendant's contacts," "courts look to the elements of a [claim]." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 577 (7th Cir. 2020). Here, the only claim AmFree brings is for preemption under Section 209(a) of the Clean Air Act. SAC ¶¶ 163-182. And none of the conduct AmFree alleges would be preempted under that section will occur in, or expressly aim at, Illinois.[1]

In relevant part, Section 209(a) of the Clean Air Act precludes States from enforcing "any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a); SAC ¶ 168. AmFree primarily alleges that the provisions of the Partnership that obligate manufacturers to sell a mix of vehicles in California that align with the

---

[1] Defendant Cliff focuses on his *future* conduct under the relevant provisions because any remedy for *past* conduct would be barred as improperly retrospective under *Ex Parte Young*. *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 295 (7th Cir. 1993) ("[D]eclaratory relief should not be awarded where the eleventh amendment bars an award of … injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar."). AmFree seems to recognize as much by seeking to "enjoin[] Defendants from enforcing" the allegedly preempted parts of the Partnership. SAC ¶ 35.

targets in ACF, ACT, and Omnibus are preempted "attempts to enforce" emission standards. SAC ¶¶ 169–175. While the Complaint does not identify the specific provision of the Partnership that AmFree claims is preempted, it appears to focus on paragraph 2, which states "[t]he OEMs commit to meet, *in California*, the relevant provisions of the CARB regulations set forth in Appendices A and B." SAC Exh. A ¶ 2 (emphasis added). As the text of that paragraph makes clear, it applies only to vehicle sales in California. *Id.* This Court does not, therefore, have specific jurisdiction over Defendant Cliff as to any claim that this provision is preempted.

AmFree further alleges that two other Partnership provisions—involving conduct outside California—are also preempted attempts to enforce standards. Specifically, AmFree points to the provision committing manufacturers to comply with Omnibus in States that have adopted it and the provision obligating manufacturers to make "best efforts" to sell as many ZEVs as "reasonably possible" in States outside of California that have adopted ACT and ACF. SAC ¶¶ 171, 175, 181–82. But these allegations likewise fail to support specific jurisdiction over Defendant Cliff. Illinois has not adopted any of the relevant California regulations. *Cf. id.* ¶¶ 65, 88, 92; RJN Exh. 2 & ¶ 2. So any conduct—by Defendant Cliff or others—under these provisions will not occur in or target Illinois.

The lack of any conduct targeting Illinois under the allegedly preempted provisions is fatal to jurisdiction, because the only conduct relevant to specific jurisdiction is conduct "*related to [Defendant's] allegedly unlawful activity*." *Advanced Tactical*, 751 F.3d at 801 (emphasis added). Because AmFree alleges Defendant Cliff's potential enforcement of certain provisions of the Partnership would be preempted, that hypothetical enforcement is the relevant conduct. And AmFree has not alleged, and cannot establish, that any of that conduct will occur in or otherwise target Illinois.

6

AmFree asserts that Illinois is "covered by" Section 177 of the Clean Air Act, SAC ¶ 19, and therefore *could* adopt these standards, potentially expanding the scope of the above provisions. But a potential future decision by a third-party (Illinois) is not enough for minimum contacts—those contacts must exist at the time of filing a suit. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 707 (7th Cir. 2019). Moreover, if the mere existence of the option to adopt California's standards sufficed for jurisdiction in Illinois over AmFree's preemption claim, this suit could have been filed almost anywhere in the country. Any State is eligible to adopt California standards under Section 177—in other words, "covered by" it in the same way as Illinois—so long as it has "nonattainment" or other air quality "plan provisions" approved under Part D of Title I of the Clean Air Act. 42 U.S.C. § 7507; *see also* SAC ¶ 49. And all but a tiny handful of States satisfy that condition. *See generally* 40 C.F.R. pt. 52, subpts. B–ZZ (listing states with approved plan provisions, *e.g.*, § 52.172 (Arkansas); *see also* RJN Exh. 3 (showing states with nonattainment areas). Exercising jurisdiction on that basis would also justify this case being heard "in California, Mississippi, or wherever else." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). And the Seventh Circuit has made clear that "the creation of such *de facto* universal jurisdiction runs counter to the approach the Court has followed since *International Shoe* and that it reaffirmed in … *Walden*." *Advanced Tactical*, 751 F.3d at 801. Indeed, the mere "presence of a state within the scope of [the Partnership's] coverage creates no purposeful connection between the [the Partnership] and that state." *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 882 (7th Cir. 2019).[2] And here, Illinois vehicle sales are not yet even within the scope of the Partnership.

---

[2] Underscoring the fact that this provision cannot plausibly be read as aiming at Illinois, the complaint in Nebraska cited by AmFree, SAC ¶ 8, claims that this same provision also was intended to cover Nebraska, another state that has never adopted a California emissions regulation. See Compl. ¶¶ 100–02, *State of Nebraska v. Daimler Truck, N.A.*, No. D15CI240000570 (Neb. Dist. Ct., Nov. 19, 2024).

AmFree's allegation that "Illinois is in the process of" adopting these standards does not change the analysis. SAC ¶ 56. Indeed, this allegation concedes that any "contacts" that might exist with Section 177 States did not exist with Illinois at the time of suit (or now). Moreover, this allegation is contradicted by the very document AmFree relies on to make it. That document, a memorandum of understanding between States AmFree alleges are interested in "follow[ing] California's lead," *id*., does not include any reference to Illinois. *See* Multi-State Medium- and Heavy-Duty Zero Emission Vehicles Memorandum of Understanding (2020), https://www.nescaum.org/documents/mhdv-zev-mou-20220329.pdf. And it was not signed by Illinois. *Id*. Accordingly, it cannot show that any conduct by Defendant Cliff expressly aims at Illinois. *See id.* AmFree also points to an Illinois Pollution Control Board decision in June 2024—a year after the Partnership was signed—to place ACT and Omnibus on its docket, in response to petitions from third parties. SAC ¶¶ 66, 89 (citing Proposed Clean Car and Truck Standards: Proposed Section 35 Ill. Admin. Code 242, Docket R2024-17 (July 11, 2024), https://pcb.illinois.gov/documents/dsweb/Get/Document-110537). But that Board is required to docket any petition signed by more than 200 people and "not plainly devoid of merit." 415 Ill. Comp. Stat. 5/28. So, at most, the Board's action indicates those petitions cleared that low bar. It hardly shows that Illinois will—for the first time in the nearly 50 years since Section 177 was enacted—adopt California emission regulations, far less that Defendant Cliff was "expressly aiming" at Illinois when he signed the Partnership a year earlier.

### B. Defendant Cliff's Other Alleged Conduct Is Not Relevant to AmFree's Claim and, Regardless, Does Not Establish Specific Jurisdiction

None of the other conduct AmFree alleges Defendant Cliff engaged in is either relevant to AmFree's preemption claim or could indicate that he "expressly aimed" at Illinois. First, AmFree alleges that "in negotiating the agreement …, Defendant Cliff and/or his agents sent emails or

8

other communications to Illinois residents subject to the Agreement, participated in meetings in Illinois, and/or held phone calls or online calls with the residents of Illinois." SAC ¶ 26. As an initial matter, AmFree's claim does not arise from Defendant Cliff's past conduct in *negotiating* the allegedly preempted provisions of the Partnership. *See supra* note 1. Moreover, none of that conduct targeted Illinois, because—as described above—the allegedly preempted provisions do not themselves apply to Illinois. *See Brook v. McCormley,* 873 F.3d 549, 553 (7th Cir. 2017) (no jurisdiction based on communications and contract with Illinois party, when subject matter of both was outside Illinois).

AmFree is also simply wrong that these negotiations took place in Illinois. The only in-person meeting at which Defendant Cliff or his agents negotiated the Partnership took place in Sacramento, California. Heroy-Rogalski Decl. ¶ 6; *see also supra* p. 4. The remaining allegations—that Defendant Cliff or his agents sent emails or made calls to Illinois residents—are insufficient to show they targeted the forum itself. *Brook,* 873 F.3d at 553.

Second, AmFree alleges that EMA and Ford performed the Partnership by submitting comments to the Illinois Pollution Control Board's rulemaking docket that were consistent with the Partnership. SAC ¶¶ 21, 22. But those other Defendants' participation in Illinois administrative proceedings could only support personal jurisdiction over Cliff in this litigation to the extent it is connected to AmFree's preemption claim. *J.S.T. Corp.*, 965 F.3d at 576 (holding that relevant contacts are those with "connection" to "underlying claims"). AmFree does not allege that the provisions of the Partnership which allegedly altered those other Defendants' participation in Illinois' administrative proceedings are preempted by Clean Air Act Section 209(a). Nor could AmFree plausibly do so, as Section 209(a) has nothing to say about participation in state rulemaking proceedings. *See* 42 U.S.C. § 7543(a).

9

Because these provisions do not involve any alleged "*suit-related* conduct" by Defendant Cliff, they cannot support specific jurisdiction over him. *Advanced Tactical*, 751 F.3d at 801 (quoting *Walden v. Fiore*, 571 U.S. at 284 (emphasis in original)). Moreover, these provisions do not support jurisdiction here because they do not apply in or otherwise expressly aim at Illinois. And to the extent they *could* apply to Illinois, the same is true "nationwide." SAC ¶ 19.

### C.    Traditional Notions of Fair Play and Substantial Justice Advise Against Personal Jurisdiction in Illinois

Finally, AmFree cannot show that exercising personal jurisdiction over Defendant Cliff would comport with "traditional notions of fair play and substantial justice." *See Tamburo*, 601 F.3d at 709. In evaluating this element, federalism concerns can be "*decisive*," since Courts must weigh not just "the practical problems resulting from litigating in the forum, but also the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Fuld v. Palestine Liberation Org.*, 145 S. Ct. 2090, 2105–06 (2025) (citations and quotations omitted).

