IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

|  |  |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE**,**<br><br>                    Plaintiff,<br><br>        **v.**<br><br>ENGINE MANUFACTURERS ASSOCIATION, D/B/A TRUCK & ENGINE MANUFACTURERS ASSOCIATION,<br><br>STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, *et al*.<br><br>                    Defendants. | **Case Number**:  3:24-cv-50504<br><br>**Judge**:  Hon. Iain D. Johnston<br><br>**Magistrate Judge**:  Michael F. Iasparro |

**DEFENDANT STEVEN S. CLIFF'S OPPOSITION TO
UNITED STATES' MOTION TO INTERVENE AS PLAINTIFF**

**INTRODUCTION**

This Court should deny the motion to intervene as plaintiff against Defendant Steven S. Cliff filed by the United States and the U.S. Environmental Protection Agency (collectively, "United States"). As a threshold matter, this Court lacks personal jurisdiction over Defendant Cliff and is not a proper venue—both necessary prerequisites for intervention. Absent those prerequisites, the United States' motion cannot succeed.

Regardless, the United States fails to demonstrate that its asserted interest could be impaired by the disposition of this case, as Federal Rule of Civil Procedure 24(a) requires. The claims the United States seeks to raise here are substantially similar, if not identical, to claims and issues being litigated in two suits in federal district court in California—to which the United States and the California Air Resources Board ("CARB") are parties. The ability of the United States to adequately protect its stated interest in those cases is fatal to its argument for intervention as of right here.

The United States likewise fails to satisfy the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b). Even accepting that the United States has a claim that shares a common question of law or fact with the main action, its participation as a party poses undue prejudice to Defendant Cliff and would be an inefficient use of judicial resources. The Court should exercise its substantial discretion to deny the United States' request for permissive intervention.

Finally, any consideration of a briefing schedule on the United States' proposed motion for a preliminary injunction is premature and should be postponed until the Court has resolved both Defendant Cliff's pending motion to dismiss and the United States' motion to intervene.

**BACKGROUND**

This case concerns Plaintiff American Free Enterprise Chamber of Commerce's ("AmFree") challenge to certain provisions of the Clean Truck Partnership ("the Partnership"), an agreement between CARB and manufacturers of heavy-duty vehicles or engines, as preempted by the Clean Air Act. The legal and factual background relevant to the Partnership is

1

described in more detail in Defendant Cliff's brief in support of his motion to dismiss ("Mot. to Dismiss"). Mot. to Dismiss 2-4, ECF No. 126. In short, although the Clean Air Act generally preempts States from adopting emissions standards for new motor vehicles, it requires EPA to waive that preemption for California unless the evidence supports one of three bases for declining to do so. 42 U.S.C. § 7543(a), (b)(1); *see also Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109-10 (D.C. Cir. 1979) (describing purpose and benefits of waiver provision). Those waivers also allow other States ("Section 177 States") to adopt and enforce California's regulations as their own. 42 U.S.C. § 7507.

Relevant to this case are three CARB standards that regulate emissions of new heavy-duty vehicles sold in California: Omnibus, Advanced Clean Trucks (ACT), and Advanced Clean Fleets (ACF). Second Am. Compl., ECF No. 104 (SAC), ¶¶ 62, 74, 94. EPA published a waiver of preemption for Omnibus in early January 2025, 90 Fed. Reg. 642 (Jan. 6, 2025), and for ACT in April 2023, 88 Fed. Reg. 20,688 (Apr. 6, 2023). CARB withdrew its request for a waiver for ACF on January 13, 2025. SAC ¶ 97.

CARB and the manufacturers signed the Partnership in June and July of 2023, SAC, Exh. A at 4-6. In it, CARB committed to consider certain amendments to Omnibus and ACT, and the manufacturers committed that their vehicle sales in California would be consistent with those amended requirements, regardless of whether CARB ultimately obtained a waiver authorizing their enforcement. *Id.* 2 ¶ 2. The manufacturers also made a similar commitment specific to Omnibus in the Section 177 States that adopted it. *Id.*, App. D ¶ B. AmFree filed this lawsuit a year and a half later, claiming that the Partnership's sales commitments are preempted by the Clean Air Act. Compl. ¶¶ 140-157, ECF No. 1.

