**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

AMERICAN FREE ENTERPRISE
CHAMBER OF COMMERCE,

*Plaintiff*,

v.

ENGINE MANUFACTURERS
ASSOCIATION, D/B/A TRUCK & ENGINE
MANUFACTURERS ASSOCIATION, et al.,

*Defendants*.

Case No. 3:24-cv-50504
District Judge Iain D. Johnston
Magistrate Judge Michael F. Iasparro

**PLAINTIFF'S OPPOSITION TO DEFENDANT STEVEN S. CLIFF'S
MOTION TO DISMISS OR TRANSFER**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

    I.    Defendant Cliff Is Subject to Service of Process in Illinois .................................... 4

        A.   Cliff Purposively Directed his Activities at Illinois .......................................... 6

        B.   No Compelling Circumstances Make Jurisdiction Unreasonable ................... 13

    II.   This District Is a Proper Venue ............................................................................. 14

    III.  The Court Should Not Transfer ............................................................................ 17

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*,
    80 F. Supp. 3d 870 (N.D. Ill. 2015)................................................................16

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    6 P.3d 669 (Cal. 2000) ...................................................................................19

*Beveridge v. Mid-West Mgmt., Inc.*,
    78 F. Supp. 2d 739 (N.D. Ill. 1999) ...............................................................16

*Brook v. McCormley*,
    873 F.3d 549 (7th Cir. 2017)..........................................................................10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................5, 7, 13, 14

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) ...........................................................................8

*Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*,
    440 F.3d 870 (7th Cir. 2006) ...........................................................................6

*Citadel Grp. Ltd v. Wash. Reg'l Med. Ctr.*,
    536 F.3d 757 (7th Cir. 2008) ...........................................................................9

*Cleary v. Philip Morris, Inc.*,
    726 N.E.2d 770 (Ill. App. Ct. 2000)................................................................8

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986)................................................................ 17, 18

*Companhia Brasileira Carbureto de Calicio v. 9 Applied Indus. Materials Corp.*,
    640 F.3d 369 (D.C. Cir. 2011)..........................................................................8

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*,
    529 U.S. 193 (2000) ......................................................................................15

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).................................................................................4, 10

*Def. Distributed v. Grewal*,
    971 F.3d 485 (5th Cir. 2020) .......................................................... 1, 7, 11, 12, 20

*Elorac, Inc. v. Sanofi-Aventis Canada Inc.*,
No. 14-CV-1859, 2014 WL 7261279 (N.D. Ill. Dec. 19, 2014) .................................................. 15

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004) .................................................................................................................2

*Exxon Mobil Corp. v. Schneiderman*,
316 F. Supp. 3d 679 (S.D.N.Y. 2018) ....................................................................................12

*Fahy v. Minto Dev. Corp.*,
722 F. Supp. 3d 784 (N.D. Ill. 2024) .......................................................................... 17, 18, 20

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ............................................................................................... 6, 7, 9, 12

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) .....................................................................................................................4

*Hyatt Int'l Corp. v. Coco*,
302 F.3d 707 (7th Cir. 2002)...................................................................................... 5, 6, 9, 10

*Illinois v. Hemi Group LLC*,
622 F.3d 754 (7th Cir. 2010) ................................................................................................ 11

*Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*,
No. 13 C 04750, 2013 WL 5904527 (N.D. Ill. Nov. 4, 2013) ....................................................15

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
725 F.3d 718 (7th Cir. 2013) ...................................................................................................5

*Knaus v. Guidry*,
906 N.E.2d 644 (Ill. App. Ct. 2009) ........................................................................................8

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025) .............................................................................. 1, 5, 7, 12, 14

*Melea, Ltd. v. Jawer SA*,
511 F.3d 1060 (10th Cir. 2007).................................................................................................8

*Moore v. AT & T Latin Am. Corp.*,
177 F. Supp. 2d 785 (N.D. Ill. 2001) .....................................................................................15

*In re Nat'l Presto Indus., Inc.*,
347 F.3d 662 (7th Cir. 2003) ..................................................................................................17

*NBA Props., Inc. v. HANWJH*,
  46 F.4th 614 (7th Cir. 2022) ...................................................................................7

*Newsome v. Gallacher*,
  722 F.3d 1257 (10th Cir. 2013) ...............................................................................8

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ...................................................................................8

*RAR, Inc. v. Turner Diesel, Ltd.*,
  107 F.3d 1272 (7th Cir. 1997) ..................................................................................5

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
  22 F.4th 103 (2d Cir. 2021) ......................................................................................8

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966) ...............................................................................................14

*Sullivan v. Bicker*,
  360 F. Supp. 3d 778 (N.D. Ill. 2019) .......................................................................9

*Textor v. Bd. of Regents of N. Ill. Univ.*,
  711 F.2d 1387 (7th Cir. 1983)...................................................................................8

*Unspam Techs., Inc. v. Chernuk*,
  716 F.3d 322 (4th Cir. 2013).....................................................................................8

*Viktron Ltd. P'ship v. Program Data Inc.*,
  759 N.E.2d 186 (Ill. App. Ct. 2001) ........................................................................7

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013) ....................................................................................8

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...................................................................................... 7, 8, 13

*Zelinski v. Columbia 300, Inc.*,
  335 F.3d 633 (7th Cir. 2003)...........................................................................17, 20

**Statutes**

28 U.S.C. § 1391(b)(2) ......................................................................................................14

