IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>ENGINE MANUFACTURERS ASSOCIATION et al.<br><br>　　　　Defendants. | Case No. 24-cv-50504<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Like many American dramas this one was created in California. But it has not remained there. For the following reasons, it must return.

Plaintiff, the American Free Enterprise Chamber of Commerce ("AmFree"), sued Steven Cliff in his official capacity as the Executive Director of the California Air Resources Board ("CARB") and major manufacturers of vehicles and engines. AmFree alleges that Defendants entered into an agreement designed to enforce Californian regulations preempted by the Clean Air Act. AmFree dismissed the manufacturers from this action after reaching a confidential resolution with them but continues with the action against Cliff. Dkt. 142. Cliff has moved to dismiss the action for lack of personal jurisdiction and lack of venue or, in the alternative, to transfer the case to a more appropriate venue. Dkt. 136 at 12. The United States has moved to intervene. Dkt. 121. For the following reasons, the Court concludes that although it has personal jurisdiction and venue would be proper in this Court,

in the exercise of the Court's discretion, the convenience of parties and the interests of justice counsel transfer to the Eastern District of California.

**Background**[1]

The Clean Air Act created a national framework for regulating air pollution. 42 U.S.C. § 7401. Section 209(a) of the Act preempts state regulation of motor vehicle emissions. 42 U.S.C. § 7543(a). The Act requires the EPA to grant a waiver to California if California's regulations are more protective of public health than the national standards. 42 U.S.C. § 7543(b)(1). The EPA shall not grant a waiver if: "(A) the determination of the State is arbitrary and capricious, (B) such State does not need such State standards to meet compelling and extraordinary conditions, or (C) such State standards and accompanying enforcement procedures are not consistent with section 7521(a) of this title." *Id*. These waivers have recently been the subject of substantial litigation and controversy.[2]

AmFree contends that California promulgated three rules regulating vehicle emissions that are not presently subject to valid waivers. Dkt. 142 ¶¶ 169–172. To enforce these rules anyway, CARB and the manufacturers entered into the 2023 Clean Truck Partnership Agreement ("Agreement"). In return for certain relaxed regulatory requirements, the manufacturers agreed to comply with other regulations "irrespective of the outcome of any litigation challenging the waivers or

---

[1] The Court accepts the following allegations as true. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010).
[2] Thomas M. Donnelly & Jetta Cook, *Active Battle Over the California Clean Air Act Waiver Continues*, Jones Day (Aug. 15, 2025), https://www.jonesday.com/en/insights/2025/08/active-battle-over-the-california-clean-air-act-waiver-continues.

authorizations for those regulations or of CARB's overall authority to implement those regulations." Dkt. 142 ¶¶ 101–102. The signatories also agreed "to limit their advocacy" in other states by not supporting or opposing the adoption of "CARB's Omnibus regulations in any prospective Section 177 State." *Id.* Ex. A. App'x D. A prospective Section 177 State is a state that is considering adopting California's regulations. *Id.* ¶¶ 107, 109, Ex. A ¶ 3. AmFree alleges that the Agreement's signatories carried out the provision by making comments that complied with the Agreement to the Illinois Pollution Control Board when it considered adopting California's regulations. *Id.* ¶¶ 21–22.

According to AmFree, the Agreement violates the Clean Air Act by requiring vehicle manufacturers to comply with CARB's regulations irrespective of CARB's authority to impose them. *Id.* ¶ 102. This purportedly violates the Clean Air Act because states can't enforce their own standards absent an EPA waiver. 42 U.S.C. § 7543(a). AmFree sued to put a stop to this alleged ongoing violation of the Clean Air Act, and Cliff now seeks to dismiss the case for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the Eastern District of California.

**Analysis**

**Standing**

A court must independently ensure that it has jurisdiction to hear all aspects of an action. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Although not raised by either party, the Court briefly discusses AmFree's standing

to assure itself that it may continue to hear the action. An association can sue in its own capacity or on behalf of its members. AmFree has sued on behalf of its members and asserts it has associational standing.

An organization has associational standing if "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *United Food & Commer. Workers Union, Local 751 v. Brown Grp., Inc.,* 517 U.S. 544, 552 (1996) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). For individual members to have standing, they must have "(1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

In this case, AmFree's members have standing. AmFree has provided detailed allegations explaining how continued enforcement of the Agreement would harm its members, how Cliff caused that harm, and how a favorable ruling would redress the harm. Likewise, AmFree has pled that the action is relevant to its purpose because "AmFree was created to help defeat anti-competitive restraints such as the Agreement that impede the ordinary working of the free market." Dkt. 142 ¶ 133. There is no reason for the Court to conclude that the claim or the requested relief requires member participation.

