Michael Buschbacher*
James R. Conde*
Laura B. Ruppalt*
Nicholas A. Cordova*
Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com
ncordova@boydengray.com

* *pro hac vice*

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, <br><br> Defendant. | ) No. 2:25-cv-03255-DC-AC_____ <br> ) <br> ) <br> ) **MEMORANDUM IN SUPPORT OF** <br> ) **PLAINTIFF'S MOTION FOR** <br> ) **JUDGMENT ON THE PLEADINGS OR,** <br> ) **IN THE ALTERNATIVE, SUMMARY** <br> ) **JUDGMENT** <br> ) <br> ) <br> ) **Date: May 15, 2026** <br> ) **Time: 1:30 PM** <br> ) **Place: Courtroom 10, 13th Floor** <br> ) **Judge: Hon. Dena Coggins** <br> ) <br> ) <br> ) <br> ) |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

I.      Legal Background ..................................................................................................... 2

      A.      The Supremacy Clause ................................................................................. 2

      B.      The Clean Air Act ....................................................................................... 2

II.     Factual Background ................................................................................................... 3

      A.      California's Emission Standards ................................................................... 3

      B.      The "Clean Truck Partnership" ................................................................... 4

      C.      Congress Enacts Resolutions Repealing ACT and Omnibus Rules .............. 5

      D.      CARB Invokes the Partnership ................................................................... 6

III.    Procedural History ................................................................................................... 7

      A.      This Civil Action ......................................................................................... 7

      B.      The Parallel Civil Action ............................................................................. 7

LEGAL STANDARD ............................................................................................................. 8

ARGUMENT ........................................................................................................................... 8

I.      AmFree Has Standing ............................................................................................... 9

      A.      Law of the Case Establishes AmFree's Standing ......................................... 9

      B.      AmFree Has Standing ................................................................................. 10

II.     California's Standards Are Preempted and Unenforceable ....................................... 12

III.    The Partnership Doesn't Allow California to Evade Federal Law ............................. 14

      A.      The Partnership Is an Attempt to Enforce Preempted Standards ................. 14

      B.      There Is No Manufacturer-Consent Exception to Section 209(a) Preemption ......................................................................................... 15

      C.      Precedent Cited by Cliff Elsewhere Does Not Change the Analysis ............ 18

IV.    The Partnership's Terms Are Not Severable ............................................................. 22

CONCLUSION ....................................................................................................................... 23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Airlines for Am. v. City & County of San Francisco,*
78 F.4th 1146 (9th Cir. 2023) ................................................................................ 20

*Am. Airlines, Inc. v. Wolens,*
513 U.S. 219 (1995) .................................................................................................18

*Am. Auto. Mfrs. Ass'n v. Cahill,*
152 F.3d 196 (2d Cir. 1998) ....................................................................................13

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
569 U.S. 641 (2013) ................................................................................. 18, 19, 20

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015) ...........................................................................................2, 17

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.,*
208 F.3d 1 (1st Cir. 2000) ...................................................................................21, 22

*Bank of Columbia v. Okely,*
17 U.S. 235 (1819)....................................................................................................17

*Barnes-Wallace v. City of San Diego,*
704 F.3d 1067 (9th Cir. 2012) ................................................................................10

*Cal. Rest. Ass'n v. City of Berkeley,*
89 F.4th 1094 (9th Cir. 2024) .......................................................................... 12, 14

*California v. EPA,*
72 F.4th 308 (D.C. Cir. 2023) ..................................................................................19

*Capron v. Van Noorden,*
6 U.S. 126 (1804)......................................................................................................17

*CFTC v. Schor,*
478 U.S. 833 (1986) ..................................................................................................17

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988) .................................................................................................. 9

*City of Hugo v. Nichols (Two Cases),*
656 F.3d 1251 (10th Cir. 2011)................................................................................17

*Daimler Truck N. Am. LLC v. CARB,*
No. 2:25-cv-2255, 2025 WL 3049944 (E.D. Cal. Oct. 31, 2025) ..... 1, 4, 5, 6, 7, 8, 11, 14, 16, 20

*Diamond Alt. Energy, LLC v. EPA,*
606 U.S. 100 (2025) .................................................................................. 5, 9, 10, 11, 12

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
498 F.3d 1031 (9th Cir. 2007) ....................................................................................19

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
541 U.S. 246 (2004) ............................................................. 1, 12, 14, 15, 16, 19, 22

*Fajardo v. County of Los Angeles,*
179 F.3d 698 (9th Cir. 1999) .................................................................................... 8

*FDA v. All. for Hippocratic Med.,*
602 U.S. 367 (2024) ...................................................................................................10

*Frlekin v. Apple, Inc.,*
979 F.3d 639 (9th Cir. 2020) .................................................................................... 8

*Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n,*
744 F.2d 588 (7th Cir. 1984) ......................................................................................5

*Grand Canyon Tr. v. Provencio,*
26 F.4th 815 (9th Cir. 2022) ......................................................................................10

*Jones v. L.A. Cent. Plaza LLC,*
74 F.4th 1053 (9th Cir. 2023) .................................................................................... 8

*Mallory v. Norfolk S. Ry. Co.,*
600 U.S. 122 (2023) ...................................................................................................17

*Marathon Ent., Inc. v. Blasi,*
42 Cal. 4th 974 (2008) ........................................................................................22, 23

*McCulloch v. Maryland,*
17 U.S. 316 (1819).................................................................................................... 2

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992)...................................................................................................13

*Musacchio v. United States,*
577 U.S. 237 (2016) .................................................................................................. 9

*N.C. State Bd. of Dental Exam'rs v. FTC,*
574 U.S. 494 (2015)...................................................................................................21

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ........................................................................................... 15

*Nat'l Meat Ass'n v. Harris*,
  565 U.S. 452 (2012) ....................................................................................... 1, 15

*Olympic Pipe Line Co. v. City of Seattle*,
  437 F.3d 872 (9th Cir. 2006) ................................................................. 16, 17, 20

*Or. Advoc. Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) ........................................................................... 10

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ........................................................................................... 17

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011) ........................................................................................... 12

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................................... 10

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................... 8

*Standard Fire Ins. Co. v. Knowles*,
  568 U.S. 588 (2013) ........................................................................................... 17

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ........................................................................................... 10

*Tyler v. Hennepin County*,
  598 U.S. 631 (2023) ........................................................................................... 11

*United Food & Com. Workers Union, Loc. 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ........................................................................................... 10

*United States v. Bad Marriage*,
  439 F.3d 534 (9th Cir. 2006) ............................................................................... 9

*United States v. Duquesne Light Co.*,
  423 F. Supp. 507 (W.D. Pa. 1976) ..................................................................... 14

*United States v. Jingles*,
  702 F.3d 494 (9th Cir. 2012) ............................................................................... 9

*United States v. Rathbone*,
  27 F. Cas. 711 (C.C.S.D.N.Y. 1828) ................................................................. 17

