ROB BONTA
Attorney General of California
MYUNG J. PARK, State Bar No. 210866
Supervising Deputy Attorney General
BENJAMIN P. LEMPERT, State Bar No. 344239
M. ELAINE MECKENSTOCK, State Bar No. 268861
DAVID M. MEEKER, State Bar No. 273814
JONATHAN A. WIENER, State Bar No. 265006
CECILIA D. SEGAL, State Bar No. 310935
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone: (415) 510-3545
 Fax: (415) 703-1107
 E-mail: cecilia.segal@doj.ca.gov
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE**, <br><br> Plaintiff, <br><br> **v.** <br><br> **STEVEN S. CLIFF,** in his official capacity as the Executive Officer of the California Air Resources Board, <br><br> Defendant. | 2:25-cv-03255-DC-AC <br><br> **DEFENDANT'S STATEMENT OF UNDISPUTED FACTS** <br><br> Judge:        Hon. Dena Coggins <br> Courtroom:  10, 13th Floor <br> Date:         None Set <br> Action Filed:  December 16, 2024 |

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Pursuant to Rule 56(a) and (c) of the Federal Rules of Civil Procedure and Local Rule 260(a), Defendant Steven S. Cliff, in his official capacity as Executive Officer of the California Air Resources Board (Defendant Cliff), respectfully submits this Statement of Undisputed Facts in support of his Cross-Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment, filed concurrently.

| No. | Defendants' Statement of Disputed Facts | Supporting Evidence |
|---|---|---|
| 1. | Neither AmFree nor its members are parties to the Clean Truck Partnership (CTP). | Def. Cliff Req. for Judicial Notice (RJN) (filed concurrently) Ex. 48 at 4-6 & i; ECF No. 142-6 (Collins Decl.), ¶ 3; |
| 2. | In the CTP, the signatory manufacturers committed to selling vehicles or engines in California consistent with the Omnibus regulation, the Advanced Clean Trucks (ACT) sales requirements, and the Advanced Clean Fleets (ACF) 2036 sales requirement. | RJN, Ex. 48, App'x B at i-ii; Heroy-Rogalski Decl., ¶ 27 (filed concurrently). |
| 3. | In the CTP, the signatory manufacturers made no commitments to selling specific quantities or percentages of zero-emission vehicles outside of California. | RJN, Ex. 48, App'x B at F; Heroy-Rogalski Decl., ¶ 28. |
| 4. | The emission standards in the Omnibus regulation apply only to vehicles with internal-combustion engines. | Cal. Code Regs., tit. 13, § 1956.8(a)(2)(C), (a)(2)(D); Heroy Rogalski Decl., ¶ 31. |
| 5. | The Omnibus regulation does not require the sale of any zero-emission vehicles. | Cal. Code Regs., tit. 13, § 1956.8(a)(2)(C), (a)(2)(D); Heroy-Rogalski Decl., ¶¶ 28-29, 31. |
| 6. | AmFree member Meiborg Brothers Inc. is an Illinois-based company. | ECF No. 142-3 (Meiborg Decl.), ¶ 1. |
| 7. | AmFree member TanTara Transportation Corp. is an Iowa-based company. | ECF No. 142-4 (Riggan Decl.), ¶ 1. |
| 8. | Meiborg Brothers Inc. has not asserted that it has ever purchased a truck in California, or that it has plans to do so in the future. | *See generally* Meiborg Decl. |
| 9. | TanTara Transportation Corp. has not asserted that it has ever purchased a truck in California, or that it has plans to do so in the future. | *See generally* Riggan Decl. |

