ROB BONTA
Attorney General of California
MYUNG J. PARK, State Bar No. 210866
Supervising Deputy Attorney General
BENJAMIN P. LEMPERT, State Bar No. 344239
M. ELAINE MECKENSTOCK, State Bar No. 268861
DAVID M. MEEKER, State Bar No. 273814
JONATHAN A. WIENER, State Bar No. 265006
CECILIA D. SEGAL, State Bar No. 310935
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone: (415) 510-3545
 Fax: (415) 703-1107
 E-mail: cecilia.segal@doj.ca.gov
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE**, <br><br> Plaintiff, <br><br> **v.** <br><br> **STEVEN S. CLIFF,** in his official capacity as the Executive Officer of the California Air Resources Board, <br><br> Defendant. | 2:25-cv-03255-DC-AC <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS** <br><br> Judge: Hon. Dena Coggins <br> Courtroom: 10, 13th Floor <br> Date: None Set <br> Action Filed: December 16, 2024 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
STATEMENT OF UNDISPUTED FACTS**

Pursuant to Rule 56(a) and (c) of the Federal Rules of Civil Procedure and Local Rule 260(b), Defendant Steven S. Cliff, in his official capacity as Executive Officer of the California Air Resources Board (Defendant Cliff), respectfully submits this response to Plaintiff American Free Enterprise Chamber of Commerce's (AmFree's) Statement of Undisputed Facts.

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 1. | Defendant Steven S. Cliff is the Executive Officer of the California Air Resources Board ("CARB") and its highest-ranking administrative officer. Third Am. Compl. ¶ 40 ("Compl."), ECF No. 142; Cliff's Answer ¶ 40 ("Ans."), ECF No. 162. | Undisputed that Steven S. Cliff is currently the Executive Officer of CARB. <br><br> Disputed to the extent that AmFree seeks to establish more, as the term "highest-ranking administrative officer" is vague and ambiguous. Ans. ¶ 40. |
| 2. | On July 5, 2023, Cliff executed the "Clean Truck Partnership" agreement (the "Partnership") with the Truck & Engine Manufacturers Association and Cummins Inc.; Daimler Truck North America; Ford Motor Co.; General Motors Co.; Hino Motors Limited, Inc.; Isuzu Technical Center of America, Inc.; Navistar, Inc.; PACCAR Inc.; Stellantis N.V.; and Volvo Group North America. Compl. ¶¶ 2–3, 100; Ans. ¶¶ 2–3, 100. | Undisputed that Defendant Cliff signed the Partnership on July 5, 2023 and that the referenced entities also signed the agreement on or before that date, rendering it fully executed on July 5, 2023. <br><br> Disputed to the extent AmFree seeks to establish more about the Partnership as alleged in paragraphs 3 and 100 of its Complaint. Paragraphs 3 and 100 contain AmFree's characterizations of and contentions about the Partnership, which speaks for itself, as well as AmFree's legal conclusions, which Defendant Cliff refutes. Ans. ¶¶ 3, 100. |
| 3. | A true and correct copy of the Partnership is attached as Exhibit A to Plaintiff's complaint. Compl., Ex. A, ECF No. 142-2; Compl. ¶¶ 2–3, 100; Ans. ¶¶ 2–3, 100. | Undisputed, except that the copy attached as Exhibit A to the Complaint does not include the signature page for Ford Motor Co. A true and correct copy of the Partnership including this signature page is attached as Exhibit 48 to Defendant Cliff's Request for Judicial Notice (RJN), filed concurrently with these papers. |

