# Exhibit 9

# Titles 13 and 17. California Air Resources Board

## Notice of Public Hearing to Consider Proposed Amendments to the On-Road Heavy-Duty Engine and Vehicle Omnibus, Low Carbon Fuel Standard Regulations, and to Permanently Adopt the Emergency Vehicle Emissions Regulations.

The California Air Resources Board (CARB or Board) will conduct a public hearing at the date and time noted below to consider approving proposed amendments to the On-Road Heavy-Duty Engine and Vehicle Omnibus Regulation, the Low Carbon Fuel Standard (LCFS), and to propose permanently adopting the Emergency Vehicle Emissions Regulations that CARB previously noticed as an emergency rulemaking on September 15, 2025.

CARB is proposing these Omnibus amendments, LCFS amendments, and permanent adoption of its Emergency Vehicle Emissions Regulations together as one rulemaking for administrative efficiency, but the Omnibus and Associated Amendments, LCFS Amendments, and Emergency Vehicle Emissions Regulations are three separate regulatory items proposed for approval.

Date:  November 20, 2025

Time:  9:00 A.M.

In-Person Location:

California Air Resources Board
Byron Sher Auditorium
1001 I Street, Sacramento, California 95814

Remote Option:

Zoom

This public meeting may continue at 9:00 a.m. on November 21, 2025. Please consult the public agenda, which will be posted ten days before the November 20, 2025, Board Meeting, for important details, including the day on which this item will be considered and how the public can participate via Zoom if they choose to be remote.

## Written Comment Period and Submittal of Comments

In accordance with the Administrative Procedure Act, interested members of the public may present comments orally or in writing during the hearing and may provide comments by postal mail or by electronic submittal before the hearing. The public comment period for this regulatory action will begin on September 26, 2025. Written comments not submitted during the hearing must be submitted on or after September 26, 2025, and received **no later than November 10, 2025**. Comments submitted outside that comment period are considered untimely. CARB may, but is not required to, respond to untimely comments, including those raising significant environmental issues. The Board also encourages members of the public to bring to the attention of staff, in advance of the hearing, any suggestions for modification of the proposed regulatory action. Comments submitted in advance of the hearing must be addressed to one of the following:

> Postal mail:   Clerks' Office, California Air Resources Board
> 1001 I Street, Sacramento, California 95814

> Electronic submittal: https://ww2.arb.ca.gov/lispub/comm/bclist.php

Please note that under the California Public Records Act (Government Code section 7920.000 et seq.), your written and oral comments, attachments, and associated contact information (e.g., your address, phone, email, etc.) become part of the public record and can be released to the public upon request.

Additionally, the Board requests but does not require that persons who submit written comments to the Board reference the title of the proposal in their comments to facilitate review.

## Authority and References

The Omnibus regulatory action is proposed under the authority granted in California Health and Safety Code, sections 38501, 38505, 38510, 38560, 38580, 39010, 39500, 39600, 39601, 39602.5, 39614, 39658, 39667, 40000, 43000.5, 43013, 43016, 43018, 43100, 43101, 43102, 43104, 43105, 43105.5, 43106, 43154, 43200, 43200.1, 43204, 43205, 43205.5, 43211, 43212, 43214, and 43806; and California Vehicle Code section 28114. The Omnibus action is proposed to implement, interpret, and make specific sections 38501, 38505, 38510, 38560, 38580, 39010, 39500, 39600, 39601, 39602.5, 39614, 39658, 39667, 40000, 43000.5, 43013, 43016, 43018, 43100, 43101, 43102, 43104, 43105, 43105.5, 43106, 43154, 43200, 43200.1, 43204, 43205, 43205.5, 43211, 43212, 43214, and 43806 of the California Health and Safety Code; and California Vehicle Code section 28114.

The LCFS regulatory action is proposed under the authority granted in California Health and Safety Code, sections 38510, 38530, 38560, 38560.5, 38562.2, 38571, 38580, 39600, 39601, 41510, 41511, and 43018. The LCFS regulatory amendments are proposed to implement, interpret, and make specific sections 38501, 38510, 38571, 38580, 39000, 39001, 39002, 39003, 39515, 39516, 41510, 41511, and 43000 of the Health and Safety Code; section

25000.5 of the Public Resources Code; 42 U.S.C. section 7545; *and Western Oil and Gas Ass'n v. Orange County Air Pollution Control District*, 14 Cal.3d 411, 121 Cal.Rptr. 249 (1975).

The Emergency Vehicle Emissions regulatory action is proposed under the authority granted in California Health and Safety Code, sections 38501, 38505, 38510, 38560, 39002, 39003, 39010, 39500, 39600, 39601, 39602.5, 39614, 39658, 39667, 40000, 43000.5, 43013, 43016, 43018, 43100, 43101, 43102, 43104, 43105, 43105.5, 43106, 43154, 43200, 43200.1, 43204, 43205, 43205.5, 43210, 43211, 43212, 43214, 43600 and 43806, and Vehicle Code sections 27156 and 28114. This action is proposed to implement, interpret, and make specific sections 38501, 38505, 38510, 38560, 38562, 38580, 39002, 39003, 39010, 39500, 39600, 39601, 39602.5, 39614, 39658, 39667, 40000, 43000, 43000.5, 43013, 43016, 43018, 43018.5, 43100, 43101, 43102, 43104, 43105, 43105.5, 43106, 43107, 43154, 43200, 43200.1, 43204, 43205, 43205.5, 43211, 43212, 43214, 43600 and 43806 of the California Health and Safety Code; and California Vehicle Code section 28114.

# Informative Digest of Proposed Action and Policy Statement Overview (Gov. Code, § 11346.5, subd. (a)(3))

## Sections Affected

Proposed amendments to California Code of Regulations, title 13, sections: 1900, 1956.8, 1961.2, 1961.3, 1962.2, 1962.3, 1965, 1968.2, 1968.5, 1969, 1971.1, 1971.5, 1976, 1978, 2035, 2036, 2037, 2038, 2039, 2040, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2121, 2123, 2125, 2126, 2127, 2128, 2129, 2130, 2131, 2133, 2137, 2139, 2139.5, 2140, 2141, 2142, 2143, 2144, 2145, 2146, 2147, 2148, 2149, 2166, 2166.1, 2167, 2168, 2169, 2169.1, 2169.2, 2169.3, 2169.4, 2169.5, 2169.6, 2169.7, 2169.8, 2170, 2317, 2423, 2485, and 2903.

Proposed adoption of new sections 1900.0.1, 1956.8.1, 1956.8.2, 1961.2.1, 1961.3.1, 1962.2.1, 1962.3.1, 1965.0.1, 1968.2.1, 1968.5.1, 1969.0.1, 1971.1.1, 1971.5.1, 1976.0.1, 1978.0.1, 2035.0.1, 2036.0.1, 2037.0.1, 2038.0.1, 2040.0.1, 2111.0.1, 2112.0.1, 2113.0.1, 2114.0.1, 2115.0.1, 2116.0.1, 2117.0.1, 2118.0.1, 2119.0.1, 2121.0.1, 2123.0.1, 2125.0.1, 2126.0.1, 2127.0.1, 2128.0.1, 2129.0.1, 2130.0.1, 2131.0.1, 2133.0.1, 2137.0.1, 2139.0.1, 2140.0.1, 2141.0.1, 2142.0.1, 2143.0.1, 2144.0.1, 2145.0.1, 2146.0.1, 2147.0.1, 2148.0.1, 2149.0.1, 2317.0.1, 2423.0.1, 2485.0.1, 2903.0.1  in title 13 of the California Code of Regulations.

Proposed amendments to California Code of Regulations, title 17, sections 95300, 95301, 95302, 95303, 95304, 95305, 95306, 95307, 95308, 95309, 95310, 95311, 95312, 95481, 95488.8, 95660, 95661, 95662, and 95663, and 95664.

Proposed adoption of new sections 95300.0.1, 95301.0.1, 95302.0.1, 95303.0.1, 95304.0.1, 95305.0.1, 95306.0.1, 95307.0.1, 95308.0.1, 95309.0.1, 95310.0.1, 95311.0.1, 95312.0.1, 95660.0.1, 95661.0.1, 95662.0.1, 95663.0.1, and 95664.0.1.

## Documents Incorporated by Reference (Cal. Code Regs., tit. 1, § 20, subd. (c)(3))

See APPENDIX A: Documents Incorporated by Reference.

# Background and Effect of the Proposed Regulatory Actions

## Existing Omnibus Regulatory Requirements

On-road heavy-duty (HD) vehicles operate throughout California and are an essential part of the state's economy; they include long-haul trucks, drayage trucks, transit buses, refuse trucks, and other commercial work vehicles. According to California's emissions inventory model,[1] almost one million HD vehicles operate on California roads each year. These vehicles are significant sources of oxides of nitrogen (NOx), particulate matter (PM), and greenhouse gas emissions. In 2024, HD vehicles were the largest NOx emissions source category in the state, contributing 21% of all statewide NOx emissions.[2]

In March 2017, CARB adopted the 2016 State Strategy for the State Implementation Plan.[3] This document describes the measures needed to achieve the reductions necessary from mobile sources, fuels, and consumer products to meet federal ozone and PM with a diameter of 2.5 micrometers or less (PM2.5) standards over a 15-year period. The Low-NOx Engine Standard and parts of the Lower In-Use Emission Performance Level are two measures (known as the Omnibus regulation today) in the 2016 State Strategy for the State Implementation Plan. These measures were designed to introduce lower emissions engine technologies that will substantially reduce NOx emissions from new on-road HD vehicles and ensure that those HD vehicles continue to operate at their cleanest possible levels throughout their useful life (UL). The Heavy-Duty Engine and Vehicle Omnibus (Omnibus) regulation implements these two measures.

On September 9, 2021, the Board adopted the Omnibus regulation, which established more stringent emissions standards and test procedures for new 2024 and subsequent model year (MY) HD engines (HDE).[4] The NOx emission standard and associated requirements were designed to be implemented in three distinct steps, with the first step applying to 2024 through 2026 MY HDEs. Furthermore, the PM standard was reduced by 50%, from 0.01 to

---

[1] CARB Emission FACtors (*EMFAC*) Model.

[2] Based on CARB's California Emission Projection Analysis Model (CEPAM), *CEPAM2019v1.04 – Standard Emission Tool*.

[3] CARB, *2016 State Strategy for the State Implementation Plan for Federal Ozone and PM2.5 Standards (State SIP Strategy)*.

[4] CARB, Staff Report: Initial Statement of Reasons, *Public Hearing to Consider the Proposed Heavy-Duty Engine and Vehicle Omnibus Regulation and Associated Amendments*, August 27, 2020. The Omnibus regulation is comprised of elements of tit. 13, Cal. Code Regs., §§ 1900, 1956.8, 1961.2, 1965, 1968.2, 1971.1, 1971.5, 2035, 2036, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2121, 2123, 2125, 2126, 2127, 2128, 2129, 2130, 2131, 2133, 2137, 2139, 2139.5, 2140, 2141, 2142, 2143, 2144, 2145, 2146, 2147, 2148, 2149, 2166, 2166.1, 2167, 2168, 2169, 2169.1 through 2169.8, 2170, 2423, and 2485; and tit. 17 Cal. Code Regs. §§ 95662 and 95663.

0.005 grams per horsepower-hour, beginning with the 2024 MY. In the second step, more stringent emission standards and requirements were specified for 2027 through 2030 MY HDEs, along with an increase to the warranty and UL periods. In the final step, the UL and warranty periods were increased for 2031 and subsequent MYs, with the emissions standards being adjusted in accordance with the new UL periods. In addition to more stringent exhaust emissions standards, the Omnibus regulation also replaced the Not-to-Exceed in-use testing methodology with a more effective three-bin moving average window methodology.

