# Exhibit 2

California Air Resources Board

# Public Hearing to Consider the Advanced Clean Fleets Regulations

# Final Statement of Reasons for Rulemaking, Including Summary of Comments and Agency Response

## *Public Hearing Date: April 27-28, 2023*
## *Agenda Item No.: 23-4-2*.

# I. General

On September 2, 2022, CARB released the 45-Day Notice of Public Hearing and Staff Report: ISOR, titled "Public Hearing to Consider Advanced Clean Fleets Regulation" for public review. The Staff Report contains a detailed description of the problem the Regulation is intended to address; a snapshot of the ZEV market, emissions analysis, health exposure and benefits analysis, cost and cost benefits analysis, environmental analysis, fiscal analysis, alternatives assessment, and rationale for the Regulation. The 45-Day Notice included all references relied upon and identified in the Staff Report.

The Regulation is explained in the Staff Report as critical to meeting California's State and federal air quality standards, protecting public health, and achieving the State's climate goals. The Regulation aims to further curb criteria, toxic, and GHG emissions by transitioning ICE vehicles to ZEVs using a phase-in approach, sets clear targets for regulated fleets to make a full conversion to ZEVs, and creates a catalyst to accelerate development of a heavy-duty public infrastructure network. In addition, it transitions drayage trucks to ZEVs given the suitability of their duty cycles, outsized impact on disproportionately impacted communities, and ability to maximize emissions reductions in heavily impacted communities. This approach gives fleets the flexibility to phase in ZEVs in the most suitable applications first and focuses initial ZEV infrastructure development to support community health around seaports and railyards. The Regulation includes four components. A manufacturer requirement for 100 percent of sales of medium- and heavy-duty vehicles to be ZEVs and fleet requirements to purchase and deploy ZEVs in SLG fleets, drayage truck operations, and HPF fleets.

The Regulation is the result of an extensive public process. In February 2020, CARB staff began informing the public of the likely proposal of the Regulation and development process. Over the past four years of ACF Regulation development, staff hosted 27 public listening sessions, workgroups, and workshops. CARB staff reached out directly to affected stakeholders and conducted more than 475 meetings with over 170 groups and individuals. CARB staff also sent more than 273,000 mailers and numerous emails to the 81,944 recipients from 10 email distribution lists, and 84,597 more fleet contacts from TRUCRS. CARB staff offered engagement opportunities to receive feedback and solicited alternatives from a variety of groups and stakeholders, including manufacturers, large fleet owners, single truck owners-operators, environmental advocacy organizations and the communities most heavily impacted by truck emissions. Through this public process, staff considered all stakeholder feedback and integrated many stakeholder's concepts into the Regulation. CARB received written comments from 344 commenters during the 45-Day Notice comment period. On October 27, 2022, the Board conducted a public hearing where staff informed the Board of the Regulation, and the Board received an additional 32 written and 163 oral comments from the public. At the conclusion of the hearing, the Board directed staff to evaluate providing more time for infrastructure development and for trucks using biomethane to better align with California's organic waste diversion rule, to continue working with transit fleets and utilities to ensure they can do their important work, streamline criteria for exemptions, and assess moving up the end date for sales of new combustion trucks and reducing the HPF fleet size from 50 to 10 tractors; as well as conduct additional stakeholder outreach.

Staff released an emissions analysis which concluded the proposed Regulation already requires more ZEVs to be purchased than manufacturers are required though the ACT Regulation and

pushing ahead the tractor purchase requirements by three years could be a concern depending on how the rapidly developing market plays out.[1] The Board approved the ACF Resolution which includes direction to update the ACT manufacturer sales requirements to be consistent with the SIP.

At the direction of the Board and in response to stakeholder concerns, staff proposed updates to the original proposal and solicited stakeholder feedback through a series of two focused public workgroups and one general public workshop. Waste and wastewater provisions were discussed at the December 12, 2022, public workshop, which was attended by 253 remote and more than 23 in-person participants. Infrastructure Construction Delays and ZEV Purchase Exemptions were discussed at the January 13, 2023, public workgroup, which was attended by 717 remote and 49 in-person participants. A final February 13, 2023, public workshop on the draft 15-day revisions to the original proposal was attended by 77 in-person and 1,015 remote participants.

