# Exhibit 9



## ASSISTANT ADMINISTRATOR FOR AIR AND RADIATION

WASHINGTON, D.C. 20460

September 27, 2025

Steven S. Cliff, Ph.D.
Executive Officer
California Air Resources Board

**Submitted electronically to:** staff@oal.ca.gov.

**SUBJECT:** U.S. ENVIRONMENTAL PROTECTION AGENCY'S COMMENT ON CALIFORNIA AIR RESOURCES BOARD'S EMERGENCY AMENDMENT AND ADOPTION OF VEHICLE EMISSIONS REGULATION

Dear Dr. Cliff:

I write on behalf of the U.S. Environmental Protection Agency (EPA or "the Agency") in response to California Air Resource Board's (CARB) proposed emergency amendment and adoption of vehicle emissions regulations ("Emergency Vehicle Emissions Regulation"). Although the perfunctory nature of the rulemaking prevents EPA from fully analyzing the proposed rule, the Agency understands that it would amend California Code of Regulations, titles 13 and 17 and adopt new sections into California Code of Regulations, titles 13 and 17. The Agency submits this letter for consideration during the emergency rulemaking voluntarily and without prejudice to any future determination, legal argument, or assertion of right.

As you know, the Clean Air Act (CAA) vests EPA with exclusive authority to promulgate emission standards for new motor vehicles and engines and broadly preempts any State or political subdivision thereof from adopting or attempting to enforce its own standards. Specifically, CAA section 209(a) provides that no State or political subdivision "shall adopt or enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a). Further, no State "shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment." *Id.*

For California to adopt or attempt to enforce any new motor vehicle or engine emission standard, therefore, it must obtain a waiver under CAA section 209(b). Specifically, CAA section

209(b) authorizes EPA to waive preemption if California determines that the relevant standard "will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b)(1). For EPA to issue a waiver, the Administrator must find, after notice and an opportunity for a public hearing, that California's determination is not "arbitrary and capricious," that California needs such standard "to meet compelling and extraordinary conditions," and that the standard and its enforcement procedures are "consistent with" CAA section 202(a). *Id.* § 7543(b)(1)(A)-(C).

Consistent with the express requirements of CAA section 209, EPA expects that CARB will submit any presumptively final regulation resulting from this emergency rulemaking to the Agency before adopting or attempting to enforce any new or amended standard applicable to new motor vehicles or engines. Until and unless EPA waives preemption for any such new or amended standard under CAA section 209(b), no such standard may have legal force or effect.

EPA is deeply troubled by recent statements from CARB, including in the proposed rule materials, that there is "uncertainty" regarding the status of CARB's Advanced Clean Cars II (ACC II), Advanced Clean Trucks (ACT), and "Omnibus" Low NOx regulations. There is no uncertainty that, as a consequence of bipartisan Congressional Review Act (CRA) resolutions enacted into law on June 10, 2025, EPA's prior waivers for these provisions have no force and effect and the provisions are therefore preempted by CAA section 209(a).[1] Nor is there uncertainty that, as a further consequence of the bipartisan CRA resolutions, EPA is barred from waiving preemption for any standard that is "substantially the same" as those in the ACC II, ACT, or Omnibus Low NOx regulations. 5 U.S.C. § 801(b)(2).

Thus, CARB may not continue to enforce or require certification of preexisting regulations, including Advanced Clear Cars I (ACC I), unless the standards therein were submitted to EPA and are the subject of an extant EPA waiver rule under CAA section 209(b). Further, even if a preexisting regulation previously obtained a waiver, such waiver is no longer extant if the regulation became ineffective at any time, whether through the passage of time, repeal, or by any other means.

If CARB wishes to adopt new or amended standards in this rulemaking that differ in any way from provisions already subject to an extant preemption waiver, CARB must submit a new waiver request and receive a waiver from EPA under CAA section 209(b) before CARB can adopt or attempt to enforce any such standard. This includes adding standards in any new sections of the California Code of Regulations, or combining standards in regulations that were previously separate, or applying standards to different model years. Any such regulation cannot be finalized or enforced, including by requiring certification, until after submission to and review by EPA. Among other issues, EPA will assess whether such standard meets the requirements of CAA

---

[1] H.J. Res. 87, Pub. L. No. 119-15; H.J. Res. 88, Pub. L. No. 119-16; H.J. Res. 89, Pub L. No. 119-17.

section 209(b) and whether such standard reinstates any provisions from the ACC II, ACT, or Omnibus Low NOx regulations.

If you have questions, you are welcome to contact me, or your staff may contact Alexander Dominguez, Deputy Assistant Administrator for Mobile Sources at Dominguez.Alexander@EPA.gov.

Sincerely,

Aaron Szabo
Assistant Administrator

cc:     Lindsay Garcia (Lindsay.garcia@arb.ca.gov)
        cotb@arb.ca.gov
        Alexander Dominguez (Dominguez.Alexander@EPA.gov)