Michael Buschbacher*
James R. Conde*
Laura B. Ruppalt*
Nicholas A. Cordova*
Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com
ncordova@boydengray.com

* *pro hac vice*

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,<br><br>Defendant. | No. 2:25-cv-03255-DC-AC<br><br>**PLAINTIFF AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**<br><br>**Date: August 7, 2026**<br>**Time: 1:30 PM**<br>**Place: Courtroom 10, 13th Floor**<br>**Judge: Hon. Dena Coggins** |

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 260(b), Plaintiff American Free Enterprise Chamber of Commerce ("AmFree"), by and through undersigned counsel, hereby submits this response to Defendant Steven S. Cliff's Statement of Undisputed Facts, ECF No. 174-1.[1] As a general matter, AmFree objects to Cliff's citations to Defendant's Request for Judicial Notice throughout his Statement of Undisputed Facts, as Defendant has not shown that judicial notice of any fact or document is proper. *See* Pl.'s Objections to Def.'s. Request for Judicial Notice, filed simultaneously with this Response.

**Defendant's Statement of Undisputed Facts and Supporting Evidence**

**and AmFree's Response**

1.     Neither AmFree nor its members are parties to the Clean Truck Partnership (CTP). Def. Cliff Req. for Judicial Notice (RJN) (filed concurrently) Ex. 48 at 4–6 & i; ECF No. 142-6 (Collins Decl.), ¶ 3.

**AmFree's response:** Undisputed.

2.     In the CTP, the signatory manufacturers committed to selling vehicles or engines in California consistent with the Omnibus regulation, the Advanced Clean Trucks (ACT) sales requirements, and the Advanced Clean Fleets (ACF) 2036 sales requirement. RJN, Ex. 48, App'x B at i-ii; Heroy-Rogalski Decl., ¶ 27 (filed concurrently).

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Clean Truck Partnership ("Partnership"), Third Am. Compl. ("Compl."), Ex. A, ECF No. 142-2, which speaks for itself.

3.     In the CTP, the signatory manufacturers made no commitments to selling specific quantities or percentages of zero-emission vehicles outside of California. RJN, Ex. 48, App'x B at F; Heroy-Rogalski Decl., ¶ 28.

---

[1] The Statement of Undisputed Facts filed at ECF Nos. 174-1 and 175-1 are identical, so this Response references ECF No. 174-1 only.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

4.     The emission standards in the Omnibus regulation apply only to vehicles with internal-combustion engines. Cal. Code Regs., tit. 13, § 1956.8(a)(2)(C), (a)(2)(D); Heroy-Rogalski Decl., ¶ 31.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The regulation speaks for itself.

5.     The Omnibus regulation does not require the sale of any zero-emission vehicles. Cal. Code Regs., tit. 13, § 1956.8(a)(2)(C), (a)(2)(D); Heroy-Rogalski Decl., ¶¶ 28–29, 31.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The regulation speaks for itself.

6.     AmFree member Meiborg Brothers Inc. is an Illinois-based company. ECF No. 142-3 (Meiborg Decl.), ¶ 1.

**AmFree's response:** Undisputed that Meiborg Brothers Inc. is headquartered in Rockford, Illinois. Compl., Ex. B ("Meiborg Decl.") ¶ 1, ECF No. 142-3.

7.     AmFree member TanTara Transportation Corp. is an Iowa-based company. ECF No. 142-2 (Riggan Decl.), ¶ 1.

**AmFree's response:** Undisputed that TanTara Transportation Corp. is headquartered in Muscatine, Iowa. Compl., Ex. C ("Riggan Decl.") ¶ 1, ECF No. 142-4.

8.     Meiborg Brothers Inc. has not asserted that it has ever purchased a truck in California, or that it has plans to do so in the future. *See generally* Meiborg Decl.

**AmFree's response:** Disputed. Meiborg Brothers Inc., constantly looks for the best prices nationwide, and the Nation includes California. *See* Meiborg Decl. ¶¶ 3, 5–9.

9.     TanTara Transportation Corp. has not asserted that it has ever purchased a truck in California, or that it has plans to do so in the future. *See generally* Riggan Decl.

**AmFree's response:** Disputed. TanTara Transportation Corp. looks for the best prices nationwide, and the Nation includes California. *See* Riggan Decl. ¶¶ 3, 5–9.

10. Truck prices vary around the nation, which is why Meiborg Brothers Inc. looks nationwide for the best price when making truck purchasing decisions. Meiborg Decl., ¶ 5.

**AmFree's response:** Undisputed that Meiborg Brothers, Inc. looks nationwide for the best prices when making truck purchasing decisions. Meiborg Decl. ¶ 5. Whether and to what extent truck prices vary around the nation is not addressed in the cited declaration.

11. Truck prices vary around the nation, which is why TanTara Transportation Corp. looks nationwide for the best price when making truck purchasing decisions. Riggan Decl., ¶ 5.

**AmFree's response:** Undisputed that TanTara Transportation Corp. looks nationwide for the best price when making truck purchasing decisions. Riggan Decl., ¶ 5. Whether and to what extent truck prices vary around the nation is not addressed in the cited declaration.

12. The CTP does not prevent signatory manufacturers from pricing a given vehicle model differently in different parts of the country, including from state to state. RJN, Ex. 48, App'x B & App'x D.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

13. The CTP does not constrain the total number of vehicles its signatory manufacturers can produce for sale in California or elsewhere. RJN, Ex. 48, App'x B & App'x D.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

Disputed to the extent Cliff seeks to establish the practical effect of the Partnership. California has already experienced internal-combustion truck supply shortages across medium- and heavy-duty vehicle classes, which manufacturers and dealers attribute to the Partnership and the regulations the Partnership enforces. *See* Pl.'s Req. for Jud. Not. ("Pl.'s RJN"),[2] Ex. 2 ("Availability Memo") at 1, 3–7.

---

[2] AmFree filed its Request for Judicial Notice simultaneously with this Response.

14.    The CTP does not limit or specify the vehicles non-signatory manufacturers may sell anywhere, including in California. RJN, Ex. 48 at 1, 4–6 & i.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

Disputed to the extent Cliff seeks to establish the practical effect of the Partnership. The Partnership signatories comprise the vast majority of the U.S. heavy-duty vehicle market, and so will drive pricing and availability. *See* Decl. of Jason Johnston, PhD ("Johnston Decl.") ¶¶ 5–7[3] (signatories account for over 99% of U.S. sales of Class 8 trucks in 2025); Pl.'s RJN, Ex. 8 ("Cal. E.O. N-27-25") at 1–2 (Governor Newsom observing that Partnership signatories comprise "over 90 percent of California's truck market").

15.    If a signatory manufacturer to the CTP offers fewer combustion-engine vehicles for sale in California than it did before it signed the CTP, the CTP does not prevent the manufacturer from selling any excess combustion-engine vehicles in other States. RJN, Ex. 48, App'x B & App'x D.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

16.    Nationwide sales of heavy-duty vehicles declined between model year 2023 and model year 2024. RJN, Ex. 16.

**AmFree's response:** Undisputed.

17.    The decline in nationwide sales of heavy-duty vehicles between model year 2023 and 2024 resulted from several industry-wide factors, including a prolonged freight recession. RJN, Ex. 18 at 1–3.

**AmFree's response:** Undisputed that the decline in nationwide sales of heavy-duty vehicles between model year 2023 and 2024 resulted from multiple factors.

---

[3] AmFree filed this Declaration simultaneously with this Response.

Disputed to the extent Cliff seeks to establish the decline in California heavy-duty vehicle sales was due solely to the same factors. From model years 2023 to 2024, nationwide Class 7 and 8 tractor sales declined only about 6%. Pl.'s RJN, Ex. 9 (American Truck Dealers report); *see also* Pl.'s RJN, Ex. 13 (Nationwide Heavy Weight Truck Sales). In comparison, California sales of internal-combustion Class 7 and 8 tractors declined about 82% over the same period, indicating that additional California-specific factors contributed to California's decline. Def.'s Resp. to Pl.'s Stmt. of Undisp. Facts ("Def.'s Resp. to Pl.'s SOF") ¶¶ 16–18, ECF No. 174-5.

