# Exhibit 10

**(GAO General
Counsel Testimony)**

## COMMITTEE ON ENERGY AND NATURAL RESOURCES

FRANK H. MURKOWSKI, Alaska, *Chairman*

PETE V. DOMENICI, New Mexico
DON NICKLES, Oklahoma
LARRY E. CRAIG, Idaho
BEN NIGHTHORSE CAMPBELL, Colorado
CRAIG THOMAS, Wyoming
JON KYL, Arizona
ROD GRAMS, Minnesota
GORDON H. SMITH, Oregon
SLADE GORTON, Washington
CONRAD BURNS, Montana

DALE BUMPERS, Arkansas
WENDELL H. FORD, Kentucky
JEFF BINGAMAN, New Mexico
DANIEL K. AKAKA, Hawaii
BYRON L. DORGAN, North Dakota
BOB GRAHAM, Florida
RON WYDEN, Oregon
TIM JOHNSON, South Dakota
MARY L. LANDRIEU, Louisiana

GREGG D. RENKES, *Staff Director*
GARY G. ELLSWORTH, *Chief Counsel*
THOMAS B. WILLIAMS, *Staff Director for the Minority*
SAM E. FOWLER, *Chief Counsel for the Minority*
MARK REY, *Professional Staff Member*
KIRA FINKLER, *Counsel, Minority*

———

## COMMITTEE ON RESOURCES

DON YOUNG, Alaska, *Chairman*

W.J. (BILLY) TAUZIN, Louisiana
JAMES V. HANSEN, Utah
JIM SAXTON, New Jersey
ELTON GALLEGLY, California
JOHN J. DUNCAN, JR., Tennessee
JOEL HEFLEY, Colorado
JOHN T. DOOLITTLE, California
WAYNE T. GILCHREST, Maryland
KEN CALVERT, California
RICHARD W. POMBO, California
BARBARA CUBIN, Wyoming
HELEN CHENOWETH, Idaho
LINDA SMITH, Washington
GEORGE P. RADANOVICH, California
WALTER B. JONES, JR., North Carolina
WILLIAM M. (MAC) THORNBERRY, Texas
JOHN SHADEGG, Arizona
JOHN E. ENSIGN, Nevada
ROBERT F. SMITH, Oregon
CHRIS CANNON, Utah
KEVIN BRADY, Texas
JOHN PETERSON, Pennsylvania
RICK HILL, Montana
BOB SCHAFFER, Colorado
JIM GIBBONS, Nevada
MICHAEL D. CRAPO, Idaho

GEORGE MILLER, California
EDWARD J. MARKEY, Massachusetts
NICK J. RAHALL II, West Virginia
BRUCE F. VENTO, Minnesota
DALE E. KILDEE, Michigan
PETER A. DeFAZIO, Oregon
ENI F.H. FALEOMAVAEGA, American Samoa
NEIL ABERCROMBIE, Hawaii
SOLOMON P. ORTIZ, Texas
OWEN B. PICKETT, Virginia
FRANK PALLONE, JR., New Jersey
CALVIN M. DOOLEY, California
CARLOS A. ROMERO-BARCELO, Puerto Rico
MAURICE D. HINCHEY, New York
ROBERT A. UNDERWOOD, Guam
SAM FARR, California
PATRICK J. KENNEDY, Rhode Island
ADAM SMITH, Washington
WILLIAM D. DELAHUNT, Massachusetts
CHRIS JOHN, Louisiana
DONNA CHRISTIAN-GREEN, Virgin Islands
RON KIND, Wisconsin
LLOYD DOGGETT, Texas

LLOYD A. JONES, *Chief of Staff*
ELIZABETH MEGGINSON, *Chief Counsel*
CHRISTINE KENNEDY, *Chief Clerk/Administrator*
JOHN LAWRENCE, *Democratic Staff Director*

(II)

# CONTENTS

———————

| | Page |
|---|---|
| Hearings: | |
| July 9, 1997 ........................................................................................................ | 1 |
| July 10, 1997 ...................................................................................................... | 95 |

