# Exhibit 11
## (GAO Opinion)

# GAO

## U.S. GOVERNMENT ACCOUNTABILITY OFFICE

**441 G St. N.W.**
**Washington, DC  20548**

B-325553

May 29, 2014

Congressional Requesters

Subject: *GAO's Role and Responsibilities Under the Congressional Review Act*

This opinion responds to requests for our views on the applicability of the Congressional Review Act (CRA) to the Environmental Protection Agency's (EPA) proposed Standards of Performance for Greenhouse Gas Emissions from New Stationary Sources: Electric Utility Generating Units, 79 Fed. Reg. 1430 (Jan. 8, 2014) (the proposed Greenhouse Gas rule). CRA establishes a process for congressional review of agency rules and establishes special expedited procedures under which Congress may pass a joint resolution of disapproval that, if enacted into law, overturns the rule.  Congressional review is assisted by CRA's requirement that all federal agencies, including independent regulatory agencies, submit each rule to both Houses of Congress and to GAO before it can take effect.  After discussion with congressional staff, we agreed to answer three questions: (1) what is GAO's role under CRA and what type of agency action triggers that role; (2) what role does GAO play under CRA with regard to a proposed rule; and (3) do prior GAO opinions under CRA examining final agency actions outside of the rulemaking process provide precedent in answering these questions.[1]

As explained below, GAO's role under CRA is to receive the rules submitted by executive branch agencies, and to provide a report to Congress on each major rule.  The reporting requirement is triggered by an agency's submission of a final rule to GAO.  Moreover, the precedent provided in our prior opinions underscores that proposed rules are not rules for CRA purposes, and GAO has no role with respect to them.

---

[1] Our practice when rendering opinions is to contact the relevant agency and obtain its legal views on the subject of the request.  GAO, *Procedures and Practices for Legal Decisions and Opinions*, GAO-06-1064SP (Washington, D.C.: Sept. 2006), available at www.gao.gov/legal/resouces.html.  We contacted the General Counsel of EPA who provided us with the agency's views.  Letter from EPA to Assistant General Counsel, GAO, Apr. 1, 2014.

BACKGROUND

EPA's Proposed Rule

On April 13, 2012, EPA issued a proposed rule to limit the amount of carbon dioxide that future fossil fuel-fired electric utility generating power plants would be allowed to emit.[2] According to EPA, stationary sources of greenhouse gas emissions,[3] including fossil fuel-fired power plants, are the nation's largest sources of carbon pollution in the United States.[4] EPA received 2.5 million public comments on the proposed rule.[5]  After considering the information provided in those comments as well as continuing changes in the electricity sector, EPA decided to change its regulatory approach.  It withdrew the 2012 proposed rule and issued a new proposed rule on January 8, 2014, which is the proposed Greenhouse Gas rule currently at issue.[6]  EPA subsequently extended the comment period on this proposed rule from March 10, 2014, to May 9, 2014, to provide the public additional time to submit comments and supporting information.[7]

Congressional Review Act

CRA was enacted in 1996 to strengthen congressional oversight of agency rulemaking and it established a mechanism, referred to as an expedited or "fast track" procedure, by which Congress can review and disapprove federal agency rules.[8]  CRA requires all federal

---

[2] 77 Fed. Reg. 22,392 (Apr. 13, 2012).  The Clean Air Act recognized that the opportunity to build emissions controls into a source's design is greater for new sources than for existing sources, so it laid out different approaches for the standards.  42 U.S.C. § 7411.

[3] "[W]hen carbon dioxide is released into the atmosphere, it acts like the ceiling of a greenhouse, trapping solar energy and retarding the escape of reflected heat.  It is therefore a species--the most important species--of a 'greenhouse gas.'" *Massachusetts v. EPA*, 549 U.S. 497, 505 (2007).

[4] 79 Fed. Reg. 1430, 1433 (Jan. 8, 2014).