"Principles of interstate federalism" are particularly "pertinent to this inquiry" here. *Rogers v. City of Hobart*, 996 F.3d 812, 820–21 (7th Cir. 2021). AmFree seeks to force a California state official to come to Illinois to defend actions he took in his official capacity in California to reduce pollution from vehicles sold in California. But California, "as a sovereign, has a strong interest in not having an out-of-state court" interfere with efforts to enforce its contracts in California. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

By comparison, Illinois, has "little interest in adjudicating disputes" concerning California contracts focused on conduct in California—and even less interest in enjoining a California state official from taking action in California to protect California residents. *Id.* It is hard to see how such a result would be consistent with "the shared interest of the several States in furthering

10

fundamental substantive social policies." *Rogers*, 996 F.3d at 821 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Illinois's interest in this matter is weaker still because the party seeking redress is also not from Illinois. AmFree is based in Iowa. *See* SAC, Exh. E, ¶ 1.[3] Illinois thus "does not have a particular interest in this dispute." *Schoeps v. Sompo Holdings, Inc.*, 736 F. Supp. 3d 582, 604 (N.D. Ill. 2024).

For its part, AmFree cannot show prejudice from having to litigate in California instead of Illinois. AmFree is already litigating multiple cases in California about the State's efforts to reduce vehicular pollution there. *E.g.*, *AmFree v. Cliff*, No. 2:24-cv-988) (E.D. Cal. Apr. 1, 2024); *AmFree v. EPA*, No. 25-89 (9th Cir. Jan. 6, 2025); *AmFree v. EPA*, No. 25-106 (9th Cir. Jan. 6, 2025); Mot. to Intervene, *California v. United States*, No. 3:25-cv-04966 (N.D. Cal. Aug. 4, 2025). So AmFree's ability to seek relief there is at least as "convenient and effective" as it would be here. *See Tamburo*, 601 F.3d at 709 (citations omitted).[4]

The Court lacks specific jurisdiction over Defendant Cliff.

### D.    The Case Should be Dismissed Absent Defendant Cliff

Because the Court lacks jurisdiction over Defendant Cliff, his joinder is not feasible. But he is a necessary party to this case, and could be prejudiced by a judgment in his absence. *U.S. ex rel. Hall v. Tribal Dev. Corp*, 100 F.3d 476, 479 (7th Cir. 1996) ("A judicial declaration as to the validity of a contract necessarily affects . . . the interests of both parties to the contract.").

---

[3] Only one of the AmFree members to whom it alleges injuries is headquartered in Illinois, SAC ¶ 128. The other two are based in Iowa and California, respectively. *Id*. ¶¶ 129-30. And both the Illinois and Iowa corporations shop "nationwide" and provide services "across the United States." *Id*. ¶¶ 128-29.

[4] In addition, several private-party defendants here brought their own preemption challenge in the Eastern District of California against Defendant Cliff, making similar preemption claims against the Partnership. *Daimler Truck N.A., LLC v. Cal. Air Res. Bd.*, No. 2:25-cv-2255 (E.D. Cal. Aug. 11, 2025).

Accordingly, the Court should dismiss the case in its entirety under Fed. R. Civ. Proc. 19(b), for failure to join an indispensable party.

## II. THE COURT SHOULD, ALTERNATIVELY, DISMISS FOR LACK OF VENUE OR TRANSFER THIS CASE TO A DISTRICT COURT IN CALIFORNIA

### A. Venue Is Improper

AmFree also does not meet its burden to show that venue is proper in the Northern District of Illinois. AmFree relies on 28 U.S.C. § 1391(b)(2), which provides for venue in a district where a "substantial part of the events or omissions giving rise to the claim occurred." *See* SAC ¶ 15. This standard is "more rigorous" than the requirements of the minimum contacts test for personal jurisdiction. *Vera Bradley Designs, Inc. v. Denny*, No. 1:18-CV-70-TLS, 2018 WL 3633986, at *4 (N.D. Ind. July 30, 2018) (citation omitted). It is not met here.

Venue requires "an event in the forum district" that is "'part of the historical predicate for the instant suit.'" *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015) (internal quotations omitted). These predicate in-district events must be more than a mere "but for" cause of the claim. *MB Fin. Bank*, 741 F. Supp. 2d at 918 (quotation omitted). They must be a "substantial" part. *Id*. at 917; 28 U.S.C. § 1391(b)(2).

The historical predicate for AmFree's preemption claim is apparently CARB's adoption of certain California regulations, which AmFree alleges the Partnership seeks to enforce. SAC ¶¶ 169–75. AmFree does not and cannot allege these California rulemakings occurred in Illinois. To the extent the negotiations of the Partnership are also a relevant historical predicate for AmFree's suit, those negotiations likewise fail to establish Illinois is the proper venue. Defendant Cliff and his staff negotiated the Partnership from California, not Illinois, and did not travel to Illinois to do so. In fact, staff from the other Defendant signatories traveled *to California* as part of the negotiations. Heroy-Rogalski Decl. ¶ 6. Since venue in this district

12

would not be proper even if every signatory had traveled to Illinois, it cannot be enough that Defendant Cliff or his agents may have just emailed or called one or more signatories while they were in Illinois, even if those signatories are "headquartered" there, SAC ¶ 15; *MB Fin. Bank*, 741 F. Supp. 2d at 917–18 (rejecting venue based on the location of Plaintiff's home office, even when defendant flew there to "sign some documents").

Finally, AmFree's conclusory assertion that EMA and Ford are "performing" the Partnership in Illinois by submitting comments in an Illinois Pollution Control Board proceeding that "were consistent with the relevant terms" of the Partnership is inadequate. SAC ¶¶ 15, 21. These comments are not a historical predicate for this suit. AmFree does not allege its members were injured by EMA's comments (nor could AmFree do so). And AmFree does not claim these comments—or the provision of the Partnership under which they were allegedly undertaken— are preempted. AmFree brings only one cause of action—preemption under Clean Air Act Section 209(a), 42 U.S.C. § 7543(a)—which concerns state emissions standards and certification requirements. AmFree does not and cannot allege that EMA's comments to an Illinois agency set state standards or require certification of new motor vehicles in Illinois. Because these comments have no bearing whatsoever on AmFree's preemption claim, they cannot support venue here.

## B. If Venue Is Proper, Transfer Is Warranted

In the alternative, should the Court determine that venue in this district is proper, the Court should nonetheless transfer the case to the Eastern District of California under 28 U.S.C. § 1404. Transfer is appropriate under that section because "venue and jurisdiction are proper in the transferee district; the transferee district is more convenient for both the parties and witnesses; and transfer would serve the interest of justice." *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 792 (N.D. Ill. 2024) (cleaned up).

To start, the Eastern District of California has personal jurisdiction over Defendant Cliff for his official acts. His primary office is in Sacramento, and that is where he negotiated the Partnership and performs his Partnership commitments. For the same reasons, the Eastern District is an appropriate venue.

The Eastern District is also substantially more convenient for Defendant Cliff, given the proximity to his and his attorneys' offices. *See In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003) ("When government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the [] government and who is no less worthy of the protection of the law than corporate officers, shareholders, and employees."). By contrast, AmFree cannot raise serious convenience concerns about the Eastern District of California, as the organization has repeatedly initiated or intervened in litigation in California federal courts involving CARB regulations, including many of those referenced in AmFree's complaint. *See supra* p. 11. AmFree's choice to instead bring suit in this district deserves minimal deference, since it is "not the plaintiff's residence." *Bogard v. TikTok Inc.*, 725 F. Supp. 3d 897, 906 (S.D. Ind. 2024); *cf. Fahy*, 722 F. Supp. 3d at 793 (giving weight to choice of Illinois when "Illinois will be the home venue for the entirety of the putative class").

Finally, the interests of justice favor transfer, because this case addresses substantive issues in which California's interest is much greater than Illinois's. The Partnership aims to shield California residents from air pollution from vehicles sold in California. It does not apply to vehicles sold in Illinois. "[I]n general, controversies involving water rights, environmental regulation, and local wildlife … should be resolved in the forum where the people whose rights and interests are in fact most vitally affected." *Wilderness Workshop v. Harrell*, 676 F. Supp. 3d 1, 8 (D.D.C. 2023); *see also Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 117

14

(D.D.C. 2015); *Interlink Prods. Int'l, Inc. v. Crowfoot*, No. 20-CV-10566, 2020 WL 6707946, at *10 (D. N.J. Nov. 16, 2020).[5] Moreover, the remedy AmFree appears to seek would prevent a California official from enforcing a California agreement over California conduct in California courts. Illinois has "little interest in adjudicating disputes" so specific to California. *Stroman Realty, Inc.*, 513 F.3d at 487.

Transfer would also serve the interests of justice by ensuring that "a court most familiar with the law to be applied is able to oversee the case." *Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964)). In the unlikely event AmFree prevails, crafting a remedy may well require the court to determine whether and how to sever the parts of the Partnership that AmFree claims are preempted from the parts it does not challenge. And, under Illinois law, contract construction issues, like severability, "are typically governed by the law of the place where [the contract] is made," *i.e.*, California. 1 Nichols Ill. Civ. Prac. § 5:3 Governing law—Conflict of laws.

Transferring this case to the Eastern District of California would further serve the interests of justice by avoiding disputes over personal jurisdiction and venue, thus saving significant judicial resources. *Bogard*, 725 F. Supp. 3d at 912. "This weighs strongly in favor of transfer." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should dismiss the case, or, in the alternative, transfer it to the Eastern District of California.