On May 22, 2025, Congress took the unprecedented step of adopting resolutions purporting to disapprove the Omnibus and ACT waivers under the Congressional Review Act. H.J. Res. 87, 89 (119th Congress). The resolutions hinged on EPA's mistaken view—contrary to the statutory text, its own longstanding interpretation, and the interpretation of the Government Accountability Office—that the waivers were "rules" within the meaning of that Act. Defendant

Cliff's Req. for Judicial Notice, Exh. 1 at 2, 6-9 (filed herewith). The President signed the resolutions on June 12, 2025. Pub. L. No. 119–15, 139 Stat. 65; Pub. L. No. 119-17, 139 Stat. 67. California and ten Section 177 States promptly sued the United States, seeking, *inter alia*, to have the resolutions declared unlawful. Compl. at 27-40, *California v. United States*, No. 3:25-cv-04966-HSG (N.D. Cal. filed June 12, 2025), ECF No. 1. AmFree subsequently amended its complaint here, adding allegations about the resolutions but raising no new claims. SAC, ECF No. 104.

On August 11, 2025, four manufacturers that had signed the Partnership—all of them defendants here—sued Defendant Cliff, CARB, and the Governor of California in the Eastern District of California, requesting, among other things, a declaration that the Partnership is preempted by federal law and an injunction barring the defendants from enforcing it. Compl. at 30-49, *Daimler Truck N. Am. LLC v. Cal. Air Res. Bd.*, No. 2:25-cv-02255-DC (E.D. Cal. filed Aug. 11, 2025), ECF No. 1. The United States is now a party to that case. Minute Order, *Daimler*, No. 2:25-cv-02255-DC (Aug. 20, 2025), ECF No. 54 (granting United States' motion to intervene as plaintiff, which CARB conditionally did not oppose). Observing that "there may be significant overlap of claims and defenses" between *California* and *Daimler*, and noting the United States' presence as a party in both, the court directed the parties to show cause why the case should not be transferred to the Northern District of California. Minute Order, *Daimler*, No. 2:25-cv-02255-DC (Aug. 20, 2025), ECF No. 55. Responses to that order are due by August 29.

The United States moved to intervene in the case before this Court on August 13. Mot., ECF No. 121. The next day, Defendant Cliff filed his motion to dismiss AmFree's second amended complaint. That motion is currently pending will be fully briefed by September 26. Minute Order, ECF No. 129. The remaining Defendants' deadline to file an answer or otherwise respond to AmFree's second amended complaint is October 13. Minute Order, ECF No. 119. However, as explained in Defendant Cliff's motion, the Court lacks jurisdiction over Defendant Cliff, and he is a necessary party whose joinder is not feasible; as such, the entire case should be dismissed. Mot. to Dismiss 11-12.

## STANDARD OF REVIEW

"An existing suit within the court's jurisdiction is a prerequisite of an intervention." *Hofheimer v. McIntee*, 179 F.2d 789, 792 (7th Cir. 1950). If such prerequisite is established, a movant seeking to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) must show: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Planned Parenthood of Wisc., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). The movant "has the burden of establishing all four elements; the lack of even one requires that the court deny the motion." *Id.*

A federal officer or agency seeking to intervene permissively must show that it "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(A), or, alternatively, that its claim or defense "is based on . . . a statute or executive order administered by the officer or agency," Fed. R. Civ. P. 24(b)(2)(A). The motion must also be timely. Fed. R. Civ. P. 24(b)(1). In making its "wholly discretionary" decision on permissive intervention, a court must further consider whether the intervention would "unduly delay or prejudice" the existing parties. *Planned Parenthood*, 942 F.3d at 803.

## ARGUMENT

### I.    THE UNITED STATES' MOTION FAILS FOR LACK OF JURISDICTION AND VENUE

The United States seeks to intervene in this case and, if its intervention is granted, file a motion for a preliminary injunction against Defendant Cliff within weeks. Yet this case must be dismissed for lack of personal jurisdiction and lack of venue. The United States' motion to intervene cannot remedy those shortcomings. It must be denied.