28 U.S.C. § 1404(a) ..........................................................................................................17

42 U.S.C. § 1983 .................................................................................................................4

42 U.S.C. § 7507 ................................................................................................................2

42 U.S.C. § 7521 ................................................................................................................2

42 U.S.C. § 7543(a).......................................................................................................2, 4

42 U.S.C. § 7543(b) ..........................................................................................................2

753 Ill. Comp. Stat. 5/2-209(c) ........................................................................................5

**Other Authorities**

*Biden vetoes bill to add 66 federal judges, leaves courts overworked, understaffed*, The
    Fresno Bee Editorial Board (Jan. 3, 2025), https://perma.cc/AH7S-Z452 ...........................18

Chairman Andrew N. Ferguson et al., *In the Matter of the Clean Truck Partnership
    Investigation*, FTC Matter No. 2510054 (Aug. 12, 2025), https://perma.cc/
    J2J7-W6D9 ....................................................................................................................1

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................................5

*Statement of the Federal Trade Commission Regarding The Clean Truck Partnership
    Investigation*, FTC File No. 251-0054 (Aug. 12, 2025), https://perma.cc/
    W6MK-R745....................................................................................................................4

**INTRODUCTION**

Just like everyone else, state officials intentionally reaching out beyond their borders may be subject to service of process outside of their state of domicile. *See, e.g.*, *Media Matters for Am. v. Paxton*, 138 F.4th 563, 576–79 (D.C. Cir. 2025); *Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). That is particularly true when a state official has "projected himself across state lines and asserted a pseudo-national executive authority." *Def. Distributed*, 971 F.3d at 493. That's what happened here.

Steven S. Cliff is the Executive Officer of the California Air Resources Board (CARB). No state official asserts more sweeping claims to pseudo-national executive authority than Cliff, and this case bears that out. This case arises from Cliff's negotiation of a stunning cartel, euphemistically known as the "Clean Truck Partnership," with the Nation's truck manufacturers and their Illinois-based trade group, the Engine Manufacturers Association (EMA). The Partnership commits truck manufacturers to do Cliff's bidding by curtailing sales of internal-combustion vehicles not just in California but in *every state* that copies or will copy California's rules, and to silence their opposition to California-style rules *in other states*, including rules being considered in Illinois, even though federal law prohibits these rules and even though Cliff lacks legal authority in other states. The Partnership thus "reache[s] far beyond California's borders" and affects "[b]usinesses across the country." Chairman Andrew N. Ferguson et al., *In the Matter of the Clean Truck Partnership Investigation*, FTC Matter No. 2510054 (Aug. 12, 2025), https://perma.cc/J2J7-W6D9.

Plaintiff American Free Enterprise Chamber Commerce (AmFree) claims that the Partnership is an unlawful conspiracy to evade the Clean Air Act's prohibitions and is "null and void in its entirety." Second Amended Complaint (SAC) ¶¶ 10, 182, Dkt. 104. Cliff argues that suing him in Illinois is so unfair that it would violate constitutional protections for due process. But Cliff's

contacts with Illinois are substantial. The Partnership was negotiated by EMA on behalf of its members in Illinois over months, and Cliff and his agents directed numerous letters, virtual and telephone meetings, and emails to EMA in Illinois when negotiating it. *See* Mandel Decl. ¶¶ 9–10. Cliff entered into the Partnership with EMA and Navistar, both Illinois entities, purposely directing the Partnership at entities in Illinois. The Partnership's scope extends far beyond California, intentionally covering, in Cliff's words, "all but a tiny handful of states," with the covered states including Illinois. Cliff's Motion to Dismiss (MTD) at 7, Dkt. 126. Cliff also doesn't dispute that the Partnership presently injures truck fleets headquartered in Illinois, including AmFree member Meiborg Brothers, Inc., a "family-owned Illinois corporation headquartered in Rockford." SAC ¶¶ 24, 128, 168; SAC Ex. B, Decl. of Zach Meiborg, Dkt. 104-2. Given his extraterritorial reach and specific and repeated Illinois contacts, Cliff shouldn't be surprised to find himself in Illinois. Specific jurisdiction is not just a one-way ticket to the Golden State.

## <u>BACKGROUND</u>

Under Title II of the Clean Air Act, EPA has broad authority to regulate emissions from new motor vehicles. *See* 42 U.S.C. § 7521 *et seq.*; SAC ¶¶ 41–43. States don't. SAC ¶ 44. Under Title II, "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). As the Supreme Court has explained, this law grants fleets a national "right to buy" new motor vehicles unfettered by state emission standards or regulations. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 255 (2004). Only California may seek a waiver of preemption from EPA. 42 U.S.C. § 7543(b); SAC ¶¶ 46–48. When EPA grants a waiver, however, any other state, including Illinois, may adopt California's motor vehicle standards without getting any further permission from EPA. 42 U.S.C. § 7507; SAC ¶¶ 46–49; MTD at 7.