4

Having assured itself of AmFree's standing to bring this action, the Court proceeds to address the issues presented in Cliff's motion.

**Personal Jurisdiction**

The plaintiff has the burden of establishing personal jurisdiction once a defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(2). *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020). The court will "take the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *uBID, Inc.*, 623 F.3d at 423–24. The court may consider affidavits but "[i]n evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Curry*, 949 F.3d. at 393 (internal quotation marks and citations omitted). The Court will accept both parties' affidavits as true, but "where they conflict, the plaintiff is entitled to resolution in its favor." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). Because the Court is proceeding without an evidentiary hearing, AmFree need only make a prima facie case for personal jurisdiction. *Curry*, 949 F.3d at 392–93.

A court can exercise either general or specific personal jurisdiction. General jurisdiction is not at issue in this case because Cliff resides and works in California and no party suggests general jurisdiction applies. As to specific jurisdiction, "in a case involving federal question jurisdiction, 'a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant.'" *Id.* at 393 (quoting *Mobile*

*Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)). The Clean Air Act does not have its own provision for personal jurisdiction, so the Court must look to the law of the forum for the governing rule. Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 124, 125 (2014). Illinois' long-arm statute provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, (1985) (quoting *Int' l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). A defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int' l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

A defendant must purposefully direct activities at the forum state, and the litigation must arise from those activities. *Burger King Corp.* 471 U.S. at 472; *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 576 (7th Cir. 2020). Purposeful availment requires the defendant to have certain minimum contacts with the forum state. *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024). "The defendant's contacts must be with the forum state, not just with

6

individuals within the state." *NBA Props., Inc.* 46 F.4th at 621 (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Different theories for satisfying minimum contacts apply in different kinds of cases. In contract cases, the existence of a contract is not enough to vest a court with sufficient minimum contacts. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003). Instead, the court must consider "prior negotiations, contemplated future consequences, the terms of the contract and the parties' course of actual dealing with each other." *Id.* (citing *Burger King*, 471 U.S. at 479). Reaching out into a state to initiate the negotiations or continue them is a relevant contact. *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 879 (7th Cir. 2019); *Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985).

AmFree alleges that Cliff's minimum contacts include initiating the negotiations by sending a letter into Illinois, frequent phone and video calls in Illinois with CARB staff, and requiring performance of the Agreement in Illinois by limiting the ability of its signatories to oppose the adoption of California's regulations. Dkt. 138 Ex. 2. Cliff contends that his letter merely continued ongoing negotiations. Dkt. 144 at 5. Jed Mandel's affidavit doesn't support the assertion that Cliff's letter initiated the negotiations, so the Court needn't accept it as true. It remains a pertinent contact indicative of the parties' course of dealing, however.

These contacts sufficiently satisfy the minimum contact standard. Neither a contract alone nor mere communications and negotiations are enough to establish

7

jurisdiction, but AmFree has alleged more. Looking at the negotiations, "contemplated future consequences" and "the terms of the contract and the parties' actual course of dealing," Cliff had significantly directed his activities at Illinois. *Burger King*, 471 U.S. at 479. Personally and through his agents, Cliff sent letters, frequent emails, and contemplated a course of performance that would occur in Illinois. In *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, the Seventh Circuit recognized that the performance of ongoing "services carried out (for the most part) in Illinois" could establish personal jurisdiction. 536 F.3d 757, 764 (7th Cir. 2008). EMA's performance in compliance with the Agreement by remaining neutral during Illinois' consideration of California's regulations is an ongoing service.

Cliff cites *Brook v. McCormley* for the proposition that a contract relationship and communications with a party located in Illinois are insufficient for personal jurisdiction. 873 F.3d 549, 553 (7th Cir. 2017). In *Brook*, the defendant, a law firm partner and the firm, never reached out into Illinois. *Id.* But, Cliff did.