*United States v. Texas*,
    599 U.S. 670 (2023) ..................................................................................................10

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................................12

*Wyoming v. Oklahoma*,
    502 U.S. 437 (1992)................................................................................................9, 10

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
    596 U.S. 619 (2022)................................................................................................ 22

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ......................................................................................... 2, 15

**Statutes**

15 U.S.C. § 1.......................................................................................................... 5, 21

42 U.S.C. § 7507 ................................................................................................ 3, 21, 22

42 U.S.C. § 7521(a) ................................................................................................... 2

42 U.S.C. § 7521(a)(1) ..............................................................................................13

42 U.S.C. § 7543(a)................................................................. 1, 2, 5, 8, 12, 13, 15, 19

42 U.S.C. § 7543(b).....................................................................................................3

42 U.S.C. § 7543(b)(3) ................................................................................................3

42 U.S.C. § 7550(3) ..................................................................................................13

49 U.S.C. § 14501(c)(1)..............................................................................................18

49 U.S.C. § 41713(b)(1)..............................................................................................18

Cal. Civ. Code § 1689(b)(1) ......................................................................................21

Pub. L. No. 119-15, 139 Stat. 65 (2025) .....................................................................5

Pub. L. No. 119-17, 139 Stat. 67 (2025) .....................................................................5

**Regulations**

88 Fed. Reg. 4,296 (Jan. 24, 2023)...........................................................................13

Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C)............................................................. 3, 13

Cal. Code Regs. tit. 13, § 1956.8(a)(2)(D)........................................................................3

Cal. Code Regs. tit. 13, § 1963(a) ..................................................................................13

Cal. Code Regs. tit. 13, § 1963(c) ..................................................................................13

Cal. Code Regs. tit. 13, § 1963.1 ............................................................................... 3, 13

Cal. Code Regs. tit. 13, § 1963.2............................................................................... 3, 13

Cal. Code Regs. tit. 13, § 2016(c) ............................................................................. 4, 13

**Other Authorities**

11 Phillip Areeda & Herbert Hovenkamp, Antitrust Law (3d ed. 2011) ......................... 11

*ACT 2023 Summary*, CARB (May 22, 2024), https://perma.cc/VLV4-2XC4 ........................... 11

*ACT 2024 Summary*, CARB (July 8, 2025), https://perma.cc/R4V7-LTDD .............................. 11

*American Heritage Dictionary of the English Language* (1969) ..........................................14

*Attempt*, Black's Law Dictionary (4th rev. ed. 1968) ......................................................14

Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225 (2000)....................................................12

CARB, *Manufacturers Advisory Correspondence*, ECCD-2025-08 (Aug. 25, 2025),
    https://perma.cc/3FMK-V79D.................................................................................. 6

*Enforce*, Black's Law Dictionary (4th rev. ed. 1968) ......................................................14

Exec. Dep't, State of California, Exec. Order N-27-25 (June 12, 2025),
    https://perma.cc/5UV5-DSPE ...........................................................................6, 14

Exec. Dep't, State of California, Exec. Order N-79-20 (Sept. 23, 2020),
    https://perma.cc/AXH9-V2CE ...............................................................................3

Fed. R. Civ. P. 12(c) .................................................................................................... 8

Fed. R. Civ. P. 56(c)(4) ............................................................................................... 9

*Statement of the Federal Trade Commission Regarding The Clean Truck Partnership
    Investigation*, FTC File No. 251-0054 (Aug. 12, 2025), https://perma.cc/
    W6MK-R745.........................................................................................................5

Theodore Sedgwick, *A Treatise On the Rules Which Govern the Interpretation and
    Application of Statutory and Constitutional Law* (New York, John S. Voorhies
    1857) ................................................................................................................17

## INTRODUCTION

This case arises from California's attempt to "make a mockery of the [Clean Air Act's] preemption provision." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 464 (2012).

The California Air Resources Board ("CARB") has adopted emission standards limiting, and eventually banning, new heavy-duty motor vehicles equipped with internal-combustion engines. These standards are preempted under the Clean Air Act, as is any "attempt to enforce" them. 42 U.S.C. § 7543(a). To try and evade this prohibition, Defendant Steven Cliff, the Executive Director of CARB, negotiated a regulatory deal with manufacturers of heavy-duty motor vehicles, known as the "Clean Truck Partnership." Under the Partnership, truck manufacturers agree to comply with California's emission standards and pre-sale certification process for new motor vehicles even if CARB lacks legal authority. This is "clearly" an attempt to enforce preempted standards. *Daimler Truck N. Am. LLC v. CARB*, No. 2:25-cv-2255, 2025 WL 3049944, at *17 (E.D. Cal. Oct. 31, 2025). This evasion harms the United States and motor vehicle dealers and fleets, whose business has been upended by the shortages and increased prices caused by California's rules.

California's only merits defense is that by cross-referencing its regulations in a regulatory "partnership," it may evade the Clean Air Act. That is wrong. The Clean Air Act's prohibition "is categorical." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 256 (2004). The only exception recognized by the Ninth Circuit applies when a state is acting as a market participant to procure motor vehicles. That exception is obviously inapplicable to the regulatory Partnership. This Court should reject California's request for an "inventive" and unworkable judge-made "exception" for regulatory partnerships. *Id.* The Court was right to preliminarily enjoin the Partnership, and the Court should now enter a declaratory judgment declaring that the Partnership conflicts with an express prohibition of federal law and is therefore void under the Supremacy Clause.

## BACKGROUND

The following facts are consistent with the admissions and denials in Cliff's Answer ("Ans."), ECF No. 162, to the Third Amended Complaint ("Compl."), ECF No. 142, or subject to judicial notice.

### I.    Legal Background

#### A.    The Supremacy Clause

The Supremacy Clause provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

The Supremacy Clause "creates a rule of decision": judges "must not give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015). This ensures that "[S]tates have no power … to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress." *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819).

#### B.    The Clean Air Act

Title II of the Clean Air Act authorizes the U.S. Environmental Protection Agency ("EPA") to comprehensively regulate emissions from new motor vehicles. 42 U.S.C. § 7521(a). The Clean Air Act also broadly—and expressly—preempts state laws regulating new motor vehicle emissions. Section 209(a) provides:

No State … shall adopt *or attempt to enforce* any standard relating to the control of emissions from new motor vehicles … subject to this part. No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle … as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle[.]

*Id.* § 7543(a) (emphasis added).

Alone among states, California may seek a waiver of this preemption from EPA, but EPA shall grant a waiver only if several conditions are satisfied. *Id.* § 7543(b). Compliance with California's "standards" is "treated as compliance with applicable Federal standards for purposes of" Title II. *Id.* § 7543(b)(3). Other states may then adopt standards that "are identical to the California standards for which a waiver has been granted for such model year." *Id.* § 7507.