1

| 10. | Truck prices vary around the nation, which is why Meiborg Brothers Inc. looks nationwide for the best price when making truck purchasing decisions. | Meiborg Decl., ¶ 5. |
|---|---|---|
| 11. | Truck prices vary around the nation, which is why TanTara Transportation Corp. looks nationwide for the best price when making truck purchasing decisions. | Riggan Decl., ¶ 5. |
| 12. | The CTP does not prevent signatory manufacturers from pricing a given vehicle model differently in different parts of the country, including from state to state. | RJN, Ex. 48, App'x B & App'x D. |
| 13. | The CTP does not constrain the total number of vehicles its signatory manufacturers can produce for sale in California or elsewhere. | RJN, Ex. 48, App'x B & App'x D. |
| 14. | The CTP does not limit or specify the vehicles non-signatory manufacturers may sell anywhere, including in California. | RJN, Ex. 48 at 1, 4-6 & i. |
| 15. | If a signatory manufacturer to the CTP offers fewer combustion-engine vehicles for sale in California than it did before it signed the CTP, the CTP does not prevent the manufacturer from selling any excess combustion-engine vehicles in other States. | RJN, Ex. 48, App'x B & App'x D. |
| 16. | Nationwide sales of heavy-duty vehicles declined between model year 2023 and model year 2024. | RJN, Ex. 16. |
| 17. | The decline in nationwide sales of heavy-duty vehicles between model year 2023 and 2024 resulted from several industry-wide factors, including a prolonged freight recession. | RJN, Ex. 18 a 1-3. |
| 18. | Tesla is not a signatory to the CTP. | RJN, Ex. 48 at 4-6 & i. |
| 19. | Tesla is producing "fully electrified" standard- and long-range semi trucks for delivery in 2026. | RJN, Ex. 17 at 2. |
| 20. | Spartan RV Chassis is a brand of the Shyft Group, Inc. | ECF No. 14-5 (DeMartini Decl.), ¶ 4; RJN, Ex. 47 at 4. |
| 21. | Spartan RV Chassis manufactures RV chassis. | DeMartini Decl., ¶ 4; RJN, Ex. 47 at 4. |

2

Def.'s Statement of Undisputed Facts (2:25-cv-03255-DC-AC)

| 22. | Neither Spartan RV Chassis nor Shyft Group, Inc. are signatories to the CTP. | RJN, Ex. 48 at 4-6 & i. |
|---|---|---|
| 23. | Freightliner, a subsidiary of Daimler Trucks North America, LLC (Daimler), manufactures RV chassis. | DeMartini Decl., ¶ 4. |
| 24. | In August 2025, Daimler stated in a stipulation filed in Nebraska state court that "the CTP had no impact on product, availability, price, or the markets for engines or medium- and heavy-duty trucks at any time." | RJN, Ex. 13 at 3. |
| 25. | In August 2025, Daimler represented to the Federal Trade Commission that it "will independently make decisions about the type and quantity of vehicles it sells without regard to whether those decisions are compliant with any restrictive terms of the CTP." | RJN, Ex. 11 at 2-3; *see also* RJN, Ex. 12 at 2. |
| 26. | In January 2025, manufacturers shipped 8.74% of their cumulative Class A recreation vehicles (RV) sales for the month to retailers in California. | RJN, Ex. 19 at 7. |
| 27. | In January 2025, manufacturers shipped 25.71% of their cumulative Class C RV sales for the month to retailers in California. | RJN, Ex. 19 at 7. |
| 28. | Manufacturers shipped more than 475 Class A RVs to retailers in California between January 2025 and December 2025. | RJN, Ex. 20 at 8. |
| 29. | Manufacturers shipped about 3,010 Class C RVs to retailers in California between January 2025 and December 2025. | RJN, Ex. 20 at 8. |
| 30. | As of May 27, 2026, the DeMartini RV Sales website lists at least 13 new Super C RVs for model years 2025 and 2026 as available for sale. | RJN, Ex. 58 at 1-13, 15-26, 29. |
| 31. | As of May 26, 2026, the DeMartini RV Sales website lists at least 8 new Class A RV models for model years 2025 and 2026 as available for sale. | RJN, Ex. 56 at 1-10; RJN, Ex. 57 at 1-3. |