1

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 4. | The Partnership purports to require on-road medium- and heavy-duty motor vehicle manufacturers to comply with certain California regulations adopted by CARB, including CARB's Advanced Clean Trucks ("ACT") regulation, the Omnibus Low NOx ("Omnibus") regulation, and the Advanced Clean Fleets ("ACF") requirement codified in Cal. Code Regs. tit. 13, § 2016(c). Compl., Ex. A at 10–11; Ans. ¶¶ 92, 94. | Disputed. The Partnership speaks for itself and provides the best evidence of its contents, and neither paragraph 92 nor paragraph 94 of Defendant Cliff's Answer is relevant to this purported fact. Specifically disputed on the grounds that the Partnership is a voluntary agreement, and so any "requirement" the signatory manufacturers face are the bargained-for and agreed-upon terms of the agreement. Heroy-Rogalski Decl., ¶¶ 27, 35 |
| 5. | The Partnership aims to ensure, in part, that these regulations will "achieve significant reductions of air pollutants from [on-road heavy-duty vehicles]." Compl., Ex. A at 2. | Undisputed that the quoted language appears in the Partnership.<br><br>Disputed to the extent that AmFree seeks to establish more, including by characterizing the quoted language as an "aim" of the Partnership and by omitting the other four items in the list. The text of the Partnership speaks for itself and is the best evidence of its own contents. |
| 6. | The Partnership aims to ensure, in part, a "transition of the [on road heavy-duty] commercial vehicle industry to zero-emissions." Compl., Ex. A at 2. | Undisputed that the quoted language appears in the Partnership.<br><br>Disputed to the extent that AmFree seeks to establish more, including by characterizing the quoted language as an "aim" of the Partnership or by omitting the other four items in the list. The text of the Partnership speaks for itself and is the best evidence of its own contents. |

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 7. | EPA initially granted a waiver of Clean Air Act preemption for the ACT rule in 2023. Compl. ¶ 63; Ans. ¶ 63; 88 Fed. Reg. 20,688 (Apr. 6, 2023). | Undisputed that EPA waived preemption for the ACT regulation's amendments to California's vehicle emission program and published a notice of that decision in the Federal Register on April 6, 2023. 88 Fed. Reg. 20,688 (Apr. 6, 2023).<br><br>Disputed as to the date of EPA's action, which was March 30, 2023, 88 Fed. Reg. at 20,726, and to the extent AmFree seeks to establish anything more than the date of Federal Register publication. |
| 8. | Congress and the President enacted joint resolutions disapproving the waiver for the ACT rule in June 2025. Compl. ¶ 72; Ans. ¶ 72; Pub. L. No. 119-15, 139 Stat. 65 (2025). | Undisputed that Congress enacted a joint resolution purporting to disapprove the waiver for the ACT rule and that the President signed that resolution in June 2025. Ans. ¶ 72.<br><br>Disputed as to anything else AmFree attempts to establish with this fact, including the legal effect of the resolution. Ans. ¶ 72. |
| 9. | EPA initially granted a waiver of Clean Air Act preemption for the Omnibus rule in early 2025. Compl. ¶ 86; Ans. ¶ 86; 90 Fed. Reg. 643 (Jan. 6, 2025). | Undisputed that EPA waived preemption for the Omnibus regulation's amendments to California's vehicle emission program and published a notice of that decision in the Federal Register on January 6, 2025. 90 Fed. Reg. 643 (Jan. 6, 2025).<br><br>Disputed as to the date of EPA's action, which was December 17, 2024, 90 Fed. Reg. at 644, and to the extent AmFree seeks to establish anything other than the date of Federal Register publication. |
| 10. | Congress and the President enacted joint resolutions disapproving the waiver for the Omnibus rule in June 2025. Compl. ¶ 90; Ans. ¶ 90; Pub. L. No. 119-17, 139 Stat. 67 (2025). | Undisputed that Congress enacted a joint resolution purporting to disapprove the waiver for the Omnibus rule and that the President signed that resolution in June 2025. Ans. ¶ 90.<br><br>Disputed as to anything else AmFree attempts to establish with this fact, including the legal effect of the resolution. Ans. ¶ 90. |

Def.'s Resp. to Pl.'s Statement of Undisputed Facts (2:25-cv-03255-DC-AC)