## Federal Action – Clean Trucks Plan Final Rule for Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards

On January 24, 2023, U.S. EPA published the Clean Trucks Plan Final Rule for Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards[5] (EPA-NOX rule) in the Federal Register. The EPA-NOx rule established more stringent criteria pollutant emissions standards for 2027 and later MY HDEs and contains many elements similar to CARB's Omnibus regulation.

## Clean Truck Partnership

After the adoption of the EPA-NOx rule, many HDE manufacturers expressed concerns about the differences between the requirements in the Omnibus regulation and the EPA-NOx rule. The manufacturers expressed a strong desire for and interest in aligned standards—between California and U.S. EPA—for limiting criteria pollutant emissions from HD trucks. With a single national program, HDE manufacturers would be able to design and offer a single engine platform that could be certified by both CARB and U.S. EPA and offered to customers nationwide.

Discussions between CARB, HDE manufacturers, and the Truck and Engine Manufacturers Association in early 2023 led to the signing of the Clean Truck Partnership (CTP) in July 2023.[6] Under the CTP, CARB agreed to propose amendments to the Omnibus regulation to address several industry concerns while aligning mostly with the various elements of the EPA-NOx rule for model year 2027 and subsequent. In return, certain manufacturers agreed to comply with the applicable requirements in California irrespective of the outcome of any litigation challenging the Omnibus regulation or of CARB's overall authority to implement these regulations.

In this rulemaking, CARB staff is proposing amendments to the Omnibus regulation to align with the EPA-NOx rule for model year 2027 and subsequent. This proposal fulfills CARB's promise to propose amendments to the Omnibus regulation under the Clean Truck Partnership. These proposed amendments to the California Code of Regulations do not implicate questions, raised in separate litigation, about whether the Omnibus regulation is enforceable under federal law.

---

[5] Final Rule: *Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards*, United States Environmental Protection Agency, Federal Register Vol. 88, No. 15, January 24, 2023.
[6] *Clean Truck Partnership Agreement*, California Air Resources Board, July 5, 2023.

## Existing Advanced Clean Cars and Medium- and Heavy-Duty Vehicle and Engine Regulatory Requirements

Passenger cars and light trucks are a significant source of NOx, other smog-forming emissions and PM2.5 in California, with over 26 million such vehicles on the road, which are estimated to travel over 285 billion miles in 2025.

California's Low Emission Vehicle III (LEV III) regulations, adopted on January 26, 2012, and subsequently updated, tightened criteria pollutant standards for 2015 through 2025 and subsequent model years.[7] The U.S. EPA granted California's request for a Clean Air Act preemption waiver, authorizing enforcement of these regulations, in 2013.[8] As part of the Advanced Clean Cars II regulations adopted on June 9, 2022, more stringent criteria-emission standards known as Low Emission Vehicle IV (LEV IV) established new requirements for 2026 and subsequent model years, thereby displacing the LEV III criteria pollutant regulation after the 2025 model year.

California first regulated heavy-duty vehicle exhaust emissions in 1969. In 2005 and 2010, U.S. EPA granted waivers for California's medium- and heavy-duty engine and vehicle regulations for diesel and Otto-cycle engine standards.[9] In 2017, the U.S. EPA granted California a waiver of federal preemption for several sets of amendments to CARB's emission standards for medium- and heavy-duty vehicles adopted in 2011, 2008, 2007, and 2006.[10] In 2016, the U.S. EPA granted California's requests for waivers for its on-board diagnostic (OBD) systems for light-, medium-, and heavy-duty vehicles adopted in 2013 (the OBD II and HD OBD regulations).[11] California's Omnibus regulations, adopted in 2020 and amended in 2023, tightened CARB's criteria pollutant standards for medium- and heavy-duty vehicles.[12] In 2016, U.S. EPA also granted California a waiver for its Phase 1 Greenhouse Gas emission standards adopted in 2013.[13]

On January 6, 2025, U.S. EPA published its notices of decision granting California's requests for Clean Air Act preemption waivers, authorizing the enforcement of the LEV IV regulations (as part of the Advanced Clean Cars II regulation) and the Omnibus regulation.[14] On June 12, 2025, President Trump signed congressional resolutions that purported to disapprove these

---

[7] The LEV III regulations were subsequently amended in 2012 (Register 2012, No. 32 and Register 2013, No. 1), 2015 (Register 2015, No. 41) and 2018 (Register 2018, No. 50).

[8] 78 Fed. Reg. 2,113 (Jan. 9, 2013); *see also* 87 Fed. Reg. 14,332 (Mar. 14, 2022) [restoring waiver].

[9] 70 Fed. Reg. 50,322 (Aug. 26, 2005); 75 Fed. Reg. 70,238 (Nov. 17, 2010).

[10] 82 Fed. Reg. 4,867 (Jan. 17, 2017).

[11] 81 Fed. Reg. 78,143 (Nov. 7, 2016), 81 Fed. Reg. 78,149 (Nov. 7, 2016).

[12] *See* Register 2020, No. 4 (26-Z), and Register 2024, No. 22 (31-Z).

[13] The Proposed Greenhouse Gas (GHG) Regulations For Medium- And Heavy-Duty Engines And Vehicles, Optional Reduced Emission Standards For Heavy-Duty Engines, And Amendments To The Tractor-Trailer GHG Regulation, Diesel-Fueled Commercial Motor Vehicle Idling Rule, And The Heavy-Duty Hybrid-Electric Vehicles Certification Procedures, adopted 2014, Register 2014, No. 49; 81 Fed. Reg. 52,680 (June 9, 2016).

[14] 90 Fed. Reg. 642 (Jan. 6, 2025), 90 Fed. Reg. 643 (Jan. 6, 2025).

and one other waiver not at issue here.[15] California and a coalition of states promptly filed suit to challenge these resolutions targeting three waiver actions granted to California.[16] That case remains pending.

The congressional resolutions have introduced an unprecedented degree of uncertainty into the California market for new motor vehicles. Specifically, the resolutions purported to invalidate preemption waivers authorizing enforcement of newer, more stringent vehicle emission standards that had displaced earlier regulations for which preemption had also been waived. That has left questions about which regulations apply. To clarify and ensure that new vehicles and engines can continue to be sold in California, despite the ongoing uncertainty created by the federal government's actions, CARB has taken several steps, including the adoption of the Emergency Vehicle Emission Regulations.

Here, CARB is proposing to make permanent the Emergency Vehicle Emissions Regulations. The amendments would confirm that, until a court resolves the uncertainty created by the federal government's actions, certain earlier regulations (displaced by Advanced Clean Cars II and Omnibus) remain operative (as previously adopted) with the caveat that CARB may enforce Advanced Clean Cars II and Omnibus, to the extent permitted by law, in the event a court of law holds invalid the resolutions purporting to disapprove those waivers.

## Existing LCFS Regulation

The LCFS is a key part of California's transportation decarbonization strategy and a successful one thus far. The LCFS provides economic incentives to produce cleaner fuels like electricity, hydrogen and biofuels that are needed to displace fossil fuels and reduce transportation sector emissions.

## Summary of the Proposed Regulatory Actions

*1. Proposed regulatory action to amend the Omnibus Regulation:*

The proposed regulatory action to amend the Omnibus regulation would largely align most of the requirements for new 2027 and subsequent MY HDEs with the corresponding provisions of the EPA-NOx rule. CARB staff proposes to align the following Omnibus requirements for HD compression-ignition and spark-ignition engines with the corresponding EPA-NOx rule:

- Certification emissions standards and test procedures for criteria pollutants including NOx, PM, carbon monoxide and hydrocarbons;
- Merging the California-Averaging, Banking, and Trading (ABT) program with the federal-ABT program;
- Durability demonstration provisions;
- UL and warranty periods for mileage, years, and hours; and

---

[15] H.J. Res. 88 (119th Congress), H.J. Res. 89 (199th Congress).

[16] *State of California, et al., v. United States of America, et al.,* (ND Cal., case no. 3:25-cv-04966).

- HD in-use testing program including the two-bin moving average window analysis methodology and the off-cycle standards with some differences in the interim compliance allowance and the ambient temperature adjustment factor.

CARB staff is also proposing to end the applicability of the transit agency diesel-fueled bus and engine exemption request process beginning with the 2027 MY.

   *a. Proposed regulatory action to amend the On-Board Diagnostic (OBD) Regulations:*

CARB staff is also proposing the following amendments to the OBD regulations:

- Updates to the definitions of the Federal Test Procedure cycle and the Supplemental Emission Test cycle;
- Modifications to the engine aging requirements for durability demonstration testing of medium-duty engines (MDE) and HDEs;
- Adoption of alternate, higher malfunction criteria, higher nonconformance criteria, and more relaxed test-out criteria for OBD monitors to account for the proposed lower Federal Test Procedure non-methane hydrocarbon and carbon monoxide standards for 2027 and subsequent MY MDEs and HDEs; and
- Adoption of new data stream parameters required to be made available on HDEs.

Additionally, to address manufacturers' implementation concerns and improve CARB staff's review of OBD applications, CARB staff is proposing the following amendments:

- Modifications to the NOx sensor monitor compliance criteria to address issues with the current criteria;
- Modifications to the in-use monitor performance denominator incrementing criteria for monitors that are part of a multiple NOx converting catalyst system to address issues of possible low in-use monitoring frequency;
- Modifications to the criteria to be exempt from monitoring the catalyzed PM filter non-methane hydrocarbon conversion capability to address implementation issues;
- Modifications to the criteria to set the readiness status for a readiness group to "complete" to address monitors that do not run frequently in-use;
- Substitution of the not-to-exceed bin with the new two-bin moving average window bins for NOx emission tracking (i.e., the REAL requirements) in order to align with the binning method used for tailpipe in-use compliance testing;
- Changes to manufacturer self-testing engine selection criteria and testing deadlines for HDEs to account for the updated full UL mileage requirements;
- Delay to the implementation date of the final in-use monitor performance ratio for the PM filter monitors on light-duty vehicles and engines and medium-duty vehicles and MDEs; and
- New required CARB templates for manufacturer submission of OBD information and test data to standardize data and information submitted by manufacturers and help CARB staff review the data and information.

CARB staff is also proposing several amendments to the OBD regulations to correct errors and to align with the in-use emission warranty information and reporting (EWIR) requirements.

b. *Proposed regulatory action to amend the EWIR Requirements and Corrective Action Procedures*

Furthermore, to address issues that have arisen within the EWIR program, CARB staff is proposing the following amendments to the EWIR requirements and corrective action procedures:

- Failure levels triggering recall and corrective action for 2027 and subsequent MYs;
- Allowing manufacturers to collect new owner information using alternative methods for vehicles that are subject to corrective action;
- Changing the proof of correction requirements for over-the-air recalls; and
- CARB no longer requires recall repair labels for recalls that only involve software reflashes.

2. *Proposed regulatory action to make permanent the Emergency Vehicle Emissions Regulations:*

CARB proposed its Emergency Vehicle Regulations to maintain protective emission standards for vehicles and engines while ensuring manufacturers can sell vehicles and engines into California despite the emergency the federal government has created by issuing illegal and unconstitutional congressional resolutions targeting its waivers.

To ensure that new motor vehicles can continue to be sold in California, despite the ongoing uncertainty introduced by the federal government into the State's longstanding regulatory program, CARB staff is proposing to amend its regulations to clarify that the criteria pollution provisions of the LEV III regulation remain operative, with the caveat that CARB may enforce Advanced Clean Cars II, to the extent permitted by law, in the event a court of law holds invalid the resolution purporting to disapprove that waiver. CARB staff is thus proposing to make permanent its Emergency Vehicle Emissions Regulations.