Based on the Board's direction and feedback from the additional public workshops, a number of proposed changes were made. The date for ending new combustion engines sales in California was moved from 2040 to 2036. New ICE vehicle purchases were required to be California certified engines when ZEV purchases are not required. A new provision was added to provide more time to begin phasing in ZEVs for CNG powered trucks that exclusively use biomethane and are operated by waste and wastewater fleets involved in municipal diversion of organic waste. Transit agencies were made exempt until January 1, 2030, to allow them to focus on electrifying their buses. Extensions for ZEV infrastructure were expanded to address circumstances beyond the fleet owner's control when constructing ZEV infrastructure or in obtaining grid power. Other changes were made to streamline criteria for the ZEV Purchase and Daily Usage Exemptions, and some safeguards were added to ensure exemptions are only granted when necessary for compliance. The drayage truck reporting requirements for terminals, seaports, and railyards were also streamlined. More information on the changes is provided in the section, Modifications Made to the Original Proposal

The following section provides a high-level summary of modifications made to the original proposal at the direction of the Board and in response to stakeholder concerns. The summary of changes does not include any definitions, edits made for clarity or those used to restructure. For more detailed information on each change and their purpose and rationale, see the ACF 15-Day Notice on CARB's website: https://ww2.arb.ca.gov/rulemaking/2022/acf2022.

.

In accordance with Government Code section 11346.8, the Board may adopt the proposed amendments after making any appropriate conforming modifications, as well as any additional supporting documents and information available to the public for a period of at least 15 days. The Board further provided that the Executive Officer shall consider such written comments as may be submitted during this period and shall make such modifications as may be appropriate

---

[1] CARB, Executive Officer Memo to Board - Advanced Clean Fleets Regulation High Priority Fleet Size Analysis, 2023 (web link: https://ww2.arb.ca.gov/sites/default/files/2023-02/HPF%20Fleet%20Size%20Board%20Memo_ADA.pdf, last accessed March 2023).

in light of the comments received, then shall present the Regulations to the Board for further consideration if warranted.

After the October 27, 2023, Board Hearing, CARB released a Notice of Public Availability of Modified Text and Availability of Additional Documents and Information on March 23, 2023. The text of the proposed regulatory and Staff Report modifications is posted on CARB's website: https://ww2.arb.ca.gov/rulemaking/2022/acf2022 and was made accessible to all stakeholders and interested parties.

The Final EA and written responses to the Draft EA were posted on April 14, 2023, for public review and tribes requesting notice under AB 52 were provided notice. No requests for tribal consultation were received.

CARB received written comments from 177 commenters during the ACF 15-Day Notice comment period. Staff presented the modified proposal to the Board for further consideration on April 27-28, 2023, at which 34 written comment submissions were received along with 158 individuals who gave oral testimony. At that hearing, the Board considered the Final EA and RTC in accordance with the requirements of CEQA and CARB's certified regulatory program. The Board adopted Resolution 23-13, which adopted the Findings and Statement of Overriding Considerations, approved written responses to the Draft EA, certified the Final EA, and adopted the proposed ACF Regulation.  The adopted Regulations reflect the final modifications that were made available for the supplemental comment periods and non-substantial changes that were appropriate to be made, as reflected in the Final Regulation Orders made available for the hearing.

This FSOR updates the Staff Report by identifying and explaining the modifications that were made to the original proposal at the Board's direction and in response to comments. It updates the information in the Staff Report and summarizes and responds to the written and oral comments submitted to CARB on the Regulations or on the process by which they were adopted.

In adopting the ACF Regulations, CARB has added the following sections to title 13, in the CCR: 2013, 2013.1, 2013.2, 2013.3, 2013.4, 2014, 2014.1, 2014.2, 2014.3, 2015, 2015.1, 2015.2, 2015.3, 2015.4, 2015.5, 2015.6, and 2016.

## Mandates and Fiscal Impacts to Local Governments and School Districts

Costs incurred by local governments and school districts are not reimbursable pursuant to Section 6 of Article XIII B of the California Constitution and Part 7 (commencing with Section 17500), Division 4 of Title 2 of the Government Code. These costs are not reimbursable because this action neither compels local agencies to provide new governmental functions (i.e., it does not require such agencies to provide additional services to the public), nor imposes requirements that apply only on local agencies or school districts.[2] Instead, this regulatory action establishes requirements that apply to all individuals and entities that own or operate regulated vehicles and facilities. This action also does not compel local agencies to increase the

---

[2] County of Los Angeles v. State of California (1987) 43 Cal.3d 46, 56.