18.    Tesla is not a signatory to the CTP. RJN, Ex. 48 at 4–6 & i.

**AmFree's response:** Undisputed.

19.    Tesla is producing "fully electrified" standard- and long-range semi trucks for delivery in 2026. RJN, Ex. 17 at 2.

**AmFree's response:** Undisputed that Tesla has advertised a "fully electrified" semi-truck for delivery "[s]tart[ing] in 2026." Def.'s Req. for Jud. Not. ("Def.'s RJN"), Ex. 17 at 2, ECF No. 176-17.

Disputed to the extent Cliff seeks to establish that Tesla electric semi-trucks will be widely commercially available in 2026 in California or nationwide, for which Cliff provides no support. Further disputed that Tesla's semi-truck is "long-range." Tesla specifies a range of "[a]pproximately 325 miles" for its "Long Range" variant, Def.'s RJN, Ex. 17 at 6, which is less than half the range of internal-combustion engine trucks, Compl. ¶ 154, ECF No. 142.

20.    Spartan RV Chassis is a brand of the Shyft Group, Inc. ECF No. 142-5 (DeMartini Decl.), ¶ 4; RJN, Ex. 47 at 4.

**AmFree's response:** Undisputed.

21.    Spartan RV Chassis manufactures RV chassis. DeMartini Decl., ¶ 4; RJN, Ex. 47 at 4.

**AmFree's response:** Undisputed that Spartan RV Chassis manufactures a Class A RV chassis. *See* Def.'s RJN, Ex. 47 at 5, ECF No. 176-47.

Disputed as to anything else Cliff seeks to establish, including that Spartan RV Chassis are suitable for all classes of RVs and motorhomes sold by DeMartini RV, including Class Super C RVs.

22.   Neither Spartan RV Chassis nor Shyft Group, Inc. are signatories to the CTP. RJN, Ex. 48 at 4–6 & i.

**AmFree's response:** Undisputed that Spartan RV Chassis and Shyft Group, Inc. are not signatories to the Partnership.

Disputed as to anything else Cliff seeks to establish, including that sales of Spartan RV Chassis will not be affected by the Partnership. Spartan RV Chassis incorporate Cummins engines, Pl.'s RJN, Ex. 14 (Spartan RV Chassis Brochure), and Cummins is a signatory to the Partnership, Compl., Ex. A at 5.

23.   Freightliner, a subsidiary of Daimler Trucks North America, LLC (Daimler), manufactures RV chassis. DeMartini Decl., ¶ 4.

**AmFree's response:** Undisputed.

24.   In August 2025, Daimler stated in a stipulation filed in Nebraska state court that "the CTP had no impact on product, availability, price, or the markets for engines or medium- and heavy-duty trucks at any time." RJN, Ex. 13 at 3.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403 To the extent Daimler's stipulation attributes market impacts to the Omnibus Low $NO_x$ ("Omnibus") and Advanced Clean Trucks ("ACT") regulations rather than the Partnership, that distinction does not matter for purposes of AmFree's standing. *See* Pl.'s Reply in Supp. of Mot. and Opp'n to Def.'s Cross-Mot. ("Pl.'s Reply"), Part I.C.1.[4]

Undisputed that the quoted language appears in an unsworn stipulation filed in *Nebraska v. Daimler Truck N. Am.*, No. CI24-570 (Dist. Ct. of Lincoln Cnty., Neb.).

---

[4] AmFree filed its Reply simultaneously with this Response.

Disputed to the extent Cliff seeks to establish that the Partnership had, and will have, no effect on medium- and heavy-duty vehicle and engine products, availability, price, or markets. Cliff quotes the document out of context. The manufacturers "contend[ed]" that there was no effect for purposes of that antitrust litigation because until the Resolutions, "each Defendant was obligated to follow California's ACT and Omnibus standards as a matter of law, not as a result of the CTP." Def.'s RJN, Ex. 13 at 3. That unsworn claim simply reflects a convenient litigation position.

Manufacturers confirmed in later sworn statements that the Omnibus and ACT regulations that the Partnership enforces "necessarily impact pricing," Pl.'s RJN, Ex. 4 (Decl. of Michael Noonan on behalf of Int'l Motors, LLC in *Daimler Truck N. Am. LLC v. CARB*, No. 2:25-cv-2255 (E.D. Cal.)) ("Int'l Motors Decl.") ¶¶ 10–11, and that Cliff's attempt to enforce the preempted regulations results in "downstream harm to dealers, customers, and the public," Pl.'s RJN, Ex. 5 (Decl. of Carl Hergart on behalf of PACCAR, Inc. in *Daimler Truck N. Am. LLC v. CARB*, No. 2:25-cv-2255 (E.D. Cal.)) ("PACCAR Decl.") ¶ 12. *See also* Pl.'s RJN, Ex. 6 (Decl. of Andrea Brown on behalf of Volvo Grp. N. Am., LLC) ("Volvo Decl.") ¶¶ 18–19 (explaining the costs of complying with the preempted regulations).

25.   In August 2025, Daimler represented to the Federal Trade Commission that it "will independently make decisions about the type and quantity of vehicles it sells without regard to whether those decisions are compliant with any restrictive terms of the CTP." RJN, Ex. 11 at 2–3; *see also* RJN, Ex. 12 at 2.

**AmFree's response:** Undisputed that the quoted language appears in a letter that Daimler sent to the FTC.

Disputed to the extent Cliff seeks to establish that the Partnership had, and will have, no effect on medium- and heavy-duty vehicle and engine products, availability, price, or markets. Manufacturers confirmed in later sworn statements that the Omnibus and ACT regulations that the Partnership enforces "necessarily impact pricing," Int'l Motors Decl. ¶¶ 10–11, and that Cliff's attempt to enforce the preempted regulations results in "downstream harm to dealers,

customers, and the public," PACCAR Decl. ¶ 12. *See also* Volvo Decl. ¶¶ 18–19 (explaining the costs of complying with the preempted regulations).

26.   In January 2025, manufacturers shipped 8.74% of their cumulative Class A recreation vehicles (RV) sales for the month to retailers in California. RJN, Ex. 19 at 7.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The number of Class A RVs shipped to California in a single month does not show that the Partnership has had or will have no impact on internal-combustion vehicle supply or pricing in California. Nor does it say anything about the Partnership's impact on Class Super C RVs. *See, e.g.*, Suppl. DeMartini Decl. ¶¶ 3–11.[5]

Undisputed that the cited figure appears in the indicated Exhibit.

27.   In January 2025, manufacturers shipped 25.71% of their cumulative Class C RV sales for the month to retailers in California. RJN, Ex. 19 at 7.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The number of Class C RVs shipped to California in a single month does not show that the Partnership has had or will have no impact on internal-combustion vehicle supply or pricing in California. Nor does it say anything about the Partnership's impact on Class Super C RVs. *See, e.g.*, Suppl. DeMartini Decl. ¶¶ 3–11.

Undisputed that the cited figure appears in the indicated Exhibit.

28.   Manufacturers shipped more than 475 Class A RVs to retailers in California between January 2025 and December 2025. RJN, Ex. 20 at 8.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the

---

[5] AmFree filed this Declaration simultaneously with this Response.

issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The number of Class A RVs shipped to California in 2025 does not show that the Partnership has had or will have no impact on internal-combustion vehicle supply or pricing in California. Nor does it say anything about the Partnership's impact on Class Super C RVs. *See, e.g.*, Suppl. DeMartini Decl. ¶¶ 3–11.

Undisputed that the indicated Exhibit shows that manufacturers shipped approximately 6.95% of 6,902 Class A RVs, which is more than 475, to California between January 2025 and December 2025.