## STATEMENTS

### JULY 9, 1997

| | |
|---|---|
| Bumpers, Hon. Dale, U.S. Senator from Arkansas ................................................ | 5 |
| Campbell, Hon. Ben Nighthorse, U.S. Senator from Colorado ........................... | 8 |
| Craig, Hon. Larry E., U.S. Senator from Idaho .................................................... | 6 |
| Janik, Phil, Regional Forester, U.S. Forest Service, Juneau, AK; accompanied by Dr. Tom Mills, U.S. Forest Service, Portland, OR; Dr. Fred Everest, U.S. Forest Service, Juneau, AK; Brad Powell, U.S. Forest Service, Ketchikan, AK; Fred Norbury, U.S. Forest Service, Juneau, AK; John Day, U.S. Forest Service, Juneau, AK; Kimberly Brown, U.S. Forest Service, Juneau, AK; and Chris Iverson, U.S. Forest Service, Juneau, AK ................................ | 29 |
| Katzen, Sally, Administrator, Office of Information and Regulatory Affairs, Office of Management and Budget ...................................................................... | 16 |
| Murkowski, Hon. Frank H., U.S. Senator from Alaska ....................................... | 1 |
| Murphy, Robert P., General Counsel, General Accounting Office ....................... | 12 |
| Pickett, Hon. Owen, U.S. Representative from Virginia ...................................... | 8 |
| Vento, Hon. Bruce, U.S. Representative from Minnesota .................................... | 8 |

### JULY 10, 1997

| | |
|---|---|
| Allen, David B., Alaska Regional Director, U.S. Fish and Wildlife Service, Anchorage, AK ..................................................................................................... | 138 |
| Janik, Phil, Forester, U.S. Forest Service, Juneau, AK; accompanied by Dr. Tom Mills, U.S. Forest Service, Portland, OR; Dr. Fred Everest, U.S. Forest Service, Juneau, AK; Brad Powell, U.S. Forest Service, Ketchikan, AK; Fred Norbury, U.S. Forest Service, Juneau, AK; Beth Pendleton, U.S. Forest Service, Juneau, AK; and Dr. David Brooks, U.S. Forest Service, Portland, OR ...................................................................................................... | 95 |
| Murkowski, Hon. Frank H., U.S. Senator from Alaska ....................................... | 95 |

(III)

**14**

[The prepared statement of Mr. Murphy follows:]

PREPARED STATEMENT OF ROBERT P. MURPHY, GENERAL COUNSEL, GENERAL
ACCOUNTING OFFICE

Chairman Murkowski, Chairman Young, and Members of the Committees:

I am pleased to appear before you today to discuss the General Accounting Office's views on whether the Tongass National Forest Land and Resource Management Plan, issued by the United States Forest Service on May 23, 1997, is a "rule" under the provisions of the Small Business Regulatory Enforcement Fairness Act (SBREFA). Attached to this statement is a detailed legal opinion we recently issued on the question.*

SBREFA was enacted on March 29, 1996, establishing a government-wide congressional review mechanism of new rules, including the availability of expedited procedures to act joint resolutions of disapproval to overrule federal rulemaking actions. As the joint statement on the new law by Senators Stevens, Nickles, and Reid explained, the purpose of the legislation was to restore balance between the enactment of laws by Congress and their implementation by the Executive branch. The Congress sought to reclaim some of the policymaking authority that had been assumed by regulatory agencies with increased delegation of legislative functions from the Congress to these agencies.

Congressional oversight of rulemaking as contemplated by SBREFA can be an important and useful tool for balancing and accommodating the concerns of American citizens and businesses with federal agency rulemaking. It is important to assure that Executive branch agencies are responsive to citizens and businesses about the reach, cost, and impact of regulations without compromising the statutory mission given to those agencies. SBREFA seeks to accomplish this by giving the Congress an opportunity to review rules before they take effect and to disapprove those found to be too burdensome, excessive, inappropriate, duplicative, or otherwise objectionable. As of July 3, 1997 (about 15 months following enactment), 79 moor rules and 4,833 non-moor rules have been submitted under SBREFA.

On June 18, 1997, the Chief of the Forest Service forwarded copies of the Tongass Plan to both Houses of Congress and our Office following the procedures outlined in SBREFA, while stating at the same time that land and resource management plans are not subject to the statute. An attachment to the transmittal letter states that the Plan is not a moor rule.[1]

We conclude that the Tongass Plan constitutes a "rule" under SBREFA. Therefore, submittal of a report to each House of Congress and the General Accounting Office was necessary in order for the rule to become effective. If the Office of Information and Regulatory Affairs determines the rule to be major, it is not effective until 60 days after the submission of the report to the Congress or publication in the Federal Register, whichever is later. This would result in an effective date of August 17, 1997, 60 days after submission to the Congress.