[5] 79 Fed. Reg. 1430, 1432.  At least one lawsuit was filed challenging this proposed rule as being in violation of the Clean Air Act.  The United States Court of Appeals for the District of Columbia Circuit held that the proposed rule was not a final agency action subject to judicial review, stating that a final agency action "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Las Brisas Energy Center, LLC v. Environmental Protection Agency*, No. 12-1248 (D.C. Cir. Dec. 13, 2012) (*citing Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

[6] 79 Fed. Reg. 1430 (Jan. 8, 2014).  Senator Mitch McConnell, along with 41 co-sponsors, introduced S.J. Res. 30 on January 16, 2014, to disapprove EPA's proposed Greenhouse Gas rule.  S.J. Res. 30 was referred to the Environment and Public Works Committee.

[7] 79 Fed. Reg. 12,681 (Mar. 6, 2014).

[8] CRA was included as part of the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, subtitle E, 110 Stat. 857, 868 (Mar. 28, 1996) *codified at*

agencies, including independent regulatory agencies, to submit a report on each new rule to both Houses of Congress and to the Comptroller General before it can take effect.[9]  The report must contain a copy of the rule, "a concise general statement relating to the rule," and the rule's proposed effective date.[10]  In addition, the agency must submit to the Comptroller General a complete copy of the cost-benefit analysis of the rule, if any, and information concerning the agency's actions relevant to specific procedural rulemaking requirements set forth in various statutes and executive orders governing the regulatory process.[11]  EPA has not sent a report on the proposed Greenhouse Gas rule to the Comptroller General.  In its response to us, EPA stated that "CRA does not apply to EPA's Proposal" because it "is not a promulgated final rule and has no binding legal effect."

CRA also requires that the agency specify in its report whether the rule is a "major" rule.[12]  CRA defines a "major" rule as one which has resulted in or is likely to result in (1) an annual effect on the economy of $100 million or more; (2) a major increase in costs or prices for consumers, individual industries, federal, state, or local government agencies, or geographic regions; or (3) significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of U.S.-based enterprises to compete with foreign-based enterprises in domestic and export markets.[13]

CRA makes a critical distinction between "major" rules, which are subject to a delayed effective date requirement, and other rules, commonly referred to as "nonmajor," which are not.  A nonmajor rule generally becomes effective 30 days after publication in the *Federal Register*.[14]  A major rule, however, generally becomes effective only 60 days after the date the rule is received by Congress or is published in the *Federal Register*, whichever is later.[15]  The delay in effective date for a major rule allows Congress time to review the rule before it goes into effect.

---

5 U.S.C. §§ 801-808.

[9] 5 U.S.C. § 801(a)(1)(A).

[10] *Id.*

[11] 5 U.S.C. § 801(a)(1)(B).  These requirements include, as applicable, a cost-benefit analysis, and compliance with the Regulatory Flexibility Act, the Unfunded Mandates Reform Act of 1995, the Administrative Procedure Act, the Paperwork Reduction Act, and Executive Order No. 12,866.

[12] 5 U.S.C. § 801(a)(1)(A)(ii).

[13] 5 U.S.C. § 804(2).

[14] 5 U.S.C. § 801(a)(4).  *See also* 5 U.S.C. § 553(d).

[15] 5 U.S.C. § 801(a)(3).  There are exceptions to the requirement of a 60-day delay in effective date for major rules, such as when the President determines that there is an imminent threat to health or safety or other emergency.  5 U.S.C. § 801(c).  *See also* 5 U.S.C. § 808 (exceptions for certain types of rules and when an agency for "good cause" finds that a delay would be "impracticable, unnecessary, or contrary to the public interest."