---

[5] As for docket congestion, this factor is neutral. In the Eastern District, civil cases are typically disposed of in 8.3 months, and reach trial, if at all, in 66.8 months, as compared to 7.6 and 58.6 months here. United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf (last visited Aug. 13, 2025). Courts have called differences of similar magnitudes "insignificant." *See Advanced Turf Solutions, Inc. v. Johns*, 223 F. Supp. 3d 786, 790–91 (S.D. Ind. 2016).

15

Dated:  August 14, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

*/s/ Jonathan A. Wiener*
JONATHAN A. WIENER (*pro hac vice*)
BENJAMIN P. LEMPERT (*pro hac vice*)
Deputy Attorneys General
 455 Golden Gate Ave, Suite 11000
 San Francisco, CA 94102
 Tel: (415) 510-3549
 jonathan.wiener@doj.ca.gov
*Attorneys for Defendant Steven S. Cliff, in his official capacity as Executive Officer of the California Air Resources Board*

16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

AMERICAN FREE ENTERPRISE
CHAMBER OF COMMERCE**,**

             Plaintiff,

      v.

ENGINE MANUFACTURERS
ASSOCIATION, D/B/A TRUCK &
ENGINE MANUFACTURERS
ASSOCIATION,

STEVEN S. CLIFF, in his official
capacity as the executive officer of the
California Air Resources Board, *et al*.

             Defendants.

**Case Number:**  3:24-cv-50504

**Judge**:  Hon. Iain D. Johnston

**Magistrate Judge**:  Michael F. Iasparro

**APPENDIX OF ATTACHED MATERIALS PER STANDING ORDER**

**Contents**

1. *Interlink Prods. Int'l, Inc. v. Crowfoot*, No. CV 20-10566, 2020 WL 6707946 (D. N.J. Nov. 16, 2020)

2. *Vera Bradley Designs, Inc. v. Denny*, No. 1:18-CV-70-TLS, 2018 WL 3633986 (N.D. Ind. July 30, 2018)

2020 WL 6707946
Only the Westlaw citation
is currently available.
**Not for Publication**
United States District Court, D. New Jersey.

INTERLINK PRODUCTS
INTERNATIONAL, INC., Plaintiff,
v.
Wade CROWFOOT, et al, Defendants.

Civ. No. 20-7654 (ES) (MAH)
|
(consolidated with 20-10566)
|
Signed 11/16/2020

**Attorneys and Law Firms**

Daniel L. Schmutter, Hartman & Winnicki, P.C., Ridgewood, NJ, Jason B. Lattimore, Law Office of Jason B. Lattimore, Esq., Morristown, NJ, for Plaintiff.

Mark D. Marino, Stephen Wellinghorst, Harwood Lloyd, LLC, Hackensack, NJ, for Defendants.

**OPINION**

Mcnulty, District Judge

**\*1** Before the Court is the motion of Xavier Becerra, Drew Bohan, and Melissa Rae King (collectively, "Defendants") to dismiss the complaint. (*Interlink II*, 20cv10566, DE 12). [1] Also pending before the Court is the motion of plaintiff Interlink Products International, Inc. for a preliminary injunction. (*Interlink II*, DE

4). For reasons set forth below, the Court will transfer venue of this case to the Eastern District of California.

**I. Background**

Interlink is a New Jersey corporation that develops, manufactures, and markets shower and bath products. An unspecified percentage of its sales are conducted through online platforms, such as Amazon.com and HomeDepot.com. (Compl. ¶¶ 9 & 17–18). When purchases are made, products are shipped either by common carriers from Interlink's warehouse in New Jersey, from Amazon's warehouses located in various states, or perhaps from Home Depot, although that is less clear. (*Id.* ¶¶ 17–18). None of the products at issue in this case ship from within California. (*Id.* ¶ 17).

On February 26, 2020, Interlink received a letter from the California Energy Commission ("CEC"), notifying Interlink that its Hydroluxe brand shower head model 1433 and AquaDance brand shower head model 4328 ORB ("Shower Heads") were noncompliant with California's appliance efficiency regulations, and that it was illegal to sell them or offer them for sale in California. (*Id.* ¶ 28; Compl. Ex. A). According to that letter, someone acting on behalf of the CEC ordered the Shower Heads from Amazon.com. (Compl. ¶ 29). After testing the Shower Heads, the CEC determined that they failed to meet California's flow rate, labeling, and product registration requirements. The letter added that products manufactured and marketed by Interlink failed to comply with California's labeling and compliance certification requirements. (*Id.* ¶¶ 29–30).

Case 2:25-cv-03255-DC-AC    Document 126    Filed 08/14/25    Page 26 of 47

**\*2** Interlink argued to the CEC that it "does not sell or offer for sale the [S]hower [H]eads at issue in the State of California" and that all of its sales of the Shower Heads occurred outside of California.[2] (*See id.* ¶¶ 33, 44–45; Compl. Ex. B). After failed attempts to resolve its disagreement with the CEC, Interlink initiated its first action on June 23, 2020, alleging that the CEC officials[3] engaged in extraterritorial enforcement actions and violated Interlink's rights protected under the Due Process Clause and the Dormant Commerce Clause. (DE 1 ¶ 8). While this action was pending, Interlink received an emailed notice from Amazon.com on July 22, 2020, stating that Interlink's products may not be compliant with California energy efficiency regulations. (Compl. ¶ 53; Compl. Ex. C). On July 24, 2020, Interlink received an email from Home Depot, stating that Home Depot was contacted by the CEC regarding the Interlink products' alleged violation of California's appliance efficiency regulations. (Compl. ¶ 54; Compl. Ex. D). Soon thereafter, Interlink's Shower Heads were blocked on Amazon.com from sale to customers with shipping addresses in California. Home Depot allegedly took the more drastic step of deactivating Interlink's account, effectively removing Interlink's products from HomeDepot.com, irrespective of the customer's location. (Compl. ¶¶ 16 & 53–54).

On August 14, 2020, Interlink commenced the above-captioned second action, which I have deemed *Interlink II*, further challenging the CEC's enforcement actions. That second complaint asserts essentially the same claims under the Dormant Commerce Clause and the Due Process Clause, and adds that Defendants' "enforcement actions against Interlink for its prior conduct [are] void for vagueness." (*See id.* ¶¶ 61–76). On August 19, 2020, Interlink filed a "motion for a temporary restraining order and/or preliminary injunction," seeking to enjoin Defendants' enforcement actions and to compel Defendants to rescind the cease and desist letters sent to the online platforms. (PI at 2). On August 28, 2020, Defendants filed a motion to dismiss Interlink's second complaint. (MTD). On September 8, 2020, the Court approved the parties' stipulation consolidating the two actions. (DE 13 ¶ 1). As is customary in this district, the consolidated case continues under the earlier docket number; the operative complaint, however, is the verified complaint filed in *Interlink II*.

In their motion to dismiss, Defendants argue that the Complaint should be dismissed because (1) the Court lacks personal jurisdiction over Defendants, (2) Interlink's claims against California Attorney General Becerra are barred by the Eleventh Amendment, (3) Interlink's claims against Defendants in their official capacities for monetary damages are also barred by the Eleventh Amendment, and (4) venue should not lie in the District of New Jersey. Having considered the parties' argument presented in their submissions and at oral argument, the Court will transfer the case to the Eastern District of California.

**II. Analysis**
While "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue ... a court may reverse the normal order of considering personal

jurisdiction and venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). I will here address the venue issue first. Because Defendants have demonstrated that a transfer of venue is appropriate under 28 U.S.C. § 1404(a), I will not reach the other issues raised in Defendants' motion to dismiss, [4] or Interlink's motion for preliminary injunction.

**\*3** Regarding venue, I pause to note that my analysis has been hampered by a lack of clarity about whether and how the Shower Heads are shipped and sold (or offered to be shipped and sold) to customers in California. Interlink does not regard this fact as important; as a matter of California law, it says, title passes when Interlink ships goods from its New Jersey warehouse to customers, and the customer's location therefore does not matter. As a result, Interlink's argument has a certain "I shot an arrow in the air" quality.

It is not clear who is shipping the goods, from where, and to whom. Interlink alleges only that it does not ship goods *from* California, and that *when* goods are ordered directly from Interlink online, Interlink ships the order from its New Jersey warehouse. [5] The extent to which this is happening with respect to California customers is unstated. Nor does Interlink connect that proposition to its major complaint, which is that California is interfering with orders placed at and presumably shipped from Amazon and HomeDepot, which are not alleged to be in New Jersey.

The only sales specifically identified are two purchases by the CEC itself, which purchased Shower Heads for testing purposes. CEC did not purchase them directly from Interlink, but through Amazon.com.

**A. Venue Under § 1391(b)**

Defendants argue that the case should be dismissed under Federal Rule of Civil Procedure 12(b)(3) because venue is improper in New Jersey pursuant to 28 U.S.C. § 1391(b)(2); alternatively, they argue that the case should be transferred to the Eastern District of California pursuant to either 28 U.S.C. § 1404(a) or § 1406(a). (MTD Mov. Br. at 21–24).

I first consider whether venue is proper in New Jersey, because if it is not, the issue is settled. Because the defendant has the burden, and because certain facts are unclear on this record, I will not transfer or dismiss on the basis of improper venue.

As for the propriety of venue, the relevant part of 28 U.S.C. § 1391(b) provides that a civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

**\*4** (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject

Interlink Products International, Inc. v. Crowfoot, Not Reported in Fed. Supp. (2020)

2020 WL 6707946

to the court's personal jurisdiction with respect to such action.

As for § 1391(b)(1), Interlink does not argue, nor could it, that venue is proper in New Jersey. It is undisputed that Defendants in their official capacities reside in the Eastern District of California, not the District of New Jersey. (*See* MTD Mov. Br. at 24).