4

"Intervention presupposes the pendency of an action in a court of competent jurisdiction and cannot create jurisdiction if none existed before." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1917 (3d ed. 2008); *accord Hofheimer*, 179 F.2d at 792. Nor can it "cure[]" defects in venue. *Federal Practice and Procedure* § 1918.

As explained in Defendant Cliff's motion to dismiss, AmFree has failed to establish that this Court has personal jurisdiction over him or that venue is proper in this forum. The Court lacks jurisdiction because AmFree's preemption claim arises out of conduct that only applies in California, and, to a lesser extent, in certain Section 177 States. The relevant conduct in no way expressly aims at Illinois. Mot. to Dismiss 5-8. Allegations that Defendant Cliff took other actions—such as by emailing Engine Manufacturers Association ("EMA"), which is headquartered there—cannot fill the gap because they are irrelevant to AmFree's preemption claim and too attenuated to satisfy the "minimum contacts" test. *Id.* 5 n.1, 8-10. Traditional notions of fair play and substantial justice also support dismissal of Defendant Cliff. *Id.* 10-11. And because Defendant Cliff is a necessary party, the whole case must be dismissed in his absence. *Id.* 11-12. Additionally, venue is improper in this Court because no "substantial part of the events or emissions giving rise to" AmFree's preemption claim occurred here. *Id.* 12 (citing 28 U.S.C. § 1391(b)(2)).

Given these defects in both jurisdiction and venue, the Court should not grant the United States' motion. Instead, it should resolve (and grant) Defendant Cliff's motion to dismiss, then proceed to deny the United States' motion to intervene—either as moot, or on its merits. *See Hofheimer*, 179 F.2d at 792; *Dimaso v. United States*, No. 94 C 2597, 1995 WL 21609, at *7 (N.D. Il. Jan. 18, 1995) (granting motion to dismiss for lack of jurisdiction and dismissing motion to intervene as moot); *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict

5

courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Resolving the motion to dismiss without the United States' participation would not prejudice either the United States or the Court. The United States cannot cure the defects in jurisdiction and venue. *Federal Practice and Procedure* §§ 1917, 1918. And even if it could, its allegations in favor of jurisdiction and venue are virtually identical to AmFree's. *Compare* Compl., ¶¶ 15-26, ECF No. 1 (referencing, e.g., EMA's headquarters in Illinois; emails and calls between Defendant Cliff and/or his agents and Illinois residents; and comments submitted by EMA to the Illinois Pollution Control Board), *with* Mot., Ex. A, [Proposed] Compl. In Intervention ¶¶ 9-11, ECF No. 121-1 (same). The United States is also unlikely to meaningfully contribute to the arguments regarding notions of fair play and substantial justice. Like AmFree, the United States has no particular interest in having this case heard in Illinois, would suffer no prejudice from having to litigate in California instead, and is in fact already litigating two very similar matters there. *See supra* p. 3; *cf. Aland v. Kempthorne*, No. 07-cv-4358, 2007 WL 4365340, at *4 (N.D. Il. Dec. 11, 2007) ("The Federal Defendants reside in the vicinity of Washington, D.C., and to the extent that they will also be litigating [a related] case in Idaho, that district is more convenient.").

## II.   THE UNITED STATES IS NOT ENTITLED TO INTERVENTION AS OF RIGHT

The United States also fails to show that it has a protectable interest that could be impeded by the disposition of this case.