In 2021, after California's Governor directed CARB to phase out internal-combustion vehicles, CARB promulgated unfeasible new truck emission standards and testing requirements known as the Omnibus rule, and other states followed. SAC ¶¶ 74–77, 88. Soon after, CARB promulgated a rule limiting the market share of internal-combustion trucks, a cartel scheme CARB calls "Advanced Clean Trucks." SAC ¶ 62. That scheme was also adopted by other states, and its effects "ripple throughout the U.S. market." SAC ¶ 65. Recognizing that these unfeasible laws threaten severe economic consequences, Congress and the President disapproved EPA's waivers for these state standards through bipartisan legislation, rendering the standards manifestly unlawful. SAC ¶¶ 11, 72, 90, 111–12. Cliff, however, is defying federal law by certifying new motor vehicles to these emission standards, not just in California, but in many other states too. SAC ¶¶ 115–26.

The ostensive basis for Cliff's defiance is the extraordinary "Partnership" at issue in this suit. As relevant here, the Partnership arose from Cliff's outreach to EMA in Illinois. In October 2022, Cliff sent a letter to EMA's President Jed Mandel in Illinois, where "EMA conducts its advocacy efforts" and Mandel performs his official duties. *See* Mandel Decl. ¶¶ 4–5; Ex. A (Cliff Letter to Illinois), https://perma.cc/3RQF-XXV2/. Cliff invited "discussions on the right mix of rules as the federal landscape shifts." Ex. A at 2. Soon, negotiations began in earnest—through EMA in Illinois. During this process, Cliff's agents "engaged in phone and video conferencing calls" directed to Illinois as part of the "substantive negotiation of what became the [Partnership]" with EMA "on multiple instances." Mandel Decl. ¶ 9. Cliff's agents sent Mandel numerous emails about the Partnership while Mandel was "located in Illinois." *Id.* Finally, between June 28

and July 5, EMA, EMA's members, and Cliff, signed the Partnership. Ex. B at 4–6, https://perma.cc/BH9Z-Y7MN. Mandel signed in Illinois. *See* Mandel Decl. ¶ 11.

The Partnership is a blatant "attempt to enforce … standard[s] relating to the control of emissions" forbidden by Title II of the Clean Air Act. 42 U.S.C. § 7543(a); SAC ¶¶ 163–182. It also "raises grave antitrust concerns." *Statement of the Federal Trade Commission Regarding The Clean Truck Partnership Investigation*, FTC File No. 251-0054, at 4 (Aug. 12, 2025), https://perma.cc/W6MK-R745. In it, truck manufacturers promise Cliff *and each other* to reduce the market share of internal-combustion trucks, sell more electric trucks, or comply with unfeasible state regulations in lockstep, not just in California, but in every other state that could adopt identical rules (as several have). SAC ¶¶ 105–110, 128, 142, 162. An entire Appendix to the Partnership, "Appendix D," restricts truck sales and advocacy *in other states* across the Nation, including in Illinois. SAC ¶ 106; SAC Ex. A, App'x D, Dkt. 104-1. EMA has performed the Partnership from and in Illinois, including by limiting its advocacy in Illinois regulatory proceedings proposing to adopt California's rules. *See* Mandel Decl. ¶¶ 12–14.

AmFree brought suit against Cliff, EMA, and truck manufacturers under 42 U.S.C. § 1983, SAC ¶ 13, for conspiring to deprive AmFree's members of immunities secured by the Clean Air Act, 42 U.S.C. § 7543(a). Cliff now argues that suing him in Illinois would violate due process, that venue is improper, and that the case should be transferred. *See* MTD, Dkt. 126.

## ARGUMENT

## I.    Defendant Cliff Is Subject to Service of Process in Illinois

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). That is not because of due process, but because of how the federal rules are written. *See Fuld v. Palestine Liberation Org.*, 606 U.S.

4

1, 10 (2025). Rule 4(k) provides that "filing a waiver of service" (as Cliff did here, Dkt. 26) "establishes personal jurisdiction over a defendant: … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). "This means, in essence, that federal personal jurisdiction is proper whenever the person would be amenable to suit under the laws of the state in which the federal court sits." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). "To establish specific personal jurisdiction over [Cliff], [the Court] must determine that (1) jurisdiction is authorized under [Illinois'] long-arm statute, and (2) that such an exercise of jurisdiction comports with the Due Process Clause." *Media Matters*, 138 F.4th at 574. Both requirements are satisfied here.

Illinois "authorizes personal jurisdiction to the constitutional limits." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); 735 Ill. Comp. Stat. 5/2-209(c). So here, "the statutory and constitutional inquiries merge." *Media Matters*, 138 F.4th at 576. "[T]here is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). The only question thus is whether Cliff may be sued in Illinois consistent with due process. To satisfy due process, Cliff must have "'purposefully directed' his activities at residents of the forum," and the claims must relate to those activities, establishing "minimum contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Once that is shown, Cliff may "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

At this stage, AmFree's allegations "need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp.*, 302 F.3d at 713. To the extent Cliff disputes "material facts," the

5

court "must hold an evidentiary hearing to resolve them," *id.*, or authorize discovery, *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006).