Cliff's contention that performance of the Agreement occurred only because of other entities' decisions to petition Illinois for a rulemaking is not persuasive. Such rulemakings were explicitly contemplated and expected by the Agreement, and a contractual condition triggered by other parties doesn't displace Cliff's role in designing a contract that contemplated performance once that condition occurred. Similarly, Cliff's argument that EMA abandoned its neutrality in subsequent letters doesn't mean that EMA's earlier neutrality is irrelevant. Ultimately, because Cliff targeted Illinois by sending communications into the state to create an agreement

8

that would be performed in the state and the agreement was then, in fact, performed in the state, he has sufficient minimum contacts to justify this Court's exercise of personal jurisdiction over him. Cliff is no stranger to Illinois. The allegations establish that Cliff intentionally meddled in Illinois.

Still, the minimum contacts must relate to the action before this Court can exercise jurisdiction. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019). A defendant's contacts with the forum may "relate to" the plaintiff's claims even in the absence of a "strict causal relationship" between the contacts and claims. *Samsung SDI Co.*, 91 F.4th at 862 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361 (2021)). The conduct and the litigation must be related, "but when there is 'no such connection [between the forum and the particular claims at issue], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'" *Samsung SDI Co.*, 91 F.4th at 862 (alteration in original) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017)). "This focus on the contacts among the *defendant*, the forum, and the litigation 'protects the defendant against the burdens of litigating in a distant or inconvenient forum.'" *NBA Props.*, Inc., 46 F.4th at 622–23 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

In this case, Cliff's contacts relate to the litigation. As discussed above, Cliff's contact with Illinois is the creation and performance of the Agreement. It is this very same Agreement that is the subject of AmFree's litigation. Cliff argues that AmFree's litigation doesn't relate to his contacts with Illinois because the basis for

9

the preemption claim is a sales commitment inapplicable to Illinois. Even if the sales commitment doesn't apply in Illinois, the other parts of the Agreement do. The negotiation of the sales commitment is necessarily related to the negotiation of the rest of the Agreement that, as explained above, targeted Illinois. This level of connection is all that is required. *See Ford*, 592 U.S. at 362 ("[O]ur most common formulation of the rule demands that the suit arise out of *or relate to* the defendant's contacts with the forum.") (citation omitted).

Having concluded that Cliff has sufficient minimum contacts to justify this Court's exercise of personal jurisdiction, the Court must next consider whether that exercise comports with "fair play and substantial justice." The Seventh Circuit has identified factors for deciding that requirement:

> Relevant factors include the inconvenience to the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. The Due Process Clause thus provides a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 819 (7th Cir. 2021) (citations omitted). Principles of interstate federalism are relevant and "may be decisive." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 18 (2025) (quoting *Bristol-Myers Squibb*, 582 U.S. at 263); *see also Rogers*, 966 F.3d at 820 (citing *Ford*, 592 U.S. at 368).

10

Fair play and substantial justice don't require dismissal in this case. Although AmFree retains the burden of establishing jurisdiction, to avoid being haled into a court in Illinois, Cliff is required to make a "compelling case" that "other considerations" make jurisdiction unreasonable here, and he has not done so. *Burger King*, 471 U.S. at 477. Principles of interstate federalism point to allowing the case to proceed in Illinois. Illinois has a strong interest in protecting its citizens from the allegedly impermissible extraterritorial reach of foreign state officials as alleged in this case. This is especially true when that reach has been explicitly preempted by Congress through the Clean Air Act's preemption of and prohibition on independent state regulation and enforcement.

States don't ordinarily have a strong interest in determining the legitimacy of another state's actions, but that principle has less force when the other state has explicitly chosen to reach out extraterritorially. *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008) (quoting *PTI, Inc. v. Philip Morris, Inc.*, 100 F.Supp.2d 1179, 1189 n.8 (C.D. Cal. 2000)) (noting that states usually have "little interest in adjudicating disputes over other states' statutes"); *Def. Distributed v. Grewal*, 971 F.3d 485, 493 (5th Cir. 2020) (finding that personal jurisdiction existed when state official defendant "projected himself across state lines and asserted a pseudo-national executive authority" by seeking to bar publication of 3D firearm printing instructions nationwide). In this case, Cliff has intentionally projected himself into Illinois, so it is appropriate to require him to respond to this action in Illinois.

11

Traveling to the district may be inconvenient for Cliff, but dismissal of the action isn't appropriate to resolve inconvenience when, as in this case, the state has such a strong interest in the underlying dispute.

**Venue**

In the alternative, Cliff moves to dismiss the matter for improper venue. Venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. 1391. Cliff argues that venue is improper because AmFree's claim is about the preemption of the sales target and the events that occurred in Illinois are unrelated to that preemption. Again, however, negotiation of the agreement and a substantial portion of its performance through the speech and advocacy commitments occurred in Illinois. This is a basis for venue even if the main crux of the complaint is a separate portion of the agreement. Performance of one major portion of the contract is a substantial part of the contract as a whole and is sufficiently connected to the underlying claim.