## II.    Factual Background

### A.    California's Emission Standards

In 2020, California's Governor made it "a goal of the State … that 100 percent" of medium- and heavy-duty vehicles be "zero-emission [*i.e.*, battery- or fuel-cell electric] by 2045." *See* Exec. Dep't, State of California, Exec. Order N-79-20 (Sept. 23, 2020), https://perma.cc/AXH9-V2CE.[1] To that end, CARB adopted several emission standards, including three standards that are relevant here.

First, the **Advanced Clean Trucks ("ACT") rule**. Under the ACT rule, manufacturers of new medium- and heavy-duty vehicles must sell an annually increasing percentage share of vehicles with zero exhaust emissions starting in model year 2024. Sales of new internal-combustion-engine vehicles must be offset with "credits" generated by sales of electric vehicles. The required offset increases annually and varies by vehicle class. *See* Cal. Code Regs. tit. 13, §§ 1963.1, 1963.2; Compl. ¶ 62; Ans. ¶ 62. EPA initially promulgated a waiver of Clean Air Act preemption for the ACT rule in 2023. Compl. ¶ 63; Ans. ¶ 63.

Second, the **Omnibus Low NO$_x$ ("Omnibus") rule**. Among other things, this rule sets standards limiting nitrogen-oxide emissions from medium- and heavy-duty vehicles. *See* Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C), (D); Compl. ¶ 74; Ans. ¶ 74. EPA initially promulgated a waiver of Clean Air Act preemption for the Omnibus rule in early 2025. Compl. ¶¶ 84–86; Ans. ¶¶ 84–86.

---

[1] The label is deceptive. Cliff agrees that battery and fuel-cell-electric vehicles contribute to emissions. Compl. ¶ 54; Ans. ¶ 54.

Third, the **Advanced Clean Fleets ("ACF") rule**. Among other things, the ACF rule requires that manufacturers of new medium- and heavy-duty vehicles deliver for sale in California *only* vehicles with zero exhaust emissions by model year 2036. Cal. Code Regs. tit. 13, § 2016(c); Compl. ¶ 94; Ans. ¶ 94. In other words, the ACF Rule would ban new gas and diesel trucks entirely. CARB never obtained a waiver of preemption for the ACF rule, and withdrew its request for a waiver in January 2025. Compl. ¶¶ 97, 169; Ans. ¶¶ 97, 169.

CARB enforces these emission standards "by requiring manufacturers to apply for certification from CARB" as a "condition[] precedent to the sale of new vehicles and engines" in California. *Daimler Truck*, 2025 WL 3049944, at *3. "To obtain CARB certification for a heavy-duty vehicle, manufacturers submit one application and pay an application fee …. To be certified by CARB, a vehicle must demonstrate [among other things] that its emissions control systems comply with relevant standards." *Id.* "Selling vehicles in California without a CARB certification is a serious offense that subjects the seller to substantial penalties, specifically an inflation-adjusted penalty of up to $48,788 for each vehicle sold." *Id.*

### B.    The "Clean Truck Partnership"

On July 6, 2023, Cliff signed a "Clean Truck Partnership" (the "Partnership") with the Nation's truck manufacturers and their trade group, the Truck & Engine Manufacturers Association. Compl. ¶¶ 2–3, 100; Ans. ¶¶ 2–3, 100. The Partnership starts by "recognizing the importance of" "ensuring current and future CARB regulations affecting new … vehicles and engines will achieve significant reductions of air pollutants." Compl., Ex. A at 2, ECF No. 142-2.[2] The Partnership further states that truck manufacturers agree to meet "CARB regulations set forth in Appendices A and B … irrespective of … CARB's overall authority to implement those regulations." *Id.* at 3. Appendix B explains that this includes "the Omnibus regulation, as it existed on December 22, 2021," *id.* at 10, "[t]he ACT Regulation, as it existed on March 15, 2021, and the 100 percent ZEV sales requirement" in the ACF Rule, as well as other regulations, certification procedures, and warranty amendments, *id.* at 11.

---

[2] Page numbers for citations to documents on this docket refer to ECF pagination.

Appendix B further provides that "California will maintain its certification program. That is, [truck] manufacturers will still be required to submit applications for certification including test data, certification documents, etc. to demonstrate compliance with applicable California requirements." *Id.* at 10. Finally, Appendix D provides that truck manufacturers will abide by certain speech and petitioning restrictions *in other states* that have adopted or may choose to adopt California's rules, will commit to meeting the Omnibus regulations beginning in model year 2027 in other states that have adopted them, and will make "best efforts to sell as many zero emission trucks as reasonably possible in every state that has or will adopt CARB's ACT regulations." *Id.* at 17.

In exchange, Cliff agreed to, among other things, modest regulatory changes to allow truck manufacturers additional compliance flexibility and agreed to consider allowing more regulatory "leadtime and stability" in future rulemakings. *Id.* at 2–3, 11–16; *Daimler Truck*, 2025 WL 3049944, at *6.

By incorporating California's regulations phasing out internal-combustion-engine vehicles, the Clean Truck Partnership functions as a supply cartel to reduce output. "An agreement on output … equates to a price-fixing agreement." *Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 594 (7th Cir. 1984) (Posner, J.). If the Partnership truly were a private, voluntary agreement, then it would blatantly violate the Sherman Act as an unreasonable restraint of trade. *See* 15 U.S.C. § 1; *see also Statement of the Federal Trade Commission Regarding The Clean Truck Partnership Investigation*, FTC File No. 251-0054, at 4 (Aug. 12, 2025), https://perma.cc/W6MK-R745 (noting that the Clean Truck Partnership "raises grave antitrust concerns").

**C.    Congress Enacts Resolutions Repealing ACT and Omnibus Rules**

On June 12, 2025, Congress enacted legislation disapproving the EPA waivers for the ACT and Omnibus rules ("the Resolutions"). Pub. L. No. 119-15, 139 Stat. 65 (ACT); Pub. L. No. 119-17, 139 Stat. 67 (Omnibus); *see* Compl. ¶ 111; Ans. ¶ 111. Under the Resolutions, EPA's waivers "shall have no force or effect," so California may no longer "attempt to enforce" the rules. 42 U.S.C. § 7543(a). This legislation "block[s] [the] California regulations." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 107 n.1 (2025).

### D.    CARB Invokes the Partnership

Hours after Congress enacted the Resolutions, California's Governor vowed to resist federal law, claiming that "the Clean Truck Partnership" allows California's continued enforcement of its "more stringent emissions standards." Exec. Dep't, State of California, Exec. Order N-27-25 (June 12, 2025), https://perma.cc/5UV5-DSPE; Compl. ¶ 115–19; Ans. ¶ 115–19. To continue enforcing California's "more stringent emissions standards," the Governor ordered CARB to "continue to work with manufacturers consistent with the commitments made in the Clean Truck Partnership." Exec. Order N-27-25, *supra*; Compl. ¶ 118; Ans. ¶ 118.