3

| 32. | At least some signatory manufacturers to the CTP, including manufacturers of RV chassis and engines such as Daimler and Cummins, have invested in electric vehicle technology and infrastructure and have publicly committed to electrification targets. | DeMartini Decl., ¶ 4; RJN, Ex. 4 at 2; RJN, Ex. 25 at 35; RJN, Ex. 26 at 36. |
|---|---|---|
| 33. | After signing the CTP, PACCAR, a signatory manufacturer, stated that the agreement ensures a "balanced transition to zero emissions by ensuring continued supply of product into California." | RJN, Ex. 4 at 3. |
| 34. | From now through model year 2035, the CTP commits signatory manufacturers to gradual increases in zero-emission vehicle sales in California across medium- and heavy-duty vehicle categories. | Arneja Decl., ¶ 12 (filed concurrently). |
| 35. | Signatory manufacturers' zero-emission vehicle sales commitments vary by weight of the vehicle being sold. | Arneja Decl., ¶ 9. |
| 36. | A manufacturer of the RV chassis is typically the "manufacturer" of the vehicle for purposes of the zero-emission-vehicle sales commitments in the CTP. | *See* DeMartini Decl., ¶ 4; Arneja Decl., ¶ 8. |
| 37. | Class A RVs have gross vehicle weight ratings that would place them in the California Class 4-8 group for sales targets. | DeMartini Decl., ¶ 11; Arneja Decl., ¶ 11.b. |
| 38. | Class Super C RVs have gross vehicle weight ratings that would place them in the California Class 4-8 group for sales targets. | DeMartini Decl., ¶ 11; Arneja Decl., ¶ 11.a. |
| 39. | Volvo Group, a CTP signatory, produces a "fully electric" Class 8 truck. | RJN, Ex. 48 at 6; RJN, Ex. 49 at 1. |
| 40. | Sales of Volvo Group's electric Class 8 truck could meet Volvo's zero-emission vehicle commitments under the CTP for the Class 4-8 group. | Arneja Decl., ¶ 19. |
| 41. | Daimler, a CTP signatory, produces a "zero-emission" Class 4-5 truck. | RJN, Ex. 48 at 4; RJN, Ex. 51 at 3. |
| 42. | Sales of Daimler's zero-emission Class 4-5 truck could meet Daimler's zero-emission vehicle commitments under the CTP for the Class 4-8 Group. | Arneja Decl., ¶ 20. |

4

| 43. | Daimler has stated that its zero-emission Class 4-5 truck "address[es] a diverse range of customer use cases." | RJN, Ex. 25 at 35. |
|---|---|---|
| 44. | Daimler has stated that its zero-emission Class 4-5 truck "emphasize[s] [Daimler's] commitment to decarbonize the company-wide product portfolio." | RJN, Ex. 25 at 35. |
| 45. | Blue Bird, a non-CTP signatory, produces zero-emission school buses. | RJN, Ex. 48 at 4-6 & i; RJN, Ex. 53 at 4, 6. |
| 46. | IC Bus, a non-CTP signatory, produces zero-emission school buses. | RJN, Ex. 48 at 4-6 & i; RJN, Ex. 54 at 1-3. |
| 47. | Micro Bird, a non-CTP signatory, produces zero-emission school buses. | RJN, Ex. 48 at 4-6 & i; RJN, Ex. 55 at 1. |
| 48. | The school bus models referenced at rows 45-47 fit into Classes 4, 6, 7, and 8. | Arneja Decl., ¶ 21. |
| 49. | Sales of the school bus models referenced at rows 45-47 could support the zero-emission vehicle commitments under the CTP for the Class 4-8 Group. | Arneja Decl., ¶ 21. |
| 50. | THOR Industries, a non-CTP signatory, has developed a hybrid Class A RV that combines an electric chassis with a low-emission gasoline range extender. | RJN, Ex. 48 at 4-6 & i; Arneja Decl., ¶ 6. |
| 51. | Winnebago, a non-CTP signatory, has developed an all-electric Class B RV. | RJN, Ex. 48 at 4-6 & i; Arneja Decl., ¶ 6. |
| 52. | As of March 5, 2026, there are 134 models of zero-emission vehicles within the Class 4-8 group certified for sale in California for the current and prior two model years. | Arneja Decl., ¶ 22. |
| 53. | As of March 5, 2026, 39 manufacturers make models of zero-emission vehicles within the Class 4-8 group certified for sale in California for the current and prior two model years. | Arneja Decl., ¶ 22. |
| 54. | As of March 5, 2026, there are 53 models of zero-emission vehicles within the Class 2b-3 group certified for sale in California for the current and prior two model years. | Arneja Decl., ¶ 22. |
| 55. | As of March 5, 2026, 12 manufacturers make models of zero-emission vehicles within the Class 2b-3 group certified for sale in California for the current and prior two model years. | Arneja Decl., ¶ 22. |