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 11. | EPA has not granted a waiver of Clean Air Act preemption for California to implement the ACF requirement codified in Cal. Code Regs. tit. 13, § 2016(c). Compl. ¶¶ 95, 97, 169; Ans. ¶¶ 95, 97, 169. | Undisputed that EPA has not yet waived Clean Air Act preemption for California to enforce the ACF requirement codified in Cal. Code Regs. tit. 13, § 2016(c). Ans. ¶ 169.<br><br>Disputed to the extent AmFree seeks to establish more, including the allegations in paragraph 169 of the Complaint or any legal conclusions. Ans. ¶ 169. |
| 12. | New motor vehicles equipped with internal-combustion engines do not qualify as "zero-emissions vehicles" under the ACT or ACF rules because unlike battery-electric vehicles, they have exhaust emissions. *See* Cal. Code Regs. tit. 13, §§ 1963.1, 2016(c). Compl. ¶¶ 52, 53, 174; Ans. ¶¶ 52, 53, 174; Compl., Ex. E at 3–4 ("Collins Decl."), ECF No. 142-6. | Undisputed that the definitions of "zero-emission vehicle" under the ACT and ACF rules require zero exhaust emissions of any criteria pollutant (or precursor pollutant) or greenhouse gas under any possible operational modes or conditions," Cal. Code Regs. tit. 13, §§ 1963(c), 2016(b), and that new motor vehicles equipped with internal-combustion engines do not, as of the date of this filing, meet that definition.<br><br>Disputed to the extent AmFree seeks to establish more about the ACT or ACF rules, as alleged in paragraphs 52, 53, and 174 of the Complaint and pages 3-4 of the Collins declaration. Paragraph 174 of the Complaint and pages 3-4 of the Collins declaration contain AmFree's characterizations of and contentions about the ACT and ACF rules, which speak for themselves, as well as AmFree's legal conclusions, which Defendant Cliff refutes. Ans. ¶ 174. Other portions of pages 3-4 of the Collins declaration and the entirety of paragraphs 52 and 53 of the Complaint are irrelevant to the purported fact. |

4

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 13. | The ACT and ACF regulations would reduce the market share of new medium- and heavy-duty motor vehicles equipped with internal-combustion engines. Collins Decl. at 3–4, 6. | Undisputed that the ACT rule requires gradual increases in sales of medium- and heavy-duty ZEVs in California beginning with model year 2024. Undisputed that the 2036 sales requirement in the ACF rule requires that all medium- and heavy-duty vehicles sold in the State be zero emission beginning with model year 2036.<br><br>Disputed to the extent AmFree seek so to establish more about the ACT or ACF rules. The purported fact asserted contains AmFree's characterizations of and contentions about the ACT and ACF rules, which speak for themselves, and relies on a term, "market share," that is vague and ambiguous. *See* Ans. ¶¶ 65, 139.<br><br>Further disputed that the purported fact concerns the Partnership, which applies only to its signatories, RJN, Ex. 48 at 1, 4-6 & i, as opposed to the ACT and ACF rules, which apply to *any* manufacturer that certifies on-road vehicles over 8,500 lbs. gross vehicle rating for sale in California, Cal. Code Regs., tit. 13, §§ 2016(a), 1963(b). |
| 14. | It is a basic economic principle that reduced supply leads to increased prices for consumers. Collins Decl. at 6–7. | Disputed. Economic principles are not facts. *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 272 (1978). Further disputed because the purported fact is vastly oversimplified, as many factors play into firms' pricing decisions. *E.g.*, *Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069, 1083 (9th Cir. 2025) ("In a competitive market, a firm's incentive to make more money by raising prices is tempered by price competition as individual firms attempt to capture greater market share." (cleaned up)). |

Def.'s Resp. to Pl.'s Statement of Undisputed Facts (2:25-cv-03255-DC-AC)

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 15. | Prices for some heavy-duty motor vehicles have increased since July 2023, when the Partnership was fully executed. Compl. ¶¶ 6, 151; Ans. ¶¶ 6, 151. | Undisputed that prices for some heavy-duty motor vehicles have increased since July 2023.<br><br>Disputed to the extent that AmFree seeks to establish more, such as by suggesting that any purported increase in price is attributable to the CTP rather than other factors. Further disputed to the extent AmFree seeks to include other allegations from paragraphs 6 and 151 of the Complaint, which go beyond the purported fact asserted and include AmFree's legal conclusions about the Partnership, which Defendant Cliff refutes. Ans. ¶¶ 6, 151. |
| 16. | CARB's official website summarizing ACT credits shows the total number of tractors and "ZEV" tractor sales. *Compare ACT 2023 Summary*, CARB (May 22, 2024), https://perma.cc/VLV4-2XC4, *with ACT 2024 Summary*, CARB (July 8, 2025), https://perma.cc/R4V7-LTDD. | Undisputed that the first website shows a summary of California vehicle sales data for 2023 reported by manufacturers in the Advanced Clean Trucks Reporting System as of May 22, 2024; and the second website shows a summary of California vehicle sales data for 2024 reported by manufacturers in the Advanced Clean Trucks Reporting System as of March 30, 2025. Defendant Cliff notes that not all manufacturers who sell vehicles in California are required to report through this system, as the first link cited by AmFree reflects. *See* https://perma.cc/VLV4-2XC4 ("Manufacturers that annually produce and deliver for sale 500 or fewer medium- and heavy-duty vehicles into California may elect to *voluntarily* report….") emphasis added)). |