CARB staff is similarly proposing to make permanent its Emergency Vehicle Emissions Regulations amendments to the medium- and heavy-duty regulations to clarify that the pre-Omnibus provisions[17] remain operative, with the caveat that CARB may enforce the Omnibus regulation, to the extent permitted by law, in the event a court of law holds invalid the resolutions purporting to disapprove that waiver.

CARB continues to accept and process certification applications for the LEV IV and Omnibus emission standards. Hence, both sets of standards will be present in the California Code of Regulations during this period of unprecedented uncertainty. Regulated parties may choose to follow either the Advanced Clean Cars II or Omnibus standards or the older pre-ACC II and pre-Omnibus provisions. Regulated parties, however, assume the risk of non-compliance if

---

[17] These regulations, as described in this notice and in the Emergency Vehicle Emission Regulations, encompass provisions for OBD systems for light-, medium-, and heavy-duty engines and vehicles, greenhouse gas emissions from medium- and heavy-duty vehicles, and related requirements in the sections of titles 13 and 17 listed as encompassed in this proposal.

they choose to certify only to the older provisions, and the congressional resolutions disapproving the waivers of federal preemption under the Clean Air Act are declared invalid.

CARB may also consider other changes to the sections affected, as listed on page 2 of this notice, or other sections within the scope of this notice, during the course of this rulemaking process.

3. *Proposed regulatory action to amend the LCFS Regulation:*

To increase opportunities for near-term, low-emission electrification solutions to provide electricity vehicle fueling while charging station operators work with utilities to connect their sites to electricity distribution systems, CARB staff is proposing to allow the use of indirect accounting of renewable natural gas (RNG) for LCFS reporting and crediting of electricity for vehicle charging produced by linear generators. This proposal may increase the near-term availability of low-carbon intensity electricity for electric truck refueling.

# Objectives and Benefits of the Proposed Regulatory Actions

## Objectives

The primary goal of the proposed Omnibus regulatory action is to largely align with the federal emissions standards and test procedures for 2027 and subsequent MY HDEs in the event California prevails in its challenge to the congressional resolution targeting its Clean Air Act waiver. Harmonization with the federal requirements would enable manufacturers to design and produce a single product line of engine families that comply with both the U.S. EPA and CARB emissions standards. This single platform would then be available for sale in all 50 states, thereby reducing the costs of compliance for the industry and improving the cost-effectiveness of the regulations over the long term. Harmonization would also enable technology suppliers and manufacturers to efficiently produce a single set of reliable and compliant products.

In addition to amendments to align with the EPA-NOx rule, CARB staff is also proposing amendments to the OBD regulations at the request of manufacturers to address implementation concerns and provide additional flexibility to manufacturers. Furthermore, as part of the harmonization with the EPA-NOx rule, CARB staff is proposing to amend the warranty periods; accordingly, the proposed regulatory action also aims to align the EWIR and Corrective Action Procedures with these changes, and to streamline the EWIR reporting requirements.

The goal of the Emergency Vehicle Emissions Regulations, which CARB is proposing to make permanent here, is to clarify and ensure that new motor vehicles can be sold in California despite the unprecedented uncertainty introduced by the federal government into CARB's longstanding regulatory program. These amendments will ensure that new vehicles and engines sold in California will meet the emission standards and requirements for which U.S. EPA has granted a waiver and that were in place before the congressional resolutions targeted California's waivers for the ACC II and Omnibus regulations.

The primary goal of the proposed LCFS regulatory action is to allow book-and-claim accounting of renewable natural gas (RNG) to produce electricity for electric vehicle charging, if the electricity is generated using a linear generator. This proposal may increase the near-term availability of low-carbon intensity electricity for electric truck refueling in high demand freight corridors where trucks are operating and helps advance California's zero emission vehicle and carbon neutrality goals. Truck fleets pursuing zero emissions truck deployment have a need for near-term, low-emission electrification solutions to provide electricity while charging station operators work with utilities to electrify their sites.

## Environmental and Health Benefits

The proposed Omnibus regulatory action aims to largely align the Omnibus regulation's requirements with the federal EPA-NOx rule. These amendments are expected to result in a regulation that significantly decreases NOx emissions from HD truck engines compared to today's emissions levels, albeit slightly less than expected from the existing Omnibus regulation. The proposed regulatory action is estimated to achieve approximately 2% less NOx emission benefits cumulatively over the analysis period from 2027 to 2036 relative to the existing Omnibus regulation.

The Omnibus regulatory action does not propose any changes to the PM emissions standards for MDEs and HDEs. Therefore, no changes to PM emissions from medium-duty and HD trucks are expected by the proposed amendments. However, since NOx is a precursor to secondary PM2.5 formation, NOx emissions reductions from the proposed regulatory action would also impact ambient PM2.5 emissions. The impacts on secondary PM2.5 formation from the proposed regulatory action is expected to reduce the health benefits from the existing Omnibus regulation by 5% in avoided mortality and 4% in avoided hospitalization during the analysis years from 2027 through 2036. It is important to note that the proposed regulatory action enables CARB to comply with the terms of the Clean Truck Partnership, which is intended to secure important emissions benefits from the HD sector as a whole.

CARB's proposal to make permanent its Emergency Vehicle Emissions Regulations will provide clarity and ensure that, at a minimum, the criteria pollutant emission standards for new passenger cars, light trucks, and chassis-certified medium-duty vehicles up to 14,000 pounds, which have become status quo starting with the 2017 model year, will continue beyond the 2025 model year. The proposal will also ensure that the standards that predated the Omnibus regulations would remain effective, as would other regulations for which U.S. EPA has granted a required waiver that remains in place. The proposed regulatory action will ensure that these future, new engines and vehicles will continue, at a minimum, to adhere to the same standards required of vehicles today. CARB has enforced LEV III and pre-Omnibus standards, or stricter standards, since those standards went into effect, and thus the proposed regulatory action has no adverse environmental or health impact.

The proposed LCFS amendments are not expected to result in changes to NOx nor PM as compared to the baseline scenario, which assumes that linear generators are already operational at sites that may choose to use indirect accounting for RNG. Furthermore, if utilized, RNG would be accounted for through book-and-claim to match the fossil natural gas

currently being used in linear generators at truck charging sites and therefore would not result in changes to NOx and PM emissions.

## Economic Impacts

The proposed Omnibus regulatory action to largely align with the EPA-NOx rule would numerically change the emissions standards specified in the existing Omnibus regulation. However, the difference in the emissions standards is not expected to change the technology package required to meet the emissions limits. In both the Omnibus and EPA-NOx regulations, the technologies identified to meet the standards are the same. As a result, there is no cost impact due to the technology package needed to meet the proposed emissions standards.

However, there will be cost impacts from the alignment of other provisions of the Omnibus regulation with the EPA-NOx rule. These provisions include amendments to the durability demonstration provisions, warranty requirements, in-use testing program, and ABT program. Other amendments that would have cost impacts are the proposed amendments to the OBD regulation, EWIR, and corrective action requirements, and terminating the applicability of the transit agency exemption provisions.

CARB staff evaluated the cost impacts of the proposed regulatory action against the existing Omnibus regulation for the analysis period from 2027 through 2036. The total statewide economic impact is estimated to be a cost of $39.4 million from 2027 through 2032, followed by a saving of $24.9 million from 2033 through 2036, resulting in a net cost of $14.5 million over the full analysis period.

CARB does not anticipate any cost impacts from its proposal to make permanent its Emergency Vehicle Emissions Regulations because the compliance pathways available to manufacturers have already been understood for years; and manufacturers have either already achieved or planned to achieve one or more of the compliance pathways.

CARB staff does not anticipate either cost or cost-saving impacts from the proposed LCFS regulatory action since the additional cost for RNG as compared to fossil natural gas is larger than expected credit revenue. For additional economic analysis, please see ISOR prepared for the LCFS regulatory action in Appendix F, Chapter VIII.

The proposed regulatory actions for Omnibus are not expected to impact job creation or elimination, business creation or elimination, or expansion of business for California fleets, since the average incremental cost of $100 per vehicle is negligible. The proposed regulatory action would make California state fleets equally competitive with out-of-state fleets by purchasing products that would be certified for all 50 states.

## Comparable Federal Regulations

Both California and U.S. EPA have comparable yet distinct authorities to set emissions standards for new motor vehicles and for new motor vehicle engines. CARB's legal authority to establish emissions standards and other emission-related requirements for new motor vehicles and new motor vehicle engines is as described in the Initial Statement of Reasons (ISOR),

Chapter II. U.S. EPA's authority to set comparable emissions standards and emission-related requirements is contained in Section 202(a)(1) of the Clean Air Act.

In September 2021, CARB adopted the HD Omnibus regulation applicable to new 2024 and later MY HDEs, resulting in emissions standards and test procedures that are more stringent than the corresponding federal requirements. As a result, beginning with MY 2024, manufacturers were certifying and producing two different sets of engine families: one set of HD Omnibus compliant engine families for sale in California and states that have adopted the Omnibus regulation, and a separate set of engine families that meet the federal requirements for sale in the remaining states.

On January 24, 2023, U.S. EPA adopted the EPA-NOx rule which established criteria pollutant emissions standards and test procedures for 2027 and subsequent MY HDEs that are comparable in stringency to the 2027 MY HD Omnibus requirements. Via the proposed amendments, CARB staff is proposing to largely align with the 2027 MY federal requirements. Harmonization with the 2027 MY federal requirements would enable the regulated industry to design and produce a single product line of engines and vehicles that can be certified to both U.S. EPA and CARB emissions standards and sold in all 50 states.

For 2026 model year, U.S. EPA's Tier 3 criteria pollutant standards are similar to the LEV III requirements for NMOG+NOx, but not as stringent for particulate matter. On March 20, 2024, U.S. EPA adopted their Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles Rule, that sets new Tier 4 standards to further reduce harmful air pollutant emissions from light-duty and medium-duty vehicles starting with model year 2027. Portions of this rule are identical to elements of the LEV IV requirements for those model years, but otherwise are more stringent once they are fully phased in by the 2033 model year than the LEV III requirements would be.

There is no federal regulation comparable to the LCFS regulation.

# An Evaluation of Inconsistency or Incompatibility with Existing State Regulations (Gov. Code, § 11346.5, subd. (a)(3)(D))

During the process of developing the proposed regulatory action, CARB conducted a search of similar regulations on this topic and concluded these regulatory actions are neither inconsistent nor incompatible with existing state regulations.

# Disclosure Regarding the Proposed Regulations

## Fiscal Impact/Local Mandate Determination Regarding the Proposed Actions (Gov. Code, § 11346.5, subds. (a)(5)&(6))

The determinations of the Board's Executive Officer concerning the costs or savings incurred by public agencies and private persons and businesses in reasonable compliance with the proposed regulatory actions are presented below.

Under Government Code sections 11346.5, subdivision (a)(5) and 11346.5, subdivision (a)(6), the Executive Officer has determined that the proposed regulatory actions would create costs or savings to any State agency, would not create costs or savings in federal funding to the State, would create costs or mandates to any local agency or school district, whether or not reimbursable by the State under Government Code, title 2, division 4, part 7 (commencing with section 17500), or other nondiscretionary cost or savings to State or local agencies.

Cost to any Local Agency or School District Requiring Reimbursement under Gov. Code section 17500 et seq.:

The proposed Omnibus regulatory action is expected to have fiscal impacts on local governments. Fiscal impacts are expected to stem from local government fleet purchases and tax revenue from statewide sales. However, these costs to local agencies are not reimbursable by the State under Government Code, title 2, division 4, part 7 (commencing with section 17500). The mandate is not reimbursable because the costs associated with the proposed regulatory action apply generally to all entities that purchase affected vehicles, including local agencies. Therefore, the regulation does not constitute a "Program" imposing any unique requirements on local agencies as set forth in section 17514 of the California Government Code.