29.  Manufacturers shipped about 3,010 Class C RVs to retailers in California between January 2025 and December 2025. RJN, Ex. 20 at 8.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The number of Class C RVs shipped to California in 2025 does not show that the Partnership has had or will have no impact on internal-combustion vehicle supply or pricing in California. Nor does it say anything about the Partnership's impact on Class Super C RVs. *See, e.g.*, Suppl. DeMartini Decl. ¶¶ 3–11.

Disputed. Cliff's Exhibit 20 at 8 shows that manufacturers shipped 11.20% of 20,903, or 2,341, Class C RVs to California between January 2025 and December 2025. *See* Def.'s RJN, Ex. 20 at 8.

30.  As of May 27, 2026, the DeMartini RV Sales website lists at least 13 new Super C RVs for model years 2025 and 2026 as available for sale. RJN, Ex. 58 at 1–13, 15–26, 29.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Website listings do not show that the Partnership has had or will have no impact on the supply or pricing of Class Super C RVs in California. *See, e.g.*, Suppl. DeMartini Decl. ¶¶ 3–11.

Undisputed that the indicated Exhibit shows pages from the DeMartini RV Sales website.

31.     As of May 26, 2026, the DeMartini RV Sales website lists at least 8 new Class A RV models for model years 2025 and 2026 as available for sale. RJN, Ex. 56 at 1–10; RJN, Ex. 57 at 1–3.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Website listings do not show that the Partnership has had or will have no impact on the supply or pricing of Class A RVs in California. Nor does it say anything about the Partnership's impact on Class Super C RVs. *See, e.g.*, Suppl. DeMartini Decl. ¶¶ 3–11.

Undisputed that the indicated Exhibit shows pages from the DeMartini RV Sales website.

32.     At least some signatory manufacturers to the CTP, including manufacturers of RV chassis and engines such as Daimler and Cummins, have invested in electric vehicle technology and infrastructure and have publicly committed to electrification targets. DeMartini Decl., ¶ 4; RJN, Ex. 4 at 2; RJN, Ex. 25 at 35; RJN, Ex. 26 at 36.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That some manufacturers have announced electrification investments and targets does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that some signatory manufacturers have publicly announced they have invested in electric-vehicle technology and infrastructure and have set electrification targets, including some manufacturers of RV chassis.

Disputed as to anything else Cliff seeks to establish, including that any manufacturer will meet an electrification target, or that manufacturers would pursue electric-vehicle technology to the same extent in the absence of the Partnership and the regulations it enforces. Cliff provides no support for these inferences.

33.   After signing the CTP, PACCAR, a signatory manufacturer, stated that the agreement ensures a "balanced transition to zero emissions by ensuring continued supply of product into California." RJN, Ex. 4 at 3.

**AmFree's response:** Undisputed that the quoted language appears in the indicated Exhibit.

Disputed as to anything else Cliff seeks to establish, including the practical effect of the Partnership. The quoted language contains PACCAR's characterizations of and contentions about the Partnership, which speaks for itself. Moreover, circumstances have changed since then, casting doubt on PACCAR's projection. PACCAR has sued Cliff seeking invalidation of the Partnership. *See Daimler Truck N. Am. LLC v. CARB*, No. 2:25-cv-2255, 2025 WL 3049944 (E.D. Cal. Oct. 31, 2025).

34.   From now through model year 2035, the CTP commits signatory manufacturers to gradual increases in zero-emission vehicle sales in California across medium- and heavy-duty vehicle categories. Arneja Decl., ¶ 12 (filed concurrently).

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

35.   Signatory manufacturers' zero-emission vehicle sales commitments vary by weight of the vehicle being sold. Arneja Decl., ¶ 9.

**AmFree's response:** Undisputed.

36.   A manufacturer of the RV chassis is typically the "manufacturer" of the vehicle for purposes of the zero-emission-vehicle sales commitments in the CTP. *See* DeMartini Decl., ¶ 4; Arneja Decl., ¶ 8.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

37.   Class A RVs have gross vehicle weight ratings that would place them in the California Class 4-8 group for sales targets. DeMartini Decl., ¶ 11; Arneja Decl., ¶ 11.b.

**AmFree's response:** Undisputed that Class A RVs typically have gross vehicle weight ratings ("GVWRs") exceeding 13,000 lbs, which would place them in the Class 4-8 Group for ACT's "zero-emission vehicle" ("ZEV") sales schedule. Compl., Ex. D ("DeMartini Decl.") ¶ 11, ECF No. 142-5; Cal. Code Regs. tit. 13, §§ 1963, 1963.1(b).

38.    Class Super C RVs have gross vehicle weight ratings that would place them in the California Class 4-8 group for sales targets. DeMartini Decl., ¶ 11; Arneja Decl., ¶ 11.a.

**AmFree's response:** Undisputed that Class Super C RVs typically have GVWRs ranging from 19,500 to 58,000 lbs, which would place them in the Class 4-8 Group for ACT's ZEV sales schedule. DeMartini Decl. ¶ 11; Cal. Code Regs. tit. 13, §§ 1963, 1963.1(b).

39.    Volvo Group, a CTP signatory, produces a "fully electric" Class 8 truck. RJN, Ex. 48 at 6; RJN, Ex. 49 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That one manufacturer has announced limited production of one electric truck model does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that Volvo Group is a Partnership signatory and announced in December 2021 that it was beginning production of an electric Class 8 truck.

Disputed as to anything else Cliff seeks to establish, including that Volvo Group's electric Class 8 truck is a viable substitute for internal-combustion trucks for all applications or that it is or will be commercially available in sufficient quantities that Volvo Group and other signatory manufacturers could comply with the Partnership without restricting supply and increasing cost of internal-combustion heavy-duty vehicles. Cliff provides no support for these inferences.

40.    Sales of Volvo Group's electric Class 8 truck could meet Volvo's zero-emission vehicle commitments under the CTP for the Class 4-8 group. Arneja Decl., ¶ 19.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That one manufacturer has announced limited production of one electric truck model does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

41.    Daimler, a CTP signatory, produces a "zero-emission" Class 4-5 truck. RJN, Ex. 48 at 4; RJN, Ex. 51 at 3.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That one manufacturer has advertised a family of medium-duty electric trucks does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that Daimler is a Partnership signatory and released the brochure in the indicated Exhibit advertising a family of medium-duty electric trucks.

Disputed as to anything else Cliff seeks to establish, including that the vehicles advertised in the brochure are viable substitutes for internal-combustion trucks for all applications or that they are or will be commercially available in sufficient quantities that Daimler and other signatory manufacturers could comply with the Partnership without restricting supply and increasing cost of internal-combustion heavy-duty vehicles. Cliff provides no support for these inferences.

42.    Sales of Daimler's zero-emission Class 4-5 truck could meet Daimler's zero-emission vehicle commitments under the CTP for the Class 4-8 Group. Arneja Decl., ¶ 20.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That one manufacturer has advertised a family of medium-duty electric trucks does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

43.    Daimler has stated that its zero-emission Class 4-5 truck "address[es] a diverse range of customer use cases." RJN, Ex. 25 at 35.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Daimler's characterization of its medium-duty truck does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that the quoted language appears in the indicated Exhibit.

44.    Daimler has stated that its zero-emission Class 4-5 truck "emphasize[s] [Daimler's] commitment to decarbonize the company-wide product portfolio." RJN, Ex. 25 at 35.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Daimler's characterization of a nonbinding corporate "commitment" does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that the quoted language appears in the indicated Exhibit.

45. Blue Bird, a non-CTP signatory, produces zero-emission school buses. RJN, Ex. 48 at 4–6 & i; RJN, Ex. 53 at 4, 6.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That a non-signatory produces zero-emission school buses does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that Blue Bird is not a signatory and that it produces electric school buses.

Disputed to the extent Cliff seeks to establish that Blue Bird's sales would alter the practical effect of the Partnership. The Partnership signatories comprise the vast majority of the U.S. heavy-duty vehicle market, and so will drive pricing and availability. *See* Johnston Decl. ¶¶ 5–7 (signatories account for over 99% of U.S. sales of Class 8 trucks in 2025); Cal. E.O. N-27-25 at 1–2 (Governor Newsom observing that Partnership signatories comprise "over 90 percent of California's truck market").