SBREFA provides that before a rule becomes effective, the agency promulgating the rule must submit to each House of Congress and to the Comptroller General a report containing: "(i) a copy of the rule; (ii) a concise general statement relating to the rule, including whether it is a moor rule; and (iii) the proposed effective date of the rule."

On the date the report is submitted, the agency also must submit to the Comptroller General and make available to each House of Congress certain other documents, including a cost-benefit analysis, if any, and agency actions relevant to the Regulatory Flexibility Act, and the Unfunded Mandates Reform Act of 1995, and any other relevant information or requirements under any other legislation or any relevant executive orders.

Once a rule, whether determined to be a major rule or not, is submitted, special procedures are available for a period of 60 session days in the Senate or 60 legislative days in the House for Congress to pass a joint resolution of disapproval. These time periods can be extended upon a congressional adjournment. SBREFA provides that a major rule may not become effective until 60 days after it is submitted to Congress or published in the Federal Register, whichever is later.

There are two questions concerning whether SBREFA procedures are applicable to the Tongass Plan. The first is whether the Tongass Plan is a "rule" under SBREFA, that is, an "agency statement of general . . . applicability and future ef-

---

*The legal opinion has been retained in committee files.

[1] A "moor rule" is one found by the Office of Information and Regulatory Affairs, Office of Management and Budget (OMB), to meet certain criteria, such as whether the rule will have an annual effect on the economy of $100 million or more. 5 U.S.C. § 804(2).

15

fect designed to implement, interpret, or prescribe law or policy." The second is whether any of the statutory exceptions in SBREFA are applicable. If the Tongass Plan is a rule, which we conclude it is, there is a third question—is it a "major" rule, which cannot be effective for 60 days after presentation to the Congress and GAO. This determination is reserved to OMB's Office of Information and Regulatory Affairs.

A summary description of the Plan shows clearly that it meets the definition of a "rule." The Plan implements the requirement of the National Forest Management Act that the Secretary of Agriculture develop, maintain, and revise land resource management plans and assure compliance with the Multiple-Use Sustained-Yield Act of 1960 in setting forest management direction and harvesting levels. It prescribes the manner or the policy of the best Service for managing the Tongass National Forest for the future (10-15 years). The various management prescriptions and land use designations, when read together, set out what type of activities may occur in various sections of the National Forest. Thus, it meets the elements of a "rule": it is of general applicability (it affects many parties, private and governmental, concerning the National Forest) and future effect (10 to 15 years in duration), and it implements, interprets, and prescribes law and policy.

SBREFA sets forth several exceptions to the definition of rules subject to congressional review. The only one arguably applicable here is "any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of nonagency parties."

In our view, the Plan has a substantial effect on non-agency parties. It allocates areas of the Forest to Land Use Designations and describes the uses to which the land may be put and the activities which may occur there. This "management prescription" gives general direction on what may occur within an area allocated to a particular designation, the minimum standards for accomplishing each activity, and guidelines on how to go about accomplishing the standards.

Some minimum standards and guidelines provide considerable discretion to forest managers. For example, for the Karst and Caves Resource in areas of the Wilderness Designation, managers are to: "Identify opportunities for interpretation of caves for public education and enjoyment. Interpretation will generally occur outside this Land Use Designation." Other standards and guidelines are more specific. For example, for the Lands Resource in areas of the Wilderness Designation, managers may permit new special use cabins only if, among other things, the permit is non-transferable, limited to a 5 year term, and provides that no motorized equipment may be used unless specifically approved by the Regional Forester.

Among the more specific standards are those applicable to timber harvesting. Timber may not be harvested within the 1,000 foot beach and estuary fringe or buffer zone. in the Wildlife standards and guidelines, forest stand structural characteristics are listed which must be maintained after harvesting. For example, in the American Marten habitat (1) 10-20 percent of the original stand, (2) four large trees (20-30 inches in diameter) per acre, (3) three large dead or dying trees (230 inches in diameter) per acre, and (4) an average of three large pieces of down material per acre must remain.