CRA established a complex set of procedures under which Congress can enact a Joint Resolution of Disapproval to nullify an agency rule.[16]  An expedited procedure for Senate consideration of a disapproval resolution may be used at any time within 60 days of Senate session after the rule has been published in the *Federal Register* and received by both Houses of Congress.[17]  Several provisions of the expedited procedure protect against various obstacles to the Senate's ability to take up a disapproval resolution.[18]

If Congress passes a joint resolution disapproving a rule under the expedited procedures provided by CRA, and the resolution becomes law, the rule cannot take effect or continue in effect.[19]  Also, the agency may not reissue that rule or any substantially similar one, except under authority of a subsequently enacted law.[20]

ANALYSIS

The first question we address concerns GAO's role under CRA and the type of agency action that triggers that role.  As previously discussed, before a rule can take effect, the federal agency promulgating it must submit a report on the rule to the Comptroller General and to each House of Congress.[21]  GAO's role under CRA is triggered when an agency submits its report to the Comptroller General.  If the agency's submission pertains to a major rule, GAO then provides the Congress with a report containing an assessment of the

---

*See* GAO, *Federal Rulemaking: Agencies Could Take Additional Steps to Respond to Public Comments*, GAO-13-21 (Washington, D.C.: Dec. 20, 2012).

[16] 5 U.S.C. § 802.

[17] 5 U.S.C. § 802(a).

[18] For example, if the committee to which a joint resolution is referred has not acted on the joint resolution within 20 calendar days after the rule's submission or publication date, the committee may be discharged from further consideration of the joint resolution by a written petition filed by 30 senators.  5 U.S.C. § 802(c).

[19] 5 U.S.C. § 801(f).

[20] 5 U.S.C. § 801(b)(2).  To date, the only rule disapproved under these procedures has been the one setting ergonomics standards for labor, 65 Fed. Reg. 68,261 (Nov. 14, 2000), disapproved by Pub. L. No. 107-5 (Joint Resolution), enacted on March 20, 2001.  Only one resolution has ever been filed that sought to disapprove of a rule not covered under CRA.  During the 107th Congress, S.J. Res. 17 sought to disapprove a presidential memorandum, which is not a "covered rule" for purposes of CRA, rendering the resolution ineffective.  *See H.R. 5998, The Protecting Children's Health Coverage Act of 2008: Hearing Before the Subcomm. on Health of the H. Comm. on Energy and Commerce,* 110th Cong. 72 (May 15, 2008) (statement of Morton Rosenberg, Congressional Research Service).

[21] 5 U.S.C. § 801(a)(1)(A).

B-325553

agency's compliance with specific rulemaking requirements.[22]  GAO transmits these major rule reports to congressional committees of jurisdiction within 15 calendar days after the "submission or publication date" of the rule.[23]  The "submission or publication date" is defined to be the later of the date the rule is submitted to Congress or is published in the *Federal Register*.[24]  Thus, GAO's role under CRA is triggered by an agency's submission of a rule to the Comptroller General.  Even if a final rule is published in the *Federal Register*, GAO's responsibility under CRA to review and send a report on major rules is not triggered unless it is also submitted to the Comptroller General.[25]

The second question we address pertains to what role GAO plays under CRA with regard to proposed rules.  The terms of CRA, and its supporting legislative history, clearly do not provide a role for GAO with regard to proposed rules, and do not require agencies to submit proposed rules to GAO.  In this regard, Senator Don Nickles explained during the floor debate on the bill that would become CRA, "Upon issuing a final rule, a federal agency must send to Congress and GAO a report containing a copy of the rule."[26]  Importantly, the legislative history of CRA notes that an earlier bill, vetoed by President Clinton, included expedited review procedures that would "also apply to resolutions disapproving of proposed rules."[27]  This language was not included in CRA as enacted.  Accordingly, GAO and the Office of Management and Budget (OMB) both have included language in their CRA guidance stating that only "final" rules are covered; proposed rules are not subject to CRA.[28]

In answering this question, we must consider what a proposed rule is, and how it fits within the rulemaking process.  Under the Administrative Procedure Act (APA), agencies must give advance notice of their intention to issue certain types of rules.[29]  The notice is provided by publishing a proposed rule in the *Federal Register*.  With respect to the

---

[22] 5 U.S.C. § 801(a)(2)(A).  GAO reports inform Congress whether the agency's submission indicates its compliance with these requirements.  *See* GAO, *Congressional Review Act*, GAO-08-268T (Washington D.C.: Nov. 6, 2007).