Venue under § 1391(b)(2) is the source of the parties' disagreement. Defendants argue that "[a]ll of the conduct of the California officials occurred in California, in an effort to enforce California law, and keep [Interlink's] illegal products out of California." (*Id.* at 21). Interlink, on the other hand, argues that it "does not allege Defendants interfered with or have taken any unconstitutional action to regulate any of Interlink['s] sales occurring in California." (MTD Opp. Br. at 24). Instead, Interlink argues that its claims "only concern[ ] sales outside of California, including in New Jersey"; thus "[t]he bulk of events giving rise to Interlink's claims occurred in New Jersey." (*Id.* at 24–25).

The question under § 1391(b)(2) is whether a "substantial part of the events or omissions giving rise to the claim" occurred in New Jersey. To determine "whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994). And indeed the parties' disagreement regarding venue overlaps substantially with the underlying legal issues in this case. Legally, the dispute is over whether Interlink's Shower Heads are products "sold or offered for sale in California" by virtue of being ordered online from Interlink, which is located in New Jersey (*See, e.g.*, PI Mov. Br. at 8; PI Opp. Br. at 15–19). As Interlink sees it, its sales, regardless of whether they are sales to California customers, are consummated outside of California.

Factually, the nature of the dispute is somewhat unclear. I accept allegations in the Complaint as true, *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994), but find them to be sparse and incomplete. The burden of proof on venue under § 1392(b), however, falls upon the defendant who challenges it. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir.1982); *Simon v. Ward*, 80 F. Supp. 2d 464, 466–68 (E.D. Pa. 2000) (reviewing the substantial dispute among treatises and courts on the burden of proof in venue contests, and acknowledging *Myers* as the law of this circuit).

First, the only sales concretely alleged are the small test purchases by the CEC. CEC, however, ordered the Shower Heads not from Interlink but from Amazon.com. It is not alleged that Amazon shipped those Shower Heads from New Jersey. Interlink alleges generally that to the (unspecified) extent it ships from its New Jersey warehouse, the sale occurs in New Jersey as a matter of California law—a venue-creating event. Interlink does not, however, forthrightly allege that it does ship, will ship, or has shipped directly from New Jersey to customers in California. That factual gap is significant to a court attempting to determine whether a "substantial part of the events or omissions giving rise to the claim" occurred in New Jersey. [6]

Interlink Products International, Inc. v. Crowfoot, Not Reported in Fed. Supp. (2020)
2020 WL 6707946
Case 2:25-cv-03255-DC-AC    Document 126    Filed 08/14/25    Page 29 of 47

**\*5** Second, and relatedly, it appears that when a customer orders Shower Heads on Amazon.com, Amazon ships from its own warehouse. There is no allegation that the particular Amazon warehouse or warehouses involved here are in New Jersey. Assume, then, that Amazon maintains some inventory of Shower Heads (with or without taking title), takes orders, and ships the goods. To be sure, all of the goods ultimately originate from Interlink, the manufacturer. But Interlink's theory is that when an order is filled and goods are shipped to a customer, a sale occurs at *that* time and place. As to Amazon sales, that time and place would be the time of shipment from Amazon's warehouse. So the allegation that Interlink has a New Jersey warehouse and that some percentage of shipments emanate from there is insufficient to establish that Interlink's point is pertinent to its claims against the California authorities.

Third, setting those factual uncertainties aside, I consider Interlink's legal argument that sales must be deemed to occur at its New Jersey facility. Relying on the California Uniform Commercial Code ("UCC"), publications from the California Department of Tax and Fee Administration, and California courts' interpretation of the relevant state laws, Interlink argues that "sales" occur "at the time and place of shipment." (PI Mov. Br. at 8; *see also id.* at 15–21 & 28–30). Thus, Interlink argues, whenever it shipped its products from its warehouse in New Jersey to a California address (assuming that occurred), those "sales" occurred in New Jersey for purposes of venue. That is the same theory on which Interlink bases its claims on the merits: *i.e.,* that CEC's enforcement actions against such New Jersey

"sales" were impermissibly extraterritorial and hence unconstitutional under the Dormant Commerce Clause and Due Process Clause. (*See id.* at 21–22 & 25–26).

In response, Defendants argue that "even if the transfer of title" of the Shower Heads occurred in New Jersey, it may exercise its authority because "at least a portion of the sale occurred in California" when the Shower Heads were ordered and acquired by a customer in California. (PI Opp. Br. at 15). That contention is more relevant to a discretionary transfer of venue, *see infra*; for venue to be permissible in New Jersey, it is necessary only that a substantial part, not all, of the events in suit occurred here. Defendants further argue, however, that Interlink's view of the law is wrong. Whether a product is "sold or offered for sale in California" is not, as Interlink would have it, governed by California's Revenue and Tax Code or its UCC. (*Id.* at 14, 15 n.5 & 35–36). In their view, an internet sale to a California resident would fall within the definition of a "sale or offer to sell" under the Warren-Alquist Act, and in particular Article 4 of § 1601 of the California Code of Regulations, 20 C.C.R. § 1601. They are not, they say, attempting to regulate Interlink's conduct in New Jersey; Interlink may manufacture whatever shower heads it wishes. CEC is only ruling that the goods may not be sold to customers in California because they do not comply with California law.

Under § 1392(b)(2), when a plaintiff challenges the constitutionality of a state law or policy, it is relevant to the venue analysis whether the plaintiff mounts a facial challenge or an as-applied challenge.

As to a facial challenge to a state statute, "[c]ourts are split as to whether venue is appropriate in the district of the state capital ...." *Hat v. Landry*, No. 19-0322, 2020 WL 4370129, at *15 (M.D. La. July 30, 2020) (collecting cases).[7] Interlink, however, does not bring a facial challenge to California's appliance efficiency laws in blanket fashion. (*See* MTD Opp. Br. at 24–25). Its challenge is as-applied to itself. For an as-applied challenge to a state law, the split in authority is less acute. Courts are more inclined to hold that venue is permissible in the district where the plaintiff suffers harm. *See, e.g.*, *Adams Outdoor Advert. Ltd. P'ship v. Pennsylvania Dep't of Transportation*, 307 F. Supp. 3d 380, 396–97 (E.D. Pa 2018) (holding that when the plaintiff asserts an "as applied" challenge, "a substantial portion of the events giving rise to" its First Amendment claim occurred where the plaintiff's "freedom of speech was allegedly suppressed"); *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009).

**\*6** Interlink brings an as-applied challenge to regulation of sales which, on Interlink's view of the law, occurred in New Jersey. Interlink's location in New Jersey and shipment of products from New Jersey to California would have more than a "tangential connection with the dispute in litigation." *See Cottman*, 36 F.3d at 294. Assuming such shipments from New Jersey to California occurred or will be occurring, the court could find that the impact is felt here. As I say, I would require development of a more complete factual picture in order to rule definitively that venue in New Jersey is permissible. I will state frankly that the factual omissions here appear to be tactical, and could plausibly be remedied by amendment or supplied by discovery.

To say that venue is *not* permissible in New Jersey would, of course, dispose of the issue. Because that cannot be said without further development of the record, I do not dismiss or transfer the case on the basis of improper venue. I will therefore consider the alternative request to transfer venue on discretionary grounds under 28 U.S.C. § 1404(a).

**B. Transfer of Venue Under § 1404(a)**

Section 1404(a) permits a district court "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer an action to another district "where it might have been brought." Section 1404(a) exists to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Kremer v. Lysich*, No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (citations and internal quotation marks omitted); *see also Teleprompter Corp. v. Polinsky*, 447 F. Supp. 53, 55 (S.D.N.Y. 1977) ("Where ... defendants have challenged a court's power over their persons and, at same time, have moved alternatively for transfer, the interests of judicial economy are best served by initial address of the transfer issue") (citing *United States v. Berkowitz*, 328 F.2d 358 (3d Cir.) (1964)). To that end, district courts are vested with "a large discretion" to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In determining whether transfer is appropriate under § 1404(a), the two threshold questions are whether (1) venue is proper in the transferee district, and (2) the transferee district can exercise personal jurisdiction over all parties. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). As discussed above, venue would be proper in the Eastern District of California pursuant to § 1391(b)(1) because that is where Defendants, sued in their official capacities, reside. In addition, their challenged actions took place there. *See* 28 US.C. § 1391(b)(2). There appears to be no dispute that U.S. District Court for the Eastern District of California can exercise personal jurisdiction over Defendants.

If venue and personal jurisdiction in the requested district are proper, then the Court must analyze a series of private and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). There is "no definitive formula or list of factors" to consider in evaluating the three enumerated factors: convenience of parties, convenience of witnesses, and interests of justice. *Id.* The Third Circuit has, however, recognized a set of private interest factors and a set of public interest factors that have guided courts in most cases.

**\*7** The private interest factors include (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) convenience of the witnesses; and (5) the location of books and records. *See id.*

The first two private factors, plaintiff's and defendant's choice of forum, are opposed: Interlink's choice of forum is New Jersey, and Defendants' is the Eastern District of California. In such a case, weight is generally given to the plaintiff's choice of forum, which is "a paramount consideration," *Shutte*, 431 F.2d at 25, that "should not be lightly disturbed," *Jumara*, 55 F.3d at 879. Nevertheless, a plaintiff's choice of venue is not necessarily decisive. *See Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995). Courts afford a plaintiff's choice substantially less weight where, for example, the central facts of the lawsuit did not occur there. *See id.*

As for factor (3), the district where the claim arose, Interlink points to its shipment of products from New Jersey. It is true that Interlink's products, in the ultimate sense, originate in New Jersey. Its manufacture of such products in (and to some unspecified degree, shipment of products from) New Jersey is an important, but-for requisite of this controversy. But it is not in itself the source of Interlink's legal grievance. The central, allegedly wrongful acts and events giving rise *to the claims* were performed in California by California state officials. As Defendants correctly point out, "[a]ll of the conduct of the California officials occurred in California, in an effort to enforce California law, and keep [Interlink's] illegal products out of California." (MTD Mov. Br. at 21). Accordingly, the Court finds that the generalized preference for plaintiff's choice of forum is substantially offset by the specifics of the claims in this case, which is a challenge to official action. The significant

Interlink Products International, Inc. v. Crowfoot, Not Reported in Fed. Supp. (2020)
2020 WL 6707946

Case 2:25-cv-03255-DC-AC   Document 126   Filed 08/14/25   Page 32 of 47

government actions of which the plaintiff complains occurred in defendant's chosen forum of California, not in New Jersey.