As an initial matter, whatever legally protected interest the United States might have, it does not lie in "enforcing national uniform standards" for vehicle emissions under the Clean Air Act. Mot. 1; *see also, e.g.*, Mot. 10, 11. The Act establishes no such framework and thus protects no such interest. From the beginning, Congress opted *not* to create a single national standard and

instead allowed California—via the waiver provision—"to continue and expand its pioneering efforts" at emissions control. *Motor & Equip. Mfrs. Ass'n*, 627 F.2d at 1111. "The effect . . . is that new 'motor vehicles must be either "federal cars" designed to meet EPA's standards *or* "California cars" designed to meet California's standards.'" *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 453 (D.C. Cir. 1998) (quoting *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1080) (D.C. Cir. 1996) (emphasis added). True, EPA may, under certain limited conditions, deny California a waiver that would allow enforcement of *a particular standard*. *See* 42 U.S.C. § 7543(b)(1). But that is not the same as possessing "sole authority" to establish new motor vehicle standards writ large. Mot. 14.

In any event, the United States cannot establish that this suit could impair its interest, however framed. The United States proposes to argue, on the merits, that the Omnibus, ACT, and ACF regulations and the Partnership are preempted. [Proposed] Compl. In Intervention ¶¶ 98-114. But it is fully able to litigate those issues in *California*—which predates the filing of AmFree's amended complaint here—and in *Daimler*. *See supra* p. 3. In fact, the United States' complaint in *Daimler* is almost identical to the complaint it proposes to file in this case. *Compare, e.g.*, [Proposed] Compl. In Intervention ¶¶ 98-114, *with* Compl. In Intervention ¶¶ 98-114, *Daimler*, No. 2:25-cv-02255-DC, ECF No. 56. "This availability of other forums" in which the United States may protect its proclaimed interest "justif[ies] denial of [its] motion to intervene." *Commodity Futures Trading Comm'n v. Heritage Cap. Advisory Servs., Ltd.*, 736 F.2d 384, 386-87 (7th Cir. 1984).[1]

Moreover, the United States will not be prejudiced by not participating in this suit. *See id.* (assessing prejudice before affirming denial of intervention). The case may not reach the merits. *See supra* 4-6. Even if it does, and this Court rejects AmFree's preemption challenge, the United States "remains free to initiate [its] own suit" in a proper forum. *Shea v. Angulo*, 19 F.3d 343,

---

[1] If this case were to proceed to the merits *and* the constitutionality of the congressional resolutions purporting to disapprove the waivers for Omnibus and ACT were to become a legal issue, Defendant Cliff acknowledges that the United States would at that point have a statutory right to intervene "for argument on the question of constitutionality." 28 U.S.C. § 2403(a).

347 (7th Cir. 1994); *see also* Mot. 14 (conceding the point). And despite referencing *stare decisis* as a potential basis for impairment, nowhere has the United States explained how this Court's judgment would pose either a precedential or preclusive threat to such a suit (or to its position in the pending cases in the Northern and Eastern Districts of California). *See Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021) (claim preclusion requires identity of parties); *Kanter v. Comm'r of Internal Rev*, 590 F.3d 410, 420 (7th Cir. 2009) (nonmutual issue preclusion unavailable against the United States); *accord State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 713-14 (9th Cir. 2005).

### III.   THE UNITED STATES SHOULD NOT BE PERMITTED TO INTERVENE

For similar reasons, the United States should be denied permissive intervention.

The United States argues its intervention is warranted because its claims are based on "a statute . . . administered by the . . . agency." Mot. 13 (quoting Rule 24(b)(2)(A)). Not so. EPA's claims are based on preemption under Section 209(a) of the Clean Air Act and the congressional resolutions purportedly invalidating the waivers of that preemption for Omnibus and ACT. None of those laws give EPA any role to play in their implementation.

The United States also argues it may intervene because its proposed complaint "shares with the main action a common claim and question of law." Mot. 14. Defendant Cliff does not contest this point. Nonetheless, the Court should exercise "its broad discretion in weighing the costs and benefits of permissive intervention"—and particularly the undue prejudice to Defendant Cliff—and deny it here. *Planned Parenthood*, 942 F.3d at 804. California, by and through CARB, sued the United States to challenge the lawfulness of the congressional resolutions more than two months prior to the United States' motion. *Supra* 3. More recently, several heavy-duty truck manufacturers—who are also Defendants in this case—sued Defendant Cliff and others based in part on preemption claims similar to those at issue here. *Id.* The United

States is a party to both actions, and it has raised the same claims in *Daimler* as it proposes to raise in this suit. *Supra* p. 7. Given that participation, there is minimal risk that denying the United States entry as a party here would create *additional* litigation, as the United States claims. Mot. 14. Indeed, the manufacturers have already used their suit against Defendant Cliff to delay the proceedings before this Court. *See* Joint Mot. to Stay Response Deadlines ¶ 2, ECF No. 117.