## A.    Cliff Purposively Directed his Activities at Illinois

Cliff is subject to suit in Illinois because he purposively directed activities related to the suit at Illinois residents. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Cliff "reached out beyond" California to Illinois to form the "Partnership" that is the subject of this suit. *Id.* Cliff initiated negotiations for the "Partnership" by sending a letter to EMA in Illinois. Mandel Decl. ¶ 10; Ex. A (Cliff Letter to Illinois). Cliff's agents negotiated with EMA in Illinois, reaching out to Illinois through multiple emails, phone calls, and virtual meetings. *See* Mandel Decl. ¶¶ 8–10. Cliff then entered in a "Partnership" with EMA and Navistar, both domiciled in Illinois. SAC ¶¶ 18–19. EMA executed the agreement in Illinois. Mandel Decl. ¶ 11. Moreover, the Partnership requires performance in "all but a tiny handful of states," including Illinois. MTD at 7. EMA has followed the Partnership's advocacy restrictions in an Illinois rulemaking proposing to adopt California's standards, thus making it more likely that the Partnership's sales restrictions will apply in Illinois, as Cliff intended. *See* Mandel Decl. ¶ 12–14. There is undoubtedly a connection "between [Illinois] and the underlying controversy"—the "Partnership." *Ford Motor Co.*, 592 U.S. at 359.

Furthermore, Cliff's contacts with Illinois don't need to be connected to the controversy in a but-for sense; they must merely "relate to" the controversy, which they undoubtedly do. *Id.* at 362. "[S]ome relationships will support jurisdiction without a causal showing." *Id.* Ford, for example, is subject to suit in Montana on a design-defect claim even though the defective motor vehicle was not first sold in Montana, assembled in Montana, or designed in Montana, because Ford "had systematically served a market in Montana … for the very vehicles that the plaintiffs

allege malfunctioned and injured them in those States." *Id.* at 365; *see also NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 626 n.18 (7th Cir. 2022) (noting the Supreme Court has rejected "a direct causal inquiry" to establish a connection). The relatedness inquiry is broad because the point of the minimum-contacts test is narrow: it merely seeks to protect a person from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp.*, 471 U.S. at 475 (quotation marks omitted). There is nothing "random, fortuitous, or attenuated" about Cliff's purposeful outreach to Illinois and Illinois residents. *Id.*

"[P]hysical entry into the State—either by the defendant in person or through an *agent*, goods, *mail*, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphases added); *see Media Matters*, 138 F.4th at 578 (sending a process server); *Def. Distributed*, 971 F.3d at 493 (sending a cease-and-desist letter). So is an agreement that "has created 'continuing obligations' between [the plaintiff] and residents of the forum." *Burger King Corp.*, 471 U.S. at 476. Both are present here. *See* Mandel Decl. ¶ 9 (Cliff sent letter to Illinois to initiate negotiations); Ex. A (Cliff Letter to Illinois); SAC Ex. A, App'x D (continuing obligations by Illinois residents). When a resident of State A reaches out to residents of State B by mail or other means, and then enters into a "Partnership" with residents of State B, there is nothing "random, fortuitous, or attenuated" about that person's contacts with State B, and the courts of State B may ordinarily exercise jurisdiction over claims relating to the Partnership. *Burger King Corp.*, 471 U.S. at 475 (quotation marks omitted). As *Burger King Corp.* shows, the principal place of performance is not the exclusive venue. *See, e.g.*, *Viktron Ltd. P'ship v. Program Data Inc.*, 759 N.E.2d 186, 196–98 (Ill. App. Ct. 2001).

Conspiracy-jurisdiction case law reinforces this conclusion. In conspiracy cases such as this one, the "minimum contacts" test is "met" when there is a "substantial act in furtherance of the conspiracy performed in the forum state." *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983); *Cleary v. Philip Morris, Inc.*, 726 N.E.2d 770, 773–74 (Ill. App. Ct. 2000); *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 122–25 (2d Cir. 2021). This theory, to be sure, should not be taken too far, as co-conspirators are not necessarily agents for one another. The contacts must be "created by the 'defendant *himself*,'" *Walden*, 571 U.S. at 284, and a "conspiracy theory could not get off the ground if a defendant were altogether blindsided by its co-conspirator's contacts with the forum." *Schwab*, 22 F.4th at 125. But when a defendant intentionally conspires with a forum resident, such as EMA and Navistar here, that ordinarily gives a defendant fair notice. *See Knaus v. Guidry*, 906 N.E.2d 644, 662 (Ill. App. Ct. 2009) ("The Court has repeatedly found the exercise of jurisdiction over an out-of-state defendant proper when his conduct is directed toward the resident of the forum."); *see also Schwab*, 22 F.4th at 122–25 (British banks had minimum contacts because they conspired with U.S. residents).[1] By entering into a nationwide "Partnership" with entities domiciled in Illinois, Cliff "made the deliberate decision to contract with an [Illinois entity] in furtherance of" his scheme to undermine federal law. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 785 (7th Cir. 2003).

Cliff primarily argues that there is not a sufficient causal connection between Cliff's Illinois contacts and this lawsuit because AmFree's legal injury most directly arises from sales provisions

---

[1] Numerous other circuits recognize conspiracy-based jurisdiction. *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742–44 (9th Cir. 2013); *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007); *Companhia Brasileira Carbureto de Calicio v. 9 Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) (Kavanaugh, J.).