**Transfer**

Although this Court finds that jurisdiction and venue is proper in this district, transfer to the Eastern District of California is appropriate. "For the convenience of parties and witnesses, in the interest of justice," a court may transfer a civil case "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Convenience and the "interest of justice" are separate elements. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). In evaluating convenience, courts can consider the "availability of and access

to witnesses", "each party's access to and distance from resources in each forum," and "the location of material events and the relative ease of access to sources of proof." *Id.* (internal citations omitted).

In this case, the Eastern District of California is clearly more convenient. The parties are already litigating related claims there, so it won't be overly burdensome for AmFree to travel there. *See AmFree v. Cliff*, No. 2:24-cv-988 (E.D. Cal. filed Apr. 1, 2024) (alleging Clean Air Act preemption along with other claims). Other signatories to the Agreement are already litigating similar claims there. *See Daimler Truck N.A., LLC v. Cal. Air Res. Bd.*, No. 2:25-cv-2255 (E.D. Cal. filed Aug. 11, 2025) (action by manufacturers alleging Clean Air Act preemption along with other claims).

The Eastern District of California is obviously substantially more convenient for Cliff who works there. Potential CARB witnesses are located there. There is no indication that AmFree's members will need to travel to California to participate in the litigation and many of the signatories to the Agreement are already litigating there.

The interests of justice also indicate that transfer is proper. Relevant considerations in assessing the "interests of justice" include a plethora of factors:

> [These factors include] docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy. The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result.

13

*Rsch. Automation*, 626 F.3d at 978 (internal citations omitted); s*ee also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013) (describing public interest factors).

Judicial economy is an "interest of justice" consideration. 17 *Moore's Federal Practice* § 111.13 (3d ed. 1997); *Rsch. Automation*, 626 F.3d at 978 ("The statutory language [of 28 U.S.C. § 1404(a)] guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice."). Ordinarily, there is a "strong presumption in favor of the plaintiff's choice of forum." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003). However, that presumption loses force when there is ongoing litigation involving the same issue in another district. *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that Section 1404(a) was designed to prevent.") (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960)).

The litigation that AmFree has filed in the Eastern District of California is parallel to the litigation currently before this Court and involves nearly identical issues. Both allege preemption of the Clean Air Act by Cliff and CARB although the California action appears to target different regulations than the ones subject to this action. *AmFree v. Cliff*, No. 2:24-cv-988 (E.D. Cal. filed Apr. 1, 2024). A motion to dismiss is briefed and the action is held in abeyance pending the resolution of

further CARB rulemaking. *Id.* at dkt. 40. Settlement negotiations are ongoing. *Id.* "[R]elated litigation should be transferred to a forum where consolidation is feasible." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). Consolidation is feasible given the similarity of the claims. Transfer could streamline discovery and the ongoing settlement discussions. 17 *Moore's Federal Practice* § 111.13 (3d ed. 1997). Because transferring this action to the Eastern District of California could contribute to the resolution of AmFree's claims, the benefit to judicial economy strongly weighs in favor of transfer.

The other relevant factors are largely neutral. Both California and Illinois have a strong interest and relationship to the underlying preemption claim. This action relies on federal law, so no district has an advantage over the other. *See Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 796 (N.D. Ill. 2024). Although the docket in the Eastern District of California is generally more congested than the Western Division of the Northern District of Illinois, progress has already been made in resolving the parallel action there. Ultimately, given the clear benefit to judicial economy and the convenience of the Eastern District of California as a forum, transfer is proper.

**Judicial Notice**

The Court considers AmFree's objection to judicial notice. Cliff requested the Court take judicial notice of several different documents and, as to some documents, the facts contained therein. The Court can consider evidence and the parties' written materials in deciding a motion to dismiss for lack of personal jurisdiction

15

and improper venue. *Matlin*, 921 F.3d at 705. The Court has done so. Additional judicial notice is unnecessary. Accordingly, the requests for judicial notice are denied.

**Conclusion**

Cliff's motion to dismiss for lack of personal jurisdiction and improper venue is denied. His motion to transfer the action to the Eastern District of California is granted. The United States' motion to intervene remains pending in the transferee district.

Date: November 7, 2025

By: _____
Iain D. Johnston
United States District Judge