California has filed a meritless lawsuit in the Northern District of California claiming that the Resolutions are somehow unconstitutional or otherwise unlawful. California ultimately seeks a declaration that EPA's preemption waivers for the ACT and Omnibus rules still have force and effect. *See* Am. Compl. at 44, *California v. EPA*, No. 4:25-cv-4966 (N.D. Cal. Oct. 10, 2025), Dkt. 157. California, however, cannot dispute that ACF is currently preempted because it "never obtained a preemption waiver." *Daimler Truck*, 2025 WL 3049944, at *17.

On August 25, 2025, CARB published a "Manufacturers Advisory Correspondence" letter, ECCD-2025-08 (Aug. 25, 2025) (the "MAC"), https://perma.cc/3FMK-V79D.[3] The MAC states that "[m]anufacturers who are parties to the Clean Truck Partnership may … continue to seek, and CARB will continue to process, applications for CARB certification on the terms provided for in that agreement," and that "[m]anufacturers seek and who obtain certification" in this manner "will have confidence that they are in compliance with their obligations … under the Clean Truck Partnership." *Id.* at 2. The MAC threatens truck manufacturers who do not certify to the emission standards referenced in the Partnership with enforcement proceedings: "CARB reserves its right to enforce the regulations covered by the waivers … in the event a court of law holds [the] [R]esolutions invalid, including with respect to [prior] model years." *Id.* at 3.

---

[3] This Court has already taken judicial notice of the MAC. *See Daimler Truck*, 2025 WL 3049944, at *18 ("Plaintiffs' request for judicial notice (Doc. No. 58) is GRANTED.").

"On October 27, 2025,… CARB filed a breach-of-contract lawsuit against" several truck manufacturers, "seeking specific performance of the Clean Truck Partnership, i.e., seeking a court order requiring [truck manufacturers] to certify to CARB's standards—regardless of whether those standards were ever the subject of a preemption waiver." *Daimler Truck*, 2025 WL 3049944, at \*17 (discussing *CARB v. Daimler Truck N. Am. LLC*, No. 25CV151420 (Cal. Super. Ct., Alameda Cnty., Oct. 27, 2025)).

III.   **Procedural History**

    A.   **This Civil Action**

Plaintiff the American Free Enterprise Chamber of Commerce ("AmFree") filed this civil action on December 16, 2024, in the Northern District of Illinois. AmFree supported its complaint with declarations from its CEO and members detailing how the Partnership financially injures AmFree's members. *See, e.g.*, Compl., Ex. D ("DeMartini Decl."), ECF No. 142-5; Compl., Ex. E ("Collins Decl."), ECF No. 142-6. On August 13, 2025, the United States and EPA moved to intervene as plaintiff. ECF No. 121. Cliff opposed. ECF No. 132.

On August 14, 2025, Cliff moved to dismiss for lack of personal jurisdiction and venue or, in the alternative, to transfer the case to the Eastern District of California. ECF Nos. 125, 126. The district court held that AmFree's "members have standing." ECF No. 145 at 4. The Court also held that it had personal jurisdiction over Cliff and that venue was proper in the district. *Id.* at 5–12. Nevertheless, the Court transferred the case to this district for Cliff's convenience. *Id.* at 12–16; *see* ECF Nos. 146, 147.

On December 5, 2025, Cliff filed his Answer. ECF No. 162. The motion to intervene by the United States and EPA remains pending.

    B.   **The Parallel Civil Action**

In August 2025, four truck manufacturers that signed the Partnership filed an overlapping civil action against California defendants in this Court and sought, among other things, a preliminary injunction against the Partnership. Compl., *Daimler Truck*, No. 2:25-cv-2255 (Aug. 11, 2025), Dkt. 1; Pls.' Mot. for Prelim. Inj., *Daimler Truck*, No. 2:25-cv-2255 (Aug. 12, 2025), Dkt. 23.

The United States and EPA intervened in support. Minute Order, *Daimler Truck*, No. 2:25-cv-2255 (Aug. 20, 2025), Dkt. 54.

On October 31, 2025, this Court preliminary enjoined CARB's enforcement of the Partnership. *Daimler Truck*, 2025 WL 3049944, *18. The Court held that "CARB's filing of [the breach-of-contract] lawsuit is clearly an attempt to enforce preempted standards at least in part, because the model year 2036 zero-emissions requirement is included in the Clean Truck Partnership yet CARB never obtained a preemption waiver for that requirement." *Id.* at *17.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). But courts "need not … accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A district court may construe a motion for judgment on the pleadings as a motion for summary judgment if evidence outside the pleadings is necessary to resolve the motion. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1059 (9th Cir. 2023). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (citation omitted).

## ARGUMENT

Under the Clean Air Act, the emission standards incorporated by reference in the Partnership are preempted. Any state "attempt to enforce" those standards, whether through civil penalties, damages, equitable remedies, or pre-sale certification requirements, is therefore unlawful. 42 U.S.C. § 7543(a). There is no unwritten exception in the Clean Air Act allowing states to enforce preempted standards through regulatory "partnerships." But even if there is such an exception, the exception is limited to actions taken by state officials as market participants. The

exception wouldn't apply to the Partnership, which was clearly entered into by Cliff in a regulatory capacity, not in his capacity as a market participant.

## I. AmFree Has Standing

The transferring district court has already held that AmFree has standing. ECF No. 145 at 3–5. That holding is law of the case, and even if it were not, AmFree's standing declarations are more than sufficient.

### A. Law of the Case Establishes AmFree's Standing

Under the law-of-the-case doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Bad Marriage*, 439 F.3d 534, 538 (9th Cir. 2006) (citation omitted); *see also Musacchio v. United States*, 577 U.S. 237, 244–45 (2016). The doctrine applies whenever "the issue in question … ha[s] been decided explicitly or by necessary implication in [the] previous disposition." *United States v. Jingles*, 702 F.3d 494, 499–500 (9th Cir. 2012) (citation omitted). It "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions," including decisions on jurisdictional issues. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *id.* at 816 n.5.

Here, the district court explicitly held that "AmFree's members have standing," ECF No. 145 at 4, and thoroughly "assured itself of AmFree's standing to bring" this lawsuit as a representative of these interests, *id.* at 5. Principles of finality and orderliness therefore preclude this Court from revisiting the district court's decision. *See Wyoming v. Oklahoma*, 502 U.S. 437, 446 (1992) ("[H]aving denied Oklahoma's motion to dismiss for want of standing, and the parties having submitted the case on cross-motions for summary judgment, we are not at all inclined to dismiss the action at this juncture.").

It makes no difference here that the district court was considering standing at the motion to dismiss stage. AmFree's standing allegations were verified with detailed declarations. Compl., Ex. B ("Meiborg Decl."), ECF No. 142-3; Ex. C ("Riggan Decl."), ECF No. 142-4; DeMartini Decl. Those declarations are sufficient for standing at the summary judgment stage. Fed. R. Civ. P. 56(c)(4); *see, e.g.*, *Diamond Alt. Energy*, 606 U.S. at 116, 120–21. This Court should therefore

apply law of the case to the prior district court's determination. *See Grand Canyon Tr. v. Provencio*, 26 F.4th 815, 821 (9th Cir. 2022) (affirming district court's application of law of the case to the issue of standing); *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1076–77 (9th Cir. 2012) (similar); *see also Wyoming*, 502 U.S. at 446 (similar).