5

| 56. | There are many medium- and heavy-duty zero-emission vehicles of different weight classes and functions certified for sale in California for the current and prior two model years. | Arneja Decl., ¶ 18-22. |
|---|---|---|
| 57. | In California, RV sales represent about 2.5% of total medium- and heavy-duty vehicle sales. | Arneja Decl., ¶ 5. |
| 58. | Under the CTP, a manufacturer could continue to sell internal-combustion engine RVs and still meet their zero-emission vehicle sales commitments through 2035 by, for example, selling a sufficient percentage of other zero-emission vehicle types within the same weight group (e.g., school buses or garbage trucks). | Arneja Decl., ¶¶ 15-18. |
| 59. | The signatories to the CTP spent months negotiating its terms. | Heroy-Rogalski Decl., ¶¶ 16-18. |
| 60. | In the course of negotiations for the CTP, the California Air Resources Board (CARB) proposed certain terms that were rejected by the other signatories. | Heroy-Rogalski Decl., ¶ 20. |
| 61. | The CTP's signatories do not include at least the following manufacturers of internal-combustion medium- and heavy-duty engines and trucks operating in California: Roush, Lanid, Renzo, Agility Powertrain Systems, and Powersolutions International. | Heroy-Rogalski Decl., ¶ 34. |
| 62. | After signing the CTP, EMA publicly stated that the CTP "demonstrates how EMA and CARB can work together to achieve their shared clean air goals." | RJN, Ex. 4 at 1. |
| 63. | After signing the CTP, Volvo publicly stated that the agreement reflected a "cooperative effort[]" between themselves and CARB. | RJN, Ex. 4 at 3. |
| 64. | On August 10, 2025, Daimler publicly stated that "through the CTP, [Daimler] was able to obtain benefits for its dealers and for customers of its trucks." | RJN, Ex. 11 at 2. |
| 65. | The CTP does not contain a term authorizing CARB to seek civil or criminal penalties in the event of another signatory's breach. | RJN, Ex. 48 at 1-3; *see also* Heroy-Rogalski Decl., ¶ 32. |

Def.'s Statement of Undisputed Facts (2:25-cv-03255-DC-AC)

| 66. | On October 27, 2025, CARB filed a suit in California state court against Daimler Truck North America LLC, International Motors LLC, PACCAR Inc., and Volvo Group North America LLC alleging, among other things, that these manufacturers breached their commitments under the CTP. | *CARB v. Daimler Truck North America LLC*, Case No. 25CV151420 (Cal. Sup. Ct.); *see also* RJN, Ex. 46 at 1, 3-5. |
|---|---|---|
| 67. | CARB has completed nearly all of its commitments under the CTP. | Heroy-Rogalski Decl., ¶ 40. |
| 68. | The only term of the CTP related to manufacturers' sales commitments under ACF is included at Appendix B, page ii, paragraph 2. | RJN, Ex. 48, App'x B at ii, ¶ 2. |
| 69. | The signatory manufacturers' commitments to sell vehicles consistent with the ACT requirements function independently of their commitments to sell vehicles consistent with the ACF 2036 sales requirement. | Heroy-Rogalski Decl., ¶ 31. |
| 70. | The signatory manufacturers' commitments to sell vehicles consistent with the Omnibus requirements function independently of their commitments to sell vehicles consistent with the ACF 2036 sales requirement. | Heroy-Rogalski Decl., ¶ 31. |
| 71. | If a federal agency fails to submit an action that one or more members of Congress believe is a "rule" subject to the Congressional Review Act (CRA), those members may ask the General Accounting Office (GAO) for a determination. | RJN, Ex. 27 at 23. |
| 72. | "[T]he question of whether Congress may use the CRA's fast-track parliamentary disapproval mechanism generally hinges upon the determination reached in GAO's opinion in such cases." | RJN, Ex. 27 at 23. |
| 73. | Before January 20, 2025, neither EPA nor any other agency or officer of the Executive Branch (including the President) had taken the position that a waiver of preemption issued under 42 U.S.C. 7543(b) is a "rule," as defined in 5 U.S.C. 804(3). | 75 Fed. Reg. 70,237, 70,241 (Nov. 17, 2010); 69 Fed. Reg. 59,920, 59,922 (Oct. 6, 2004); 84 Fed. Reg. 51,310, 51,352, 51,353, 51,360 (Sept. 27, 2019). |