6

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 17. | In model year 2023, manufacturers produced and delivered 12,863 tractors for sale in California, of which 354 were ZEVs. *ACT 2023 Summary*, *supra*. [FN 2] This Court has already taken judicial notice of this website. *Daimler Truck N. Am. LLC v. CARB*, No. 2:25-cv-2255, 2025 WL 3049944, at *13 n.21 (E.D. Cal. Oct. 31, 2025). | Undisputed that manufacturers reported producing and delivering 12,863 Class 7-8 tractors for sale in California in model year 2023, of which 354 were ZEVs. As above, Defendant Cliff notes that not all manufacturers who sell vehicles in California are required to report through this system. |
| 18. | In model year 2024, manufacturers produced and delivered 2,623 tractors for sale in California, of which 422 were ZEVs. *ACT 2024 Summary*, *supra*. | Undisputed that manufacturers reported producing and delivering 2,623 Class 7-8 tractors for sale in California in model year 2024, of which 422 were ZEVs. As above, Defendant Cliff notes that not all manufacturers who sell vehicles in California are required to report through this system. |
| 19. | CARB was informed by heavy-duty motor vehicle manufacturers that they would implement California's regulations by requiring motor vehicle dealers to purchase electric vehicles. Compl. ¶ 152; Ans. ¶ 152. | Undisputed that CARB was told in 2024 that some heavy-duty vehicle manufacturers had informed some of their California customers that the manufacturer might require those customers to purchase zero-emission vehicles in order to also purchase internal-combustion vehicles.<br><br>Disputed to the extent AmFree seeks to establish more, including that the alleged conduct is ongoing as well as any other allegations from paragraph 152 of the Complaint, which goes beyond the purported fact asserted and includes AmFree's legal conclusions about the Partnership, which Defendant Cliff refutes. Ans. ¶ 152. |
| 20. | Plaintiff AmFree is a 501(c)(6) membership organization founded in 2022. Compl. ¶ 27; Ans. ¶ 27. | Undisputed that AmFree is a 501(c)(6) organization founded in 2022 that refers to itself as a "membership association." Collins Decl. ¶¶ 1, 2; Ans. ¶ 27. Disputed to the extent AmFree seeks to establish more or means something else by the use of the word "membership organization." |

7

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 21. | AmFree's members include companies that own, operate, sell, or lease medium- and heavy-duty vehicles. Collins Decl.; *see also* Compl., Ex. B ("Meiborg Decl."), ECF No. 142-3; Compl., Ex. C ("Riggan Decl."), ECF No. 142-4; Compl., Ex. D ("DeMartini Decl."), ECF No. 142-5. | Undisputed. |
| 22. | AmFree's fleet members generally would prefer to purchase internal-combustion vehicles and do not believe that electric vehicles are suitable for their business needs. Collins Decl. at 6–7; *see, e.g.*, Meiborg Decl. at 4–6; Riggan Decl. at 3–4. | Undisputed that in declarations dated December 13, 2024, and December 16, 2024, respectively, declarants for AmFree members Meiborg Brothers, Inc. and Tan Tara Transportation Corp. stated that that they preferred to purchase internal-combustion vehicles and did not believe that electric vehicles were suitable for their business needs.<br><br>Disputed on the grounds that AmFree identifies only these two "fleet" members, one of whom has publicly acknowledged that "[e]lectric trucks are on the rise" in part because of their "lower operating costs." RJN, Ex. 15 at 3. Further disputed on the ground that the relevant portion of the Collins Declaration is dated, is hearsay, and, in any event, acknowledges—by the use of the word "many"—that some AmFree "fleet" members have reached the opposite conclusion about electric vehicles. Collins Decl., ¶ 7. |