Local government fleet purchases are estimated to be 100% of the transit vehicle sales and approximately 10.7% of statewide non-transit vehicle sales. As a result, local governments are expected to bear 100% of the transit vehicle cost and 10.7% of statewide non-transit vehicle costs. Local governments are estimated to receive 4.8% sales tax revenue from statewide vehicle sales to businesses.

The proposed Omnibus regulatory action is estimated to result in $5.84 million in costs to local government fleets from 2027 to 2032, and $2.67 million in savings to local government fleets from 2033 to 2036. The proposed regulatory action is estimated to result in $1.57 million of additional local tax revenue from 2027 to 2032, and $1.04 million in decreased local tax revenue from 2033 to 2036. Between 2027 and 2036, the overall net fiscal impact from the proposed regulatory action on local governments is a cost of about $2.65 million.

The proposal to make permanent the Emergency Vehicle Regulations proposal is not expected to result in a change to fiscal impacts on local governments, where the proposal is clarifying that regulations that have been in place for years and that are less burdensome to vehicle and engine manufacturers than the previously adopted regulations remain operative.

The proposed LCFS amendments are not expected to have fiscal impacts on local governments.

Cost or Savings for State Agencies:

The proposed Omnibus regulatory action is expected to have fiscal impacts on state government. Fiscal impacts are expected to stem from state government fleet purchases

14

and tax revenue from statewide sales. State government fleet purchases are estimated to be approximately 3.3% of statewide non-transit vehicle sales, therefore, state governments are expected to bear 3.3% of statewide estimated non-transit vehicle costs. State governments are also estimated to receive 3.9% in tax revenue from statewide vehicle sales to businesses.

The proposed Omnibus regulatory action is estimated to result in $1.24 million in costs to state government fleets from 2027 to 2032, and $0.82 million in savings to state government fleets from 2033 to 2036. The proposed Omnibus regulatory action is estimated to result in $1.27 million of additional state tax revenue from 2027 to 2032, and $0.84 million in decreased state tax revenue from 2033 to 2036. Between 2027 and 2036, the overall net fiscal impact from the proposed Omnibus regulatory action on state government is a saving of about $11,000.

The proposal to make permanent the Emergency Vehicle Emissions Regulations proposal is not expected to result in a change to fiscal impacts on state government, where the proposal is clarifying that regulations that have been in place for years and that are less burdensome to vehicle and engine manufacturers than the previously adopted regulations remain operative.

The proposed LCFS amendments are not expected to have fiscal impacts on state agencies.

Other Non-Discretionary Costs or Savings on Local Agencies:

The proposed Omnibus regulatory action affects local agencies, but it is not expected to impose any non-discretionary costs or savings on local agencies.

The proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations are not expected to have non-discretionary impacts on local agencies. The Emergency Vehicle Emissions Regulations proposal clarifies that restores regulations that have been in place for years and are less burdensome to vehicle and engine manufacturers than the previously adopted regulations remain operative.

Cost or Savings in Federal Funding to the State:

The proposed regulatory actions for Omnibus, the proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations are not expected to impose any costs or savings in federal funding to the state.

## Housing Costs (Gov. Code, § 11346.5, subd. (a)(12))

The Executive Officer has also made the initial determination that the proposed regulatory actions for Omnibus, the proposed LCFS amendments, and the proposal to make permanent CARB's Emergency Vehicle Emissions Regulations will not have a significant effect on housing costs. The Emergency Vehicle Emissions Regulations proposal clarifies that

regulations that have been in place for years and are less burdensome to vehicle and engine manufacturers than the previously adopted regulations remain operative.

## Significant Statewide Adverse Economic Impact Directly Affecting Business, Including Ability to Compete (Gov. Code, §§ 11346.3, subd. (a), 11346.5, subd. (a)(7), 11346.5, subd. (a)(8))

The Executive Officer has made an initial determination that the proposed regulatory actions for Omnibus, the proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations would not have a significant statewide adverse economic impact directly affecting businesses, including the ability of California businesses to compete with businesses in other states, or on representative private persons.

The proposed Omnibus regulatory action is not expected to impact or cause any adverse economic impact directly affecting businesses or the ability to compete. Since the proposed regulatory action would, even if it were enforced, largely align with the federal emission standards and requirements, engines sold in all 50 states would have to meet the same requirements. As a result, the proposed regulatory action would make California state fleets equally competitive with out-of-state fleets by purchasing products that would be certified for all 50 states.

The proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations are not expected to impact or cause any adverse economic impact directly affecting businesses or the ability to compete. The Emergency Vehicle Emissions Regulations proposal clarifies that regulations that have been in place for years and are less burdensome to vehicle and engine manufacturers than the previously adopted regulations remain operative.

## Results of the Economic Impact Analysis/Assessment (Gov. Code, § 11346.5, subd. (a)(10))

### Non-Major Regulation: Statement of the Results of the Economic Impact Assessment (EIA): (if applicable)

The creation or elimination of jobs within the State of California:

The main intent of the proposed Omnibus regulatory action is to largely align with the EPA-NOx rule. Since the affected HDE manufacturers are located outside of California, the proposed regulatory action, even if it were enforced, is not expected to directly impact the creation or elimination of jobs within the state. In addition, the proposed Omnibus regulatory action is not expected to impact job creation or elimination for California fleets, since the average incremental cost of $100 per vehicle is negligible, as discussed in greater details in Appendix D of the ISOR.

16

The proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations are not expected to create or eliminate jobs within the state. The Emergency Vehicle Emissions Regulations proposal clarifies that regulations that have been in place for years and are less burdensome to vehicle and engine manufacturers than the previously adopted regulations remain operative.

<u>The creation of new businesses or the elimination of existing businesses within the State of California:</u>

The main intent of the proposed Omnibus regulatory action is to largely align with the EPA-NOx rule. Since the affected HDE manufacturers are located outside of California, the proposed Omnibus regulatory action is not expected to directly impact the creation of new businesses or elimination of existing businesses within the state. In addition, the proposed regulatory action is not expected to impact the creation of new businesses or elimination of existing businesses for California fleets, since the average incremental cost of $100 per vehicle is negligible, as discussed in greater details in Appendix D of the ISOR.

The proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations are not expected to create or eliminate new businesses within the state. The Emergency Vehicle Emissions Regulations proposal clarifies that regulations that have been in place for years and are less burdensome to vehicle and engine manufacturers than the previously adopted regulations remain operative.

<u>The expansion of businesses currently doing business within the State of California:</u>

The main intent of the proposed Omnibus regulatory action is to largely align with the EPA-NOx rule. Since the affected HDE manufacturers are located outside of California, the proposed regulatory action is not expected to impact the expansion of businesses currently doing business within the state. In addition, the proposed Omnibus regulatory action is not expected to impact the expansion of businesses for California fleets, since the average incremental cost of $100 per vehicle is negligible, as discussed in greater details in Appendix D of the ISOR.

The proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations are not expected to expand businesses currently doing business within the state. The Emergency Vehicle Emissions Regulations proposal restores regulations that have been in place for years and are less burdensome to vehicle and engine manufacturers than the previously adopted regulations.

<u>The benefits of the regulation to the health and welfare of California residents, worker safety, and the state's environment:</u>

The proposed Omnibus regulatory action is expected to result in a regulation that, if enforced, would significantly decrease NOx emissions from HD truck engines compared to today's emission levels, albeit slightly less than expected from the current Omnibus regulation.

The proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations are not expected to affect the health and welfare of California residents, worker safety, and the state's environment. The Emergency Vehicle Emissions Regulations proposal clarified that regulations that have been in place for years and are less burdensome to vehicle and engine manufacturers than the previously adopted regulations remain operative.

Effect on Jobs/Businesses:

The Executive Officer has determined that the proposed regulatory actions for Omnibus, the proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations would not affect the creation or elimination of jobs within the State of California, the creation of new businesses or elimination of existing businesses within the State of California, or the expansion of businesses currently doing business within the State of California. A detailed assessment of the economic impacts of the proposed Omnibus regulatory action can be found in the Economic Impact Analysis in the Staff Report: ISOR. A detailed assessment of the economic impacts of the proposed LCFS regulatory action can be found in the Economic Impact Analysis section of Appendix F: Supplement to Initial Statement of Reasons – Proposed Low Carbon Fuel Standard Amendments.

Benefits of the Proposed Regulation:

The objective of the proposed Omnibus regulatory action is to largely align with the federal emissions standards and test procedures for 2027 and subsequent MY HDEs. Harmonization with the federal requirements would enable manufacturers to design and produce a single product line of engine families that comply with both the U.S. EPA and CARB emissions standards.

Depending on the year and the engine service class, there are costs and savings passed onto fleets. Overall, harmonization would reduce the need for multiple product offerings meeting separate state and federal requirements. This would simplify the availability of products nationwide. It is important to note that the proposed Omnibus regulatory action enables CARB to comply with the terms of CTP, which is intended to secure important emission benefits.

A summary of these benefits is provided; please refer to, "Objectives and Benefits," under the Informative Digest of Proposed Action and Policy Statement Overview Pursuant to Government Code section 11346.5, subdivision (a)(3) discussion on page 7.

The objective of the proposal to make permanent CARB's Emergency Vehicle Emissions Regulations is to clarify the applicability of CARB's emission standards that were in place before the congressional resolutions targeting California's waivers and provide clarity for regulated entities of the requirements for future model years pending the outcome of legal challenges. This proposal will address the instability of the new motor vehicle market in California created by the congressional resolutions, address questions about which regulations apply, and ensure vehicle and engines manufacturers meet California's emissions standards until and once the question of the validity of the congressional resolutions is resolved by a court of law.

18

The objective of the proposed LCFS regulatory action is to allow book-and-claim accounting of renewable natural gas (RNG) to produce electricity for electric vehicle charging, if the electricity is generated using a linear generator. This proposal may increase the near-term availability of low-carbon intensity electricity for electric truck refueling in high-demand freight corridors where trucks are operating, and help advance California's zero-emission vehicle and carbon neutrality goals. Truck fleets pursuing zero-emission truck deployment have a need for near-term, low-emission electrification solutions to provide electricity while charging station operators work with utilities to electrify their sites, since grid interconnection delays are becoming longer due, in part, to increasing grid demand from artificial intelligence data centers and clean hydrogen production facilities.

## Business Report (Gov. Code, §§ 11346.5, subd. (a)(11); 11346.3, subd. (d))

In accordance with Government Code sections 11346.5, subdivisions (a)(11) and 11346.3, subdivision (d), the Executive Officer finds the reporting requirements of the proposed regulatory action to amend the On-Road Heavy-Duty Engine and Vehicle Omnibus Regulation that apply to businesses are necessary for the health, safety, and welfare of the people of the State of California.

The proposed LCFS regulatory action does not include new reporting requirements; it instead allows book-and-claim accounting of RNG under specified circumstances. The proposal to make permanent CARB's Emergency Vehicle Emissions Regulations does not include new reporting requirements as it maintains existing reporting requirements.

## Cost Impacts on Representative Private Persons or Businesses (Gov. Code, § 11346.5, subd. (a)(9))

In developing this regulatory proposal, CARB staff evaluated the potential economic impacts on representative private persons or businesses. CARB is not aware of any cost impacts that a representative private person or business would necessarily incur in reasonable compliance with the proposed action.