46. IC Bus, a non-CTP signatory, produces zero-emission school buses. RJN, Ex. 48 at 4–6 & i; RJN, Ex. 54 at 1–3.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That a non-signatory produces zero-emission school buses does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that IC Bus is not a signatory and that it produces electric school buses.

Disputed to the extent Cliff seeks to establish that IC Bus's sales would alter the practical effect of the Partnership. The Partnership signatories comprise the vast majority of the U.S. heavy-duty vehicle market, and so will drive pricing and availability. *See* Johnston Decl. ¶¶ 5–7 (signatories account for over 99% of U.S. sales of Class 8 trucks in 2025); Cal. E.O. N-27-25 at 1–2

(Governor Newsom observing that Partnership signatories comprise "over 90 percent of California's truck market").

47.    Micro Bird, a non-CTP signatory, produces zero-emission school buses. RJN, Ex. 48 at 4–6 & i; RJN, Ex. 55 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That a non-signatory produces zero-emission school buses does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that Micro Bird is not a signatory and that it produces electric school buses.

Disputed to the extent Cliff seeks to establish that Micro Bird's sales would alter the practical effect of the Partnership. The Partnership signatories comprise the vast majority of the U.S. heavy-duty vehicle market, and so will drive pricing and availability. *See* Johnston Decl. ¶¶ 5–7 (signatories account for over 99% of U.S. sales of Class 8 trucks in 2025); Cal. E.O. N-27-25 at 1–2 (Governor Newsom observing that Partnership signatories comprise "over 90 percent of California's truck market").

48.    The school bus models referenced at rows 45–47 fit into Classes 4, 6, 7, and 8. Arneja Decl., ¶ 21.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The existence of electric school buses in Classes 4, 6, 7, or 8 do not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Disputed. Plaintiff does not have sufficient information to know the regulatory classification of the school bus models cited by Cliff.

49.   Sales of the school bus models referenced at rows 45–47 could support the zero-emission vehicle commitments under the CTP for the Class 4-8 Group. Arneja Decl., ¶ 21.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

50.   THOR Industries, a non-CTP signatory, has developed a hybrid Class A RV that combines an electric chassis with a low emission gasoline range extender. RJN, Ex. 48 at 4–6 & i; Arneja Decl., ¶ 6.

**AmFree's response:** Undisputed that THOR Industries is not a signatory to the Partnership and has publicly stated it is developing a hybrid Class A RV.

Disputed as to anything else Cliff seeks to establish, including that THOR's hybrid Class A RV is or will be commercially available. *See* Def.'s RJN, Ex. 23 (describing THOR's hybrid Class A Motorhome as a "Test Vehicle"). It is not unusual for RV manufacturers to cancel electric models after announcement. *See* Suppl. DeMartini Decl. ¶ 13 (Coachmen RV canceled their Class B all-electric camper van in late 2025).

51.   Winnebago, a non-CTP signatory, has developed an all-electric Class B RV. RJN, Ex. 48 at 4–6 & i; Arneja Decl., ¶ 6.

**AmFree's response:** Undisputed that Winnebago is not a signatory to the Partnership and has publicly stated it is developing an all-electric Class B RV.

Disputed as to anything else Cliff seeks to establish, including that Winnebago's electric Class B RV is or will be commercially available. *See* Def.'s RJN, Ex. 24 (describing Winnebago's electric camper van as a "prototype"). It is not unusual for RV manufacturers to cancel electric models after announcement. *See* Suppl. DeMartini Decl. ¶ 13 (Coachmen RV canceled their Class B all-electric camper van in late 2025).

52.   As of March 5, 2026, there are 134 models of zero-emission vehicles within the Class 4-8 group certified for sale in California for the current and prior two model years. Arneja Decl., ¶ 22.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That some electric heavy-duty vehicles have been certified for sale in California does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that the webpage Cliff's declarant cites lists "zero-emission vehicle" models purportedly certified by California, and that the list includes 134 models characterized as Class 4, 5, 6, 7, or 8.

Disputed as to anything else Cliff seeks to establish, including that any or all of the models are in production or widely commercially available, or that the certified electric-vehicle models will be available in sufficient quantities that signatory manufacturers could comply with the Partnership without restricting supply and increasing cost of internal-combustion heavy-duty vehicles. Cliff provides no support for these inferences.

53.   As of March 5, 2026, 39 manufacturers make models of zero-emission vehicles within the Class 4-8 group certified for sale in California for the current and prior two model years. Arneja Decl., ¶ 22.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That some manufacturers have designed electric heavy-duty vehicles that have been certified for sale in California does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that the webpage Cliff's declarant cites lists "zero-electric vehicle" models purportedly certified by California, and that the list includes 39 manufacturers that make models characterized as Class 4, 5, 6, 7, or 8.

Disputed as to anything else Cliff seeks to establish, including that any or all of the manufacturers are delivering any vehicle model for commercial sale, or that the certified electric-vehicle models will be available and demanded in significant quantities.

54.    As of March 5, 2026, there are 53 models of zero-emission vehicles within the Class 2b-3 group certified for sale in California for the current and prior two model years. Arneja Decl., ¶ 22.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That some electric heavy-duty vehicles have been certified for sale in California does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that the webpage Cliff's declarant cites lists "zero-electric vehicle" models purportedly certified by California, and that the list includes 53 models characterized as Class 2b and 3.

Disputed as to anything else Cliff seeks to establish, including that any or all of the models are in production or widely commercially available, or that the certified electric-vehicle models will be available in significant quantities.

55.    As of March 5, 2026, 12 manufacturers make models of zero-emission vehicles within the Class 2b-3 group certified for sale in California for the current and prior two model years. Arneja Decl., ¶ 22.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That some manufacturers have designed electric heavy-duty vehicles that have been certified for sale in California does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that the webpage Cliff's declarant cites lists "zero-electric vehicle" models purportedly certified by California, and that the list includes 12 manufacturers that make models characterized as Class 2b and 3.

Disputed as to anything else Cliff seeks to establish, including that any or all of the manufacturers are delivering any vehicle model for commercial sale, or that the certified electric-vehicle models will be available in significant quantities.

56.    There are many medium- and heavy-duty zero-emission vehicles of different weight classes and functions certified for sale in California for the current and prior two model years. Arneja Decl., ¶ 18–22.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That some electric heavy-duty vehicles have been certified for sale in California does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Disputed as vague. The word "many" has no precise meaning that can be admitted or disputed. Further disputed as to anything else Cliff seeks to establish, including that any or all of the models are in production or widely commercially available, or that the certified electric-vehicle models will be available in sufficient quantities that signatory manufacturers could comply with the Partnership without restricting supply and increasing cost of internal-combustion heavy-duty vehicles. Cliff provides no support for these inferences.

57.    In California, RV sales represent about 2.5% of total medium- and heavy-duty vehicle sales. Arneja Decl., ¶ 5.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That RVs may make up a relatively small percentage of overall medium- and heavy-duty vehicle sales in California does not show that the Partnership has had or will have no impact on the

supply or pricing of internal-combustion vehicles and engines, including those used for RV chassis. DeMartini RV Sales has experienced both supply shortages and increased prices for RV chassis since the Partnership took effect. *See, e.g.*, DeMartini Decl. ¶¶ 14–16; Suppl. DeMartini Decl. ¶¶ 4, 6–8, 15.

Disputed. AmFree cannot verify the origin of the data included in the spreadsheet Cliff's declarant cites as the basis for his calculation. The spreadsheet itself is dated "February 22, 2019" ("Intro" tab), suggesting any market data is out-of-date and so does not represent the current percentage of RV sales in California. *See* Arneja Decl. ¶ 5, ECF No. 174-3 (citing https://ww2.arb.ca.gov/sites/default/files/2019-02/190225actmarketanalysis.xlsx).