The specific restrictions and prohibitions are binding unless a land resource plan is amended in accordance with the requirements of the National Forest Management Plan Act, which provides that a plan may be amended after adoption following public notice. If the amendment is a significant change, the revision must be made available to the public in the vicinity of the affected area at least 3 months before amendment and the agency must hold public meetings or comparable processes that foster public participation. We note that the predecessor Tongass Plan was only amended through this process twice in over 15 years and both amendments resulted from congressional action.

In concluding that decisions made in the Plan substantially effect non-agency parties and are, therefore, not "agency procedures," we also recognize that the regulatory scheme includes a second stage of decisionmaking in managing the Forest. That stage occurs when Forest Service officials implement the Plan with respect to a particular area of the Forest. Clearly the Tongass Plan as a whole has itself a substantial effect on non-agency parties—it is not in that sense "procedural"—even though Plan restrictions will ultimately be embodied in site-specific decisions. We note that to conclude otherwise would effectively frustrate the SBREFA congressional review mechanism. The vast majority of site-specific actions concern individual use of particular areas of the Forest. They would in many cases be rules of "particular applicability" and thereby be excluded from congressional review. If only site-specific actions were considered "rules," a regulatory scheme in preparation for 10 years at a cost of over $13 million, with substantial impact during the next 15 years on all those who use the Forest, would be insulated from congressional review.

16

For the foregoing reasons, it is our opinion that the Tongass Plan constitutes a "rule" under SBREFA; it is subject to review by the Congress in accordance with the procedures set forth therein.

Thank you Mr. Chairmen. This concludes my prepared remarks. I would be happy to answer any questions you may have.

The CHAIRMAN. Thank you, Mr. Murphy.

Ms. Katzen.

## STATEMENT OF SALLY KATZEN, ADMINISTRATOR, OFFICE OF INFORMATION AND REGULATORY AFFAIRS, OFFICE OF MANAGEMENT AND BUDGET

Ms. KATZEN. Good morning, Mr. Chairman, Senator Bumpers, members of the committee. It is a pleasure to be here today to discuss the applicability of the "Congressional Review of Agency Rulemaking" statute to the final draft of the Tongass Land Management Plan. SBREFA generally, and the congressional review provisions in particular, have the strong support of President Clinton. He signed the law over a year ago with a supportive signing statement. The Federal agencies began complying with the law immediately, since the law took effect upon signing. And based on what I hear, they are doing an excellent job.

As Mr. Murphy has reported, as of the beginning of this month, Federal agencies have submitted 4,912 final rules, including 79 that were designated as major rules within the meaning of these provisions, to both houses of Congress and to the GAO.

In general terms, under the congressional review statute, agencies are to send a copy of each new final rule, along with certain analyses that they may undertake related to the rule, to both houses of Congress and to the GAO before the rule is to take effect. When an agency sends a final rule to the Congress and GAO, it is to indicate whether the rule is major or not.

The statute directs OMB's Office of Information and Regulatory Affairs to indicate whether a rule meets the statutory definition of "major," that is, whether a rule is likely to result in an annual effect on the economy of over $100 million, a major increase in costs or prices, or significant adverse effect on competition, employment, investment, productivity, innovation, or the ability of American companies to compete.

In a June 5, 1997, letter, the Chairmen of the Senate Committee on Appropriations, the Senate Committee on Energy and Natural Resources, and the House Committee on Resources wrote to me regarding the applicability of the Congressional review provisions to the Tongass Land Management Plan. Specifically, they wished to apprise me of their view that "this massive and long-awaited proposed policy revision must rightfully be considered both a 'rule' and a 'major rule'" under the congressional review statute.

In your July 2, 1997, letter of invitation for me to appear at this hearing, you indicated you would be looking into the question of whether the Tongass Land Management Plan was a rule and whether or not it was major under these provisions.

With respect to the first question—whether the Tongass Land Management Plan is a "rule"—the provisions of the statute at issue state that before a "rule" can take effect, the Federal agency promulgating such "rule" shall submit it to both houses of Congress and GAO. The plain implication of this provision is that it is the

17

agency promulgating the regulation that has the responsibility for deciding whether a particular issuance is or is not a "rule" under the relevant provisions.

As I explain in my written testimony, this allocation of responsibility to the issuing agency makes eminently good sense as a policy matter, given the different statutory authorities, practices, program needs, and basic institutional cultures of different agencies. Moreover, it is fully consistent with agency administration of the Administrative Procedure Act, which has been in effect since 1946, and it is from that act that the definition of "rule" was taken for the congressional review provisions.