[23] 5 U.S.C. § 801(a)(2)(A).

[24] 5 U.S.C. § 802(b)(2).

[25] *See* 5 U.S.C. §§ 801(a)(1)(A) and (B); § 801(a)(2) (B).

[26] 142 Cong. Rec. S3120 (daily ed. Mar. 28, 1996).

[27] 142 Cong. Rec. S3684 (daily ed. Apr. 18, 1996).

[28] *See* http://www.gao.gov/legal/congressact/congress.html; http://www.whitehouse.gov/sites/default/files/omb/assets/memoranda_2010/m99-13.pdf.

[29] The notice must include "a statement of the time, place and nature of public rule making proceedings; . . . the legal authority under which the rule is proposed; . . . and the terms or substance of the proposed rule or a description of the subjects and issues involved."
5 U.S.C. § 553(b).  This APA provision includes exceptions to the notice requirement, including, for example, interpretative rules and general statements of policy.

proposed Greenhouse Gas rule, the Clean Air Act also specifically requires that EPA give notice of its intent to issue a rule by "publish[ing] proposed regulations establishing Federal standards of performance for new sources."[30]

After issuing a proposed rule, an agency must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments."[31] The purpose of this requirement is "to allow the agency to benefit from the experience and input of the parties who file comments."[32]  It aims "to reintroduce public participation and fairness to affected parties,"[33] and to "assure that the agency will have before it the facts and information relevant to a particular administrative problem, as well as suggestions for alternative solutions."[34]  The agency is then required to consider "relevant matter presented" by the public.[35]  The publication of the proposed Greenhouse Gas rule was consistent with EPA's notice requirements and initiated the public comment stage of the rulemaking process.  However, EPA has critical additional steps to complete before issuing a final rule under APA including, among others, receiving and considering comments submitted by the public.

Therefore, the issuance of a proposed rule is an interim step in the rulemaking process intended to satisfy APA's notice requirement, and, as such, is not a triggering event for CRA purposes.  Before completing the rulemaking process, an agency must receive and analyze public comments and consider language changes in finalizing a rule.  Thus, it would be premature for agencies to send reports on proposed rules to the Comptroller General, especially because agencies could make significant changes in response to public comments.  Moreover, GAO's role under CRA comes into play only after the agency completes the rulemaking process, issues a final rule, and submits the rule and report to the Comptroller General.  Under CRA, GAO does not issue reports on proposed rules to Congress.

The third question we address is whether prior GAO opinions examining final agency actions outside of the rulemaking process provide precedent with regard to proposed

---

[30] 42 U.S.C. § 7411(b)(1)(B).

[31] 5 U.S.C. § 553(c).  The Clean Air Act also specifically requires that EPA, with respect to the proposed Greenhouse Gas rule, "afford interested persons an opportunity for written comment on [the] proposed regulations."  42 U.S.C. § 7411(b)(1)(B).

[32] *Chocolate Mfrs. Ass'n v. Block*, 755 F. 2d 1098, 1103 (4th Cir. 1985) (*quoting Nat'l Tour Brokers Ass'n v. United States*, 591 F.2d 896, 902 (D.C. Cir. 1978)).

[33] *Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932, 949 (D.C. Cir. 1983).

[34] *Guardian Fed. Savings and Loan Ass'n v. Federal Savings and Loans Insur. Corp.*, 589 F.2d 658, 662 (D.C. Cir. 1978).