The last two private interest factors are not significant. They would sway the court only if there were witnesses who were unavailable in one of the forums, or if documents could be produced in one district but not the other. *Jumara*, 55 F.3d at 879. Neither side has raised such an argument. In fact, the parties appeared to agree at oral argument that, given the ongoing COVID-19 pandemic, depositions or even trial would likely be commenced virtually, and that neither party's choice of forum would substantially inconvenience the witnesses or interfere with discovery. These two factors, then, do not tip the balance either way.

Overall, I find that, although Interlink's choice of forum would prevail if considered alone, private interest factors 2 and 3 tip the balance slightly toward transfer.

The Court must next analyze the public interest factors, which include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the forums; and (6) the familiarity of the trial judge with the applicable state law. *See id.*

**\*8** The Court finds that the first public interest factor, enforceability of a judgment, is neutral. "[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." 17 Moore's Federal Practice – Civil § 111.13 (2020) (citing *Datasouth Comput. Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 450 (W.D.N.C. 1989)). Assuming there is personal jurisdiction, *see infra*, this factor should be neutral.

The second factor, namely, the public interest in conserving judicial resources, favors transfer. Defendants' motion to dismiss challenges this Court's personal jurisdiction over them. Interlink's claim of "minimum contacts" appears to be that its "sales" of Shower Heads, irrespective of the customers' location, must be deemed to have occurred in New Jersey. (*See supra*). For the reasons stated above, the situation is not quite as simple as that. Whether it creates the necessary contacts with these defendants, who are officials of California state government, is a debatable question, and one which might undermine any judgment this court could render. [8] At the very least, it would require jurisdictional discovery to develop a record.

Closely related is the Fifth Circuit's persuasive articulation of federalism-based constraints on the exercise of personal jurisdiction over another state's officials:

Although Stroman has an interest in a convenient forum to pursue litigation, especially when it alleges harm from a constitutional violation, and Texas has an interest in providing a forum to redress the grievances of its citizens, subjecting the [Arizona] Commissioner to suit in the Southern District of Texas could lead to

Case 2:25-cv-03255-DC-AC    Document 126    Filed 08/14/25    Page 33 of 47

a multiplicity of inconsistent verdicts on a significant constitutional issue. If, as is likely, these courts reside in different federal circuits, only the Supreme Court could sort out the confusion. But if the cause of action is litigated in Arizona federal court, judicial efficiency and uniformity prevail. Important questions of federalism are present here, and thus, for this case, "the shared interest of the several states" is the most significant reasonableness consideration outlined by the Supreme Court. Federalism and state sovereignty are an essential part of the constraints that due process imposes upon personal jurisdiction. Those constraints do more than "protect [ ] the defendant against the burdens of litigating in a distant or inconvenient forum"; they also "ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." ... The effect of holding that a federal district court in the Southern District of Texas had personal jurisdiction over a nonresident state official would create an avenue for challenging the validity of one state's laws in courts located in another state. This practice would greatly diminish the independence of the states.

*Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 488 (5th Cir. 2008). In short, the personal jurisdiction issue may turn out to be a knotty one, requiring evidentiary hearings, factual findings, and rulings of law, and federalism concerns would weigh against this court's assertion of personal jurisdiction over California officials in their official capacities.

**\*9**  The Eastern District of California, by contrast, undoubtedly has personal jurisdiction

over Defendants. Transfer there obviates the need for the parties and the Court to expend limited resources on jurisdictional preliminaries. [9] *See, e.g.*, *Auto-Wares, LLC v. Wis. River Co-op Servs.*, No. 09-702, 2010 WL 2508356, at *3 (W.D. Mich. June 17, 2010); *Multistate Legal Studies, Inc. v. Marino*, No. 96-5118, 1996 WL 786124, at *11 (C.D. Cal. Nov. 4, 1996) (collecting cases). And it sidesteps the federalism pitfalls recognized in *Stroman.*

The third public interest factor, court congestion, might arguably tip in favor of transfer, but I treat it as neutral; both courts, it appears, have quite enough to keep them busy. During the 12-month period ending June 30, 2020, the Eastern District of California had about 844 "actions per judgeship," while that number for the District of New Jersey was 1131. [10] The District of New Jersey, allocated seventeen judges, has six vacancies which qualify as judicial emergencies; the Eastern District of California, allocated six judges, has two vacancies which qualify as judicial emergencies—about one third, give or take, in both districts. [11] The reality is that both districts have congested dockets; in such a situation, statistical data may not tip the balance either way. *See Eastman v. First Data Corp.*, No. 10-4860, 2011 WL 1327707, at *5 (D.N.J. Apr. 5, 2011). It is perhaps for that reason that it has been said that "relative congestion of the respective courts' dockets is not a factor of great importance on a motion to transfer." *Id.* (quoting *Kisko v. Penn. Cent. Transp. Co.*, 408 F. Supp. 984, 987 (M.D. Pa. 1976)) (internal quotation marks omitted). I treat this third factor as neutral.

The remaining public interest factors—the local interest in deciding local controversies at home, the public policies of the forums, and the familiarity of the trial judge with the applicable state law—all favor transfer.

Interlink stresses that this is not a diversity case and does not involve "complex issues of state law." (MTD Opp. Br. at 29). Rather, says Interlink, its claims are based on state officials' overreach, in violation of the Constitution. This Court and a California federal court, in Interlink's view, should be equally equipped to resolve such federal constitutional issues. (*Id.*).

I agree, but only to an extent. Cases brought under the court's diversity jurisdiction are not the only ones that may involve local interests or complex issues of state law. Cases brought under the federal-question jurisdiction, *see* 28 U.S.C. § 1331, may nevertheless hinge on state-law issues, and federal courts considering transfer of venue have not ruled out this factor in non-diversity cases, as plaintiff appears to suggest. *See, e.g.*, *Kalawa v. United States*, No. 19-16089, 2020 WL 3603205, at *6 (D.N.J. July 2, 2020) (collecting cases and stating that, where "a federal court must apply the law of Maryland" for claims asserted under the Federal Tort Claims Act, the case should be transferred, particularly where "[f]ederal courts in Maryland are extremely familiar with Maryland tort law and better able to apply it than courts in New Jersey."); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996) (transferring the case to Colorado and stating that "[w]hile this case deals directly with federal statutes and regulations, it may also, in part, involve the interpretation of Colorado law").

**\*10** In this case, Interlink's claim, although constitutional, depends on its assertion that California is attempting to regulate a New Jersey sale. That contention depends in turn on the argument that, under California law, "sales" occur at the "time and place of shipment" of Interlink's goods from New Jersey. Specifically, Interlink's claims seem to hinge initially on the interpretation of the phrase "sold or offered for sale in California" in Article 4 of § 1601 of the California Code of Regulations, 20 C.C.R. § 1601. (*See* Compl. ¶¶ 34–43; PI Mov. Br. at 6–9; 13–22; 28–30). According to Interlink, they also implicate the California UCC (Compl. ¶¶ 38–43; PI Mov. Br. at 8–9, 17–18 & 28); California tax law (Compl. ¶ 38; PI Mov. Br. at 8–9, 17 & 28); and California courts' interpretation of the relevant statutes and regulations (PI Mov. Br. at 8–9, 15–16, 18–19 & 29). Accordingly, I find that this case is one that involves "complex issues of [California] state law," a factor which favors transfer. *See Kalawa*, 2020 WL 3603205, at *6; *Castaldo v. Nissan Motor Corp. in USA*, No. 94-3811, 1994 WL 702908, at *2 (E.D. Pa. Dec. 13, 1994); *Myer v. Miriam Collins-Palm Beach Labs. Co.*, No. 85-3457, 1986 WL 3584, at *4 (E.D. Pa. Mar. 17, 1986). Those state-law issues, by the way, could turn out to be threshold issues by which the constitutional question is avoided entirely. If the definition of "sold or offered for sale" in the California efficiency regulations does not cover an internet sale from New Jersey, the case might be disposed of entirely on California state-law grounds.

More generally, rulings in this action have the potential to affect a state regulatory scheme,

Interlink Products International, Inc. v. Crowfoot, Not Reported in Fed. Supp. (2020)
2020 WL 6707946
Case 2:25-cv-03255-DC-AC    Document 126    Filed 08/14/25    Page 35 of 47

namely, California's appliance efficiency standards, which are part and parcel of the state's Warren-Alquist Act. (Compl. ¶¶ 22–27; PI Mov. Br. at 6–7). It is not merely, as suggested, that this Court lacks expertise on that issue; federal judges are perforce generalists, and are frequently called on to master new areas of law. The problem is that Interlink seeks a ruling that would potentially impair the ability of California to regulate the efficiency of in-state appliances that arrived from elsewhere. That impairment, given the prevalence of internet buying in the modern economy, could be a substantial one. In drought-plagued California, the public interest in water conservation is a substantial one. *See generally* U.S. Geological Survey, California Water Science Center, *California Drought*, https://ca.water.usgs.gov/california-drought/. A court on the other side of the country may rightly be skeptical about whether it is the best arbiter of such questions.