Conversely, the United States' insistence on joining this suit and moving for a preliminary injunction—despite serious questions as to proper jurisdiction and venue—would force Defendant Cliff and the Court to expend significant resources on a duplicative case and only heighten the possibility of inconsistent judgments. *Cf. Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (a case may be dismissed "for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court") (quotation omitted); Minute Order, *Daimler*, No. 2:25-cv-02255-DC (citing risk of inconsistent rulings between *California* and *Daimler* and requiring parties' positions on potential transfer to Northern District of California). In short, denying the United States intervention would promote judicial economy and avoid the risk of prejudice to Defendant Cliff.

## IV.  A BRIEFING SCHEDULE FOR THE UNITED STATES' PROPOSED MOTION FOR A PRELIMINARY INJUNCTION IS PREMATURE

The United States' intervention papers include a motion to set a briefing schedule on a potential preliminary injunction motion. Mot., Ex. B, ECF No. 121–2. But a briefing schedule on such a motion is not merited unless and until the Court grants the motion to intervene—which, as explained above, it should not do given that it lacks jurisdiction over Defendant Cliff and is not a proper venue for AmFree's claims. Then and only then would the United States' proposed briefing intervals translate to dates certain for this Court and Defendant Cliff (and other parties) to evaluate and address. Accordingly, the Court should postpone consideration of the United

States' motion to set a briefing schedule until it has resolved both the motion to dismiss and the motion to intervene.

The Court plainly has authority to proceed in this manner. *See Dietz*, 579 U.S. at 47; L.R. 78.3 ("The court may set a briefing schedule."). And doing so would not prejudice the United States. Delaying consideration of the appropriate briefing intervals on an unscheduled motion— in a case that may not go forward—does nothing to prevent the United States from obtaining those same intervals should its preliminary injunction motion come to pass. Moreover, the United States fails to identify any urgency justifying its purported need for the requested briefing deadlines, let alone for entering the schedule now. AmFree has not moved for preliminary relief. The United States, for its part, acknowledges that it could have—but did not—file its own suit seeking relief at least two months ago. *See* Mot. 3-5 (describing operative triggers for preemption claims as occurring in January and June 2025); *id.* 15 (asserting "the United States has already thoroughly investigated the facts and claims at issue"). It has similarly shown little urgency in other litigation involving similar issues. *E.g.*, Joint Stipulation & Order, *California*, No. 4:25-cv-04966-HSG (obtaining one-month extension of deadline to answer or otherwise respond to complaint). In any event, the day before this opposition was filed, the United States filed a notice joining in the manufacturers' motion for a preliminary injunction in *Daimler*, obviating the need for it to intervene and file such a motion here. *See Daimler*, No. 2:25-cv-02255-DC (Aug. 27, 2025), ECF No. 57; *supra* 7-8 (availability of other forums justifies denial of intervention).

## CONCLUSION

For the foregoing reasons, Defendant Cliff respectfully requests that the Court deny the United States' motion to intervene. Defendant Cliff also requests that the Court postpone setting a schedule on the United States' proposed motion for a preliminary injunction until it has resolved both the pending motion to dismiss and the motion to intervene.

Dated:  August 28, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

*/s/ Jonathan A. Wiener*
JONATHAN A. WIENER (*pro hac vice*)
BENJAMIN P. LEMPERT (*pro hac vice*)
Deputy Attorneys General
  455 Golden Gate Ave, Suite 11000
  San Francisco, CA 94102
  (415) 510-3549
  jonathan.wiener@doj.ca.gov
*Attorneys for Defendant Steven S. Cliff, in his*
*official capacity as Executive Officer of the*
*California Air Resources Board*

OK2024305825
44764726

11