not (yet) operative in Illinois, rather than from the negotiations, themselves. *See, e.g.*, MTD at 7–9 ("AmFree's claim does not *arise from* Defendant Cliff's past conduct in *negotiating* the allegedly preempted provisions of the Partnership" or provisions of the Partnership restricting EMA's advocacy in Illinois (emphasis added)). But Supreme Court precedent forecloses that argument, since it's the same one the Court rejected in *Ford Motor Co.*: "In [Cliff's] view, the needed link must be causal in nature: Jurisdiction attaches 'only if the defendant's forum conduct *gave rise* to the plaintiff's claims.'" 592 U.S. at 361; MTD at 9. As the Supreme Court told Ford, Cliff's "causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Ford Motor Co.*, 592 U.S. at 361. Rather, when a claim relates (as here) to a contract, the Seventh Circuit has held that "the parties' entire course of conduct with respect" to the contract is relevant to the connection inquiry, including negotiating efforts. *Hyatt Int'l Corp.*, 302 F.3d at 717; *see also Citadel Grp. Ltd v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) ("we consider the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining … minimum contacts" (quoting *Burger King Corp.*, 471 U.S. at 479)); *Sullivan v. Bicker*, 360 F. Supp. 3d 778, 785–86 (N.D. Ill. 2019) (personal jurisdiction where "contract was negotiated and signed in Illinois,… parties to the contract were domiciled in the state at the time, [and] it is reasonable to assume that the parties contemplated that performance of the agreement would occur in Illinois as well").

And, in any event, AmFree's claims *do* ultimately arise from Cliff's negotiations with EMA: without Cliff's "initial efforts" reaching into Illinois, there would be no Partnership. *Hyatt*

9

*Int'l Corp.*, 302 F.3d at 717. Cliff's conduct in forming a single Partnership "cannot now be dissected into two purportedly unrelated events," *id.*—the Partnership's negotiations and the Partnership's performance. Nor can Cliff splinter the single Partnership into separate parts dealing with sales and those dealing with advocacy. AmFree, after all, doesn't challenge only parts of the Partnership: AmFree claims that the Partnership—all of it—is "null and void in its entirety." SAC ¶¶ 10, 182. The Supreme Court and the Seventh Circuit have rejected a slice-and-dice approach to relatedness, and this Court should too.[2]

Cliff's other argument is even less persuasive. Cliff claims that "*the only* conduct relevant to specific jurisdiction is" the "hypothetical enforcement" of the specific sales provisions of the Partnership, and he asserts that AmFree "cannot establish[] that any of that conduct will occur in or otherwise target Illinois." MTD at 6 (emphasis added). But Cliff's attempt to restrict "relatedness" to enforcement of particular provisions is inconsistent with *Ford Motor Co.* His argument also doesn't make sense. Of course, "hypothetical enforcement" could happen in Illinois. EMA and Navistar are at home in Illinois, so Cliff or truck manufacturers could bring an action for breach in Illinois to enforce the sales or other restrictions against EMA and Navistar. *See Daimler AG*, 571 U.S. at 137. An anti-suit injunction by this court, as permitted by *Ex Parte Young*, would prevent that enforcement. And regardless, even a breach action in California seeking specific performance

---

[2] Cliff's legal authority from the Seventh Circuit relating to contracts, *Brook v. McCormley*, 873 F.3d 549 (7th Cir. 2017), is worlds apart from this case. *Brook* involved a dispute between an Arizona trust and Arizona lawyers about representations in Arizona about an Arizona lease, where "activities were strictly conducted in Arizona." *Id.* at 551. The President of the trust resided in Illinois and substituted himself as a plaintiff, but the "substituted plaintiff" was "the only link Defendants ha[d] with the forum." *Id.* at 553. Here, AmFree is most definitely not Cliff's only link to the forum.

of the Partnership's commitments would directly target Illinois residents, since EMA and Navistar are headquartered in Illinois and make decisions there.

Cliff claims that "the mere existence of the option to adopt California's standards" in other states cannot "suffice[] for jurisdiction in Illinois" because the Partnership applies to "all but a tiny handful of States." MTD at 7. Of course, if Cliff is concerned about getting sued outside of California, there's a simple solution: Cliff can stop "project[ing] himself across state lines and assert[ing] a pseudo-national executive authority." *Def. Distributed*, 971 F.3d at 493. Cliff "knew how to protect [himself] from being haled into court in any particular state"—he could have limited the Partnership to California's borders. *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010).

But regardless, AmFree's argument for personal jurisdiction doesn't turn only on the "mere" fact of the Partnership's breathtaking nationwide scope (although that matters). Rather, AmFree's argument turns on the multiplicity of connections to Illinois: (1) Cliff and his agents reached out to EMA in Illinois on multiple instances through letters, emails, and virtual meetings when negotiating the Partnership; (2) EMA (representing virtually all truck manufacturers) signed the Partnership in Illinois; (3) two other Partnership signatories are headquartered in Illinois; (4) the Partnership targets every state and governs conduct in Illinois; (5) the Partnership has in fact been performed in Illinois, including during an Illinois rulemaking; (6) the Partnership is injuring trucking fleets in Illinois, including members of AmFree; and (7) the Partnership may be enforced by Cliff in Illinois. Nothing about AmFree's argument would subject Cliff to suit in "Mississippi" or "Arkansas," where Cliff had almost no contacts. MTD at 7.