### B.     AmFree Has Standing

Regardless, the district court correctly held that AmFree has standing. "The doctrine of associational standing permits an organization to sue to redress its members' injuries, even without a showing of injury to the association itself." *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (citation omitted). An organization has associational standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Com. Workers Union, Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (citation omitted). For individual members to have standing to sue in their own right, they must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). AmFree satisfies each of these requirements.

First, AmFree's members have standing. To have standing, a plaintiff must show an injury that is "concrete," "particularized," and "actual or imminent, not speculative." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citations omitted). "Monetary costs are of course an injury." *United States v. Texas*, 599 U.S. 670, 676 (2023). There must also be a "causal connection between the injury and the conduct complained of." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). Courts follow "commonsense economic principles" in "the familiar circumstance where government regulation of a business may be likely to cause injuries to other linked businesses," such as "manufacturers, retailers, suppliers, competitors, or customers." *Diamond Alt. Energy*, 606 U.S. at 116 (cleaned up).

The Partnership requires manufacturers to reduce the share of new internal-combustion-engine vehicles for sale in California in dramatic increments all the way to zero. Compl. ¶¶ 94, 174;

Ans. ¶¶ 94, 174. The Partnership's restraint on the production of internal-combustion-engine vehicles obviously harms AmFree's members, who buy and sell such vehicles.

For example, AmFree member DeMartini RV Sales ("DeMartini RV") is a motor vehicle dealer that sells motor homes in California. Due to the Partnership and the regulations it incorporates, DiMartini RV has suffered and will suffer economic losses. "There are presently no electric powertrain options for RV chassis." DeMartini Decl. at 7. And the Partnership will "constrain the supply of RV chassis—and so motorhomes—limiting DeMartini RV's inventory and decreasing DeMartini RV's retail sales." *Id.* "Basic economic principles also dictate that reducing the supply of engines for RV chassis will predictably increase prices for motorhome wholesalers." *Id.* at 7–8; *see also* 11 Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1901 (3d ed. 2011). Indeed, the Partnership and the underlying standards it attempts to enforce have already restricted the supply of RV chassis, harming DeMartini RV's revenues. DeMartini Decl. at 8–9. "This is a classic pocketbook injury sufficient to give [AmFree's members] standing." *Tyler v. Hennepin County*, 598 U.S. 631, 636 (2023). At the very least, Cliff's enforcement of the Partnership would predictably cause AmFree's members "one dollar" of harm. *Diamond Alt. Energy*, 606 U.S. at 114 (citation omitted).

CARB cannot genuinely dispute that its standards will reduce sales of internal-combustion-engine vehicles and increase their price—that's the point of phasing out these vehicles down to zero. Indeed, the regulations are having their intended effect. CARB's data shows that from model year 2023 to 2024, the year Omnibus and ACT first became effective, non-electric tractor sales fell by a whopping 82%.[4] "In short, the commonsense economic inferences about the operation of the [internal-combustion-engine vehicle] market" as well as CARB's purpose and data "make it

---

[4] CARB's official website summarizing ACT credits shows the total number of tractors and "ZEV" tractor sales. Subtracting ZEV tractors, tractor deliveries for sale declined from 12,329 in model year 2023 to 2,201 in model year 2024 when Omnibus and ACT became effective. *Compare ACT 2023 Summary*, CARB (May 22, 2024), https://perma.cc/VLV4-2XC4, *with ACT 2024 Summary*, CARB (July 8, 2025), https://perma.cc/R4V7-LTDD. This Court has already taken judicial notice of this website, *Daimler Truck*, 2025 WL 3049944, at *13 n.21.

sufficiently predictable that invalidating" the Partnership will redress the injuries of AmFree members. *Diamond Alt. Energy*, 606 U.S. at 120 (quotation marks omitted).

Second, AmFree meets the remaining two requirements for associational standing. AmFree exists to fight burdensome regulations and anti-competitive restraints that impede the free market and harm its members, so this action is germane to AmFree's purpose. *See* Collins Decl. at 3, 6–7. And AmFree's claims for declaratory and injunctive relief do not require the participation of individual members. *Warth v. Seldin*, 422 U.S. 490, 515 (1975).

The district court was therefore correct. AmFree has standing.

## II.    California's Standards Are Preempted and Unenforceable

Section 209(a) of the Clean Air Act provides that "[n]o State … shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles … subject to this part." 42 U.S.C. § 7543(a). The Clean Air Act therefore *expressly* preempts state law. "As with any express preemption case," the Court must focus "on the plain meaning of the preemption provision." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1101 (9th Cir. 2024). The Court must "apply this textual analysis without any presumptive thumb on the scale for or against preemption." *Id.* (quotation marks omitted). Under the Supremacy Clause "courts should not strain to find ways to reconcile federal law with seemingly conflicting state law." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 622 (2011) (plurality opinion); *see also* Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225, 290–303 (2000). Further, Courts interpret express preemption provisions with an eye to prevent the circumvention of federal law. "States … can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." *Cal. Rest. Ass'n*, 89 F.4th at 1107.

"Based on its text, structure, and context," the Clean Air Act bars the standards at issue here. *Id.* at 1101. A "standard" under section 209(a) is "that which 'is established by authority, custom, or general consent, as a model or example; criterion; test.'" *Engine Mfrs. Ass'n*, 541 U.S. at 252–53 (quoting *Webster's Second New International Dictionary* 2455 (1945)). Rules "that compel manufacturers to meet specified emission limits" are a classic example of preempted state emission standards. *Id.*

The ACT, Omnibus, and ACF rules fall within this paradigm. The Omnibus rule, on its face, compels truck manufacturers to meet "specified emission limits" for oxides of nitrogen and other emissions. *See* Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C). The ACT rule requires manufacturers to produce an increasing market share of motor vehicles with "specified emission limits": "zero exhaust emission[s]." *Id.* § 1963(c); *see also id.* §§ 1963.1, 1963.2. The explicit purpose of the ACT rule is "to reduce emissions of … criteria pollutants, toxic air contaminants, and greenhouse gases" from motor vehicles. *Id.* § 1963(a). ACF goes even further and requires that all new motor vehicles have zero exhaust emissions. *Id.* § 2016(c).

Section 209(a) prohibits standards "relating to" the control of emissions. 42 U.S.C. § 7543(a). "The ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). But this is an easy case, because a limit on nitrogen oxide or a "zero exhaust emissions" criterion is on its face a control of emissions, and thus obviously relates to emissions. *See Am. Auto. Mfrs. Ass'n v. Cahill*, 152 F.3d 196, 200 (2d Cir. 1998).