7

| 74. | The GAO issued a decision in 2023 stating that a waiver of preemption issued under 42 U.S.C. 7543(b) is not a "rule," as defined in 5 U.S.C. 804(3). | RJN, Ex. 29 at 5. |
|---|---|---|
| 75. | Senator Mike Lee introduced a bill to repeal the Clean Air Act's waiver provision, 42 U.S.C. 7543(b), in September 2024. | RJN, Ex. 30. |
| 76. | When he introduced the bill referenced at row 75, Senator Mike Lee stated that waivers of preemption issued under 42 U.S.C. 7543(b) "cannot be reviewed under the Congressional Review Act" because they are not "rule[s] as that term is defined in the CRA." | RJN, Ex. 30. |
| 77. | House Representative Troy Nehls introduced a companion bill to the bill referenced at row 75 in September 2024. | RJN, Ex. 31 at 1. |
| 78. | When he introduced the bill referenced at row 77, House Representative Troy Nehls stated that "none of [California's waivers] are subject to congressional review." | RJN, Ex. 31 at 1. |
| 79. | EPA did not follow rulemaking procedures when considering California's requests for waivers for Advanced Clean Trucks and Omnibus. | 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023). |
| 80. | EPA did not issue proposed rules or proposed dispositions of California's requests for waivers for Advanced Clean Trucks and Omnibus. | 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023). |
| 81. | When EPA took final action, granting California's requests for waivers for Advanced Clean Trucks and Omnibus, it stated in the decision documents that "the Congressional Review Act, 5 U.S.C. 801 et seq., … does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3)." | 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023). |
| 82. | EPA did not submit a report to Congress or GAO of its waiver for Advanced Clean Trucks in April 2023 when that waiver took effect or when it was published in the Federal Register. | *See* RJN, Ex. 5 at 5. |

Def.'s Statement of Undisputed Facts (2:25-cv-03255-DC-AC)

| | | |
|---|---|---|
| 83. | No member of Congress asked GAO to determine whether EPA's unsubmitted waiver for Advanced Clean Trucks was a rule subject to the CRA. | *See* RJN, Ex. 5 at 5. |
| 84. | EPA did not submit a report to Congress or GAO of its waiver for Omnibus in January 2025 when that waiver took effect or when it was published in the Federal Register. | *See* RJN, Ex. 5 at 5. |
| 85. | No member of Congress asked GAO to determine whether EPA's unsubmitted waiver for Omnibus was a rule subject to the CRA. | *See* RJN, Ex. 5 at 5. |
| 86. | On February 14, 2025, President Trump and EPA Administrator Zeldin announced in the Oval Office that EPA would transmit to Congress the waiver decisions for the ACT and Omnibus rules, as though the decisions were "rules" subject to the CRA. | RJN, Ex. 33 at 1. |
| 87. | EPA provided no public process leading up to the announcement referenced at row 86, nor did EPA explain why it had suddenly reclassified the waivers as CRA "rules." | *See* RJN, Ex. 33 at 1-2; *see also* RJN, Ex. 5 at 2, 5-6. |
| 88. | Private parties developed a plan by which EPA would submit the waivers for ACT and Omnibus to GAO as if the waivers were rules subject to the CRA. | RJN, Ex. 34. |
| 89. | The parties who developed the plan referenced at row 88 did so because "[w]aivers take years to roll back through the administrative process" and "ordinary legislation … would have to overcome the 60-vote filibuster in the Senate." | RJN, Ex. 34. |
| 90. | The President and EPA Administrator followed the plan referenced at row 88 when they submitted the waivers for ACT and Omnibus to GAO as if the waivers were subject to the CRA. | RJN, Ex. 35 at 1. |