8

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 23. | Some AmFree members sell heavy-duty vehicles at retail. Collins Decl. at 6; DeMartini Decl. at 3–4. | Undisputed that DeMartini RV Sales is an AmFree member and sells recreational vehicles, some of which qualify as heavy-duty vehicles, at retail. Undisputed that Mr. Collins' declaration (at page 5) uses the plural "members" in asserting that some AmFree members sell heavy-duty vehicles at retail.<br><br>Disputed to the extent AmFree intends to establish more, including that AmFree has identified more than one member who sells heavy-duty vehicles at retail *in California*. *See* Compl., ¶¶ 128-30. |
| 24. | AmFree member DeMartini RV sells motor homes in California, including motor homes equipped with RV chassis regulated under the ACT and Omnibus rules. DeMartini Decl. at 3–4, 7. | Undisputed. |
| 25. | "There are presently no electric powertrain options for RV chassis" in California. DeMartini Decl. at 7. | Undisputed that, at the time of this filing, there are no RVs for consumer purchase in California that utilize an electric powertrain.<br><br>Disputed to the extent AmFree seeks to establish that no electric powertrain options for RV chassis exist. Winnebago has designed a fully electric Class B RV that is undergoing field testing, and Harbinger has developed a Class A hybrid motorhome that uses an electric chassis and low-emission gasoline range extender. Arneja Decl., ¶ 6. |

9

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 26. | Enforcement of the Partnership will constrain the supply of RV chassis, and thus motorhomes, limiting DeMartini RV's inventory, increasing motor home prices and decreasing DeMartini RV's retail sales. DeMartini Decl. at 7–10. | Disputed. The asserted statement rests on several unsupported assumptions. In particular, AmFree ignores that signatory manufacturers have substantial flexibility in how they meet their zero-emission vehicle sales commitments under the CTP. Arneja Decl., ¶¶ 12-14. Given these flexibilities, and because RVs make up a very small share of the California medium- and heavy-duty vehicle market (and of manufacturers' own sales), signatories can continue to sell combustion-engine RV chassis through 2035. *Id.*, ¶¶ 5, 15-17. AmFree also ignores that electric RV chassis and ZEV RV models are already in development and are expected to be commercially available across all weight classes by 2036, if not sooner; that not all RV chassis manufacturers are signatories to the Partnership; and that signatories to the Partnership have publicly committed to electrifying their products independent of the Partnership's terms. *Id.*, ¶¶ 6, 23; *see also* RJN, Ex. 4 at 2; RJN, Ex. 25 at 35; RJN, Ex. 26 at 36. |
| 27. | DeMartini RV has already experienced chassis supply restrictions and higher prices from suppliers following the Partnership. DeMartini Decl. at 8–9. | Disputed. Mr. DeMartini speculated that his RV sales in 2025 would be affected based primarily on a single, unidentified manufacturer's alleged response to the ACT and Omnibus *regulations*, not the *Partnership*. DeMartini Decl., ¶ 14. Mr. DeMartini has not updated his declaration to account for actual sales in 2025, and industry-wide statistics show that manufacturers shipped significant volumes of RVs to California throughout 2025. RJN, Ex. 19 at 7; RJN, Ex. 20 at 8. As of the date of this filing, the DeMartini website lists at least 13 new Super C models and at least 8 new Class A models available for sale for model years 2025 and 2026. RJN, Exs. 56-58. Finally, Mr. DeMartini fails to account for the fact that not all RV chassis manufacturers are signatories to the Partnership or for the disavowal of several |

10

| No. | Plaintiff's Statement of Undisputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| | | signatory manufacturers—including Daimler, whose subsidiary Freightliner supplies RV chassis, DeMartini Decl., ¶ 4—of their commitments under the Partnership and their assertion, in a court-filed stipulation, that the Partnership "had *no impact* on product availability, price, or the markets for engines or medium- and heavy-duty trucks *at any time*." RJN, Ex. 13 at 3 (emphasis added). |

Dated:  May 27, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Acting Supervising Deputy
Attorney General


 /s/ Cecilia D. Segal
CECILIA D. SEGAL
Deputy Attorney General

*Attorneys for Defendant*

11