There are no direct costs on individuals as a result of the proposed regulatory actions. For Omnibus, CARB staff estimates that manufacturers and fleets will see increased costs as a result of this rule and will likely pass the costs through to businesses that buy vehicles with affected engines in the state. Individuals may see macroeconomic indirect and induced benefits and costs; these costs are discussed in the ISOR, Chapter IX. For LCFS, CARB staff does not foresee any cost impacts. For additional economic analysis, please see ISOR prepared for the LCFS regulatory action in Appendix F, Chapter VIII. The proposal to make permanent CARB's Emergency Vehicle Emissions Regulations will also not have cost impacts because manufacturers are already—and have been in the past—certifying vehicles to the same or stricter emission standards.

## Effect on Small Business (Cal. Code Regs., tit. 1, § 4, subds. (a) and (b))

The Executive Officer has also determined under the California Code of Regulations, title 1, section 4, that the proposed Omnibus regulatory action would, if enforced, affect small businesses. Small businesses impacted by the proposed Omnibus regulatory action are defined as small fleets consisting of three or fewer vehicles with HDEs. The fraction of new engines purchased by small businesses is estimated to be approximately 28% of total new engine sales. A typical small business purchasing and operating fleets may incur an average incremental cost of about $100 per engine.

The Executive Officer has also determined under the California Code of Regulations, title 1, section 4, that the proposed LCFS amendments and proposal to make permanent CARB's Emergency Vehicle Emissions Regulations would not affect small businesses. This is because vehicle manufacturers are already—and have been in the past—certifying vehicles to the same or stricter emission standards.

# Consideration of Alternatives (Gov. Code, § 11346.5, subd. (a)(13))

Before taking final action on the proposed regulatory action, the Board must determine that no reasonable alternative considered by the Board, or that has otherwise been identified and brought to the attention of the Board, would be more effective in carrying out the purpose for which the action is proposed, would be as effective and less burdensome to affected private persons than the proposed action, or would be more cost-effective to affected private persons and equally effective in implementing the statutory policy or other provisions of law.

The analysis can be found in Chapter X of the ISOR for the proposed Omnibus alternatives. CARB staff has discussed two alternative concepts in the ISOR including no changes to the current Omnibus regulation which is more stringent than the proposed regulatory action and a less strict alternative that extends the applicability of the 2024 MY requirements to 2027 and subsequent MY HDEs. No proposed alternative was found to be less burdensome and equally effective in achieving the purposes of the regulation in a manner that ensures full compliance with the authorizing law. CARB staff has not identified any reasonable alternatives that would lessen any adverse impact on small business.

Appendix F of the ISOR provides analysis of the alternatives for the LCFS regulatory action. CARB considered a no action alternative. CARB also considered an alternative of sunsetting the LCFS crediting use of indirect accounting for RNG electric vehicle charging powered by linear generators in 2030 instead of the proposed date of 2035. No alternative was found to be less burdensome and equally effective in achieving the purposes of the amendments. Staff do not expect small businesses to be impacted, and accordingly CARB has not identified any reasonable alternatives that would lessen an adverse impact on small business.

For the proposal to make permanent CARB's Emergency Vehicle Emissions Regulations, CARB has not identified any reasonable alternative and is not aware of any reasonable alternative that would be more effective in stabilizing the new motor vehicle market in California while ensuring manufacturers meet California's emissions standards. Nor has CARB

20

identified any reasonable alternative that would be as effective and less burdensome, nor one that would be more cost effective and equally effective.

# State Implementation Plan Revision

If adopted by the Board and California prevails in its challenge to the congressional resolution targeting the waiver of federal preemption under the Clean Air Act, CARB may submit the proposed Omnibus regulatory action to U.S. EPA for approval as a revision to the California State Implementation Plan required by the federal Clean Air Act (CAA). The adopted regulatory action would be submitted as a State Implementation Plan revision because it amends regulations intended to reduce emissions of air pollutants to attain and maintain the National Ambient Air Quality Standards promulgated by U.S. EPA pursuant to the CAA.

Several of the Emergency Vehicle Emission Regulations are already in California's State Implementation Plan,[18] including:

- Rulemaking for Incorporation of Federal Exhaust Emission Standards for 2008 and Later Model-Year Heavy Duty Gasoline Engines and the Adoption of Minor Amendments to the Low-Emission Vehicle Regulations; Amendments to More Stringent Emission Standards for 2007 and Subsequent Model Year New Heavy-Duty Diesel Engines; Requirements to Reduce Idling Emissions From New and In-Use Trucks, Beginning in 2008; 2010 Amendments to HD OBD Requirements; On-Road Passenger Cars, Light-Duty Trucks, and Medium-Duty Vehicles (LEV III);[19]
- 2013 Amendments to HD OBD Requirements;[20]
- Heavy-Duty Diesel In-Use Compliance Regulation and 2007 and 2011 Amendments.[21]

# Environmental Analysis

As previously stated, CARB is proposing the Omnibus amendments, the proposed LCFS amendments, and the proposal to make permanent CARB's Emergency Vehicle Emissions Regulations together as one rulemaking package for administrative efficiency. However, these three regulations are separate programs. They are proposed in this package as three separate regulatory items which will be considered in three separate approval actions. While they are packaged together here for administrative efficiency, CARB has independent reasons for developing each of these three regulatory proposals, as explained in the ISOR. Therefore, the Omnibus amendments, the proposed LCFS amendments, and the proposal to make permanent CARB's Emergency Vehicle Emissions Regulations are three separate projects under the California Environmental Quality Act (CEQA). As such, CARB appropriately analyzed the Omnibus amendments, the proposed LCFS amendments, and the proposal to

---

[18] 40 C.F.R., § 52.220a.

[19] 81 Fed. Reg. 39,424 (July 16, 2016)

[20] 82 Fed. Reg. 14,446 (March 21, 2017)

[21] 83 Fed. Reg. 23,232 (May 18, 2018)

make permanent CARB's Emergency Vehicle Emissions Regulations as separate projects under CEQA. The CEQA determinations made for each project are summarized below. Importantly, even if these projects were analyzed together under CEQA, there is no evidence to suggest there would be any potentially significant impacts.

CARB, as the lead agency under CEQA, has reviewed the proposed amendments to the Omnibus regulation, and has determined that they are exempt from CEQA, as described in CEQA Guidelines, section 15061(b)(3) ("common sense" exemption) because it can be seen with certainty that there is no possibility that the proposed regulatory action may result in any significant adverse impact on the environment. As discussed in the ISOR, the Proposed Amendments would not have the potential to cause any new significant environmental effects or alter the types of compliance response of the regulated entities that would result in any changes that significantly affect the physical environment. CARB has also determined the proposed Omnibus amendments are exempt pursuant to CEQA Guidelines sections 15307 (actions for protection of natural resources) and 15308 (actions for protection of the environment). A detailed explanation of the basis for reaching these determinations is included in the ISOR.

CARB has reviewed the proposal to make permanent CARB's Emergency Vehicle Emissions Regulations and concluded that it is exempt pursuant to CEQA Guidelines, section 15061(b)(3) The proposed regulatory action will provide clarity and ensure that, at a minimum, criteria pollutant emission standards for new passenger cars, light trucks, and chassis-certified medium-duty vehicles up to 14,000 pounds - standards which have become the status quo starting with the 2017 model year - will continue beyond the 2025 model year. CARB has also determined this proposal is exempt pursuant to CEQA Guidelines sections 15307 (actions for protection of natural resources) and 15308 (actions for protection of the environment). A detailed explanation of the basis for reaching these determinations is included in the ISOR.

CARB has also determined that the proposed LCFS amendments do not present any of the circumstances requiring further environmental review because there are no changes that involve new significant environmental effects, or a substantial increase in severity of previously identified significant effects, or any other circumstances requiring further environmental review beyond the Final Environmental Impact Analysis for the 2024 Amendments to the Low Carbon Fuel Standard Regulation (Final LCFS EIA) certified in November 2024. Therefore, no supplemental or subsequent environmental analysis is required for these proposed modifications to the LCFS regulation. CARB has also determined this proposal is exempt from CEQA pursuant to CEQA Guidelines, section 15061(b)(3) ("common sense" exemption) because it can be seen with certainty that there is no possibility that the proposed regulatory action may result in any significant adverse impact on the environment. A detailed explanation of the basis for reaching these conclusions is included in Chapter VI of ISOR Appendix F: Supplement to the Initial Statement of Reasons Describing Proposed Low Carbon Fuel Standard Amendments.

# Special Accommodation Request

Consistent with California Government Code section 7296.2, special accommodation or language needs may be provided for any of the following:

- An interpreter to be available at the hearing;
- Documents made available in an alternate format or another language; and
- A disability-related reasonable accommodation.

To request these special accommodations or language needs, please contact the Clerks' Office at *cotb@arb.ca.gov* or (916) 322-5594 as soon as possible, but no later than ten business days before the scheduled Board hearing. TTY/TDD/Speech to Speech users may dial 711 for the California Relay Service.

Consecuente con la sección 7296.2 del Código de Gobierno de California, una acomodación especial o necesidades lingüísticas pueden ser suministradas para cualquiera de los siguientes:

- Un intérprete que esté disponible en la audiencia;
- Documentos disponibles en un formato alterno u otro idioma; y
- Una acomodación razonable relacionados con una incapacidad.

Para solicitar estas comodidades especiales o necesidades de otro idioma, por favor llame a la oficina del Consejo al *cotb@arb.ca.gov* o (916) 322-5594 lo más pronto posible, pero no menos de 10 días de trabajo antes del día programado para la audiencia del Consejo. TTY/TDD/Personas que necesiten este servicio pueden marcar el 711 para el Servicio de Retransmisión de Mensajes de California.

# Agency Contact Persons

Inquiries concerning the substance of the proposed Omnibus regulatory action may be directed to the agency representative Daniel Hawelti, Staff Air Pollution Specialist, On-Road Heavy-Duty Diesel Section, at (951) 542-3195 and *daniel.hawelti@arb.ca.gov* or (designated back-up contact) Mitzi Magtoto, Staff Air Pollution Specialist, On-Road Heavy-Duty Diesel Section, at (279) 208-7363 and *mitzi.magtoto@arb.ca.gov*.

Inquiries concerning the substance of the proposal to make permanent CARB's Emergency Vehicle Emissions Regulations may be directed to the agency representative Kim Heroy-Rogalski, P.E., Chief, Mobile Source Regulatory Development Branch, California Air Resources Board, (279) 208-7792, *kim.heroy-rogalski.@arb.ca.gov*.

Inquiries concerning the substance of the proposed LCFS regulatory action may be directed to the agency representative Dillon Miner, Staff Air Pollution Specialist, Industrial Strategies Division, at 279-208-7437 and *dillon.miner@arb.ca.gov*.

## Availability of Documents

CARB staff has prepared an ISOR for the proposed Omnibus regulatory action, which includes a summary of the economic and environmental impacts of the proposal. The report is entitled: Staff Report: Public Hearing to Consider the Proposed Regulatory Action to Amend the On-Road Heavy-Duty Engine and Vehicle Omnibus Regulation. For the proposed LCFS regulatory package, see Appendix F Supplement to Initial Statement of Reasons – Proposed Low Carbon Fuel Standard Amendments.

Copies of the ISOR and the full text of the proposed regulatory language, in underline and strikeout format to allow for comparison with the existing regulations, may be accessed on CARB's website listed below, on September 23, 2025. Please contact Lindsay Garcia, Regulations Coordinator, at *Regulations@arb.ca.gov* or (916) 546-2286 if you need physical copies of the documents. Pursuant to Government Code section 11346.5, subdivision (b), upon request to the aforementioned Regulations Coordinator, physical copies would be obtained from the Public Information Office, California Air Resources Board, 1001 I Street, Visitors and Environmental Services Center, First Floor, Sacramento, California, 95814.