58.    Under the CTP, a manufacturer could continue to sell internal-combustion engine RVs and still meet their zero-emission vehicle sales commitments through 2035 by, for example, selling a sufficient percentage of other zero-emission vehicle types within the same weight group (e.g., school buses or garbage trucks). Arneja Decl., ¶¶ 15–18.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself. This purported fact is also irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. That manufacturers may be able to meet sales requirements without selling electric RV chassis does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines, including those used for RV chassis. For example, it does not address the impact of the Partnership's requirement to comply with the Omnibus regulations, which will increase prices. *See* Johnston Decl. ¶¶ 5, 12. DeMartini RV Sales has experienced both supply shortages and increased prices for RV chassis since the Partnership took effect. *See, e.g.*, DeMartini Decl. ¶¶ 14–16; Suppl. DeMartini Decl. ¶¶ 4, 6–8, 15.

59.    The signatories to the CTP spent months negotiating its terms. Heroy-Rogalski Decl., ¶¶ 16–18.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. How long the signatories to the Partnership spent negotiating does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

60.    In the course of negotiations for the CTP, the California Air Resources Board (CARB) proposed certain terms that were rejected by the other signatories. Heroy-Rogalski Decl., ¶ 20.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Whether CARB proposed certain terms that were rejected by the other signatories does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

61.    The CTP's signatories do not include at least the following manufacturers of internal-combustion medium- and heavy-duty engines and trucks operating in California: Roush, Lanid, Renzo, Agility Powertrain Systems, and Powersolutions International. Heroy-Rogalski Decl., ¶ 34.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The Partnership signatories comprise the vast majority of the U.S. heavy-duty vehicle market, and so will drive pricing and availability. *See* Johnston Decl. ¶¶ 5–7 (signatories account for over 99% of U.S. sales of Class 8 trucks in 2025); Cal. E.O. N-27-25 at 1–2 (Governor Newsom observing that Partnership signatories comprise "over 90 percent of California's truck market"). That a handful of other companies who have less than 1% market share does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful.

Undisputed that the specified parties are not signatories to the Partnership.

62.    After signing the CTP, EMA publicly stated that the CTP "demonstrates how EMA and CARB can work together to achieve their shared clean air goals." RJN, Ex. 4 at 1.

**AmFree's response:** Undisputed that the indicated Exhibit contains the quoted language.

Disputed as to anything else Cliff seeks to establish, including that the signatories were not coerced into signing the Partnership in light of the significant regulatory authority Cliff holds over them.

63.    After signing the CTP, Volvo publicly stated that the agreement reflected a "cooperative effort[]" between themselves and CARB. RJN, Ex. 4 at 3.

**AmFree's response:** Undisputed that the indicated Exhibit contains the quoted language. Disputed as to anything else Cliff seeks to establish, including that the signatories were not coerced into signing the Partnership in light of the significant regulatory authority Cliff holds over them.

64.    On August 10, 2025, Daimler publicly stated that "through the CTP, [Daimler] was able to obtain benefits for its dealers and for customers of its trucks." RJN, Ex. 11 at 2.

**AmFree's response:** Undisputed that the indicated Exhibit contains the quoted language. Disputed as to anything else Cliff seeks to establish, including that the signatories were not coerced into signing the Partnership in light of the significant regulatory authority Cliff holds over them.

65.    The CTP does not contain a term authorizing CARB to seek civil or criminal penalties in the event of another signatory's breach. RJN, Ex. 48 at 1–3; *see also* Heroy-Rogalski Decl., ¶ 32.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

Disputed. The Partnership incorporates by reference penalty provisions of the state code. *See, e.g.*, Compl., Ex. A, at 10–11 nn.1–2 (incorporating, *e.g.*, Cal. Code Regs. tit. 13, § 2170 (titled "Penalties")).

66.    On October 27, 2025, CARB filed a suit in California state court against Daimler Truck North America LLC, International Motors LLC, PACCAR Inc., and Volvo Group North America LLC alleging, among other things, that these manufacturers breached their commitments

under the CTP. *CARB v. Daimler Truck N. Am. LLC*, Case No. 25CV151420 (Cal. Sup. Ct. Alameda Cnty., Oct. 27, 2025); *see also* RJN, Ex. 46 at 1, 3–5.

**AmFree's response:** Undisputed that CARB filed the above-captioned lawsuit.

67.   CARB has completed nearly all of its commitments under the CTP. Heroy-Rogalski Decl., ¶ 40.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself. This purported fact is also irrelevant. Whether CARB has completed its commitments under the Partnership does not show that the Partnership has had or will have no impact on the supply or pricing of internal-combustion vehicles and engines. Nor does it say anything about whether the Partnership is lawful or severable.

68.   The only term of the CTP related to manufacturers' sales commitments under ACF is included at Appendix B, page ii, paragraph 2. RJN, Ex. 48, App'x B at ii, ¶ 2.

**AmFree's response:** Objection. This is a conclusion of law, to which no response is required. The purported fact contains Cliff's characterizations of and contentions about the best reading of the Partnership, which speaks for itself.

69.   The signatory manufacturers' commitments to sell vehicles consistent with the ACT requirements function independently of their commitments to sell vehicles consistent with the ACF 2036 sales requirement. Heroy-Rogalski Decl., ¶ 31.

**AmFree's response:** Disputed. The Partnership's embedded ACT requirements are not "independent," but of one piece with the embedded Advanced Clean Fleets ("ACF") requirements, which work together to meet the objectives set forth in the first paragraph of the Partnership. Compl., Ex. A, at 2. Moreover, the Partnership contains no severance clause, further indicating that the requirements are inextricably intertwined. Further disputed as to anything else Cliff seeks to establish, including that the Partnership is severable. It is inseverable, at least because it is a contract for an illegal purpose. Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings or, in the Alternative, Summ. J. ("Pl.'s Mem."), Part IV, ECF No. 166-1.

70.  The signatory manufacturers' commitments to sell vehicles consistent with the Omnibus requirements function independently of their commitments to sell vehicles consistent with the ACF 2036 sales requirement. Heroy-Rogalski Decl., ¶ 31.

**AmFree's response:** Disputed. The Partnership's embedded Omnibus requirements are not "independent," but of one piece with the embedded ACF requirements, which work together to meet the objectives set forth in the first paragraph of the Partnership. Compl., Ex. A, at 2. Moreover, the Partnership contains no severance clause, further indicating that the requirements are inextricably intertwined. Further disputed as to anything else Cliff seeks to establish, including that the Partnership is severable. It is inseverable, at least because it is a contract for an illegal purpose. Pl.'s Mem., Part IV.

71.  If a federal agency fails to submit an action that one or more members of Congress believe is a "rule" subject to the Congressional Review Act (CRA), those members may ask the Government Accountability Office (GAO) for a determination. RJN, Ex. 27 at 23.

**AmFree's response:** Undisputed that Congress has established an informal process for consulting GAO when an agency fails to submit an action under the Congressional Review Act ("CRA").

Disputed as to anything else that Cliff seeks to establish, including that GAO's "determination" is authorized by statute or binding. The CRA gives GAO no role in determining whether an agency action is a "rule." *See* 5 U.S.C. §§ 801–805. And under the informal process established by Congress, GAO can only offer an advisory opinion, as GAO's General Counsel has testified. Pl.'s RJN, Ex. 10 ("GAO General Counsel Testimony") at 10 (explaining to Congress in 1997, he "cannot say that GAO has a special role under the statute for making that determination"). As GAO has long acknowledged, the "statutory scheme ultimately leaves it to Congress to decide whether CRA would apply." Pl.'s RJN, Ex. 11 ("GAO Letter B-32553") at 9.

72.  "[T]he question of whether Congress may use the CRA's fast-track parliamentary disapproval mechanism generally hinges upon the determination reached in GAO's opinion in such cases." RJN, Ex. 27 at 23.

**AmFree's response:** Disputed. As explained in AmFree's response to SOF 71, *supra*, the "statutory scheme ultimately leaves it to Congress"—not GAO—"to decide whether CRA would apply." GAO Letter B-32553 at 9. Nothing in the CRA requires Congress to request or adhere to the GAO's advisory opinions. *See* 5 U.S.C. §§ 801–08; GAO General Counsel Testimony at 10.