Upon receipt of your letter of invitation, in preparation for this testimony, I asked whether the Forest Service has decided whether the management plan is or is not a "rule" as defined in the congressional review statute. I was advised that the Forest Service does not consider this Land Management Plan a "rule" within the meaning of the statute. I was also advised that, since the statute was signed by President Clinton on March 29, 1996, the Forest Service has issued six revisions to land management plans, none of which was treated as a "rule" under the congressional review statute. At the same time, there were three other "rules" that they had worked on that were submitted to the Congress under that provision.

I also should note that the Forest Service has so far as I know never treated land management plans as "rules" subject to the notice and comment provisions of 5 U.S.C. 553, and that is the "rule-making" provision of the APA.

I would also note in this connection that under President Clinton's Executive Order 12866 and its predecessors—the Reagan and Bush Executive Order 12291, and its predecessor, President Carter's Executive Order 12044—OIRA or its predecessor has had the responsibility of reviewing agency rules. I have been advised that at no time has OIRA or any of its predecessors ever reviewed a land management plan under any of the applicable executive orders. During my tenure, the last 4 years at OIRA, we have not reviewed any Forest Service land management plans. In short, based on agency practice and our own experience, we have no basis to disagree with the Forest Service's decision that these plans do not constitute "rules."

Now, as I mentioned earlier, the congressional review statute gives me the responsibility of determining whether or not, if it were a "rule," it would or would not be a "major" rule. The definition that I am to use in that regard is taken not from the current Executive Order, but from the predecessor Reagan-Bush Executive Order 12291. That was the definition of "major" in that Executive Order.

I have instructed OIRA staff, who are career civil servants and many of whom have been in OIRA for a number of years and therefore were responsible for carrying out the regulatory reviews under the Reagan-Bush Executive Order with its definition of "major," to use the same definition of "major" that they used in carrying out their responsibilities in the previous administration in advising me as to whether or not a rule is major under the congressional review provisions.

**18**

To the best of my recollection, I have always deferred and never overruled the staff on a recommendation as to whether or not a rule is "major" under the act. Again, upon receipt of your letter of invitation, Mr. Chairman, and in preparation for this testimony, I asked OIRA staff whether, assuming arguendo that the plan is a "rule," would they recommend that it be considered "major" under the congressional review statute.

There is obviously one obstacle in that we do not have the plan to review, and so we did not have much information available. But your June 5, 1997, letter provided certain facts that I asked the staff to consider to give me, in effect, an advisory opinion. That letter suggests that the Tongass Land Management Plan would call for a drop from a harvest of about 320 million board feet annually to a harvest of approximately 220 million board feet a year.

Staff responded that, assuming that the Tongass Land Management Plan can properly be interpreted as causing a drop in the timber harvest of 100 million board feet a year, they would then interpret the plan as being "major" if in fact it were a rule.

I appreciate the opportunity to testify and welcome any questions you may have.

[The prepared statement of Ms. Katzen follows:]

PREPARED STATEMENT OF SALLY KATZEN, ADMINISTRATOR, OFFICE OF INFORMATION AND REGULATORY AFFAIRS, OFFICE OF MANAGEMENT AND BUDGET

Good morning, Mr. Chairmen, and members of these Committees. It is a pleasure to be here today to discuss the applicability of the "Congressional Review of Agency Rulemaking" (Congressional Review) statute [1] to the Final Draft of the Tongass Land Management Plan.

LEGISLATIVE AND CONGRESSIONAL BACKGROUND

The Congressional Review statute had the strong support of the President. He signed the law over a year ago. The Federal agencies began complying with this law promptly and, based on what I hear, are doing an excellent job. As of July 3, 1997, Federal agencies had submitted 4,912 final rules, including 79 designated as "major" rules within the meaning of the Congressional Review statute, to both House of Congress and to the General Accounting Office (GAO).

In general terms, under the Congressional Review statute, agencies are to send a copy of each new final "rule" [2] (and certain analyses that they may undertake related to the rule) to both Houses of Congress and to the GAO before the rule can take effect. When an agency sends a final "rule" to Congress and GAO, the agency is to indicate whether the rule is "major" or not.

The statute directs OMB's Office of Information and Regulatory Affairs (OIRA) to indicate whether a "rule" meets the statutory definition of "major"—that is, whether the rule is likely to result in an annual effect on the economy of over $100,000,000; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States used enterprises to compete with foreign-based enterprises.