[35] 5 U.S.C. § 553(c).  *See also* 42 U.S.C. § 7411(b)(1)(B) (requirement for EPA to consider comments).

rules.[36]  Since CRA was enacted in 1996, GAO has issued 10 opinions to Congress addressing whether an agency's action was a "rule" under CRA.[37]  None of our opinions dealt with a proposed rule.  Rather, each opinion addressed the question of whether an agency action, such as issuance of a memorandum, interim guidance, record of decision or booklet, was a rule for purposes of CRA.  None of these agency actions underwent the rulemaking process and the agencies did not send reports on them to the Comptroller General under CRA.  The issue addressed in our opinions was whether CRA's definition of a rule could be applied to the agency's action.

CRA adopts the definition of rule found in APA, with three exceptions.  APA defines a "rule," in relevant part, as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."[38]  Rules excluded from coverage under CRA are: (1) rules of particular applicability; (2) rules relating to agency management or personnel; and (3) rules of agency organization, procedure, or practice that do not substantially affect the rights or obligations of nonagency parties.[39]  Our opinions focused on whether the agency action was a rule under APA definition, and whether any of the CRA exceptions applied.

For example, in B-316048, Apr. 17, 2008, the Centers for Medicare and Medicaid Services (CMS) of the United States Department of Health and Human Services (HHS) issued a letter to state health officials concerning the State Children's Health Insurance Program (SCHIP).  Generally, SCHIP finances health care to low-income, uninsured children whose family incomes exceed eligibility limits under their state's Medicaid program.  To participate in SCHIP, a state must submit for approval a plan that includes a description of procedures used to ensure that coverage under the plan does not substitute for coverage of children under group health plans, referred to as "crowd out."  The CMS letter identified a number of particular measures that the states should adopt to prevent "crowd out," and indicated that CMS would apply the measures to states' proposals to cover such children as well as to states that already covered them.  CMS further indicated that it might take corrective action against states that failed to adopt the identified measures within 12 months, and CMS expressly relied on the letter to disapprove a New York request to amend its SCHIP plan.

---

[36] CRA does not require GAO to issue opinions on whether agencies' written pronouncements constitute rules under the Act.  Nonetheless, on occasion, GAO has, as here, issued such opinions in response to congressional requests, after concluding that to do so would facilitate congressional review.  *See* GAO, *Congressional Review Act*, GAO-08-268T (Washington D.C.: Nov. 6, 2007).

[37] *See, e.g.*, B-286338, Oct. 17, 2000 (holding Farm Credit Administration's nation charter initiative is a rule under the CRA); B-291906, Feb. 28, 2003 (holding Department of Veterans Affairs' memorandum is not a rule under CRA).  We issued two additional opinions which dealt with the 60-day delay of the effective date for major rules. B-276475.2, May 19, 1997, and B-289880, Apr. 5, 2002.

[38] 5 U.S.C. § 551(4).

[39] 5 U.S.C. § 804(3).  Certain rules of the Federal Reserve Board are also exempt. 5 U.S.C. § 807.

We found that CMS treated the letter "as if it were a binding rule," and we therefore concluded that the letter was a rule under CRA.  We noted in the opinion that the measures specified in the CMS letter were "not characterized as 'proposals' or measures that are under development or to be implemented or adopted by later action," and that the time frame specified in the CMS letter for states to conform to the specified measures "evidence[d] the agency's intention to give the letter present and binding effect."

In contrast to the CMS letter at issue in our prior opinion, a proposed rule is a proposal for action or adoption that will not be implemented until later action, specifically the implementation of a final rule after receipt and consideration of public comment, under the APA rulemaking process.  Moreover, unlike the CMS letter, a proposed rule is not binding and will only be binding upon issuance of a final rule.