There is also the question of uniformity. In the e-commerce era, many consumers may order appliances that ship from other states, where the laws are different. The consumer's home state, however, might see the need to promulgate its own efficiency standards, particularly in light of local conditions, such as a chronic water shortage. A definitive holding as to the meaning and scope of California's appliance efficiency law, a threshold non-constitutional issue, may bring order, if not uniformity, to any piecemeal constitutional challenges—or even possibly render them moot.

CEC has much to say about the merits, arguing that it does not overreach when it bars an item advertised on the internet from being sold and shipped to a customer in California. Interlink, too, has much to say about the definition of a sale under California law, the availability of alternative means of enforcement, the possibility that a California customer could buy goods for use elsewhere, and other issues. I do not resolve such issues. I am satisfied that in this case, which implicates a state's enforcement of its environmental laws, local interests and public policy also favor transfer. *See Hat*, 2020 WL 4370129, at *18 (holding that local interests favor transfer in a suit "aris[ing] out of arrests and environmental justice advocacy actions"). There is a public interest in a local adjudication of California's authority to regulate efficient water use. [12]

On balance, the Court finds that the private interest factors are not strong, and that the public interest factors tip the scale in Defendants' favor. Because Defendants have demonstrated that a transfer of venue is appropriate under § 1404(a), the Court does not reach the other issues raised in Defendants' motion to dismiss. Defendants' claim that the court lacks personal jurisdiction, raised in the motion to dismiss and in opposition to the preliminary injunction, should be moot upon transfer.

### III. Conclusion

**\*11** For the reasons stated above, Defendants' request to transfer venue to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. An appropriate Order follows this Opinion.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6707946

---

## Footnotes

1 Citations to the record will be abbreviated as follows:

*Interlink II = Interlink Products International, Inc. v. Becerra*, No. 20-10566 (D.N.J.), commenced on August 14, 2020

Compl. or Complaint = Interlink's complaint filed in *Interlink II*, DE 1

Compl. Ex. A = A letter from Lea Haro, a supervisor at the Office of Compliance Assistance and Enforcement of the California Energy Commission, to Eli Zhadanov, the president of Interlink, dated February 26, 2020, *Interlink II*, DE 1-1

Compl. Ex. B = An email from Jared Babula, a representative from the California Energy Commission, to Jason Lattimore, an attorney representing Interlink, dated June 4, 2020, *Interlink II*, DE 1-2

Compl. Ex. C = An email from Amazon to Interlink, dated July 22, 2020, *Interlink II*, DE 1-3

Compl. Ex. D = An email from the Home Depot to Interlink, dated July 24, 2020, *Interlink II*, DE 1-4

PI = Interlink's motion for preliminary injunction, *Interlink II*, DE 4

PI Mov. Br. = Interlink's moving brief in support of its motion for preliminary injunction, *Interlink II*, DE 4-1

PI Opp. Br. = Defendants' brief in opposition to Interlink's motion for preliminary injunction, *Interlink II*, DE 18

MTD = Defendants' motion to dismiss, *Interlink II*, DE 12

MTD Mov. Br. = Defendants' moving brief in support of their motion to dismiss, *Interlink II,* DE 12-2

MTD Opp. Br. = Interlink's brief in opposition to Defendants' motion to dismiss, *Interlink II*, DE 14

---

2   This factual contention imports a legal conclusion. Interlink is not saying that all of its *customers* are in New Jersey or that none of them are in California; if that were true, little if anything would be at stake in this lawsuit. What Interlink is saying is that, no matter where the customer is located, the site of any "sale" must be New Jersey, because the products originate from its New Jersey warehouse. (*See* Compl. ¶ 43 (stating that "[t]hus, where goods purchased through the internet are shipped from New Jersey to customers in other states, the sales are deemed to have taken place in New Jersey, where title passes.")).

3   The original defendants in the first action were Wade Crowfoot, Drew Bohan, Melissa Rae King, and Lea Haro. (DE 1 ¶¶ 2–5). As discussed below, Interlink's claims against Crowfoot and Haro were dismissed without prejudice. (DE 13 ¶ 3).

4   The transfer to California should eliminate the personal jurisdiction issue.

5   The following quotations are typical. "Thus, where goods purchased through the internet are shipped from New Jersey to customers in other states, the sales are deemed to have taken place in New Jersey, where title passes." (Compl. ¶ 43.) "Products purchased from Interlink online are shipped by common carrier from Interlink's warehouse located in Linden, New Jersey. Some of Interlink's products also ship from Amazon.com warehouses located in various states. None of the showerheads at issue in this case ship from within California." (Compl.¶¶ 21–23). In Interlink's opposition brief to the MTD, it states that "Defendants knew well, and were on clear notice from Interlink's communications and the pending litigation, that Interlink's products on HomeDepot.com were stored in and shipped from Interlink's warehouse in New Jersey ...." (MTD Opp. Br. at 17–18). Again, it appears plausible that all of Interlink's products begin their journeys at Interlink, which manufactures them. What is not clear, however, is the extent to which orders, and particularly orders by California customers, are being filled and shipped from inside or outside New Jersey.

6   The dispute, realistically speaking, must implicate sales to California customers. The complaint and exhibits reveal that CEC seeks to regulate sales of noncompliant appliances to California customers; CEC does not, and does not seek to, bar sales to customers in other states. To the extent that Home Depot, for example, allegedly overstepped by barring all sales of Interlink products, the dispute would seem to be with Home Depot, which is not alleged to be headquartered in New Jersey.

7   Some, including district courts within the Third Circuit, apply the principle that "where plaintiffs challenge state-wide policies, and not merely the actions of state officials in a single county, venue is proper pursuant to [§] 1391(b)(2) in the district where those policies are developed." *Chester v. Beard*, No. 07-4742, 2008 WL 2310946,

Case 2:25-cv-03255-DC-AC    Document 126    Filed 08/14/25    Page 38 of 47

at *8 (E.D. Pa. June 2, 2008); *see also Hat*, 2020 WL 4370129, at *16; *Stanton-Negley Drug Co. v. Pennsylvania Dep't of Pub. Welfare*, No. 07-1309, 2008 WL 1881894, at *5 (W.D. Pa. Apr. 24, 2008) (stating that the venue is proper in the district where the policies are implemented and where the policymakers reside, even though plaintiffs may feel the impact of those policies in another district); *Perkins v. Snider*, No. 94-4785, 1994 WL 530045, at *2–3 (E.D. Pa Sept. 2, 1994) (collecting cases and holding that venue is proper where the policymakers are located when the plaintiff is objecting to state-wide policies and "not merely to the actions of state employees" in a specific county). Other courts, however, take a broader approach and hold that venue is proper for a facial challenge not only in the district where the state government sits, but also "where the effects of the challenged regulations are felt." *Farmland Dairies v. McGuire*, 771 F. Supp. 80, 82 n.3 (S.D.N.Y. 1991); see also *Emison v. Catalano*, 951 F. Supp. 714, 721–22 (E.D. Tenn. 1996).

8   The situation is *International Shoe* in reverse: The out-of state corporation is attempting to hale the state regulators into its preferred forum. *See International Shoe v. State of Washington*, 326 U.S. 310 (1945).

9   As noted above, those jurisdictional preliminaries also have the potential to deeply entangle the court in the merits merely in order to ascertain whether it can hear the case.

10  *Federal Court Management Statistics—Comparison Within* Circuit, 12-month period ending June 30, 2020, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison06_30.2020.pdf.

11  *Judicial Emergencies,* https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies.

12  The federalism concerns of *Stroman Realty,* 513 F.3d at 488, quoted above, although expressed in the context of personal jurisdiction, are relevant to venue as well.

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-03255-DC-AC    Document 126    Filed 08/14/25    Page 39 of 47

2018 WL 3633986
Only the Westlaw citation
is currently available.
United States District Court, N.D.
Indiana, Fort Wayne Division.

VERA BRADLEY
DESIGNS, INC., Plaintiffs,
v.
Jennifer DENNY, an individual; Austin
Devin 2 Denny Boys LLC; Darleen
Nicholas, an individual; Amanda
Whitfield, an individual; and Ilene
Simpson, an individual, Defendants.

CAUSE NO.: 1:18-CV-70-TLS
|
Signed 07/30/2018

**Attorneys and Law Firms**

Mark D. Scudder, Barnes & Thornburg LLP,
Fort Wayne, IN, Michael Robert Gray, PHV,
Gray Plant Mooty Mooty & Bennett PA,
Minneapolis, MN, for Plaintiffs.

April M. Jay, Paul B. Overhauser, Overhauser
Law Offices LLC, Greenfield, IN, for
Defendants.