Cliff, not AmFree, draws untenable lines. Like Ford, Cliff at times appears to be arguing for a bright-line place-of-the-sale rule for personal jurisdiction. MTD at 6. That would be strange

given the reach of the Partnership: as Cliff acknowledges, the Partnership's sales requirements currently apply to sales in eight other states. *Id.* at 3. But "[f]or each of those States,… there is a less significant 'relationship among the defendant, the forum, and the litigation'" than in Illinois. *Ford Motor Co.*, 592 U.S. at 369. Why would Cliff be *less surprised* by a suit in, say, New Mexico (which has adopted the Omnibus rule) than in Illinois, where the Partnership was partially hatched and EMA is domiciled? Cliff's argument, at the end of the day, appears to be that, unlike any other defendants, due process means that the Golden State is the exclusive venue for suits against him, even when he reaches far beyond California's borders. But the Due Process Clause doesn't codify home-court advantage for state officials. State officials have been sued in other states over far less systematic contacts than Cliff's contacts with Illinois, consistent with due process. *See Media Matters*, 138 F.4th at 578 (process server sufficient); *Def. Distributed*, 971 F.3d at 493 (cease-and-desist letter sufficient); *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 697–98 (S.D.N.Y. 2018) (single in-state meeting).

Last, Cliff also disputes the allegations in AmFree's complaint, but without supporting evidence. Cliff asserts that "AmFree is … simply wrong that these negotiations took place in Illinois." MTD at 9. But Cliff's declarant, Heroy-Rogalski, an agent of Cliff, mentions only an "in-person meeting" in California on March 8, 2023, in the middle of Partnership negotiations, months before the Partnership was signed and months after negotiations had started. MTD Ex. A, Decl. of Kimberly Ayn Heroy-Rogalski ¶¶ 3–6, Dkt. 126-1. Heroy-Rogalski claims that she would "be aware had other meetings *of this nature* taken place," *id.* ¶ 6 (emphasis added), but "this nature" seems to be doing a lot of work. She fails to mention any of the many virtual and telephone conferences held by Cliff's agents while EMA President Mandel was in Illinois, Cliff's letter, and the

numerous emails Cliff's agents sent to EMA in Illinois, even though Heroy-Rogalski engaged in this correspondence. Mandel Decl. ¶ 8–11.

Regardless, "[j]urisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King Corp.*, 471 U.S. at 476. "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* The Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Id.* More-over, physical entry may happen through means other than in-person travel, including, as here, by "mail." *Walden*, 571 U.S. at 285. To the extent Cliff disputes AmFree's allegations about Cliff's contacts, that raises a dispute of material fact that calls for discovery or an evidentiary hearing, not dismissal of the complaint. At a minimum, therefore, this Court should hold that AmFree has met its *prima facie* burden.

**B.    No Compelling Circumstances Make Jurisdiction Unreasonable**

Because AmFree has shown purposeful direction, Cliff "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," for ex-ample, grave inconvenience from defending small claims in far flung jurisdictions. *Burger King Corp.*, 471 U.S. at 477. Other considerations, however, may also "serve to establish the reasona-bleness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be re-quired." *Id.* And, in any event, "[m]ost such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional." *Id.*

Here, if anything, "other considerations" militate in favor of finding jurisdiction over Cliff. The due process clause is not focused on abstract "federalism concerns," but on protecting an

individual's "liberty interest" from state extraterritorial overreach. *Id.* at 472 n.13. As an officer sued in an individual capacity solely for prospective declaratory and injunctive relief, Cliff's liberty interest at stake is minimal, if it is even cognizable. And California, as a sovereign, has no interests at all because the Due Process Clause offers it no protection whatsoever, as California is not a "person" under the clause. *South Carolina v. Katzenbach*, 383 U.S. 301, 323–24 (1966). If Cliff has due process rights, it is because, in a suit for prospective injunctive relief, Cliff is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Media Matters*, 138 F.4th at 574 (quoting *Ex parte Young*, 209 U.S. 123, 160 (1908)). And as explained, that individual conduct establishes that Cliff is amenable to suit in Illinois. *See supra* Part I.A. Moreover, Cliff's conduct, itself, offends, not advances, sound principles of federalism. Although Cliff claims he was seeking "to reduce pollution from vehicles sold *in California*," MTD at 10 (emphasis added), the means he used to do so—the Partnership—applies to *every* state, so Cliff was seeking to exert his control far beyond California. In light of Cliff's out-of-state conduct, finding personal jurisdiction would be "reasonable[]" on an even "lesser showing of minimum contacts." *Burger King Corp.*, 471 U.S. at 477.[3]

## II.     This District Is a Proper Venue

AmFree has also established that venue in the Northern District of Illinois is proper under 28 U.S.C. § 1391(b)(2), which provides for venue in a district where a "substantial part of the events or omissions giving rise to the claim occurred." *See* SAC ¶ 15. "For venue to be proper under § 1391(b)(2), a majority of the events giving rise to the claim need not occur in the venue,

---

[3] Cliff also claims AmFree would suffer no prejudice from litigating in California. MTD at 11. That is untrue, as discussed below.

only a 'substantial' part. If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Elorac, Inc. v. Sanofi-Aventis Canada Inc.*, No. 14-CV-1859, 2014 WL 7261279, at *13 (N.D. Ill. Dec. 19, 2014) (citations omitted).

The negotiations and correspondence that Cliff and his agents engaged in with Mandel while Mandel was in EMA's offices in Chicago, in the Northern District of Illinois are a substantial part of the events giving rise to AmFree's claim that the resulting Partnership violates federal law. *See* SAC ¶¶ 175–82. Where parties to a contract negotiate from different states, venue for claims arising out of the contract lies in both. *Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*, No. 13 C 04750, 2013 WL 5904527, at *4 (N.D. Ill. Nov. 4, 2013) (finding venue in Illinois although, "[i]t is true that Moilanen negotiated the contract from his office in Michigan," because "the same can be said of Tierney in Illinois"); *see also Moore v. AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 787–88 (N.D. Ill. 2001) (venue is proper where contract was negotiated and signed "notwithstanding the possibility that defendants' activities may have been more substantial somewhere else").