There also is no question that new motor vehicles covered by the Omnibus, ACT, and ACF rules are "subject to" Title II of the Clean Air Act. 42 U.S.C. § 7543(a); *see id.* § 7550(3) (defining new motor vehicle); *id.* § 7521(a)(1) (allowing EPA to regulate new motor vehicles); *see, e.g.*, 88 Fed. Reg. 4,296 (Jan. 24, 2023).

Cliff therefore cannot dispute that ACT, Omnibus, and ACF are preempted under section 209(a) of the Clean Air Act. Indeed, California acknowledged as much by seeking a waiver of Clean Air Act preemption for each one of these rules. Ans. ¶¶ 63, 76, 85, 86, 95, 97. That means that Cliff may not attempt to enforce ACT, Omnibus, or ACT, including through "certification, inspection, or any other approval … as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle." 42 U.S.C. § 7543(a).

### III.    The Partnership Doesn't Allow California to Evade Federal Law

Cliff claims that the Partnership allows California to enforce manifestly preempted state standards. *See* Defs.' Mem. of P. & A. in Supp. of Their Mot. to Dismiss at 15, *Daimler Truck N. Am. LLC*, No. 2:25-cv-2255 (Mar. 10, 2026) ("CARB's MTD"), Dkt. 122-1. It "clearly" does not, as this Court has already recognized. *Daimler Truck*, 2025 WL 3049944, *17. Any state attempt to enforce California's standards, through whatever means, is preempted. The Partnership is an artifice for doing "*indirectly*" what Congress says California "can't do *directly*." *Cal. Rest. Ass'n*, 89 F.4th at 1107. It is therefore in conflict with federal law and void.

### A.    The Partnership Is an Attempt to Enforce Preempted Standards

The Partnership is an attempt to enforce standards. The ordinary meaning of "enforce" is "to compel obedience to." *Enforce*, Black's Law Dictionary (4th rev. ed. 1968); *see also American Heritage Dictionary of the English Language* 433 (1969) ("[t]o compel observance or obedience to"). And an "attempt" requires an "intent" to enforce "combined with" a substantial preparatory act. *Attempt*, Black's Law Dictionary (4th rev. ed. 1968). That includes acts falling short of enforcement. *Engine Mfrs. Ass'n*, 541 U.S. at 257.

On its face, the Partnership seeks to compel obedience to California's standards. Compl., Ex. A at 10–11; *see also* Exec. Order N-27-25, *supra* (describing "the Clean Truck Partnership" as binding manufacturers "to meet California's heavy-duty vehicle emission standards"). The Partnership commits truck manufacturers to meeting "CARB regulations … irrespective of … CARB's overall authority to implement those regulations." Compl., Ex. A at 3. California has already invoked the Partnership to seek "specific performance"—i.e., compelled compliance with California's standards. *Daimler Truck*, 2025 WL 3049944, at *17; *cf. United States v. Duquesne Light Co.*, 423 F. Supp. 507, 510 n.5 (W.D. Pa. 1976) ("[W]hile this action is ostensibly brought in contract, it is in actuality an attempt to enforce a[n] … administrative program."). That is enforcement.

The Partnership further attempts to enforce preempted state emission standards by purporting to require continued "certification" by CARB prior to sale in California. Compl., Ex. A at 10. Requiring pre-sale certification for new motor vehicles—a form of state licensing—is a

means of enforcing standards. But this means of enforcement is even more clearly forbidden by the Act: The Clean Air Act's text "categorically prohibits 'certification, inspection, or any other approval' as conditions precedent to sale." *Engine Mfrs. Ass'n*, 541 U.S. at 257 (quoting 42 U.S.C. § 7543(a)). Thus, by purporting to vest California with authority to certify new motor vehicles to preempted standards, the Partnership directly conflicts with the express prohibitions of section 209(a). Preemption is obvious.

### B.   There Is No Manufacturer-Consent Exception to Section 209(a) Preemption

Lacking any textual basis authorizing the Partnership, California asks this Court to invent an atextual exception allowing states to enforce emission standards incorporated into putatively "voluntary" agreements to which manufacturers at one time consented. *See* CARB's MTD at 9–10. The Court should decline the invitation. It does not matter if some truck manufacturers may prefer anticompetitive state regulations to market competition; Congress did not create a preemption exception for state standards that manufactures like. States and truck manufacturers cannot together nullify the Clean Air Act by promising to follow prohibited state standards in perpetuity. That would "make a mockery of the [Clean Air Act's] preemption provision." *Nat'l Meat Ass'n*, 565 U.S. at 464. Whether truck manufacturers "voluntarily" consented to the regulatory Partnership or were under duress is therefore irrelevant.

"The language of § 209(a) is categorical." *Engine Mfrs. Ass'n*, 541 U.S. at 256. The Act says that "[n]o State … shall adopt or attempt to enforce any standard." 42 U.S.C. § 7543(a). This text "indicates a command that admits of no discretion on the part of the person instructed to carry out the directive." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 661 (2007) (citation omitted). And under the Supremacy Clause, it is "Judges" who must carry out that categorical prohibition. U.S. Const. art. VI, cl. 2. Clean Air Act preemption thus provides no room for judicially crafted exceptions.

More than two decades ago, the Supreme Court rejected a similar attempt by California regulators to engraft an atextual exception for purportedly non-coercive standards into section 209(a)'s preemption regime. In *Engine Manufacturers Association v. South Coast Air Quality Management District*, California regulators and the dissenting Justice argued that a rule mandating

the purchase (rather than sale) of low-emission vehicles wasn't preempted because the purchase mandate did not "*in fact* coerce manufacture." 541 U.S. at 256. The Court disagreed. It reasoned that not only was it "impossible to find in [section 209(a)'s categorical prohibition] an exception for standards imposed through purchase restrictions rather than directly upon manufacturers; it is even more inventive to discover an exception" for a purchase mandate "that does not coerce manufacture." *Id.*

Cliff's request here for a judge-made exception for regulations manufacturers have purportedly consented to is no different than California regulators' request for a judge-made exception for non-coercive standards in *Engine Manufacturers Association*. And it would be similarly "inventive to discover an exception" for standards simply because manufacturers consented to them in a "partnership" with state regulators. As *Engine Manufacturers Association* makes clear, even if those standards could be considered non-coercive, they are preempted. *Id.*

To be sure, the Supreme Court reserved judgment on whether *unenforceable* "voluntary incentive programs" are preempted. *Id.* at 258. But that makes no difference here. Cliff contends that the Partnership is enforceable and binding, not a mere voluntary incentive that manufacturers can ignore at will. *See Daimler Truck*, 2025 WL 3049944, *17. Whether the manufacturers entered the Partnership willingly is therefore immaterial. Cliff claims that the Partnership is enforceable, as do the state regulations it incorporates, and so it is not a mere "voluntary incentive program[]." *Engine Mfrs. Ass'n*, 541 U.S. at 258.