9

| 91. | The parties referenced at row 88 maintained that both GAO's determination and the statutory definition of "rule" were irrelevant because "the CRA's text … do[es] not bind," and "the CRA gives Congress unchallengeable power to invalidate any action that an agency submits for review." | RJN, Ex. 59 at 5, 10. |
|---|---|---|
| 92. | At the time of EPA's February 14, 2025, announcement, the waiver for the ACT rule had been published in the Federal Register almost two years earlier. | 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023). |
| 93. | At the time of EPA's February 14, 2025, announcement, the waivers for the ACT and Omnibus rules had taken effect. | 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023); 90 Fed. Reg. 643, 644 (Jan. 6, 2025). |
| 94. | Members of Congress responded to EPA's February 14, 2025 announcement by crediting "the Trump EPA['s]" submission of these waivers for "giving Congress the opportunity to reject California's effort to impose its EV mandate on all Americans." | RJN, Ex. 61. |
| 95. | Members of Congress responded to EPA's February 14, 2025 announcement by asserting that "Chairman Capito [of the Senate Environment and Public Works Committee] will work with her colleagues to use the Congressional Review Act process to protect consumers from these unrealistic requirements that were approved by the Biden administration." | RJN, Ex. 61. |
| 96. | EPA submitted the waivers for ACT and Omnibus to Congress and GAO on February 19, 2025. | RJN, Ex. 5 at 1 n.1. |
| 97. | Neither EPA nor President Trump made the submissions referenced at row 96 public. | *See* RJN, Ex. 5 at 1 n.1. |
| 98. | The submissions referenced at row 96 described the three waiver decisions as "actions" and "Notice[s] of Decisions," rather than "rules." | RJN, Ex. 5 at 1 & n.1. |

Def.'s Statement of Undisputed Facts (2:25-cv-03255-DC-AC)

| 99. | GAO observed that EPA "did not explain … why the agency was submitting the notices" referenced at row 96 under the CRA "given its statement in each notice that CRA did not apply." | RJN, Ex. 5 at 6. |
|---|---|---|
| 100. | GAO "reached out to EPA on February 20, 2025, for clarification on the submission of the Notices of Decision" because "the notices themselves stated that CRA did not apply." | RJN, Ex. 5 at 2. |
| 101. | On February, 25, 2025, GAO followed up with "a formal letter … seeking factual information and the agency's legal views on this matter." | RJN, Ex. 5 at 2. |
| 102. | On February 21, 2025, three Senators requested that the GAO provide its legal opinion about whether the waivers for ACT and Omnibus were rules subject to the CRA. | RJN, Ex. 5 at 1. |
| 103. | Senator Capito said of EPA's submissions of the waivers for ACT and Omnibus to Congress: "Once they submitted it to us, it's a rule. … [And] we can take it down." | *See* RJN, Ex. 36 at 2. |
| 104. | On February 27, 2025, EPA resubmitted the Notices of Decision for the ACT and Omnibus waivers to Congress and GAO, now relabeling them as "rules." | RJN, Ex. 5 at 2. |
| 105. | EPA's February 27, 2025 submission "still did not address the statements in the notices regarding the inapplicability of the CRA." | RJN, Ex. 5 at 2. |
| 106. | On March 6, 2025, GAO issued its legal analysis, concluding (as before) that Clean Air Act preemption waiver actions are not subject to the CRA. | RJN, Ex. 5 at 6, 9. |
| 107. | In the legal analysis referenced at row 106, GAO concluded that the waiver decisions for the ACT and Omnibus rules meet "the APA definition of an order," not of a rule, because they make preemption determinations—i.e., "'final disposition[s]' granting California a 'form of permission' as described in the APA definition" of "order." | RJN, Ex. 5 at 6-9. |