Further, the agency representative to whom non-substantive inquiries concerning the proposed administrative action may be directed is Lindsay Garcia, Regulations Coordinator, (916) 546-2286. The Board staff has compiled a record for this rulemaking action, which includes all the information upon which the proposal is based. This material is available for inspection upon request to the contact persons.

## Hearing Procedures

The public hearing will be conducted in accordance with the California Administrative Procedure Act, Government Code, title 2, division 3, part 1, chapter 3.5 (commencing with section 11340).

Following the public hearing, the Board may take action to approve for adoption the regulatory language as originally proposed, or with non-substantial or grammatical modifications. The Board may also approve for adoption the proposed regulatory language with other modifications if the text as modified is sufficiently related to the originally proposed text that the public was adequately placed on notice and that the regulatory language as modified could result from the proposed regulatory action. If this occurs, the full regulatory text, with the modifications clearly indicated, will be made available to the public, for written comment, at least 15 days before final adoption.

The public may request a copy of the modified regulatory text from CARB's Public Information Office, Air Resources Board, 1001 I Street, Visitors and Environmental Services Center, First Floor, Sacramento, California, 95814.

## Final Statement of Reasons Availability

Upon its completion, the Final Statement of Reasons (FSOR) will be available and copies may be requested from the agency contact persons in this notice, or may be accessed on CARB's website listed below.

## Internet Access

This notice, the ISOR, and all subsequent regulatory documents, including the FSOR, when completed, are available on CARB's website for this rulemaking at:
*https://ww2.arb.ca.gov/rulemaking/2025/orhdomnibus*

California Air Resources Board

_____
Steven S. Cliff, Ph.D.,
Executive Officer

Date: September 9, 2025

*The energy challenge facing California is real. Every Californian needs to take immediate action to reduce energy consumption. For a list of simple ways you can reduce demand and cut your energy costs, see CARB's website (ww2.arb.ca.gov).*

APPENDIX A: Documents Incorporated by Reference

The following documents would be incorporated in the Omnibus regulations by reference as specified by the following sections:

- "California Exhaust Emission Standards and Test Procedures for 2004 through 2026 Model Heavy-Duty Diesel Engines and Vehicles," adopted December 12, 2002, as amended **[Insert Date of Amendment],** incorporated by reference in title 13, California Code of Regulations (CCR), section 1956.8(b).

- "California Exhaust Emission Standards and Test Procedures for 2004 through 2026 Model Heavy-Duty Otto-Cycle Engines and Vehicles," adopted December 27, 2000, as amended **[Insert Date of Amendment],** incorporated by reference in title 13, CCR, section 1956.8(d).

The following sections of Parts 1036, 1065, and 1068, Title 40, Code of Federal Regulations, as adopted or as last amended on the dates shown below, are incorporated by reference in the proposed "California Exhaust Emission Standards and Test Procedures for 2027 and Subsequent Model Heavy-Duty Engines, Vehicles and Hybrid Powertrains," adopted **[Insert Date of Adoption]**, incorporated by reference in title 13, CCR, section 1956.8.2(c):

- Subpart A, Part 1036, Title 40, Code of Federal Regulations:

  - § 1036.1, § 1036.2, § 1036.5, § 1036.10, § 1036.15 and § 1036.30 as adopted or amended on January 24, 2023

- Subpart B, Part 1036, Title 40, Code of Federal Regulations

  - § 1036.130, § 1036.135 and § 1036.140 as adopted or amended on January 24, 2023
  - § 1036.101, § 1036.104, § 1036.108, § 1036.110, § 1036.111, § 1036.115, § 1036.120, § 1036.125 and §1036.150 as adopted or amended on April 22, 2024

- Subpart C, Part 1036, Title 40, Code of Federal Regulations

  - § 1036.201, § 1036.210, § 1036.225, § 1036.235, § 1036.246 and § 1036.255 as adopted or amended on January 24, 2023
  - § 1036.205, § 1036.230, § 1036.240, § 1036.241, § 1036.245 and § 1036.250 as adopted or amended on April 22, 2024

- Subpart D, Part 1036, Title 40, Code of Federal Regulations

  - § 1036.301 as amended on April 22, 2024

- Subpart E, Part 1036, Title 40, Code of Federal Regulations

  - § 1036.401, § 1036.410, § 1036.425, § 1036.430, § 1036.435 and § 1036.440 as adopted or amended on January 24, 2023
  - § 1036.405, § 1036.415 and § 1036.420 as adopted or amended on April 22, 2024

26

- Subpart F, Part 1036, Title 40, Code of Federal Regulations

  - § 1036.555 as adopted on January 24, 2023
  - § 1036.501, § 1036.505, § 1036.510, § 1036.512, § 1036.514, § 1036.520, § 1036.525, § 1036.530, § 1036.540, § 1036.543, § 1036.550 and § 1036.580 as adopted or amended on April 22, 2024
  - § 1036.535 and § 1036.545 as adopted or amended on June 17, 2024

- Subpart G, Part 1036, Title 40, Code of Federal Regulations

  - § 1036.610 and § 1036.625 as adopted or amended on January 24, 2023
  - § 1036.605 and § 1036.630 as adopted or amended on April 22, 2024
  - § 1036.601 as amended on November 8, 2024

- Subpart H, Part 1036, Title 40, Code of Federal Regulations

  - § 1036.701, § 1036.710, § 1036.715, § 1036.720, § 1036.740, § 1036.745 and § 1036.750 as adopted or amended on January 24, 2023
  - § 1036.705, § 1036.725, § 1036.730 and § 1036.735 as adopted or amended on April 22, 2024

- Subpart I, Part 1036, Title 40, Code of Federal Regulations

  - § 1036.820 and § 1036.825 as adopted or amended on January 24, 2023
  - § 1036.801, § 1036.805, § 1036.810 and § 1036.815 as adopted or amended on April 22, 2024

- Appendix B of Part 1036, Title 40, Code of Federal Regulations as amended on January 24, 2023

- Appendix C of Part 1036, Title 40, Code of Federal Regulations as amended on January 24, 2023

- Subpart A, Part 1065, Title 40, Code of Federal Regulations

  - § 1065.20 and § 1065.25 as adopted or amended on April 28, 2014
  - § 1065.15 as amended on October 25, 2016
  - § 1065.2 as amended on June 29, 2021
  - § 1065.1, § 1065.5 and § 1065.10 as adopted or amended on January 24, 2023
  - § 1065.12 as amended on April 22, 2024

- Subpart B, Part 1065, Title 40, Code of Federal Regulations

  - § 1065.127 and § 1065.150 as adopted or amended on July 13, 2005
  - § 1065.101, § 1065.110, § 1065.120, § 1065.122 and § 1065.195 as adopted or amended on June 30, 2008
  - § 1065.125 as amended on September 15, 2011
  - § 1065.130 as amended on June 29, 2021
  - § 1065.140 and § 1065.145 as adopted or amended on January 24, 2023
  - § 1065.170 and § 1065.190 as adopted or amended on April 22, 2024

27

- Subpart C, Part 1065, Title 40, Code of Federal Regulations

    - § 1065.245 and § 1065.248 as adopted or amended on July 13, 2005
    - § 1065.215 as amended on June 30, 2008
    - § 1065.290 as amended on November 8, 2010
    - § 1065.265 as amended on September 15, 2011
    - § 1065.230, § 1065.240, § 1065.250, § 1065.269, § 1065.270, § 1065.272 and § 1065.295 as adopted or amended on April 28, 2014
    - § 1065.201 as amended on April 29, 2014
    - § 1065.202 as amended on October 25, 2016
    - § 1065.205, § 1065.220, § 1065.225 and § 1065.247 as adopted or amended on June 29, 2021
    - § 1065.260, § 1065.274 and § 1065.298 as adopted or amended on January 24, 2023
    - § 1065.210, § 1065.255, § 1065.257, § 1065.266, § 1065.267, § 1065.275, § 1065.277, § 1065.280 and § 1065.284 as adopted or amended on April 22, 2024

- Subpart D, Part 1065, Title 40, Code of Federal Regulations

    - § 1065.395 as adopted on July 13, 2005
    - § 1065.310, § 1065.362 and § 1065.376 as adopted or amended on April 28, 2014
    - § 1065.340 and § 1065.390 as adopted or amended on October 25, 2016
    - § 1065.303, § 1065.342 and § 1065.370 as adopted or amended on June 29, 2021
    - § 1065.301, § 1065.305, § 1065.307, § 1065.308, § 1065.309, § 1065.320, § 1065.325, § 1065.330 and § 1065.345 as adopted or amended on January 24, 2023
    - § 1065.315, § 1065.341, § 1065.350, § 1065.355, § 1065.357, § 1065.360, § 1065.365, § 1065.366, § 1065.369, § 1065.372, § 1065.375, § 1065.377 and § 1065.378 as adopted or amended on April 22, 2024

- Subpart E, Part 1065, Title 40, Code of Federal Regulations

    - § 1065.401 as adopted on July 13, 2005
    - § 1065.415 as amended on June 30, 2008
    - § 1065.405 and § 1065.410 as adopted or amended on January 24, 2023

- Subpart F, Part 1065, Title 40, Code of Federal Regulations

    - § 1065.595 as adopted on June 30, 2008
    - § 1065.525 as amended on September 15, 2011
    - § 1065.516, § 1065.518 and § 1065.526 as adopted or amended on April 28, 2014
    - § 1065.546 and § 1065.590 as adopted or amended on October 25, 2016
    - § 1065.501, § 1065.514, § 1065.543 and § 1065.545 as adopted or amended on January 24, 2023
    - § 1065.512, § 1065.520, § 1065.530 and § 1065.550 as adopted or amended on April 22, 2024
    - § 1065.510 as amended on June 17, 2024

28

- Subpart G, Part 1065, Title 40, Code of Federal Regulations

  - § 1065.645 and § 1065.690 as adopted or amended on October 25, 2016
  - § 1065.640, § 1065.642, § 1065.659 and § 1065.665 as adopted or amended on June 29, 2021
  - § 1065.630, § 1065.643, § 1065.667, § 1065.675 and § 1065.680 as adopted or amended on January 24, 2023
  - § 1065.601, § 1065.602, § 1065.610, § 1065.644, § 1065.650, § 1065.655, § 1065.660, § 1065.670, § 1065.672 and § 1065.695 as adopted or amended on April 22, 2024
  - § 1065.656 as amended on June 17, 2024

- Subpart H, Part 1065, Title 40, Code of Federal Regulations

  - § 1065.740 and § 1065.745 as adopted or amended on July 13, 2005
  - § 1065.735 as adopted on October 25, 2016
  - § 1065.725 as amended on December 4, 2020
  - § 1065.701, § 1065.703 and § 1065.710 as adopted or amended on June 29, 2021
  - § 1065.720 and § 1065.790 as adopted or amended on January 24, 2023
  - § 1065.705 and § 1065.715 as adopted or amended on April 22, 2024
  - § 1065.750 as amended on June 17, 2024

- Subpart I, Part 1065, Title 40, Code of Federal Regulations

  - § 1065.801 as adopted on July 13, 2005
  - § 1065.850 as amended on April 28, 2014
  - § 1065.845 as amended on June 30, 2014
  - § 1065.805 as adopted on April 22, 2024

- Subpart J, Part 1065, Title 40, Code of Federal Regulations

  - § 1065.930 as adopted on July 13, 2005
  - § 1065.940 as adopted on November 8, 2010
  - § 1065.925 as amended on September 15, 2011
  - § 1065.905 as amended on June 29, 2021
  - § 1065.901, § 1065.910, § 1065.915 and § 1065.920 as adopted or amended on January 24, 2023
  - § 1065.935 as amended on April 22, 2024