73.    Before January 20, 2025, neither EPA nor any other agency or officer of the Executive Branch (including the President) had taken the position that a waiver of preemption issued under 42 U.S.C. 7543(b) is a "rule," as defined in 5 U.S.C. 804(3). 75 Fed. Reg. 70,237, 70,241 (Nov. 17, 2010); 69 Fed. Reg. 59,920, 59,922 (Oct. 6, 2004); 84 Fed. Reg. 51,310, 51,352, 51,353, 51,360 (Sept. 27, 2019).

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The Executive Branch's past positions on whether a waiver of Clean Air Act preemption is a "rule" do not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

74.    The GAO issued a decision in 2023 stating that a waiver of preemption issued under 42 U.S.C. 7543(b) is not a "rule," as defined in 5 U.S.C. 804(3). RJN, Ex. 29 at 5.

**AmFree's response:** Disputed. GAO's 2023 "[d]ecision" related to EPA's 2022 rescission of EPA's prior withdrawal of a waiver. Def.'s RJN, Ex. 29 at 1, 3, 7, ECF No. 176-29. It did not relate to the distinct agency action of issuing a waiver. In any event, as explained in AmFree's responses to SOF 71 and 72, *supra*, GAO's "[d]ecision" is only advisory.

75.    Senator Mike Lee introduced a bill to repeal the Clean Air Act's waiver provision, 42 U.S.C. 7543(b), in September 2024. RJN, Ex. 30.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Whether Senator Mike Lee introduced a different bill does not affect whether the Resolutions

rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

76.    When he introduced the bill referenced at row 75, Senator Mike Lee stated that waivers of preemption issued under 42 U.S.C. 7543(b) "cannot be reviewed under the Congressional Review Act" because they are not "rule[s] as that term is defined in the CRA." RJN, Ex. 30.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Senator Lee's tentative opinion on whether a waiver is a rule does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. In any event, Senator Lee appears to have concluded that a waiver is subject to the CRA, as he voted for the Resolutions. Pl.'s RJN, Ex. 16.

77.    House Representative Troy Nehls introduced a companion bill to the bill referenced at row 75 in September 2024. RJN, Ex. 31 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Whether Representative Troy Nehls introduced a different bill does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

78.    When he introduced the bill referenced at row 77, House Representative Troy Nehls stated that "none of [California's waivers] are subject to congressional review." RJN, Ex. 31 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Representative Nehls' tentative opinion on whether a waiver is a rule does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal

laws. They are. Pl.'s Reply, Part III.B.2. In any event, Representative Nehls appears to have concluded that a waiver is subject to the CRA, as he voted for the Resolutions. Pl.'s RJN, Ex. 17.

79.   EPA did not follow rulemaking procedures when considering California's requests for waivers for Advanced Clean Trucks and Omnibus. 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023).

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The procedures EPA used when considering California's original requests for Omnibus and ACT waivers do not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Disputed. EPA provided public notice of California's waiver requests, accepted public comment on those requests, and addressed those comments when issuing the waivers, consistent with the Administrative Procedure Act's notice-and-comment requirements for informal rulemaking. *See* 5 U.S.C. § 553(b); 87 Fed. Reg. 35,765 (June 13, 2022) (providing notice of Omnibus waiver request and inviting comment); 87 Fed. Reg. 35,768 (June 13, 2022) (providing notice of ACT waiver request and inviting comment); 88 Fed. Reg. 20,688 (Apr. 6, 2023) (issuing waiver for ACT and addressing comments); 90 Fed. Reg. 643 (Jan. 6, 2025) (issuing waiver for Omnibus and directing to separate Decision Document that addresses comments).

80.   EPA did not issue proposed rules or proposed dispositions of California's requests for waivers for Advanced Clean Trucks and Omnibus. 88. Reg. 20,688, 20,726 (Apr. 6, 2023).

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The procedures EPA used when considering California's original requests for Omnibus and ACT waivers do not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

81.   When EPA took final action, granting California's requests for waivers for Advanced Clean Trucks and Omnibus, it stated in the decision documents that "the Congressional Review

Act, 5 U.S.C. 801 et seq., … does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3)." 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023).

**AmFree's response:** Undisputed that the indicated Federal Register document, which applies only to the ACT waiver, contains the quoted language.

82.   EPA did not submit a report to Congress or GAO of its waiver for Advanced Clean Trucks in April 2023 when that waiver took effect or when it was published in the Federal Register. *See* RJN, Ex. 5 at 5.

**AmFree's response:** Undisputed that EPA did not submit a report to Congress or GAO of its ACT waiver in April 2023. However, EPA corrected that error and sent the notice of its ACT waiver decision to Congress in 2025. *See* Pl.'s RJN, Ex. 12 ("Congressional Record Entries") at 2 (EC-441), 3 (EC-486), 4 (EC-518), 9 (EC-662).

83.   No member of Congress asked GAO to determine whether EPA's unsubmitted waiver for Advanced Clean Trucks was a rule subject to the CRA. *See* RJN, Ex. 5 at 5.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Whether any member of Congress requested an opinion from GAO in 2023 does not affect whether the Resolution rescinding the ACT waiver is constitutional and binding federal law. It is. Pl.'s Reply, Part III.B.2.

84.   EPA did not submit a report to Congress or GAO of its waiver for Omnibus in January 2025 when that waiver took effect or when it was published in the Federal Register. *See* RJN, Ex. 5 at 5.

**AmFree's response:** Undisputed that EPA did not submit a report to Congress or GAO of its Omnibus waiver in January 2025. However, EPA corrected that error and sent the notice of its Omnibus waiver decision to Congress in 2025. *See* Congressional Record Entries at 2 (EC-440), 3 (EC-484), 4 (EC-519), 9 (EC-660).

85.   No member of Congress asked GAO to determine whether EPA's unsubmitted waiver for Omnibus was a rule subject to the CRA. *See* RJN, Ex. 5 at 5.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Whether any member of Congress requested an opinion from GAO in the one month after the Omnibus waiver decision was published and before EPA submitted it to Congress does not affect whether the Resolutions rescinding the ACT waiver is constitutional and binding federal law. It is. Pl.'s Reply, Part III.B.2.

86.    On February 14, 2025, President Trump and EPA Administrator Zeldin announced in the Oval Office that EPA would transmit to Congress the waiver decisions for the ACT and Omnibus rules, as though the decisions were "rules" subject to the CRA. RJN, Ex. 33 at 1.

**AmFree's response:** Undisputed that on February 14, 2025, President Trump and EPA Administrator Zeldin announced that EPA would transmit to Congress the waiver decisions for the ACT and Omnibus waivers because they are rules.

87.    EPA provided no public process leading up to the announcement referenced at row 86, nor did EPA explain why it had suddenly reclassified the waivers as CRA "rules." *See* RJN, Ex. 33 at 1–2; *see also* RJN, Ex. 5 at 2, 5–6.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The CRA does not require any "public process" prior to an agency submitting a rule to Congress and GAO. *See* 5 U.S.C. § 801(a)(1) (describing the submission process). In any event, whether EPA provided public process prior to its submission of a rule does not affect whether the Resolutions rescinding the Omnibus and ACT waivers is constitutional and binding federal law. It is. Pl.'s Reply, Part III.B.2.

88.    Private parties developed a plan by which EPA would submit the waivers for ACT and Omnibus to GAO as if the waivers were rules subject to the CRA. RJN, Ex. 34.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the

issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. What private parties wrote on a web post does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Disputed. Cliff cites a web post by law firm Boyden Gray PLLC linking to a Wall Street Journal opinion piece in which they explained that Congress had authority under the CRA to rescind Clean Air Act waivers. That post does not describe a "plan," but a legal theory.