In a June 5, 1997, letter, the Chairmen of the Senate Committee on Appropriations, the Senate Committee on Energy and Natural Resources, and the House Committee on Resources wrote to me regarding the applicability of the Congressional Review statute to the Tongass Land Management Plan. Specifically, they wished to apprise me "of [their] view that this massive and long-awaited proposed policy revision [to the Tongass Land Management Plan] must rightfully be considered both a 'rule' and a 'major rule'" under the Congressional Review statute. In your July 2, 1997, letter of invitation to this hearing, you indicated that you would be looking into the question of whether the Tongass Land Management Plan is both a "rule" and a "major rule" under this legislation.

---

[1] 5 U.S.C. chapter 8, "Congressional Review of Agency Rulemaking," passed in Title II, Subtitle E, of P.L. 104-121, March 29, 1996.
[2] 5 U.S.C. 804(3).

19

IS THE TONGASS LAND MANAGEMENT PLAN A "RULE"?

The Congressional Review statute states that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" it to both Houses of Congress and the GAO.[3] The plain implication of this provision is that it is the agency promulgating the regulation that has the responsibility for determining whether a particular issuance is a "rule" under the Congressional Review statute.

This allocation of responsibility to the promulgating agency makes sense as a policy matter, given the different statutory authorities, practices, program needs, and sic institutional culture of each agency. Moreover, it is fully consistent with agency administration of the Administrative Procedure Act (APA). Since the term "rule" was used in the APA in 1946, each agency has determined, for its own issuances, what is and what is not a "rule" subject to the APA's informal rulemaking procedures. Indeed, I would note that the definition of "rule" in the Congressional Review statute explicitly incorporates the definition of "rule" adopted in the APA, and then makes certain exceptions to that definition. In so doing, it appears to us that the Congress intended to incorporate agency (and any related court) interpretations of what is meant by a "rule" under the APA into the definition of "rule" adopted in the Congressional Review statute.

Upon receipt of your letter of invitation, and in preparation for this testimony, I sought to ascertain whether the Forest Service has decided that the Tongass Land Management Plan is or is not a "rule" as defined in the Congressional Review statute. I was advised that the Forest Service does not consider this Land Management Plan a "rule" within the meaning of the Congressional Review statute. Since that statute passed on March 29, 1996, the Forest Service has issued six revisions of Land Management Plans, none of which was treated as a "rule" under the Congressional Review statute.[4] Nor, I understand, has the Forest Service ever treated its Land Management Plans as "rules" subject to the APA's informal rulemaking procedures under 5 U.S.C. 553.

I would note that under Executive Order No. 12866,[5] and its predecessor Orders, Nos. 12291[6] and 12044,[7] OIRA (or its predecessor) has been given the responsibility to review agency rulemakings. I am advised that OIRA has never reviewed Forest Service Land Management Plans under these Orders. During my tenure, OIRA has not reviewed any Forest Service Land Management Plans, nor do we disagree with the Forest Service's inclusion that these Plans do not constitute "rules."

IS THE TONGASS LAND MANAGEMENT PLAN A "MAJOR RULE"?

As noted above, the Congressional Review statute gives me the responsibility of determining whether a "rule" is or is not "major."[8] The definition of "major" that I am to use is taken from Executive Order No. 12291, the Executive Order preceding Executive Order No. 12866, currently in effect. I have instructed OIRA staff to use the same interpretation of "major" that they relied upon in carrying out their regulatory reviews under Executive Order No. 12291. To the best of my recollection, I have consistently deferred to OIRA staff in determining whether a "rule" is "major" for purposes of the Congressional Review statute.

Upon receipt of your letter of invitation, and in preparation for this testimony, I asked OIRA staff whether, assuming that the Tongass Land Management Plan was a "rule," they would recommend that it be considered "major" under the Congressional Review statute.

Your June 5, 1997, letter suggests that the Tongass Land Management Plan would call for a drop from a harvest of about 320 million board feet annually, to a harvest of about 220 million board feet a year. Assuming that the Tongass Land Management Plan can be properly interpreted as causing a drop in timber harvest of 100 million board feet a year, OIRA staff would interpret the Tongass Land Management Plan as being "major," if it were a rule.