Similarly, in B-323772, Sept. 4, 2012, we addressed an information memorandum that HHS had issued concerning the Temporary Assistance for Needy Families (TANF) program.  The TANF program provides federal funding to states to meet the needs of low-income families.  There are numerous federal requirements that states must meet to receive this funding, including a requirement that they submit a plan that outlines how they will ensure that TANF recipients will engage in work activities.  In the information memorandum, HHS asserted that it had the authority to waive this requirement and that it would use that authority to allow states to test various strategies, policies, and procedures designed to improve employment outcomes for needy families.  The information memorandum also set forth requirements that states were obligated to meet in order for a waiver request to be considered by HHS.  We concluded that, since the information memorandum interpreted HHS authority to allow waivers, and established specific requirements that states were required to meet for a waiver request to be considered, it met the definition of a rule under CRA.

The common thread in our prior decisions in which GAO found that an agency action constituted a rule for CRA purposes was that the action imposed requirements that were both certain and final.  In contrast, proposed rules are proposals for future agency action that are subject to change, especially after receiving and analyzing public comments, and do not have a binding effect on the obligations of any party.[40]  The proposed Greenhouse Gas rule, for example, does not impose certain and final requirements, and is subject to change.[41]  Thus, the precedent provided in our prior opinions underscores that proposed rules are not rules for CRA purposes, and GAO has no role with respect to them.[42]

---

[40] In its response to us, EPA stated that it is only the "promulgated, final standards which have binding legal effect."

[41] As pointed out above, the Greenhouse Gas rule proposed in January 2014 was changed from the first proposed rule (issued in 2012) as a result of public comment.  *See infra* text accompanying note 6.

[42] As noted above, the United States Court of Appeals for the District of Columbia Circuit similarly held that a proposed rule was not a final agency action subject to judicial review.

CONGRESSIONAL AUTHORITY

CRA's expedited procedure for congressional review of agency rules was enacted as an exercise of the authority of the Senate and House of Representatives to set their own rules, with full recognition of the right of either House to change the rules (so far as relating the procedure of that House).[43]  Moreover, CRA provides that no determination, finding, action, or omission under CRA shall be subject to judicial review.[44]  Consequently, this statutory scheme ultimately leaves it to Congress to decide whether CRA would apply to a resolution disapproving a proposed rule.[45]

In fact, the effect of CRA is simply to establish expedited procedures for congressional consideration.  CRA does not in any way diminish Congress' authority to prohibit agency actions using its full panoply of powers.  Although agencies issue final regulations that are legally binding, these regulations are issued only under the authority of, and in interpreting, laws that have been enacted by Congress.  As such, Congress has significant general legislative authority at its disposal to act here.

CONCLUSION

Under CRA's statutory scheme, GAO's role is not triggered by the issuance of proposed rules.  GAO's role under CRA is to receive the rules submitted by executive branch agencies and issue reports to Congress on the major rules received.  Proposed rules, whether major or nonmajor, are not submitted to GAO.  The present situation is unlike the facts in prior GAO opinions examining agency actions that GAO determined were rules for purposes of CRA.  In those opinions, the agency letters and information memoranda to states were final actions with certain and binding effect.  CRA establishes expedited procedures for congressional consideration, but does not diminish in any way Congress' authority to prohibit agency actions using other powers.

Susan A. Poling
General Counsel

---

*Las Brisas Energy Center, LLC v. Environmental Protection Agency*, No. 12-1248 (D.C. Cir. Dec. 13, 2012).  *See supra* note 4.

[43] 5 U.S.C. § 802(g).

[44] 5 U.S.C. § 805.  *See, e.g.*, Montanans for Multiple Use v. Barbouletos, 542 F. Supp. 2d 9, 20 (D.D.C.  2008).

[45] *See* www.senate.gov/artandhistory/history/common/generic/People_Parliamentarian.htm.

List of Requesters

The Honorable Harry Reid
Majority Leader

The Honorable Mitch McConnell
Minority Leader

The Honorable Barbara Boxer
Chairman
Committee on Environment and Public Works
United States Senate

The Honorable Thomas Carper
Chairman
Committee on Homeland Security
  and Governmental Affairs
United States Senate