**OPINION AND ORDER**

THERESA L. SPRINGMANN, CHIEF
JUDGE

**\*1** Plaintiff Vera Bradley Designs, Inc., filed
a Complaint [ECF No. 1] on March 26, 2018
against Defendants Jennifer Denny, Austin
Devin 2 Denny Boys, LLC, Darleen Nicholas,

Amanda Whitfield,[1] and Ilene Simpson. In
the Complaint, the Plaintiff alleges trademark
infringement in violation of 15 U.S.C. §
1114, copyright infringement in violation of 17
U.S.C. § 501, false designation of origin and
unfair competition in violation of 15 U.S.C. §
1125(a), unfair and deceptive trade practices
in violation of Indiana Code § 24-5-0.5-3,
common law unfair competition, and unjust
enrichment. Defendants Austin Devin 2 Denny
Boys LLC, Denny, and Whitfield jointly filed a
Motion to Dismiss [ECF No. 13] under Federal
Rule of Civil Procedure 12(b)(3) for improper
venue. The Plaintiff responded [ECF No. 17]
on May 29, 2018, and the Defendants replied
[ECF No. 21] on June 5, 2018.[2] On June 22,
2018, Defendant Nicholas also filed a Motion
to Dismiss [ECF No. 27] under Federal Rules of
Civil Procedure 12(b)(2) and 12(b)(3) for lack
of personal jurisdiction and improper venue.
The Plaintiff responded [ECF No. 29] on July
6, 2018, and Defendant Nicholas replied [ECF
No. 31] on July 13, 2018. These matters are
now fully briefed and ripe for review.[3]

**BACKGROUND**

The Plaintiff designs and manufactures high-
quality bags, luggage, and accessories that are
generally recognizable by their unique and
creative patterns. The Plaintiff holds 35 federal
trademark registrations, has 17 pending federal
trademark applications, and holds more than
900 copyright registrations related to the Vera
Bradley name and designs. The Plaintiff alleges
that the Defendants operated, and continue to
operate, various eBay accounts that advertise,
distribute, offer for sale, and sell counterfeit

Vera Bradley goods and goods that infringe the Plaintiff's trademarks and copyrighted designs. These eBay accounts include austindevin, darlennichola8, twosisterinlaws, collegetime, and collegfund31, each held in the name of at least one of the Defendants. The Plaintiff asserts that at no time did it authorize the Defendants to sell Vera Bradley goods.

**\*2** Through its employees, the Plaintiff purchased some of the products sold by the Defendants to determine the authenticity of the goods. After evaluating the products, the Plaintiff's in-house counsel sent a cease and desist letter to Defendant Denny on January 27, 2017. After Defendant Denny failed to comply with its demands, the Plaintiff retained outside counsel, who sent cease and desist letters to all of the Defendants on July 26, 2017. On August 1, 2017, the Defendants responded through counsel and agreed to cease and desist selling unauthorized or counterfeit Vera Bradley products. However, the Plaintiff alleges that the Defendants continued to sell these products in spite of such assurances, prompting the Plaintiff to bring the instant lawsuit.

The Defendants assert that venue is improper because a substantial part of the events giving rise to the Plaintiff's claims did not occur in the Northern District of Indiana. Defendant Nicholas further asserts that the Court does not have personal jurisdiction over her.

## STANDARD OF REVIEW

On consideration of a motion to dismiss for improper venue, a court must resolve all factual disputes and draw all reasonable inferences in the plaintiff's favor, *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011), with the plaintiff then bearing the burden of establishing that venue is proper, *Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969). If venue is improper, the court may either dismiss the suit or transfer it to a district in which the plaintiff could have initially filed the suit if "it be in the interest of justice." 28 U.S.C. § 1406(a). [4] Venue can be proper in more than one district. *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). When ruling on a motion to dismiss for improper venue, a district court may examine facts outside the complaint without converting the motion to a motion for summary judgment. *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

## ANALYSIS

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Under § 1391(b)(2), venue may be proper in more than one district as long as a "substantial" part of the key events or omissions occurred in each district. "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998). "[F]or events to be considered 'substantial' under the statute, it is sufficient

for the plaintiff to establish that the events occurring in the forum district 'were part of the historical predicate for the instant suit.' " *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (quoting *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 1998) ). The relevant events "must have a 'close nexus' to the alleged claim." *Id.* (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005) ).

## A. Whether Venue is Proper in the Northern District of Indiana

The Plaintiff argues that the Defendants' unauthorized sales of Vera Bradley products and sales of counterfeit Vera Bradley products in the Northern District of Indiana are "substantial" within the meaning of § 1391(b)(2). The Plaintiff's Complaint alleges five specific instances in which its employees purchased the counterfeit or unauthorized merchandise at issue from the Defendants. (*See* Compl. ¶¶ 23–24.) In its briefing, the Plaintiff also clarifies that these purchases were made by its employees residing in the Northern District of Indiana and that the items were shipped to addresses in the Northern District of Indiana. Specifically:

**\*3** Vera Bradley, through its employee residing in the Northern District of Indiana, purchased from Defendants through their eBay accounts counterfeit Vera Bradley merchandise which Defendants advertised, offered for sale, sold, packaged, and shipped to Vera Bradley's employee residing in the Northern District of Indiana. In order for these transactions to take place, Defendants maintained interactive websites in the form of their eBay accounts in which they advertised and offered for sale counterfeit Vera Bradley goods accessible by anyone with internet access and an eBay account, including Vera Bradley, its employees and other residents in the Northern District of Indiana. Defendants offered for sale counterfeit Vera Bradley merchandise to residents of the Northern District of Indiana, accepted purchase orders from residents of the Northern District of Indiana, and packaged and shipped counterfeit Vera Bradley goods to residents of the Northern District of Indiana, including Vera Bradley employees based in the Northern District of Indiana....

(Pl. Resp. to Defs.' Mot. to Dismiss at 3–4, ECF No. 17.) Further, the Plaintiff argues, venue is appropriate in this District because "Vera Bradley has been, and continues to be, harmed by Defendants['] actions in this district." (Compl. ¶ 10.)

The Court disagrees with the Plaintiff that "substantial events" occurred in the Northern District of Indiana within the meaning of § 1391(b)(2). First, the Plaintiff's argument that venue is proper in this District because it has suffered harm in this District is unavailing. "[V]enue would be rendered meaningless if a plaintiff could always bring suit in its home district simply because it had suffered damages." *J.B. Custom, Inc. v. Rossi*, No. 1:10-cv-326, 2011 WL 124509, at *4 (N.D. Ind. Jan. 13, 2011).

Moreover, the only instances of sales made by the Defendants to residents of the Northern District cited by the Plaintiff are those sales initiated by the Plaintiff's employees to determine the authenticity of the goods. The Plaintiff has identified only five specific sales made in this manner and then generally alleges, at least with regard to Defendant Nicholas, that "[d]iscovery will ultimately reveal the volume of counterfeit Vera Bradley merchandise shipped" and that "it is safe to assume" that these sales were not "isolated incident[s]." (*See* Pl. Resp. to Def. Nicholas' Mot. to Dismiss at 4–5, ECF No. 29.) "[I]f the protection afforded by [§ 1391(b)(2) ] is to be meaningful, the adjective 'substantial' must be taken seriously." *Caudill v. Keller Williams Realty Int'l., Inc.*, No. 11 C 1140, 2011 WL 4007727, at *3 (N.D. Ill. Sept. 7, 2011). "Indeed, district courts have been warned not to overlook the requirements that the activities be substantial[.]" *Burke, Warren, Mackay & Serritella, P.C. v. Tamposi*, No. 10-CV-8267, 2011 WL 5373981, at *6 (N.D. Ill. Nov. 4, 2011) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) ). "The test for

determining venue under [§ 1391(b)(2) ] is not the defendant's 'contacts' with a particular district, but rather the location of the events or omissions giving rise to the claim." *Family Express Corp. v. Square Donuts, Inc.*, No. 2:16-CV-103, 2016 WL 3855174, at *4 (N.D. Ind. July 14, 2016) (citations omitted).

"To demonstrate that a 'substantial part' of the events giving rise to a claim of trademark infringement have occurred in a particular district, the plaintiff can demonstrate either substantial sales of the infringing product in the district or intentional targeting of the infringing product into the district." *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-9875, 2018 WL 941747, at *2 (S.D.N.Y. Feb. 16, 2018). "[V]enue by substantial sales requires, at minimum, that the plaintiff allege some non-nominal amount of sales in the district." *Id.* at *3. This the Plaintiff has not done. The Plaintiff has alleged only five sales occurring within this District, and alleges that the offending eBay accounts are "accessible by anyone with internet access," which includes residents of the Northern District of Indiana. *See id.* ("Such a paltry number sales, both in absolute and relative terms, cannot be said to represent 'a substantial part of the events ... giving rise to' a claim of trademark infringement."); *see also Anchor Wall Sys., Inc. v. F&D Concrete Rods., Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. June 30, 1999) ("Sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states."); *Carier v. Micha, Inc.*, No. 06 Civ. 4699, 2007 WL 1187188, at *3 (S.D.N.Y. Apr. 20, 2007) ("Absent proof of marketing to or advertising in a district, however, the sale of a substantial amount of the alleged trademark-

infringing goods must occur to satisfy the 'substantial part' requirements for establishing venue pursuant to § 1391(b)(2).'").

**\*4** As for targeting, "the plaintiff must show at least that the defendant took some active step to advertise, market, or otherwise solicit business in this district." *Detroit Coffee Co.*, 2018 WL 941747, at \*2. "[T]he internet—just like print advertisements, television commercials, and the direct-mail catalogues of yore—offers a mode of communication that can be used to target a product into a particular market." *Id.* In this case, the Defendants have "apparently done nothing else to market, advertise, or otherwise target sales into" the Northern District of Indiana. *See id.*

Further, the Plaintiff's arguments appear to "conflat[e] the 'minimum contacts' analysis utilized for establishing personal jurisdiction with the more rigorous requirements of the venue provision." *Ecommerce Innovations, LLC v. Marketing Advantages Int'l, Inc.*, No. 2:07-cv-7042, 2008 WL 11419051, at \*2 (C.D. Cal. Jan. 11, 2008). "It would be error ... to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (citations omitted). Here, the relatively few number of sales alleged—sales initiated by the Plaintiff no less—do not support venue in this District. *See Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 214 (D.D.C. 2014) (finding that venue did not lie "where the only connection to the claims are that, arguably, two people, one of whom was a member of the plaintiff [organization], placed orders through a generally accessible

website for shipment of a small amount of allegedly infringing merchandise"). The Plaintiff has neither produced evidence that any of the Defendants specifically targeted the Northern District of Indiana, nor pointed to evidence of *any* sales in this District other than those initiated by the Plaintiff. The Court is not prepared to hold that a Plaintiff may manufacture venue in any district it chooses by orchestrating sales via a generally accessible online store. Therefore, the Court finds that venue is not proper in this District.