EMA's performance of the Partnership in this District also independently makes this a proper venue. Courts consider "contractual performance" a "significant event[] providing a basis for venue in the district." *Elorac, Inc.*, 2014 WL 7261279, at *13. Indeed, the Supreme Court has held that venue for a claim arising out of a contract was "clearly proper under the general venue statute" in the district "within which the contract was performed." *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 198 (2000). Here, EMA performed the Partnership in Illinois by submitting comments to the Illinois Pollution Control Board "consistent with the relevant terms of the" Partnership. SAC ¶¶ 21–22; Mandel Decl. ¶¶ 12–13. Furthermore, truck manufacturers carry out the Partnership in this District by coordinating through EMA in Illinois. SAC ¶¶ 23–24.

15

These events are no less "substantial" merely because AmFree's claim relates to the validity of the Partnership rather than breach of a particular provision. AmFree's claim arises out of the contract all the same. Thus, "Illinois … is a proper venue." *Beveridge v. Mid-West Mgmt., Inc.*, 78 F. Supp. 2d 739, 746 (N.D. Ill. 1999).

Cliff's argument that EMA's and Ford's "comments have no bearing whatsoever on AmFree's preemption claim," MTD at 12–13, is also wrong. AmFree claims that the *entire* Partnership is preempted by federal law, SAC ¶¶ 175–82, and the comments were prepared "consistent with the relevant terms of" that unlawful Partnership, *id.* ¶¶ 21–22; Mandel Decl. ¶¶ 12–14.

Cliff's remaining venue arguments fail because they are based on the wrong standard. MTD at 12–13 (arguing "[v]enue requires 'an event in the forum district' that is 'part of the historical predicate for the instant suit'" (quoting *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015))). As Cliff's own cited case explains, showing an event is "part of the historical predicate" for the lawsuit is an *alternative* option for establishing venue, not a *necessary* one. *Id.* The passage in full (which Cliff quotes only in part) explains:

> When the underlying events consist of communications made by two parties located in separate districts, the requirements of § 1391(b)(2) may be satisfied by a communication transmitted to or from the district in which the cause of actions [sic] was filed, given a sufficient relationship between the communication and the cause of action. *It is also sufficient* for the plaintiff to establish the "substantial" nature of an event in the forum district if it is shown to be a part of the historical predicate for the instant suit.

*Allstate*, 80 F. Supp. 3d at 877 (cleaned up) (emphasis added). *Allstate*'s venue standard is clearly satisfied here, where Cliff and his agents "transmitted to" this District multiple communications related to the formation of the Partnership, which is the basis for AmFree's claim. *Id.*

In any event, Cliff's and his agents' Illinois-directed communications and the Illinois-based

performance of the Partnership *are* part of the "historical predicate" of this suit. The Partnership, along with its formation and performance, are the basis for AmFree's claim that the Partnership is a prohibited attempt to enforce preempted emission standards. And the Partnership arose as a direct result of the communications Cliff and his agents directed at EMA in the Northern District of Illinois. Venue in this District is proper.

## III.    The Court Should Not Transfer

Cliff does not meet his burden of showing that this case should be transferred to his preferred venue, the Eastern District of California. *See* MTD at 13–15. Although a district court may transfer a civil case "to any other district or division where it might have been brought," 28 U.S.C. § 1404(a), there is a "strong presumption in favor of the plaintiff's choice of forum." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003). To overcome that presumption, "the moving party must demonstrate that … the transferee district is more convenient for both the parties and witnesses" and that "transfer would serve the interest of justice." *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 792 (N.D. Ill. 2024) (citation omitted). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (citation omitted). "The movant (here, [Cliff]) has the burden of establishing … that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).

The Eastern District of California is not "clearly more convenient," *id.*, than this Court for parties and witnesses. Cliff argues only that California is more convenient for him. MTD at 14. But most other signatories of the Partnership are located in Illinois or in a state that borders Illinois by

17

land or lake.[4] AmFree also has members who are located in Illinois and harmed there. *See* SAC ¶¶ 127–28; SAC Ex. B, Decl. of Zach Meiborg. AmFree itself is headquartered in Iowa, immediately adjacent to Illinois, as are other AmFree members harmed by the Partnership. SAC ¶ 129; SAC Ex. E, Decl. of Gentry Colins ¶ 1; SAC Ex. C, Decl. of Michael Riggan ¶ 1. As a result, it is likely that more individuals would need to travel longer distances (emitting more of the air pollution Cliff claims he seeks to avoid) were this Court to transfer. Cliff has not met his burden, *Coffey*, 796 F.2d at 220, and for this reason alone, the Court should deny the motion to transfer.[5]

The interest of justice factors also do not support transfer. Those factors "include [1] docket congestion, [2] likely speed to trial in the transferor and potential transferee forums, [3] each court's relative familiarity with the relevant law, [4] the respective desirability of resolving controversies in each locale, and [5] the relationship of each community to the controversy." *Fahy*, 722 F. Supp. 3d at 795 (quotation marks omitted). Docket congestion in the Eastern District of California is extreme. That court issued a notice in a recent suit between truck manufacturers and Cliff warning that "[d]elay, congestion, uncertainty, and expense … have reached a crisis level in the Eastern District of California." Magistrate Judge Consent Form, *Daimler Truck N. Am. LLC v. Cliff*, No. 2:25-cv-02255 (E.D. Cal. Aug. 11, 2025), ECF 9-1, https://perma.cc/V3US-7JKY.[6] The statistics bear this out. As of March 31, 2025, the judge assigned to that case (and who would

---

[4] EMA (Illinois), Navistar (Illinois), Cummins (Indiana), Ford (Michigan), GM (Michigan), FCA (Michigan), Isuzu (Michigan). SAC ¶¶ 28–34, 36–37.