Nor does a preemption exception for "voluntary" consent to state regulation make sense as a matter of constitutional logic. The Ninth Circuit has already rejected any such argument in *Olympic Pipe Line Company v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006). There, as Cliff does here, the City of Seattle argued that a private party "knowingly and voluntarily consented to the City's regulations" by entering an agreement with the City that allowed Seattle to contractually impose safety standards that were preempted under federal law. *Id.* at 882–83. The Ninth Circuit rejected Seattle's argument because "[p]reemption is a power of the federal government, not an individual right of a third party that the party can 'waive.'" *Id.* at 883. "Federal preemption is not

an individual constitutional right, such as an individual's right to due process." *Id.* That holding is binding.

That logic also makes sense. The Supremacy Clause creates a mandatory "rule of decision": judges "must not give effect to state laws that conflict with federal laws." *Armstrong*, 575 U.S. at 324. The Supremacy Clause is not a source of individual rights. *Id.* It is quite unlike, say, the right to due process or the right of trial by jury, which are individual rights "the benefit of [which] may, therefore, be relinquished." *See, e.g.*, *Bank of Columbia v. Okely*, 17 U.S. 235, 244 (1819); *see also United States v. Rathbone*, 27 F. Cas. 711, 711 (C.C.S.D.N.Y. 1828) ("The right of trial by jury, secured by the constitution of the United States, is for the benefit of the parties litigating in courts of justice, and is a privilege they may dispense with if they choose."); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 149 (2023) (Jackson, J., concurring) (personal jurisdiction); *cf.* Theodore Sedgwick, *A Treatise On the Rules Which Govern the Interpretation and Application of Statutory and Constitutional Law* 111 (New York, John S. Voorhies 1857) ("A party may waive a constitutional as well as a statutory provision *made for his benefit*." (emphasis added)). Rather, "the Supremacy Clause" is a judicial duty, "designed to protect 'collective or structural rights.'" *City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1256 (10th Cir. 2011) (citation omitted). Because the Clause protects the supremacy of the laws of the United States through a mandatory rule of decision, individual companies "cannot by consent" waive "this structural principle" on behalf of the United States. *Cf. CFTC v. Schor*, 478 U.S. 833, 850–51 (1986) (principles of consent and waiver cannot allow structural violations); *Capron v. Van Noorden*, 6 U.S. 126, 127 (1804) ("[I]t was the duty of the Court to see that [the parties] had jurisdiction, for the consent of parties could not give it.").

And regardless, one party's waiver "does not bind anyone" else. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013). Thus, even if truck manufacturers may waive defenses based upon the Supremacy Clause, such a waiver would not be effective against the United States or third parties, such as AmFree. A contrary holding would violate the due process rights of AmFree and its members by depriving them of a right to be heard. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979).

### C.    Precedent Cited by Cliff Elsewhere Does Not Change the Analysis

In other filings, Cliff has cited Supreme Court caselaw interpreting the Airline Deregulation Act ("ADA") and the Federal Aviation Administration Authorization Act of 1994 ("F4A") to argue for a general presumption against preemption of regulatory agreements such as the Partnership. CARB's MTD at 9–10. But these cases do not recognize such a freestanding, atextual exception.

To start, those cases interpret different statutory text. Unlike the Clean Air Act, the ADA and the F4A limit express preemption to a "law, regulation, or other provision *having the force and effect of law*." 49 U.S.C. § 41713(b)(1) (emphasis added); *see also id.* § 14501(c)(1) ("No State … shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law …."). As a result, courts have naturally read the limiting phrase "having the force and effect of law" to carve out contracts entered into in a proprietary capacity from preemption. *See, e.g.*, *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29 (1995); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641, 648–50 (2013).

In *Wolens*, for example, the Supreme Court held that the ADA does not preempt private contract claims brought by airline passengers against an airline, because those private contracts were not state provisions with the "force and effect of law" and because the purpose of the Act— "[m]arket efficiency"—"requires effective means to enforce private agreements." 513 U.S. at 229–30. *American Trucking Associations* explained that under the F4A preemption provision's similar language, "the same reasoning holds if the government enters into a contract just as a private party would—for example, if a State (or City or Port) signs an agreement with a trucking company to transport goods at a specified price." 569 U.S. at 649–650. Those decisions, however, are predicated on the "'force and effect of law' language" of the preemption provisions. *Id.* at 649 n.4. The Court stressed that its decisions were not recognizing a "freestanding" principle of preemption, and that it had no "occasion to consider whether or when a preemption clause lacking such [force and effect of law] language would except a state or local government's proprietary actions." *Id.*

The Clean Air Act's preemption provision is not limited to prohibiting the enforcement of provisions adopted by a state and having "the force and effect of law," but sweeps more broadly. It forbids a state to "adopt or attempt to enforce *any standard* relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a) (emphasis added). As the Supreme Court has explained, the term "standard" as used in the Clean Air Act is a very broad one, and includes emissions controls established not just by state "authority," but also by "custom" or "general consent." *Engine Mfrs. Ass'n*, 541 U.S. at 252–53. And the purpose of section 209(a) of the Clean Air Act—preventing a patchwork of regulatory regimes—applies just as much to regulatory agreements enforceable under state law as to formal regulations published in a state code. To illustrate, if truck manufacturers all agreed, pursuant to their corporate "sustainability" policies, to follow consensus standards for new motor vehicles set by an international body or a private standard-setting organization, states *still* could not attempt to enforce those consensus standards through common law remedies or pre-sale certification requirements without running afoul of section 209(a). *Cf. California v. EPA*, 72 F.4th 308, 311 (D.C. Cir. 2023) (noting that minimum aircraft emissions are set by "a specialized agency of the United Nations"). The same rule applies *a fortiori* to standards embodied in deals with state regulators.

In any event, the ADA and F4A caselaw relied upon by California carve out only "everyday contractual arrangements" from preemption: this exception does not apply to state contracts when "the State [is] acting in a regulatory rather than proprietary mode." *Am. Trucking Ass'ns*, 569 U.S. at 650. The Ninth Circuit likewise has read section 209(a) to incorporate a judge-made "market participant" exception, but it has never extended that exception beyond "purchasing, procuring, leasing, and contracting for the use of vehicles by state and local governmental entities." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1045 (9th Cir. 2007).

"In some cases, the question whether governmental action has the force of law may pose difficulties; the line between regulatory and proprietary conduct has soft edges. But this case takes us nowhere near those uncertain boundaries." *Am. Trucking Ass'ns*, 569 U.S. at 651. "[Cliff] exercised classic regulatory authority" in negotiating the Clean Truck Partnership. *Id.* at 650.

The Partnership is hardly an "everyday contractual arrangement" about state procurement. It was entered into by Cliff, the Executive Director and chief enforcement officer of CARB, the state regulator, and Cliff was obviously acting in a regulatory capacity. The "contracts do not stand alone, as the result merely of the parties' voluntary commitments," but incorporate California's formal regulations governing the sale of motor vehicles to the general public. *Id.* The Partnership identifies only regulatory objectives of California: reducing air pollutants and promoting regulatory stability. Compl., Ex. A at 2–3. Cliff therefore "made the [Partnership] demands on [manufacturers] in an effort to prevent" air pollution in California, and Cliff "thus acted pursuant to its general duty to protect the public health and safety—a duty grounded in [California's] regulatory, police power." *Olympic Pipe Line Co.*, 437 F.3d at 881.