11

| 108. | In the legal analysis referenced at row 206, GAO reiterated its prior conclusion that, even if waiver decisions were rules, they would still not be subject to the CRA because they are not rules of general applicability. | RJN, Ex. 5 at 6-9. |
|---|---|---|
| 109. | In the legal analysis referenced at row 106, GAO concluded that waiver decisions "concern[] a specific entity—California—and address[] a statutory waiver specific to California's [program]." | RJN, Ex. 5 at 6-9. |
| 110. | On April 2, 2025, members of the House introduced two joint resolutions, each that would disapprove of the preemption waivers for the ACT and Omnibus rules. | H.R.J. Res. 87, 89, 119th Cong. (2025) (enacted). |
| 111. | The Senate Parliamentarian is traditionally "the sole definitive arbiter[] of the CRA parliamentary mechanism" in that chamber. | RJN, Ex. 28 at 18; *see also* Jonathan S. Gould, *Law Within Congress*, 129 Yale L. J. 1946, 1959 (2020). |
| 112. | The question of the CRA's applicability to the joint resolutions was presented to the Senate Parliamentarian. | RJN, Ex. 37 at 2-4. |
| 113. | Senate Majority Leader John Thune responded to questions in January 2025 about possibly overriding the Senate Parliamentarian with "[w]e can't go there." | RJN, Ex. 37 at 4. |
| 114. | The Senate Parliamentarian reached a decision on the question of whether the waiver decisions for the ACT and Omnibus rules were subject to the CRA. | RJN, Ex. 38 at 1; RJN, Ex. 39 at 1. |
| 115. | Although the Senate Parliamentarian decision referenced at row 114 was not made public, it was widely reported as occurring on April 4, 2025. | RJN, Ex. 38 at 1-2; RJN, Ex. 39 at 1. |
| 116. | Although the Senate Parliamentarian decision referenced at row 114 was not made public, it was widely reported as agreeing with the GAO that Clean Air Act preemption waiver decisions are not subject to the CRA. | RJN, Ex. 38 at 1-2; RJN, Ex. 39 at 1. |

12

| 117. | Despite the GAO and Senate Parliamentarian determinations, House members proceeded to consider legislation that would purport to disapprove the waiver decisions for the ACT and Omnibus rules. | RJN, Ex. 40 at 1. |
|---|---|---|
| 118. | The only explanation provided by House members for departing from the practice that "the GAO … has historically decided what can be considered a rule under the CRA" was the fact that EPA submitted the waivers to Congress. | RJN, Ex. 40 at 2. |
| 119. | In a press release dated April 3, 2025, House Energy and Commerce Chair Guthrie stated: "'By submitting the three California waivers to Congress, Administrator Zeldin is ensuring that Congress has oversight of these major rules that impact every American.'" | RJN, Ex. 41 at 1. |
| 120. | In a press release dated May 2, 2025, the sponsors of the legislation purporting to use the CRA to disapprove of the waivers for the ACT and Omnibus rules attributed their ability to do so to the actions of the Executive Branch, | RJN, Ex. 42 at 1. |
| 121. | Despite the GAO and Senate Parliamentarian determinations referenced in rows 106-09 and 114-16, leaders in the Senate proceeded with votes on the legislation referenced in row 121. | RJN, Ex. 43 at 1-2. |
| 122. | Senate proponents of the legislation referenced in row 121 did not identify any errors or other basis for disagreeing with the GAO or the Senate Parliament determinations referenced in rows 106-09 and 114-16. | RJN, Ex. 43 at 1-2. |
| 123. | "Points of order" are the mechanism by which Senators may enforce the Senate's legislative rules and precedents. | RJN, Ex. 44 at 1. |

13

| 124. | When a Senator believes that one of the Senate's legislative rules and precedents is, or is about to be, violated, that member can introduce a point of order to obtain a decision whether or not the action of another member would violate or have violated the Senate's internal rules. | RJN, Ex. 44 at 1. |
|---|---|---|
| 125. | The same day that the Senate passed the joint resolutions purporting to disapprove the preemption waivers for the ACT and Omnibus rules, EPA described the resolutions as preventing a "single state" from imposing "its radical agenda." | RJN, Ex. 45 at 1-2. |

Dated:  May 27, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General


*/s/ Cecilia D. Segal*
CECILIA D. SEGAL
Deputy Attorney General
*Attorneys for Defendant*

14