- Subpart K, Part 1065, Title 40, Code of Federal Regulations

  - § 1065.1005 as amended on January 24, 2023
  - § 1065.1001 and § 1065.1010 as amended on April 22, 2024

- Subpart L, Part 1065, Title 40, Code of Federal Regulations

  - § 1065.1101, § 1065.1103 and § 1065.1111 as adopted or amended on April 28, 2014
  - § 1065.1105, § 1065.1107 and § 1065.1109 as adopted or amended on October 25, 2016

29

- o § 1065.1113, § 1065.1115, § 1065.1117, § 1065.1119, § 1065.1121, § 1065.1123, § 1065.1125, § 1065.1127, § 1065.1131, § 1065.1133, § 1065.1135 and § 1065.1143 as adopted or amended on January 24, 2023
  - o § 1065.1137, § 1065.1139, § 1065.1141 and § 1065.1145 as adopted or amended on April 22, 2024

- Subpart A, Part 1068, Title 40, Code of Federal Regulations

  - o § 1068.5 and § 1068.35 as adopted or amended on October 8, 2008
  - o § 1068.25 as amended on April 30, 2010
  - o § 1068.20, § 1068.27, § 1068.32, § 1068.45 and § 1068.95 as adopted or amended on October 25, 2016
  - o § 1068.1 and § 1068.50 as adopted or amended on January 24, 2023
  - o § 1068.30 as amended on April 18, 2024

- Subpart B, Part 1068, Title 40, Code of Federal Regulations

  - o § 1068.103, § 1068.105, § 1068.110 and § 1068.120 as adopted or amended on October 25, 2016
  - o § 1068.101 as amended on January 24, 2023

- Subpart C, Part 1068, Title 40, Code of Federal Regulations

  - o § 1068.265 as adopted on October 8, 2008
  - o § 1068.201, § 1068.260 and § 1068.262 as adopted or amended on October 25, 2016
  - o § 1068.220, § 1068.240 and § 1068.261 as adopted or amended on January 24, 2023

- Subpart E, Part 1068, Title 40, Code of Federal Regulations

  - o § 1068.435, § 1068.445 and § 1068.455 as adopted or amended on October 8, 2008
  - o § 1068.410 and § 1068.440 as adopted or amended on April 30, 2010
  - o § 1068.401, § 1068.405, § 1068.415, § 1068.420, § 1068.425 and § 1068.430 as adopted or amended on October 25, 2016

  - o Appendix A to Subpart E of Part 1068, Title 40, Code of Federal Regulations, as amended on October 24, 2023

- Appendix A to Part 1068, Title 40, Code of Federal Regulations, as amended on January 24, 2023

- Appendix B to Part 1068, Title 40, Code of Federal Regulations, as amended on January 24, 2023

The following documents would be incorporated by reference as specified in the OBD amendments in the Omnibus and Associated Amendments:

- Title 13, CCR, section 1956.8.2, incorporated by reference in title 13, CCR, section 1968.2(c).

30

- 40 CFR 1036.512, as that section existed on October 24, 2024, incorporated by reference in title 13, CCR, section 1968.2(c).

- 40 CFR 1036.510, as that section existed on October 24, 2024, incorporated by reference in title 13, CCR, section 1968.2(c).

- "California Exhaust Emission Standards and Test Procedures for 2004 through 2026 Model Heavy-Duty Otto-Cycle Engines and Vehicles," incorporated by reference in section 1956.8(d), title 13, CCR.

- "California Exhaust Emission Standards and Test Procedures for 2004 through 2026 Model Heavy-Duty Diesel Engines and Vehicles," incorporated by reference in section 1956.8(b), title 13, CCR.

- 40 CFR 1036.115(h)(4), as it existed on October 18, 2024, incorporated by reference in title 13, CCR, section 1968.2(g)(6.12.3)(J)(iv)f.

- ECCD/OBD-113 "OBD II Gasoline Monitoring Requirements Checklist," April 2024, incorporated by reference in title 13, CCR, section 1968.2(i)(2.16).

- ECCD/OBD-114 "OBD II Diesel Monitoring Requirements Checklist," May 2024, incorporated by reference in title 13, CCR, section 1968.2(i)(2.16).

- ECCD/OBD-129 "OBD II PVE J1 Template," September 2023, incorporated by reference in title 13, CCR, section 1968.2(j)(1.5).

- ECCD/OBD-130 "OBD II PVE J2 Template," August 2023, incorporated by reference in title 13, CCR, section 1968.2(j)(2.4.1).

- Title 13, CCR, section 1956.8.2, incorporated by reference in title 13, CCR, section 1971.1(c).

- 40 CFR 1036.512, as that section existed on October 24, 2024, incorporated by reference in title 13, CCR, section 1971.1(c).

- 40 CFR 1036.510, as that section existed on October 24, 2024, incorporated by reference in title 13, CCR, section 1971.1(c).

- 40 CFR 1036.110(b)(9), as it existed on October 25, 2024, incorporated by reference in title 13, CCR, section 1971.1(h)(4.2.3)(H).

- 40 CFR 1036.110(b)(10), as it existed on October 25, 2024, incorporated by reference in title 13, CCR, section 1971.1(h)(4.2.3)(I).

- 40 CFR 1036.115(h)(4), as it existed on October 18, 2024, incorporated by reference in title 13, CCR, section 1971.1(h)(5.3.3)(J)(iv)f.

31

- 40 CFR 1036.245, as it existed on April 8, 2025, incorporated by reference in title 13, CCR, section 1971.1(i)(2.3.5)(B).

- 40 CFR 1065.1131 through 1065.1145, as they existed on April 8, 2025, incorporated by reference in title 13, CCR, section 1971.1(i)(2.3.5)(B)(i).

- "California Exhaust Emission Standards and Test Procedures for 2027 and Subsequent Model Heavy-Duty Engines, Vehicles and Hybrid Powertrains," as incorporated by reference in section 1956.8.2(c), title 13, CCR.

- ECCD/OBD-119 "HD OBD Diesel Monitoring Requirements Checklist," July 2024, incorporated by reference in title 13, CCR, section 1971.1(j)(2.17).

- ECCD/OBD-118 "HD OBD Gasoline Monitoring Requirements Checklist," July 2024, incorporated by reference in title 13, CCR, section 1971.1(j)(2.17).

- ECCD/OBD-127 "HD OBD PEVE L1 Template," September 2023, incorporated by reference in title 13, CCR, section 1971.1(l)(1.5.1).

- ECCD/OBD-128 "HD OBD PEVE L2 Template," August 2023, incorporated by reference in title 13, CCR, section 1971.1(l)(2.4.1).

- ECCD/OBD-126 "MST Template," February 2023, incorporated by reference in title 13, CCR, section 1971.5(c)(6)(A).

The Emergency Vehicle Regulations previously incorporated documents by reference, which were identified in OAL File Numbers:

- Z-00-1010-10 [Consider Requiring Certain California Light-and Medium-Duty Vehicles to be Subject to Federal Tier 2 Exhaust Standards, and Adopting Additional Exhaust Emission Standards for Heavy-Duty Gasoline Vehicles and Engines],

- Z-01-0828-14 [Amendments Adopting More Stringent Emission Standards for 2007 and Subsequent Model Year New Heavy-Duty Diesel Engines]

- Z-02-0917-02 [Consider the Incorporation of Federal Exhaust Emission Standards for 2008 and Later Model-Year Heavy-Duty Gasoline Engines and the Adoption of Minor Amendments to the Low-Emission Vehicle Regulations],

- Z-2011-1129-12 [Amendments To The California Greenhouse Gas And Criteria Pollutant Exhaust And Evaporative Emission Standards And Test Procedures And To The On-Board Diagnostic System Requirements For Passenger Cars, Light-Duty Trucks, And Medium-Duty Vehicles, And To The Evaporative Emission Requirements For Heavy-Duty Vehicles],

32

- o Z-2012-0626-07 [Proposed Revisions to On-Board Diagnostic System Requirements for Heavy-Engines, Passenger Cars, Light-Duty Trucks, Medium-Duty Vehicles and Engines],

- o Z-2012-0831-01 [Proposed Amendments To The New Passenger Motor Vehicle Greenhouse Gas Emission Standards For Model Years 2017-2025 To Permit Compliance Based On Federal Greenhouse Gas Emissions Standards And Additional Minor Revisions To The LEV III And ZEV Regulations],

- o Z-2013-1015-07 [Proposed Greenhouse Gas (GHG) Regulations For Medium- And Heavy-Duty Engines And Vehicles, Optional Reduced Emission Standards For Heavy-Duty Engines, And Amendments To The Tractor-Trailer GHG Regulation, Diesel-Fueled Commercial Motor Vehicle Idling Rule, And The Heavy-Duty Hybrid-Electric Vehicles Certification Procedures],

- o Z-2014-0819-06 [Proposed Amendments To The LEV III Criteria Pollutant Requirements For Light- And Medium-Duty Vehicles, The Hybrid Electric Vehicle Test Procedures, And The Heavy-Duty Otto-Cycle And Heavy-Duty Diesel Test Procedures],

- o Z-2018-0724-07 [Proposed Amendments to the Low-Emission Vehicle III Greenhouse Gas Emission Regulation],

- o Z-2018-0821-02 [Amendments to California Specification for Fill Pipes and Openings Of Motor Vehicle Fuel Tanks],

- o Z-2020-0609-07 [Proposed Amendments to the Exhaust Emissions Standards and Test Procedures for 2024 and Subsequent Model Year Heavy-Duty Engines and Vehicles, Heavy-Duty On-Board Diagnostic System Requirements, Heavy-Duty In-Use Testing Program, Emissions Warranty Period and Useful Life Requirements, Emissions Warranty Information and Reporting Requirements, and Corrective Action Procedures, In-Use Emissions Data Reporting Requirements, and Phase 2 Heavy-Duty Greenhouse Gas Regulations, and Powertrain Test Procedures],

- Z-2023-0718-09 [Proposed Amendments to the Heavy-Duty Engine and Vehicle Omnibus Regulation],

The following documents are incorporated in the Emergency Vehicle Emissions regulatory action by reference as specified by the following sections of emergency regulations or by the original regulatory section in which they were adopted, and are noted here for completeness.

- "California 2015 And Subsequent Model Criteria Pollutant Exhaust Emission Standards and Test Procedures And 2017 And Subsequent Model Greenhouse Gas Exhaust Emission Standards and Test Procedures For Passenger Cars, Light-Duty Trucks, And Medium-Duty Vehicles", amended December 6, 2012, incorporated by reference in title 13, CCR, sections 1961.2.1, 1965.0.1, 2037.0.1, and 2038.0.1.

33

- "California Evaporative Emission Standards and Test Procedures For 2001 And Subsequent Model Motor Vehicles", adopted August 1999, amended December 2012, incorporated by reference in title 13, CCR, section 1976.0.1.

- "California Refueling Emission Standards and Test Procedures For 2001 And Subsequent Model Motor Vehicles", amended March 22, 2012, incorporated by reference in title 13, CCR, section 1978.0.1.

- "California Non-Methane Organic Gas Test Procedures for 2017 And Subsequent Model Year Vehicles", adopted September 2015, incorporated by reference in title 13, CCR, section 1961.2.1.

- "California Test Procedures For Evaluating Substitute Fuels and New Clean Fuels In 2015 and Subsequent Years" adopted March 2012, incorporated by reference in title 13, CCR, section 2317.0.1.