89.   The parties who developed the plan referenced at row 88 did so because "[w]aivers take years to roll back through the administrative process" and "ordinary legislation … would have to overcome the 60-vote filibuster in the Senate." RJN, Ex. 34.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. What private parties wrote on a web post does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that the quoted language appears in the indicated Exhibit.

90.   The President and EPA Administrator followed the plan referenced at row 88 when they submitted the waivers for ACT and Omnibus to GAO as if the waivers were subject to the CRA. RJN, Ex. 35 at 1.

**AmFree's response:** Undisputed that the EPA Administrator submitted the waivers for ACT and Omnibus to GAO and Congress because the waivers are rules.

Disputed to the extent Cliff seeks to establish anything else, including that the President and Administrator "followed" any "plan." Cliff provides no evidence to support that inference.

91.   The parties referenced at row 88 maintained that both GAO's determination and the statutory definition of "rule" were irrelevant because "the CRA's text … do[es] not bind," and "the CRA gives Congress unchallengeable power to invalidate any action that an agency submits for review." RJN, Ex. 59 at 5, 10.

**AmFree's response:** Disputed. The purported fact contains Cliff's characterizations of and contentions about the article in Exhibit 59. The article speaks for itself and provides the best evidence of its content.

92.    At the time of EPA's February 14, 2025, announcement, the waiver for the ACT rule had been published in the Federal Register almost two years earlier. 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023).

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The timing Cliff references above does not affect whether the Resolution rescinding the ACT waiver is constitutional and binding federal law. It is. Pl.'s Reply, Part III.B.2.

Undisputed that EPA's notice of decision for the ACT waiver was published in the Federal Register on April 6, 2023, and EPA announced it would submit the waiver to Congress on February 14, 2025.

93.    At the time of EPA's February 14, 2025, announcement, the waivers for the ACT and Omnibus rules had taken effect. 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023); 90 Fed. Reg. 643, 644 (Jan. 6, 2025).

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The signature or effective date of the waivers does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. In any event, the CRA expressly contemplates that a resolution of disapproval may be enacted after a rule has taken effect. *See* 5 U.S.C. § 801(b)(1) (providing that a "rule shall not take effect (*or continue*), if the Congress enacts a joint resolution of disapproval" (emphasis added)).

Undisputed that EPA's notices of decision for the waivers were signed before February 14, 2025.

94.    Members of Congress responded to EPA's February 14, 2025, announcement by crediting "the Trump EPA['s]" submission of these waivers for "giving Congress the opportunity to reject California's effort to impose its EV mandate on all Americans." RJN, Ex. 61.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Public statements of members of Congress after the announcement do not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that the quoted language appears in the indicated Exhibit. Disputed as to anything else Cliff seeks to establish.

95.    Members of Congress responded to EPA's February 14, 2025 announcement by asserting that "Chairman Capito [of the Senate Environment and Public Works Committee] will work with her colleagues to use the Congressional Review Act process to protect consumers from these unrealistic requirements that were approved by the Biden administration." RJN, Ex. 61.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Again, public statements of members of Congress after the announcement do not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that the quoted language appears in the indicated Exhibit. Disputed as to anything else Cliff seeks to establish.

96.    EPA submitted the waivers for ACT and Omnibus to Congress and GAO on February 19, 2025. RJN, Ex. 5 at 1 n.1.

**AmFree's response:** Undisputed that EPA submitted the waivers for ACT and Omnibus to Congress in February 2025.

97. Neither EPA nor President Trump made the submissions referenced at row 96 public. *See* RJN, Ex. 5 at 1 n.1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The CRA does not require EPA to make its submissions public, *see* 5 U.S.C. § 801(a)(1), nor would that affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Disputed. AmFree lacks knowledge to assess whether the submissions were made public and the GAO letter cited by Cliff does not indicate that, either.

98. The submissions referenced at row 96 described the three waiver decisions as "actions" and "Notice[s] of Decisions," rather than "rules." RJN, Ex. 5 at 1 & n.1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Also hearsay. Fed. R. Evid. 802. How EPA described the waivers at issue in its submissions does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. Moreover, to the extent Cliff relies on the characterization of the submission in the GAO letter indicated in the Exhibit, that is inadmissible hearsay.

Disputed. Cliff claims the submissions were not made public, and so he can have no personal knowledge of their contents.

99. GAO observed that EPA "did not explain … why the agency was submitting the notices" referenced at row 96 under the CRA "given its statement in each notice that CRA did not apply." RJN, Ex. 5 at 6.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402,

403. Also hearsay. Fed. R. Evid. 802. Whether EPA explained its submissions does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. Moreover, to the extent Cliff relies on GAO's characterization of the submission in the indicated Exhibit, that is inadmissible hearsay.

Undisputed that the quoted language appears in the indicated Exhibit.

100.   GAO "reached out to EPA on February 20, 2025, for clarification on the submission of the Notices of Decision" because "the notices themselves stated that CRA did not apply." RJN, Ex. 5 at 2.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Also hearsay. Fed. R. Evid. 802. Language within the waivers does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. Moreover, to the extent Cliff relies on GAO's characterization of the waivers in the indicated Exhibit, that is inadmissible hearsay.

Undisputed that the quoted language appears in the indicated Exhibit.

Disputed. The purported fact contains GAO's characterizations of and contentions about EPA's waivers, which speak for themselves.

101.   On February 25, 2025, GAO followed up with "a formal letter … seeking factual information and the agency's legal views on this matter." RJN, Ex. 5 at 2.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Also hearsay. Fed. R. Evid. 802. Whether GAO sent EPA a letter does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. Moreover, to the extent Cliff relies on GAO's characterization of that letter in the indicated Exhibit, that is inadmissible hearsay.

Undisputed that the quoted language appears in the indicated Exhibit.

102. On February 21, 2025, three Senators requested that the GAO provide its legal opinion about whether the waivers for ACT and Omnibus were rules subject to the CRA. RJN, Ex. 5 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Irrelevant, potentially misleading, and a waste of time. Whether any member of Congress requested an opinion from GAO does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that three Senators requested an opinion from GAO about the ACT and Omnibus waivers.

103. Senator Capito said of EPA's submissions of the waivers for ACT and Omnibus to Congress: "Once they submitted it to us, it's a rule. … [And] we can take it down." *See* RJN, Ex. 36 at 2.

**AmFree's response:** Undisputed that the quoted language appears in the indicated Exhibit.

104. On February 27, 2025, EPA resubmitted the Notices of Decision for the ACT and Omnibus waivers to Congress and GAO, now relabeling them as "rules." RJN, Ex. 5 at 2.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Also hearsay. Fed. R. Evid. 802. Whether GAO sent EPA a letter does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. Moreover, to the extent Cliff relies on GAO's characterization of that letter in the indicated Exhibit, that is inadmissible hearsay.

Undisputed that the quoted language appears in the indicated Exhibit.

105. EPA's February 27, 2025 submission "still did not address the statements in the notices regarding the inapplicability of the CRA." RJN, Ex. 5 at 2.

Pl.'s Resp. to Def.'s Statement of Undisputed Facts                                        Page 36

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Also hearsay. Fed. R. Evid. 802. Whether EPA addresses GAO's questions does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. Moreover, to the extent Cliff relies on GAO's characterization of EPA's submissions, that is inadmissible hearsay.

106.  On March 6, 2025, GAO issued its legal analysis, concluding (as before) that Clean Air Act preemption waiver actions are not subject to the CRA. RJN, Ex. 5 at 6, 9.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. As AmFree explained in response to SOF 71 and 72, *supra*, GAO's opinions and observations are not binding. GAO's opinions and observations do not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that GAO issued its "[o]bservations" on March 6, 2025, that the waivers were not rules. Def.'s RJN, Ex. 5 at 1, ECF No. 176-5.

107.  In the legal analysis referenced at row 106, GAO concluded that the waiver decisions for the ACT and Omnibus rules meet "the APA definition of an order," not of a rule, because they make preemption determinations—i.e., "'final disposition[s]' granting California a 'form of permission' as described in the APA definition" of "order." RJN, Ex. 5 at 6–9.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. As AmFree explained in response to SOF 71 and 72, *supra*, GAO's opinion is not binding. GAO's opinion does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that the quoted language appears in the indicated Exhibit.