I appreciate the opportunity to testify, and welcome any questions that you may have.

---

[3] 5 U.S.C. 801(a)(1)(A).

[4] In contrast, I am advised that, after the Congressional Review statute passed, the Forest Service published three notice-and-comment final rules which were sent to both Houses of Congress and the GAO under that statute.

[5] E.O. 12866, "Regulatory Planning and Review," 58 Fed. Reg. 51735 (October 4, 1993), Sec. 3(d) & (e), issued by President Clinton on September 30, 1993.

[6] E.O. 12291, "Federal Regulation," 46 Fed. Reg. 12193 (February 19, 1981), Sec. 1(a), issued by President Reagan on February 17, 1981.

[7] E.O. 12044, "Improving Government Regulations," 43 Fed. Reg. 12661 (March 24, 1978), Sec. 6(a), issued by President Carter on March 23, 1978.

[8] 5 U.S.C. 804(2).

20

The CHAIRMAN. I am going to defer to Senator Craig, who is on a tight schedule, and I have got some people that I have got to visit with very briefly. So please proceed with your questions, and then Senator Bumpers.

Senator CRAIG [presiding]. Mr. Chairman, thank you. And to both of you, thank you very much for those opinions, interpretations.

Let me go to you, Mr. Murphy, and the General Accounting Office. Now, the Forest Service apparently disagrees with your assessment about the TLMP revision being a rule. The Forest Service claims that the TLMP is not a rule. First of all, let me ask, does the Forest Service's opinion that the TLMP is not a rule at all affect your own finding that it is a rule?

Mr. MURPHY. Well, I have to say, Senator Craig, that we took it very seriously, because agencies that promulgate rules are given some level of deference by the courts in how they characterize rules, whether they are subject to the Administrative Procedures Act or not. The result is that we have scrutinized the issue probably a lot closer than we would have otherwise. We really dug into it, although we did not have the benefit of the Forest Service's rationale.

Now, the courts in the District of Columbia Circuit, which I know better than others in the country, would say that they would give some weight to that determination, but it is not decisive. And we found that we could not support the Forest Service's conclusions, so we did not go with it.

Senator CRAIG. It is our understanding of your testimony and our own reading of the Regulatory Flexibility Act that the General Accounting Office has been given the role of advising Congress and perhaps agencies on whether their policy decisions constitute rules. It is our understanding that the GAO's independent opinion is generally given considerable weight by the agencies. Is this also the GAO's understanding of its role?

Mr. MURPHY. SBREFA does not provide any identification of who is to decide what a rule is, unlike the issue of whether a rule is a major rule or not, which, as Ms. Katzen pointed out, has been assigned to her. So in that sense, I cannot say that GAO has a special role under the statute for making that determination.

The decision, the opinion, that we issued last week on the question was done in our role as adviser to the Congress in response to the request of three chairmen of congressional committees.

Senator CRAIG. So notwithstanding your advice, clearly there is a disagreement between the GAO and the Forest Service over whether the TLMP revision is a rule. This then brings us to the question of who is the final arbiter of whether an agency action is a rule or not. Now, OMB apparently believes that the agency promulgating the regulation, in this case the Forest Service, has the final authority over whether it will be considered a rule.

We have copious case law on this matter, however, that clearly demonstrates that OMB is wrong. According to the case law, when there is a dispute over whether an agency regulation is a rule, the question is settled by the courts, which have developed and will apply well-defined criteria that determine what constitutes a rule.

21

All of this makes perfect sense because laws designed to check administrative abuse by Federal agencies would most likely not want to put the fox in charge of guarding the henhouse.

As we have stated, the courts have clearly laid out the criteria of a rule and the TLMP revision we believe meets that criteria. In I believe it is *Mada Luna* v. *Fitzpatrick,* the Ninth Circuit Court of Appeals stated that a regulation is a rule where it narrowly limits administrative discretion or establishes a binding norm that so fills out the statutory scheme that, upon application, one need only determine whether a given case is within the rule's discretion.

Well, is the Forest Service required to follow the Tongass forest plan once it goes into effect? Yes. That is, is TLMP establishing a binding norm for the Forest Service? I think the answer is yes. Would you agree with that, Mr. Murphy?

Mr. MURPHY. Yes, Senator Craig.

Senator CRAIG. Of course, the TLMP will be a binding form for the Forest Service. That is the very purpose of TLMP.