### B. Whether Dismissal or Transfer is Appropriate

The Plaintiff argues that, in the event the Court finds that venue is not proper in this District, the Court should transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1406(a). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The decision to transfer is left to the sound discretion of the Court. *Coté v. Wadel*, 796 F.3d 981, 985 (7th Cir. 1999). Transfer is ordinarily in the interest of justice because dismissal of an action that could be brought elsewhere is "time consuming" and may be "justice-defeating." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). The transferor court does not need to have personal jurisdiction over all defendants before it can apply 28 U.S.C. § 1406(a). *See id.* at 466. "In deciding whether transfer is appropriate under section 1406(a), courts are to look at whether the transfer is in the interest of justice; that is, whether the

transferee forum is convenient to the parties and witnesses as well as what impact transfer has on the efficient administration of the court system." *Thomas v. Exxon Mobil Oil Corp.*, No. 2:06-CV-144, 2007 WL 1035159, at *1 (N.D. Ind. Apr. 2, 2007) (citing *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530 (7th Cir. 2002) ). "When evaluating the convenience of the parties and witnesses, a court can consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties." (*Id.* (citation omitted) ).

 **\*5** However, "[t]he court must first determine that an adequate alternative forum is available to hear the case, meaning that all parties are within the jurisdiction of the alternative forum and amenable to process there, and that the parties would not be treated unfairly or deprived of all remedies if the case were litigated in the alternative forum." *AAR Int'l, Inc. v. Nimelia Enter. S.A.*, 250 F.3d 510, 524 (7th Cir. 2001). In response to Defendants Denny, Austin Devin 2 Denny Boys, and Whitfield, the Plaintiff argues that the Southern District of Indiana is an adequate venue because the Defendants reside there. However, there is no such assertion regarding Defendant Nicholas, who the record indicates resides in Florida. Whether the Southern District of Indiana is an adequate forum turns on whether Defendant Nicholas is subject to personal jurisdiction there.

Personal jurisdiction refers to the court's power to bring a person into its adjudicative process and render a valid judgment over that person. *Saler v. Irick*, 800 N.E.2d 960 (Ind. Ct. App. 2003). Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal on the basis that a court lacks jurisdiction over it. A complaint need not allege facts establishing personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, if a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Id.* A plaintiff may not rest upon allegations in its pleadings but must set forth specific facts showing that the court has jurisdiction. *Int'l Steel Co. v. Charter Builders, Inc.*, 585 F. Supp. 816, 819 (S.D. Ind. 1984). Where the parties have not requested an evidentiary hearing, but have filed written submissions and affidavits, as they have here, the plaintiff is required only to make out a prima facie case of personal jurisdiction. *Id.*; *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). The Court construes all factual conflicts in favor of the Plaintiff. *Purdue Research Found.*, 338 F.3d at 782; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

Indiana Trial Rule 4.4, as amended in 2003, extended the reach of state court jurisdiction to "any basis not inconsistent with the Constitutions of this state or the United States." Ind. T. R. 4.4(A); *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 964 (Ind. 2006) (noting that Indiana's two-step process to determine jurisdiction had become one-step with the amendment of Trial Rule 4.4(A) ). For personal jurisdiction to be consistent with due process, a defendant must have established minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial

justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). A court examines whether the defendant's contacts with the state are such that she "should reasonably anticipate being haled into court" there. *Id.* at 474 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ). The defendant must have purposefully availed herself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Id.* at 474–75.

There are two types of contacts that may be sufficient to establish jurisdiction: (1) a defendant's contacts with the forum state that are unrelated to the basis of the lawsuit —known as general jurisdiction; and (2) a defendant's contacts that are related to the subject matter of the lawsuit—known as specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011); *Burger King*, 471 U.S. at 466–67; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).

### 1. General Jurisdiction

**\*6** General jurisdiction permits a federal district court in Indiana to exercise personal jurisdiction over a defendant regardless of the subject matter of the litigation. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924.

The Plaintiff argues that Defendant Nicholas has sufficiently continuous and systematic contacts with Indiana so as to justify the Court exercising general jurisdiction over her because she co-owns property in the state. The Plaintiff admits that this property is unrelated

to the litigation, but argues that such ownership demonstrates her "intent to invoke the benefits and protections of the laws of the state of Indiana." (*See* Pl. Resp. to Def. Nicholas Mot. to Dismiss 4, ECF No. 29.) The Plaintiff argues by way of example that, as a property owner, Defendant Nicholas could certainly anticipate being haled into court if somebody was injured on her property. (*Id.*) The Plaintiff also argues that Defendant Nicholas has agents in Indiana whose actions relate directly to the instant lawsuit and therefore establish general jurisdiction. In support of this assertion, the Plaintiff argues that the eBay account set up in Defendant Nicholas' name was created only ten days after the Plaintiff sent a cease and desist letter to Jennifer Denny,[5] and the merchandise purchased from that eBay account was shipped from an Indiana zip code.

These arguments miss the mark. General jurisdiction over individuals turns on domicile; the Plaintiff does not argue, nor does the Court find evidence of record, that Defendant Nicholas is domiciled in Indiana. Rather, the record indicates that she is domiciled in Florida. Therefore, Defendant Nicholas is not subject to general jurisdiction in Indiana.

### 2. Specific Jurisdiction

The Seventh Circuit has instructed that specific jurisdiction is appropriate where: (1) the defendant has purposefully directed her activities at the forum state or purposefully availed herself of the privilege of conducting business in that state; (2) the alleged injury arises out of the defendant's forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions

Case 2:25-cv-03255-DC-AC    Document 126    Filed 08/14/25    Page 46 of 47

of fair play and substantial justice. *See Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014).

The Plaintiff argues that the Court should exercise personal jurisdiction over Defendant Nicholas because the Defendants in this case are related to each other, engaged in the same enterprise, and there is no alternative forum in which all of the Defendants would be subject to personal jurisdiction. The Plaintiff also seems to argue that Defendant Nicholas purposely directed her activities at Indiana for the same reasons asserted in its argument for general jurisdiction. To the extent that the Plaintiff argues that Defendant Nicholas' property interests in the state give rise to specific jurisdiction, such argument is without merit as the Plaintiff admits that the instant litigation does not arise from those interests.

The Court is not persuaded by the Plaintiff's arguments regarding specific jurisdiction. The Plaintiff has offered no authority finding that such propositions comport with due process; otherwise jurisdiction would never be at issue where a court could obtain jurisdiction over a single family-member defendant or over a single participant engaged in an alleged scheme. Personal jurisdiction is just that: personal. The Plaintiff must establish jurisdiction over each individual. [6]

**\*7** There is nothing before the Court that demonstrates that Defendant Nicholas directed her activities to the State of Indiana in a manner that would permit the Court to exercise personal jurisdiction over her. At best, her contacts with Indiana consist of a single allegedly counterfeit item shipped from an Indiana zip code. Due process does not counsel exercising personal jurisdiction over the Defendant based on a single sale from a generally accessible website where there is no evidence of targeted activity. The minimum contacts analysis is not satisfied by "random, fortuitous, or attenuated contacts," *Burger King*, 471 U.S. at 475, and the record does not indicate that Defendant Nicholas' contacts are more than random, fortuitous, or attenuated. Therefore, Defendant Nicholas is not subject to personal jurisdiction in Indiana, and the Southern District of Indiana is not an adequate forum for this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' Motion to Dismiss for Improper Venue [ECF No. 13], and DISMISSES this case. The Court DENIES AS MOOT the Defendants' Motion to Strike Amended Declaration [ECF No. 25] and DENIES AS MOOT Defendant Nicholas' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [ECF No. 27].

SO ORDERED on July 30, 2018.

## All Citations

Not Reported in Fed. Supp., 2018 WL 3633986

Case 2:25-cv-03255-DC-AC    Document 126    Filed 08/14/25    Page 47 of 47

## Footnotes

1    The Defendants note that Amanda Whitfield Denny was improperly sued as Amanda Whitfield. For clarity in the instant Order and Opinion, the Court will refer to this Defendant as "Defendant Whitfield" where necessary.

2    In their Reply, the Defendants argued that one of the Plaintiff's supporting declarations was defective. Without leave of Court, the Plaintiff subsequently filed an Amended Declaration purporting to correct the identified defects, which the Defendants moved to strike [ECF No. 25], arguing that the filing was improper and prejudicial as all briefing on the Motion to Dismiss had been completed. The Plaintiff has not filed any response. The Court need not consider the Defendants' Motion to Strike because the Court would come to the same conclusion as to the Defendants' Motions to Dismiss regardless of whether it considers the Amended Declaration.

3    There has not yet been an appearance entered on behalf of Ilene Simpson, and therefore she has not joined any of these Motions nor filed a Motion of her own for the Court's consideration.

4    In contrast, if venue is proper in the district where the case is initially filed, that court retains discretion to order transfer pursuant to 28 U.S.C. § 1404(a).

5    Defendant Nicholas is Defendant Denny's mother.

6    Nor is the Court persuaded by the Defendant's argument that a lack of alternate forum in which every Defendant is subject to personal jurisdiction creates jurisdiction as to Defendant Nicholas. While the potential lack of an alternate forum may be a proper consideration in some cases when determining whether the exercise of personal jurisdiction over a defendant would comport with traditional notions of fair play and substantial justice based on her minimum contacts with a state, the Court does not find this fact significant here.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.