[5] Cliff's argument that Plaintiff "cannot raise serious convenience concerns about the Eastern District of California," MTD at 14, impermissibly attempts to shift his burden to AmFree.

[6] The letter despairs of any "realistic hope" that Congress will alleviate the congestion by creating "new District Judgeships in the foreseeable future," leaving "civil litigants" to "vie for less and less District Judge time and attention." *See also Biden vetoes bill to add 66 federal judges, leaves courts overworked, understaffed*, The Fresno Bee Editorial Board ( Jan. 3, 2025), https://perma.cc/AH7S-Z452.

presumably receive this case) had 72 motions that have been pending for at least six months, compared to only one for the judge currently assigned this case. CJRA Table 8, at 1,715–18, 1,314 (Mar. 31, 2025), https://perma.cc/2KGL-6ARF. Cliff cites more general statistics to argue that, on average, this District resolves cases only slightly faster than the Eastern District of California does. MTD at 15 n.5 (citing U.S. District Courts–National Judicial Caseload Profile, https://perma.cc/AK72-W72R). These statistics, however, are too imprecise to be useful. The data on this District lumps this Division with the Eastern Division and fails to separate complex cases like this one from frivolous claims. The above-cited data on the two judges who might resolve this case is more granular, and it shows that transfer would create significant delay and put additional strain on an overwhelmed district court. Indeed, the Eastern District of California has already signaled it may transfer the manufacturers' suit to the Northern District of California. Minute Order, *Daimler*, No. 2:25-cv-02255 (Aug. 20, 2025), ECF 55. So, the first and second factors favor keeping this case in Illinois.

Cliff's claim that the third factor supports transfer because this case might require application of California contract law regarding severability, MTD at 15, fails for four reasons. First, Cliff's argument that California contract law would apply begs choice-of-law questions, *id.*, which the Court should not resolve here. Second, even if California law would apply, the Partnership is inseverable because its central purpose—to enforce preempted vehicle emissions standards—is unlawful. Under California law, "[w]here a contract has but a single object, and such object is unlawful … the entire contract is void." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 695 (Cal. 2000) (quoting Cal. Civ. Code § 1598). Third, still assuming California law controls, Cliff's contention that a federal judge in California "would be more familiar with the application

of [California] state laws is not a significant consideration, because 'federal courts have experience applying the law of foreign states.'" *Fahy*, 722 F. Supp. 3d at 796. Fourth, the sole claim in this case is one of federal preemption, "and where a case is based on federal law, a judge in a particular district has no inherent advantage over a judge in other districts." *Id.* (cleaned up).

Nor do the fourth or fifth factors support transfer. This suit is not about "air pollution from vehicles sold in California," MTD at 14, but about an unlawful Partnership that applies nationwide and is being performed in Illinois, causing harm there. *See* SAC ¶¶ 127–28; SAC Ex. B, Decl. of Zach Meiborg. And AmFree seeks relief against a "California official," MTD at 15, only because that official "projected himself across state lines," *Def. Distributed*, 971 F.3d at 493. Where, as here, "material events took place in both" forums and "plaintiffs suffered harm in Illinois" factors four and five are "neutral or close to it." *Fahy*, 722 F. Supp. 3d at 796.

Finally, transferring would not "serve the interests of justice by avoiding disputes over personal jurisdiction and venue" any more than Cliff dropping his objections would. MTD at 15. And in any event, those issues are not difficult to resolve for the reasons explained above, and the Court has already familiarized itself with the parties' arguments on these questions. Transfer would require duplication of judicial effort by the Eastern District of California and increase the backlog of a court already facing "crisis level" congestion. *See* Magistrate Judge Consent Form, *Daimler*, *supra*. In sum, Cliff has not overcome the "strong presumption in favor of the plaintiff's choice of forum." *Zelinski*, 335 F.3d at 643.

## CONCLUSION

For these reasons, the Court should deny the motion to dismiss or transfer.

Dated: September 11, 2025

/s/ James R. Conde
MICHAEL BUSCHBACHER
JAMES R. CONDE
LAURA B. RUPPALT*
NICHOLAS CORDOVA
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
  Suite 900
Washington, DC 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com
ncordova@boydengray.com

*Pro Hac Vice pending

Counsel for Plaintiff

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 11, 2025, I served a copy of the foregoing document via

CM/ECF to all parties.

Dated: September 11, 2025

/s/ James R. Conde
MICHAEL BUSCHBACHER
JAMES R. CONDE
LAURA B. RUPPALT*
NICHOLAS CORDOVA
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
   Suite 900
Washington, DC 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com
ncordova@boydengray.com

*_Pro Hac Vice_ pending

_Counsel for Plaintiff_