That is also evident from other parts of the Partnership. The "consideration" that Cliff gives to truck manufacturers is to prospectively modify CARB's generally applicable regulations. Compl., Ex. A at 8–16. The Partnership further purports to preserve California's role in pre-sale certification, a classic exercise of state regulatory authority. *Id.* at 10. Further, the Partnership governs manufacturer behavior in other states, including their lobbying and sales, *id.* at 17, but there is no suggestion that California acts as a "market participant" in Massachusetts or New Jersey. Last, Cliff, as a negotiator, wields extraordinary leverage unavailable to private parties (or, for that matter, all 49 other states) by virtue of CARB's *sui generis* regulatory authority, including its power to certify new motor vehicle sales, subject to civil penalties. *Daimler Truck*, 2025 WL 3049944, at *6. "[W]hen the government employs such a coercive mechanism, available to no private party, it acts with the force and effect of law." *Am. Trucking Ass'ns*, 569 U.S. at 651. The "use of civil penalties" is obviously "unavailable to private parties." *Airlines for Am. v. City & County of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023).

California asks this Court to stray far beyond the limits of a judge-created market-participant exception to section 209(a) preemption, and examine instead whether the Partnership was entered into voluntarily or was really the result of duress. Such a line would be unworkable apart from being baseless. CARB wields enormous leverage over truck manufacturers by virtue of its regulatory authority, enforcement discretion, and certification authority, so any deal between

truck manufacturers and CARB involves regulatory arm-twisting and economic "duress." *Cf.* Cal. Civ. Code § 1689(b)(1) (listing conditions under which a contracting party may rescind the contract). It would be extremely difficult for courts to decide when this duress becomes just too much. The Court should decline to follow this path, and stick instead to the clear text of the Clean Air Act and the narrow market-participant exception.

Regardless, to the extent the Partnership was truly voluntary, just like an "everyday" private contract, and not an act of the sovereign as regulator, the Partnership is an anti-competitive restraint of trade in violation of the Sherman Act. *See* 15 U.S.C. § 1. Therefore, if the Court agrees with Cliff's arguments, it should allow AmFree leave to amend its complaint to add a Sherman Act claim. If Cliff was truly acting as a market participant, not as a sovereign, he lacks antitrust immunity. *See N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 504 (2015) ("An entity may not invoke *Parker* immunity unless the actions in question are an exercise of the State's sovereign power.").

Finally, in an earlier filing, Cliff also relied upon a First Circuit decision that barred other states from adopting, under section 177 of the Clean Air Act, zero-emissions regulations consistent with various agreements between California and automakers *See Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1 (1st Cir. 2000) ("*AIAM*"); CARB's MTD at 10. The case doesn't support Cliff's rule, and should not be extended to section 209(a).

In *AIAM*, California had repealed its zero-emissions standards, wiping them off the books. "At about the same time, California entered into memoranda of agreement ('MOAs') with seven major automakers by which the manufacturers agreed to nevertheless develop ZEV technology and introduce a limited number of ZEVs into the California market during the years 1998–2002." 208 F.3d at 3. Massachusetts then tried to incorporate the MOAs into its state regulations, invoking section 177 of the Clean Air Act. *Id.* Section 177 allows states to adopt, and so exempts from preemption under section 209(a), state standards that "are identical to the California standards for which a waiver has been granted for such model year." 42 U.S.C. § 7507. The specific question at issue in *AIAM* was whether the MOAs were "California standards" "for purposes of [section]

177." *AIAM*, 208 F.3d at 8. The Court held the MOAs were not "California standards" under that section because they were not "formal state laws and regulations." *Id.* at 7.

Although *AIAM* reached the correct result, some of the broader reasoning and dicta is flawed and should not be extended to section 209(a). "California standards" in section 177 clearly refers to standards adopted by the state of California and submitted to EPA as proposed regulations eligible for a waiver, hence the modifier "California" before "standards." The word standards "does not stand alone." *Cf. ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 628 (2022). Section 177 refers to "California standards for which a waiver has been granted," 49 U.S.C. § 7507, and in that phrase, the words are "best understood as" referring to formal regulations of California. *ZF Auto.*, 596 U.S. at 628. Section 209(a), however, is different. It prohibits not just *adopting* emission standards in formal regulations, but also enforcing—and even attempting to enforce—emission standards in any manner, whatever the source of the standards. As *Engine Manufacturers Association* confirms, standards may be set not just by the "authority" of the state, through formal adoption, but also by "custom" or "general consent." 541 U.S. at 252–53. To the extent *AIAM* suggests otherwise, it conflicts with the ordinary meaning of "standard" embraced by the Supreme Court in *Engine Manufacturers Association*, and thus would be unpersuasive.

In any event, unlike in *AIAM*, the standards that California seeks to enforce through the Partnership *are* "formal regulations"—the Partnership incorporates state regulations by reference. California has not repealed those regulations or disclaimed its authority to certify compliance with those regulations—indeed, it has sought to compel such certification. So, the Partnership is an attempt to enforce "formal regulations adopted by the state[]," which even *AIAM* acknowledges section 209(a) was "intended to govern." *AIAM*, 208 F.3d at 7.

## IV.    The Partnership's Terms Are Not Severable

The Partnership's attempt to enforce preempted standards renders the entire Partnership void. When "the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008). As the Partnership's introduction reveals, Cliff entered the agreement to "ensur[e] current and future CARB regulations affecting new [heavy-duty on highway] vehicles and engines will achieve

significant reductions of air pollutants from such vehicles and engines," Compl., Ex. A at 2, by requiring manufacturers "to meet" those regulations "irrespective of … CARB's overall authority to implement" them, *id.* at 3. This is an illegal purpose. Accordingly, "the contract as a whole cannot be enforced." *Marathon Ent.*, 42 Cal. 4th at 996.

## CONCLUSION

The Court should hold that California's Partnership is void and unenforceable because it conflicts with the Clean Air Act.


Dated:  April 1, 2026                          Respectfully submitted,

                                               /s/ *James R. Conde*
                                               Michael Buschbacher*
                                               James R. Conde*
                                               Laura B. Ruppalt*
                                               Nicholas A. Cordova*
                                               Boyden Gray PLLC
                                               800 Connecticut Ave. NW,
                                                Suite 900
                                               Washington, DC 20006
                                               (202) 955-0620
                                               mbuschbacher@boydengray.com
                                               jconde@boydegray.com
                                               lruppalt@boydengray.com
                                               ncordova@boydengray.com

                                               * *pro hac vice*

                                               Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that counsel of record were served a copy of this document via the Court's CM/ECF system this 1st day of April, 2026.

/s/ *James R. Conde*
James R. Conde