- "California Exhaust Emission Standards and Test Procedures For 2018 and Subsequent Model Zero-Emission Vehicles and Hybrid Electric Vehicles, In The Passenger Car, Light-Duty Truck And Medium-Duty Vehicle Classes", of which the title has changed, amended September 3, 2015, incorporated by reference in title 13, CCR, sections 1961.2.1 and 1962.2.1.

- "California Exhaust Emission Standards and Test Procedures For 2004 and Subsequent Model Heavy-Duty Diesel-Engines and Vehicles", amended October 21, 2014, incorporated by reference in title 13, CCR, section 1956.8.1(b).

- "California Exhaust Emission Standards and Test Procedures For 2004 and Subsequent Model Heavy-Duty Otto-Cycle Engines", amended October 21, 2014, incorporated by reference in title 13, CCR, section 1956.8.1(d).

- "California Greenhouse Gas Exhaust Emission Standards and Test Procedures for 2014 and Subsequent Model Heavy-Duty Vehicles", adopted October 21, 2014, incorporated by reference in title 17, CCR, section 95663(c).

- "California Interim Certification Procedures For 2004 and Subsequent Model Hybrid-Electric and Other Hybrid Vehicles in the Urban Bus and Heavy-Duty Vehicle Classes", amended October 21, 2014, incorporated by reference in title 13, CCR, section 1956.8.1(b).

- "California Non-Methane Organic Gas Test Procedures for 1993 Through 2016 Model Year Vehicles", amended September 2, 2015, incorporated by reference in title 13, CCR, section 1956.8.1(d).

- Society of Automotive Engineers (SAE) J1979 "E/E Diagnostic Test Modes," incorporated by reference in title 13, CCR, section 1968.2.1(c).

- SAE J1939 "Recommended Practice for a Serial Control and Communications Vehicle Network," incorporated by reference in title 13, CCR, section 1968.2.1(c).

- The evaporative emission standards and test procedures incorporated by reference in title 13, CCR, section 1976, as referenced in title 13, CCR, section 1968.2.1(c).

34

- The exhaust emission levels to which an engine family is certified under the averaging, banking, and trading program incorporated by reference in title 13, CCR, section 1956.8, as referenced in title 13, CCR, section 1968.2.1(c).

- The certification requirements and test procedures incorporated by reference in title 13, CCR, section 1961(d), as referenced in title 13, CCR, section 1968.2.1(c).

- The certification exhaust emission standards and test procedures applicable to the SET cycle incorporated by reference in title 13, CCR, section 1956.8(b) and section 1956.8(d), as referenced in title 13, CCR, section 1968.2.1(c).

- "Speed Versus Time Data for California's Unified Driving Cycle", dated December 12, 1996, incorporated by reference in title 13, CCR, section 1968.2.1(c).

- 40 CFR 86, Appendix 1, section (g) "EPA US06 Driving Schedule for Light-Duty Vehicles and Light-Duty Trucks," amended July 13, 2005, incorporated by reference in title 13, CCR, section 1968.2.1(c).

- Air Resources Board (ARB) Manufacturers Advisory Correspondence (MAC) No. 99-06, adopted December 20, 1999, incorporated by reference in title 13, CCR, section 1968.2.1(e)(14.1.2)(A).

- SAE J1930 "Electrical/Electronic Systems Diagnostic Terms, Definitions, Abbreviations, and Acronyms – Equivalent to ISO/TR 15031-2:April 30, 2002", incorporated by reference in title 13, CCR, section 1968.2.1(e)(14.1.2)(B).

- SAE J1930 "Electrical/Electronic Systems Diagnostic Terms, Definitions, Abbreviations, and Acronyms – Equivalent to ISO/TR 15031-2", October 2008, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.1).

- SAE J1962 "Diagnostic Connector – Equivalent to ISO/DIS 15031-3:December 14, 2001", April 2002, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.2).

- SAE J1978 "OBD II Scan Tool – Equivalent to ISO/DIS 15031-4:December 14, 2001", April 2002, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.3).

- SAE J1979 "E/E Diagnostic Test Modes", May 2007, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.4).

- SAE J1979-DA, "Digital Annex of E/E Diagnostic Test Modes", October 2011, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.4.1).

- SAE J1850 "Class B Data Communications Network Interface", May 2001, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.5).

- SAE J2012 "Diagnostic Trouble Code Definitions – Equivalent to ISO/DIS 15031-6", December 2007, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.6).

- ISO 9141-2:1994 "Road Vehicles-Diagnostic Systems-CARB Requirements for Interchange of Digital Information", February 1994, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.7).

- ISO 14230-4:2000 "Road Vehicles-Diagnostic Systems-KWP 2000 Requirements for Emission-related Systems", June 2000, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.8).

- ISO 15765-4:2005 "Road vehicles-Diagnostics on Controller Area Network (CAN) - Part 4: Requirements for emissions-related systems", January 2005, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.9).

- SAE J1939 "Recommended Practice for a Serial Control and Communications Vehicle Network" March 2009, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.1).

- SAE J1939/1 "Recommended Practice for Control and Communications Network for On-Highway Equipment", September 01, 2000, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.2).

- SAE J1939/11 "Physical Layer, 250K bits/s, Twisted Shielded Pair", September 18, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.3).

- SAE J1939/13 "Off-Board Diagnostic Connector", March 11, 2004, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.4).

- SAE J1939/15 "Reduced Physical Layer, 250K bits/sec, UN-Shielded Twisted Pair (UTP)", August 21, 2008, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.5).

- SAE J1939/21 "Data Link Layer", December 22, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.6).

- SAE J1939/31 "Network Layer", April 02, 2004, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.7).

- SAE J1939/71 "Vehicle Application Layer (Through February 2008)", January 20, 2009, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.8).

- SAE J1939/73 "Application Layer - Diagnostics", September 08, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.9).

- SAE J1939/81 "Network Management", May 08, 2003, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.10).

- SAE J1939/84 "OBD Communications Compliance Test Cases For Heavy Duty Components and Vehicles", December 2008, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.11).

- SAE J1699-3 – "OBD II Compliance Test Cases", May 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.11).

36

- SAE J2534-1 – "Recommended Practice for Pass-Thru Vehicle Programming", December 2004, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.12).

- Attachment E: CAL ID and CVN Data of ARB Mail-Out #MSC 06-23, December 21, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(4.7.4).

- Attachment A of ARB Mail-Out #95-20, May 22, 1995, incorporated by reference in title 13, CCR, section 1968.2.1(i)(2.2).

- Attachment A: Misfire Disablement and Detection Chart of ARB Mail-Out #06-23, December 21, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(i)(2.5.1)(C).

- Attachments F and G of ARB Mail-Out #MSC 06-23, December 21, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(i)(2.16).

- Attachment D: Rate Based Data of ARB Mail-Out #06-23, December 21, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(j)(3.2).

- Health and Safety Code section 39010 et seq., incorporated by reference in title 13, CCR, section 1968.5.1(a)(3).

- Title 13, CCR, sections 1900(b) and 1968.2(c), incorporated by reference in title 13, CCR, section 1968.5.1(a)(3).

- EMFAC2000 "Public Meeting to Consider Approval of Revisions to the State's On-Road Motor Vehicle Emissions Inventory: Technical Support Document, Section 7.1, 'Estimation of Average Mileage Accrual Rates from Smog Check Data,'" May 2000, incorporated by reference in title 13, CCR, section 1968.5.1(b)(3)(A)(iv).

- SAE J1979 as incorporated by reference in title 13, CCR section 1968.2(g)(1) and section 1968.2.1(g)(4.1).

- SAE J1979 "E/E Diagnostic Test Modes," February 2012, incorporated by reference in title 13, CCR, section 1971.1.1(c).

- The evaporative emission standards and test procedures incorporated by reference in title 13, CCR, section 1976, as referenced in title 13, CCR, section 1971.1.1(c).

- The exhaust emission levels to which an engine family is certified under the averaging, banking, and trading program incorporated by reference in title 13, CCR, section 1956.8, as referenced in title 13, CCR, section 1971.1.1(c).

- The certification exhaust emission standards and test procedures applicable to the SET cycle incorporated by reference in title 13, CCR, section 1956.8(b) and section 1956.8(d), as referenced in title 13, CCR, section 1971.1.1(c).

- SAE J1930 "Electrical/Electronic Systems Diagnostic Terms, Definitions, Abbreviations, and Acronyms – Equivalent to ISO/TR 15031-2", October 2008, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.1).

- SAE J1930-DA "Electrical/Electronic Systems Diagnostic Terms, Definitions, Abbreviations, and Acronyms Web Tool Spreadsheet", March 2012, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.1.1).

- SAE J1962 "Diagnostic Connector – Equivalent to ISO/DIS 15031-3:December 14, 2001", April 2002, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.2).

- SAE J1978 "OBD II Scan Tool – Equivalent to ISO/DIS 15031-4:December 14, 2001", April 2002, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.3).

- SAE J1979 "E/E Diagnostic Test Modes", May 2007, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.4).

- SAE J1979-DA, "Digital Annex of E/E Diagnostic Test Modes", October 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.4.1).

- SAE J2012 "Diagnostic Trouble Code Definitions – Equivalent to ISO/DIS 15031-6", December 2007, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.5).

- SAE J2012-DA "Digital Annex of Diagnostic Trouble Code Definitions and Failure Type Byte Definitions", July 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.5.1).

- ISO 15765-4 "Road Vehicles-Diagnostics Communication over Controller Area Network (CAN) - Part 4: Requirements for emission-related systems", February 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.6).

- SAE J1939 "Recommended Practice for a Serial Control and Communications Vehicle Network", April 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.1).

- SAE J1939/1 "On-Highway Equipment Control and Communication Network", May 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.2).

- SAE J1939/11 "Physical Layer, 250K bits/s, Twisted Shielded Pair", September 2006, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.3).

- SAE J1939/13 "Off-Board Diagnostic Connector", October 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.4).

- SAE J1939/15 "Reduced Physical Layer, 250K bits/sec, UN-Shielded Twisted Pair (UTP)", August 2008, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.5).

- SAE J1939/21 "Data Link Layer", December 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.6).

- SAE J1939/31 "Network Layer", May 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.7).

- SAE J1939/71 "Vehicle Application Layer (Through May 2010)", March 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.8).

38

- SAE J1939/73 "Application Layer - Diagnostics", February 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.9).

- SAE J1939/81 "Network Management", June 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.10).

- SAE J1939/84 "OBD Communications Compliance Test Cases For Heavy Duty Components and Vehicles", December 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.11).

- SAE J2403 "Medium/Heavy-Duty E/E Systems Diagnosis Nomenclature," February 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.8).

- SAE J1699-3 – "OBD II Compliance Test Cases", December 2009, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.9).

- SAE J2534-1 – "Recommended Practice for Pass-Thru Vehicle Programming", December 2004, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.10).

- Attachment F of ARB Mail-Out #MSC 09-22, July 7, 2009, incorporated by reference in title 13, CCR, section 1971.1.1 (h)(4.7.6).
- Attachments G and H of ARB Mail-Out #MSC 09-22, July 7, 2009, incorporated by reference in title 13, CCR, section 1971.1.1 (j)(2.17).
- Health and Safety Code section 39010 et seq., incorporated by reference in title 13, CCR, section 1971.5.1(a)(3).
- Title 13, CCR, section 1900(b) and section 1971.1(c), incorporated by reference in title 13, CCR, section 1971.5.1(a)(3).
- EMFAC2007, incorporated by reference in title 13, CCR, section 1971.5.1(b)(3)(A)(iv).
- Society of Automotive Engineers J1979 (SAE J1979) or J1939 (SAE J1939) as incorporated by reference in Cal. Code Regs., title 13, section 1971.1.1(h)(1) and section 1971.1.1(h)(4.1).