108.   In the legal analysis referenced at row 106, GAO reiterated its prior conclusion that, even if waiver decisions were rules, they would still not be subject to the CRA because they are not rules of general applicability. RJN, Ex. 5 at 6–9.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. As AmFree explained in response to SOF 71 and 72, *supra*, GAO's legal analysis is not binding. GAO's legal analysis does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Disputed. The purported fact contains Cliff's characterizations and contentions about GAO's letter, which speaks for itself.

109.   In the legal analysis referenced at row 106, GAO concluded that waiver decisions "concern[] a specific entity— California—and address[] a statutory waiver specific to California's [program]." RJN, Ex. 5 at 6–9.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. As AmFree explained in response to SOF 71 and 72, *supra*, GAO's legal analysis is not binding. GAO's legal analysis does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that the quoted language appears in the indicated Exhibit.

110.   On April 2, 2025, members of the House introduced two joint resolutions that would disapprove of the preemption waivers for the ACT and Omnibus rules. H.R.J. Res. 87, 89, 119th Cong. (2025) (enacted).

**AmFree's response:** Undisputed.

Pl.'s Resp. to Def.'s Statement of Undisputed Facts                    Page 38

111.    The Senate Parliamentarian is traditionally "the sole definitive arbiter[] of the CRA parliamentary mechanism" in that chamber. RJN, Ex. 28 at 18; *see also* Jonathan S. Gould, *Law Within Congress*, 129 Yale L. J. 1946, 1959 (2020).

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. The Senate Parliamentarian has no statutory role in the CRA and any opinion she offers is not binding. *See* 5 U.S.C. §§ 801–808. Whatever role the Parliamentarian has played in the past does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

112.    The question of the CRA's applicability to the joint resolutions was presented to the Senate Parliamentarian. RJN, Ex. 37 at 2–4.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. As AmFree explained in response to SOF 111, *supra*, the Senate Parliamentarian has no statutory role in the CRA and any opinion she offers is not binding. Whether the joint resolutions were presented to the Parliamentarian does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

113.    Senate Majority Leader John Thune responded to questions in January 2025 about possibly overriding the Senate Parliamentarian with "[w]e can't go there." RJN, Ex. 37 at 4.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Whether Senate Majority Leader John Thune made the alleged statement does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that the quoted language appears in the indicated Exhibit.

114.   The Senate Parliamentarian reached a decision on the question of whether the waiver decisions for the ACT and Omnibus rules were subject to the CRA. RJN, Ex. 38 at 1; RJN, Ex. 39 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Also hearsay. Fed. R. Evid. 802. As AmFree explained in response to SOF 111, *supra*, the Senate Parliamentarian has no statutory role in the CRA and any opinion she offers is not binding. Whether she reached any decision on the waivers does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. Moreover, to the extent Cliff relies on news reports that the Senate Parliamentarian reached a decision, that is hearsay.

115.   Although the Senate Parliamentarian decision referenced at row 114 was not made public, it was widely reported as occurring on April 4, 2025. RJN, Ex. 38 at 1–2; RJN, Ex. 39 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. As AmFree explained in response to SOF 111, *supra*, the Senate Parliamentarian has no statutory role in the CRA and any opinion she offers is not binding. Whether she reached any decision on the waivers does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

116.   Although the Senate Parliamentarian decision referenced at row 114 was not made public, it was widely reported as agreeing with the GAO that Clean Air Act preemption waiver decisions are not subject to the CRA. RJN, Ex. 38 at 1–2; RJN, Ex. 39 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402,

403. Also hearsay. Fed. R. Evid. 802. As AmFree explained in response to SOF 111, *supra*, the Senate Parliamentarian has no statutory role in the CRA and any opinion she offers is not binding. Her opinion on whether the waivers are rules does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2. Moreover, to the extent Cliff relies on news reports that the Senate Parliamentarian concluded the waivers were not subject to the CRA, that is hearsay.

117. Despite the GAO and Senate Parliamentarian determinations, House members proceeded to consider legislation that would purport to disapprove the waiver decisions for the ACT and Omnibus rules. RJN, Ex. 40 at 1.

**AmFree's response:** Undisputed that House members considered legislation to disapprove the ACT and Omnibus waivers under the CRA.

118. The only explanation provided by House members for departing from the practice that "the GAO … has historically decided what can be considered a rule under the CRA" was the fact that EPA submitted the waivers to Congress. RJN, Ex. 40 at 2.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Congress is not required to provide an explanation for its actions, and as AmFree explained in response to SOF 71 and 72, *supra*, GAO has no statutory role in the CRA, and its opinions are not binding. Whether House members followed GAO's opinion (or explained their decision not to) does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

119. In a press release dated April 3, 2025, House Energy and Commerce Chair Guthrie stated: "'By submitting the three California waivers to Congress, Administrator Zeldin is ensuring that Congress has oversight of these major rules that impact every American.'" RJN, Ex. 41 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402,

403. A press release by a House committee chairman does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that the quoted language appears in the indicated Exhibit.

120. In a press release dated May 2, 2025, the sponsors of the legislation purporting to use the CRA to disapprove of the waivers for the ACT and Omnibus rules attributed their ability to do so to the actions of the Executive Branch. RJN, Ex. 42 at 1.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Although the indicated Exhibit claims to be an "op-ed," not a "press release," Def.'s RJN, Ex. 42, ECF No. 176-42, neither an op-ed nor a press release affects whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Disputed. The purported fact contains Cliff's characterizations and contentions of an op-ed, which speaks for itself.

121. Despite the GAO and Senate Parliamentarian determinations referenced in rows 106–09 and 114–16, leaders in the Senate proceeded with votes on the legislation referenced in row 121. RJN, Ex. 43 at 1–2.

**AmFree's response:** Undisputed that the Senate voted on the referenced legislation.

122. Senate proponents of the legislation referenced in row 121 did not identify any errors or other basis for disagreeing with the GAO or the Senate Parliament determinations referenced in rows 106–09 and 114–16. RJN, Ex. 43 at 1–2.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. As AmFree explained in SOFs 71, 72, and 111, *supra*, GAO and the Senate Parliamentarian have no statutory role in the CRA and their opinions are not binding. Senators also are not required

to explain why they disagree with them (if they do). Whether Senators publicly identified errors or other bases for disagreeing with the GAO's or Parliamentarian's opinion does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.

123. "Points of order" are the mechanism by which Senators may enforce the Senate's legislative rules and precedents. RJN, Ex. 44 at 1.

**AmFree's response:** Undisputed.

124. When a Senator believes that one of the Senate's legislative rules and precedents is, or is about to be, violated, that member can introduce a point of order to obtain a decision whether or not the action of another member would violate or have violated the Senate's internal rules. RJN, Ex. 44 at 1.

**AmFree's response:** Undisputed.

125. The same day that the Senate passed the joint resolutions purporting to disapprove the preemption waivers for the ACT and Omnibus rules, EPA described the resolutions as preventing a "single state" from imposing "its radical agenda." RJN, Ex. 45 at 1–2.

**AmFree's response:** Objection. The asserted evidence is irrelevant, and its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. A statement by EPA characterizing California's use of its waiver authority does not affect whether the Resolutions rescinding the Omnibus and ACT waivers are constitutional and binding federal laws. They are. Pl.'s Reply, Part III.B.2.

Undisputed that the quoted language appears in the indicated Exhibit.

Dated: June 24, 2026

Respectfully submitted,

/s/ *James R. Conde*

Michael Buschbacher*
James R. Conde*
Laura B. Ruppalt*
Nicholas A. Cordova*
Boyden Gray PLLC
800 Connecticut Avenue NW
 Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com
ncordova@boydengray.com

* *pro hac vice*

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that counsel of record were served a copy of this document via the Court's CM/ECF system this 24th day of June, 2026.

/s/ *James R. Conde*
James R. Conde