Another Federal court has defined a rule in a similar manner. In the case of *McLouth Steel Products Corporation* v. *Thomas,* the court stated that if the policy in question is in purpose or likely effect on the narrow limits or is of a kind calculated to have a substantial effect on ultimate agency decisions, it will be viewed as a legislative rule and thus subject to notice and comment requirements.

Does the plan limit the discretion of the Forest Service once it goes into effect?

Mr. MURPHY. Yes, sir.

The CHAIRMAN. Yes, the answer is, and we agree it certainly does. Again, that is the purpose of TLMP.

Finally, the Eighth Circuit Court has also weighed in on the issue and has found that a forest plan in general is a rule. In the 1994 case of *Sierra Club* v. *Robertson,* the court cited a previous Supreme Court ruling that a BLM land management plan was a rule and stated that the Forest Service plan is analogous. It noted that the BLM plan and by implication a forest plan can be regarded as rules of general applicability announcing with respect to vast expanses of territory that they cover the agency's intent to grant requisite permission for certain activities, to decline to interfere with other activities, and to take other particular actions if requested.

It appears to be well settled, therefore, that: first, the courts are the final arbiter of whether a policy is a rule; and second, the forest plan is a rule.

We first ask then whether the GAO shares our understanding that the question of what constitutes a rule is not decided by the promulgating agency, but rather it is decided by the courts according to well settled principles of administrative law? Would you agree with that, Mr. Murphy?

Mr. MURPHY. In the end, Senator Craig, this judgment will be made by the Judicial Branch, yes.

Senator CRAIG. We would then like to ask whether GAO agrees that, according to the precedent mentioned above, that the TLMP revision would be considered a rule? Do you still hold that?

Mr. MURPHY. Yes, we do.

22

Senator CRAIG. Thank you.

Ms. KATZEN. Senator Craig, may I just respond to one comment that you made? I thought my testimony quite clearly stated that the responsibility for determining whether or not an issuance was a "rule" was made by the agency in the first instance. That was not a final determination. We believe in the rule of law, and the field of administrative law is rife with cases in which the courts clearly are the ultimate arbiters. But, as Mr. Murphy had mentioned, it is the responsibility for the agencies to make the decision in the first instance, and the courts do, under the Chevron line of cases, provide great weight to those decisions.

Is the agency decision ultimately dispositive? No. The courts have an independent base for review and some of the cases you mentioned have gone specifically to that point.

I did not want the record to appear that we had in any way implied that the agencies were above the law or were not subject to the judiciary. I join Mr. Murphy in his statement that it will be the courts that will be ultimate arbiters of whether or not the TLMP is a rule. But in the first instance it is for the agency to decide.

Senator CRAIG. Well, thank you. I am not in dispute with you on that and I am glad you have underlined it.

Let me ask this question then. Is the U.S. Forest Service unusual in terms of agency compliance with the 1996 act?

Ms. KATZEN. No. I believe, as I indicated, there were three rules that they had issued that were subject to the APA's definition, which they sent to both Houses of Congress and to GAO in compliance with that act. To the best of my knowledge, all agencies have been fully responsive to the congressional review provisions of the statute.

Senator CRAIG. Both Agriculture and Department of the Interior, you mean?

Ms. KATZEN. Yes, sir.

Senator CRAIG. Could we then receive from your office a list of all U.S. Forest Service and Department of the Interior actions since passage that have been sent and analysis and a list of those that were not?

Ms. KATZEN. We would be aware only of those that are "major," because that is where our statutory responsibility rests. If they were to have issued a regulation that was not "major" and was sent to the Hill, we would not know. But GAO would have that information.

Senator CRAIG. You have answered it. Please send us the list of that which you have.

Ms. KATZEN. Certainly.

[The information referred to follows:]

DOI/Fish and Wildlife Service, Migratory Bird Hunting; Final Frameworks for Early-Season Migratory Bird Hunting Regulations, RIN 1018-AD69, published in the Federal Register, 8/29/1996.

DOI/Fish and Wildlife Service, Migratory Bird Hunting; Final Frameworks for Late-Season Migratory Bird Hunting Regulations, RIN 1018-AD69, published in the Federal Register, 9/26/1996.

Senator CRAIG. Thank you.

Mr. Chairman, thank you.

The CHAIRMAN [presiding]. Thank you very much, Senator Craig.