ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
JOHN K. ADAMS
*Deputy Associate Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
U.S. Department of Justice
DAVID D. MITCHELL
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 598-9737
david.mitchell@usdoj.gov

*Counsel for the United States*

ERIC GRANT
*United States Attorney*
501 I Street, Suite 10-100
Sacramento, California 95814
501 I Street, Suite 10-100
(916) 554-2700

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE,

Plaintiff,

THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Intervenors-Plaintiffs.

v.

STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,

Defendant.

No. 2:25-cv-03255-DC-AC

**Reply in Support of the United States' Motion for Summary Judgment**

Judge: Hon. Dena Coggins

Reply in Support of the United States' Motion for Summary Judgment

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

GLOSSARY ........................................................................................................................... vi

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I. The United States Has Standing to Bring All of its Preemption Claims. ........................... 1

II. Cliff's Constitutional Defenses to Preemption Fail ......................................................... 4

   A. Cliff's "legislative adjudication" theory is foreclosed by precedent. ........................ 5

   B. Cliff's "political process" defense is a political complaint, not a legal one. ............. 8

   C. Cliff's nondelegation challenge to the Senate's procedural rule fails ...................... 11

      1. Section 805 of the CRA bars this defense. .......................................................... 11

      2. This defense also presents a nonjusticiable political question. ............................ 11

      3. This defense also fails on the merits. .................................................................. 12

III. The United States Is Not Equitably Estopped from Challenging the Adoption of the Preempted Standards. ...................................................................................................... 14

IV. The United States Seeks Relief Only Against Enforcement of the Preempted Standards.... 15

V. The CTP is Preempted Because California Acts as a Regulator, Not a Market Participant. 15

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

**U.S. Constitution**

U.S. Const. art. I, § 5 ............................................................................................................. 9

U.S. Const. art. I, § 5, cl. 2 ..................................................................................................... 9

U.S. Const. art. VI, cl. 2 ......................................................................................................... 3

**Cases**

*Airlines for Am. v. City and County of San Francisco*,
  78 F.4th 1146 (9th Cir. 2023) ................................................................................... 16, 17

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982) ..................................................................................................... 2

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  569 U.S. 641 (2013) ................................................................................................. 16, 17

*Am. Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995) ......................................................................................................... 16

*Ardestani v. INS*,
  502 U.S. 129 (1991) ......................................................................................................... 6

*Baccei v. United States*,
  632 F.3d 1140 (9th Cir. 2011) ......................................................................................... 14

*Bank Markazi v. Peterson*,
  578 U.S. 212 (2016) ...................................................................................................... 6, 7

*Chadha v. INS*,
  634 F.2d 408 (9th Cir. 1980) ............................................................................................ 5

*Citizens for Const. Integrity v. United States*,
  57 F.4th 750 (10th Cir. 2023) ......................................................................................... 13

*Common Cause v. Biden*,
  909 F. Supp. 2d 9 (D.D.C. 2012), *aff'd on other grounds,* 748 F.3d 1280 (D.C. Cir. 2014) ...... 9

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
  482 F.3d 1157 (9th Cir. 2007) ...................................................................................... 9, 11

*Cook Inlet Treaty Tribes v. Shalala*,
  166 F.3d 986 (9th Cir. 1999) ............................................................................................ 7

*Ctr. for Biological Diversity v. Bernhardt*,
  946 F.3d 553 (9th Cir. 2019) .................................................................................. 8, 11

*Dalton v. Specter*,
  511 U.S. 462 (1994) .................................................................................................. 11

*Fed. Election Comm'n v. Cruz*,
  596 U.S. 289 (2022) .................................................................................................... 1

*GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*,
  671 F.3d 1027 (9th Cir. 2012) ................................................................................... 18

*In re Debs*,
  158 U.S. 564 (1895) .................................................................................................... 3

*INS v. Chadha*,
  462 U.S. 919 (1983) ............................................................................................ 5, 6, 7

*Kapa'a v. Trump*,
  794 F. Supp. 3d 793 (D. Haw. 2025) ........................................................................... 4

*La Union del Pueblo Entero (LUPE) v. Abbott*,
  604 F. Supp. 3d 512 (W.D. Tex. 2022) ........................................................................ 2

*La. Pub. Serv. Comm'n v. Texas & N.O.R. Co.*,
  284 U.S. 125 (1931) .................................................................................................... 2

*Metzenbaum v. FERC*,
  675 F.2d 1282 (D.C. Cir. 1982) ................................................................................... 9

*Michel v. Anderson*,
  14 F.3d 623 (D.C. Cir. 1994) ..................................................................................... 14

*Nevada v. Skinner*,
  884 F.2d 445 (9th Cir. 1989) ..................................................................................... 10

*Nevada v. Watkins*,
  914 F.2d 1545 (9th Cir. 1990) ................................................................................... 10

*NFIB v. Sebelius*,
  567 U.S. 519 (2012) .................................................................................................. 13

*Nixon v. United States,*
  506 U.S. 224 (1993) .................................................................................................... 8

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325 (2018) .................................................................................................... 6

*Olympic Pipe Line Co. v. City of Seattle*,
  437 F.3d 872 (9th Cir. 2006).................................................................................................. 16

*Paramino Lumber Co. v. Marshall*,
  309 U.S. 370 (1940)............................................................................................................... 5

*Patchak v. Zinke*,
  583 U.S. 244 (2018)............................................................................................................... 7

*Pennsylvania v. Wheeling & Belmont Bridge Co.*,
  59 U.S. 421 (1855)................................................................................................................. 7

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015)............................................................................................................... 15

*Plaut v. Spendthrift Farm, Inc.*,
  514 U.S. 211 (1995)............................................................................................................ 5, 7

*Robertson v. Seattle Audubon Soc'y*,
  503 U.S. 429 (1992)........................................................................................................ 6, 7, 8

*Sanitary Dist. of Chi. v. United States*,
  266 U.S. 405 (1925)............................................................................................................... 3

*SEC v. Jarkesy*,
  603 U.S. 109 (2024)............................................................................................................... 6

*South Carolina v. Baker*,
  485 U.S. 505 (1988)........................................................................................................... 9, 10

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966)............................................................................................................... 6

*Trump v. Hawaii*,
  585 U.S. 667 (2018)............................................................................................................. 12

*Trump v. Mazars USA, LLP*,
  591 U.S. 848 (2020)............................................................................................................. 14

*United States v. Alabama*,
  691 F.3d 1269 (11th Cir. 2012).............................................................................................. 2

*United States v. Arizona*,
  641 F.3d 339 (9th Cir. 2011), *rev'd in part on other grounds*, 567 U.S. 387 (2012)................. 2

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019).................................................................................................. 2

Reply in Support of the United States' Motion for Summary Judgment                                    iv

*United States v. Ekblad*,
  732 F.2d 562 (7th Cir. 1984)......................................................................................... 3

*United States v. Idaho*,
  623 F. Supp. 3d 1096 (D. Idaho 2022)......................................................................... 3

*United States v. King County*,
  122 F.4th 740 (9th Cir. 2024) ............................................................................... 16, 17

*United States v. Missouri*,
  114 F.4th 980 (8th Cir. 2024) ...................................................................................... 3

*United States v. Shampang*,
  987 F.2d 1439 (9th Cir. 1993)...................................................................................... 14

*United States v. Texas*,
  566 F. Supp. 3d 605 (W.D. Tex. 2021).......................................................................... 3

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000)...................................................................................................... 2

*Watkins v. United States*,
  354 U.S. 178 (1957)...................................................................................................... 14

*Yerger v. Robertson*,
  981 F.2d 460 (9th Cir. 1992)........................................................................................ 14

*Yesler Terrace Cmty. Council v. Cisneros*,
  37 F.3d 442 (9th Cir. 1994)........................................................................................... 6

**Statutes**

5 U.S.C. § 805 ................................................................................................................. 11

42 U.S.C. § 7543(a) .......................................................................................... 2, 3, 15, 18

Pub. L. No. 119-15, 139 Stat. 65 (2025)........................................................................... 8

**Other Authorities**

171 Cong. Rec. S3017, S3051 (daily ed. May 21, 2025, H.R.J. Res 88) ......................... 10, 12, 13

171 Cong. Rec. S3099 (daily ed. May 22, 2025, H.R.J. Res. 87, 89)................................. 12, 13

Reply in Support of the United States' Motion for Summary Judgment                    v

# GLOSSARY

| | |
|---|---|
| Clean Fleets | Advanced Clean Fleets, Cal. Code Regs. tit. 13, § 2016. |
| Clean Trucks | Advanced Clean Trucks, Cal. Code Regs. tit. 13, §§ 1963.1, 1963.2 |
| CARB | California Air Resources Board |
| CTP | Clean Truck Partnership, Ex. 1, Dkt. 181-5 |
| *Daimler* | *Daimler Truck North America, et al. v. California Air Resources, et. al.*, 2:25-cv-02255-DC-AC (E.D. Cal.) |
| EPA | United States Environmental Protection Agency |
| GAO | Government Accountability Office |
| Heavy-Duty Trucks | Vehicles with a gross vehicle weight rating (the loaded weight of a single vehicle) of more than 8,500 lbs. *See* 40 C.F.R. § 1037.801 |
| Omnibus | Omnibus Low NOx Rule, Cal. Code Regs. tit. 13, § 1956.8 |
| PI Order | *Daimler*, Order Granting In Part and Denying in Part Plaintiffs' Motion for a Preliminary Injunction, Dkt. 94 (Oct. 31, 2025) |
| SUMF | Statement of Undisputed Material Facts, Dkt. 181-2 |

**INTRODUCTION**

In moving for summary judgment, the United States demonstrated that the Clean Air Act preempts Clean Fleets, Clean Trucks, and Omnibus (Claim 1), and the Clean Truck Partnership (CTP) (Claim 2).[1] In response, Defendant Cliff raises a flurry of arguments focused on everything but the text of the statute. First, ignoring decades of practice and controlling precedent, Cliff asserts that the United States lacks standing to vindicate the supremacy of federal law and redress its sovereign injuries. Second, in an attempt to evade the legal consequences of Congress' disapproval of the Clean Trucks and Omnibus waivers, Cliff concocts far-fetched constitutional "defenses" with no legal support. Finally, Cliff invents a new test for preemption that is contrary to case law. None of this misdirection changes the straightforward nature of this case: the challenged actions here are preempted by the Clean Air Act because they lack a valid waiver of preemption from EPA. And the CTP is a plain attempt to enforce CARB's preempted standards through CARB's regulatory power. Thus, the United States is entitled to summary judgment on both claims.[2]

**ARGUMENT**

**I. The United States Has Standing to Bring All of its Preemption Claims.**

The United States' injuries are straightforward: CARB's attempts to enforce its state regulations without the necessary preemption waiver (1) usurp exclusive federal authority, (2) interfere with EPA's ability to administer the Clean Air Act, and (3) injure the general welfare. Indeed, no binding authority holds that the United States lacks standing to seek relief against enforcement of state law expressly preempted by federal statute. And this Court has *already* held in *Daimler* that CARB's attempts to enforce the CTP—including the electric-vehicle mandate in Clean Fleets—cause the United States irreparable injury, PI Order at 32, a higher threshold than that required to establish injury for Article III purposes. Presuming the merits of the United States' preemption claims—as this Court must when assessing standing, *see Fed. Election Comm'n v. Cruz*, 596 U.S.

---

[1] All undefined capitalized terms have the meanings given to them in the memorandum in support of the United States' motion for summary judgment. Dkt. 181-1.

[2] Cliff's opposition requests that the Court enter summary judgment for him. But Cliff has not moved for summary judgment or filed a statement of undisputed material facts. There is no basis for the Court to enter summary judgment for Cliff based on the United States' motion.

Reply in Support of the United States' Motion for Summary Judgment                    1

289, 298 (2022)—there can be no question that the United States is injured by California's implementation of its preempted rules.

First, as the United States explained in its motion, the United States has cognizable sovereign interests not only in its "power to create and enforce a legal code," but also in "recognition [of that code] from other sovereigns." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). It is thus "beyond doubt" that a complaint "asserts an injury to the United States" if it alleges an "injury to [U.S.] sovereignty arising from violation of its laws." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). So "[w]hen state governments enact laws that impugn the United States' sovereignty, a personal injury to the United States arises." *La Union del Pueblo Entero (LUPE) v. Abbott,* 604 F. Supp. 3d 512, 527 (W.D. Tex. 2022). Indeed, "Supremacy Clause violations" caused by "preempted state laws" inflict irreparable harm on the United States. *See United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011), *rev'd in part on other grounds*, 567 U.S. 387 (2012); *United States v. California*, 921 F.3d 865, 893 (9th Cir. 2019); *accord United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012).

The United States suffers injury because CARB has usurped federal authority to set emission standards. California lacks a valid preemption waiver for its Clean Fleets, Clean Trucks, and Omnibus regulations. *See* U.S. Mot. ("Mot."), 13–21, Dkt. 181-1. Therefore, CARB's ongoing attempts to enforce those regulations directly usurps the federal government's sovereign prerogative to implement and enforce the uniform national framework Congress enacted in the Clean Air Act. That injury is especially harmful because the challenged law operates directly in an area committed to federal control: the regulation of interstate commerce. *See La. Pub. Serv. Comm'n v. Texas & N.O.R. Co.*, 284 U.S. 125, 130 (1931) ("The power of Congress to regulate interstate . . . commerce is exclusive and has no limitations other than such as arise from the Constitution itself.").

Cliff's attempt to distinguish the case law on sovereign injury cited by the United States fails, as any distinction is without a difference. CARB violated and is violating the law in adopting and attempting to enforce its preempted regulations. Mot. 14-16; 42 U.S.C. § 7543(a). And if it were accepted by the Court, Cliff's position would dramatically curtail the United States' ability to enforce federal law and assert its express constitutional interest in the supremacy of federal law.

Reply in Support of the United States' Motion for Summary Judgment                    2

*See* U.S. Const. art. VI, cl. 2. It would require the federal government to show not only that a state is coercing compliance with a law Congress displaced, but also that the state law separately impedes the day-to-day operations of a federal agency or instrumentality. Setting aside that CARB does impede EPA's ability to administer the Clean Air Act here, Article III has never been understood to impose such a limitation. The United States, for example, routinely brings civil (and criminal) enforcement actions to vindicate federal law without showing that the challenged conduct burdens federal operations as such. Those suits rest on the United States' sovereign interest in the enforcement of Congress's enactments. So does this one.

Second, courts recognize that the "United States has a legally protected interest in enforcing federal law." *United States v. Missouri*, 114 F.4th 980, 984 (8th Cir. 2024); *accord United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) (per curiam) ("The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions."). Here, it is not the mere presence of regulations on California's books or an agreement in its files that harms the United States. Rather, CARB's attempts to enforce the regulations and agreement, and the resulting effect on the market, invades the exclusive province of the federal government and causes injury. Mot. 11–13; Decl. of Assistant Administrator Aaron Szabo ¶¶ 13, 17, Dkt. 181-3. Yet CARB trying to enforce its preempted standards is the antithesis of regulatory certainty.

Cliff's argument that the United States' interest in enforcing federal law is not implicated here because the Clean Air Act provides for two sets of emissions standards (Cliff Opp. 16-17, Dkt. 194) is misplaced. Without a preemption waiver, standards must be uniform. 42 U.S.C. § 7543(a). That CARB's standards would be legal if there were a valid preemption waiver does not diminish the United States' interest in enforcing the Clean Air Act or the market effects of non-uniform, illegal standards. CARB does not and cannot cite any authority otherwise.

Finally, the United States has "standing in court" to sue for "injury to the general welfare," *In re Debs*, 158 U.S. 564, 584 (1895), and one such injury is interference with "interstate and foreign commerce," *Sanitary Dist. of Chi. v. United States*, 266 U.S. 405, 426 (1925); *see also, e.g.*, *United States v. Texas*, 566 F. Supp. 3d 605, 640 (W.D. Tex. 2021) (standing based on injury to "the general welfare" or the "public at large"); *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107

Reply in Support of the United States' Motion for Summary Judgment                    3

(D. Idaho 2022) (United States "may sue to redress widespread injuries to the general welfare."). In this case, the electric-vehicle mandate requires parties to make substantial decisions and investments *now*, thereby undermining federal uniformity and substantially burdening markets. Mot. 12–13. The declarations in support of AmFree's Motion for Judgment on the Pleadings further show the market distorting and damaging effects of CARB's preempted regulations, including the 2036 electric truck mandate, and CARB's attempt to enforce those preempted regulations through the CTP. Dkt. 182-1, 182-3. The United States has standing to prevent CARB from interfering with the Heavy-Duty Truck market.

Cliff asserts that any injury to the United States from Clean Fleets would be self-inflicted, because EPA could condition the effectiveness of any future waiver on a delayed compliance date. *See* Cliff Opp. 21–22. This argument is irrelevant to the federal government's injury, which is occurring now, as manufacturers make critical decisions to comply with CARB's manifold attempts to enforce its preempted regulations. If the United States waited until CARB decided to submit a waiver request, it would be too late: the manufacturers will have already made the substantial decisions and investments necessary to meet the standard, undermining federal uniformity in the meantime.

Cliff's half-hearted attempt to dispute the United States' standing as to the CTP (Cliff Opp. 22-23) also fails. The CTP attempts to enforce Clean Fleets, Clean Trucks, and Omnibus. The United States has standing for Claim 2 for all the same reasons as Claim 1. And this Court has already held in *Daimler* that the CTP imposes an irreparable injury on the United States. PI Order 32. Cliff's arguments focusing on the voluntary nature of the CTP are irrelevant to standing.

## II. Cliff's Constitutional Defenses to Preemption Fail

The United States demonstrated in its opening brief that Clean Trucks and Omnibus are preempted because Congress enacted and the President signed the Disapproval Resolutions into law. *See* Mot. 17. In response, Cliff asserts that the Disapproval Resolutions are unconstitutional. Those constitutional arguments fail, as explained below. Further, Cliff does not argue that the Disapproval Resolutions are ineffective because they were not "enacted" under the CRA. Cliff Opp. 8–9, 11. Cliff thus forfeited any argument on this point. *See Kapa'a v. Trump*, 794 F. Supp. 3d 793,

Reply in Support of the United States' Motion for Summary Judgment                    4

822 (D. Haw. 2025). And insofar as Cliff asserts arguments on this issue in response to AmFree's motion for judgment on the pleadings, *see* Dkt. 174 at 27, the United States joins AmFree's arguments in opposition. *See* Dkt. 182 at 23–25.

### A. Cliff's "legislative adjudication" theory is foreclosed by precedent.

According to Cliff, the Constitution "forbids legislation that merely nullifies an adjudicatory order" "concluded by a different Branch. Cliff Opp. 9. The argument fails as a matter of law.

1. The Supreme Court squarely held that Congress can nullify an administrative order by statute in *Paramino Lumber Co. v. Marshall*, 309 U.S. 370, 374, 375 n.3 (1940). There, the Court upheld retroactive legislation ordering the longshoreman Employees' Compensation Commission to reopen and "review" a "final award" of compensation that had determined "the liability of employer to employee." *Id.* at 374, 377-78. After rejecting the employer's due process claim, the Court held: "Nor can we say that this legislation is an excursion of the Congress into the judicial function." *Id.* at 381. It then expressly rejected the employers' cited cases because they "involve[d] statutes affecting judicial judgments rather than administrative orders and are therefore inapplicable." *Id.* at 381 n.25.

*Plaut* reaffirms this distinction. While that case holds that Congress may not "command[] the federal courts to reopen final judgments," it distinguishes "decisions upholding legislation that altered rights fixed by the final judgments of non-Article III courts . . . or administrative agencies." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 225, 232 (1995) (citing *Paramino Lumber*, 309 U.S. at 370). *Plaut* and *Paramino Lumber* are dispositive of this claim.

If more were needed, *Chadha* rejected a similar argument to Cliff's. In *Chadha*, the House of Representatives nullified an immigration judge's order through a one-House resolution, which was unconstitutional because it failed to comply with bicameralism or presentment. *INS v. Chadha*, 462 U.S. 919, 956-57 (1983). Justice Powell concurred, arguing that the resolution was also "clearly adjudicatory" and therefore unconstitutional. *Id.* at 957 n.22. The Ninth Circuit had embraced that same argument. *Chadha v. INS*, 634 F.2d 408, 431 (9th Cir. 1980) (Kennedy, J.) (one-House veto would "override individual adjudications"). But the Court rejected it, holding that the resolution was not "adjudicatory" and was instead "legislative in purpose and effect." *Chadha*, 462 U.S. at

Reply in Support of the United States' Motion for Summary Judgment                    5

957 n.22; *id.* at 952 (discussing the "legislative character of the one-House veto"). And the resolution was legislative because it "had the purpose and effect of altering the legal rights, duties and relations of persons," including the Executive Branch and the object of the Executive Branch's action, "all outside the legislative branch." *Id.* at 952. The same is true here: the congressional resolutions changed the law, *see infra* at § II.A.3, and altered Cliff's legal rights.

2. The line of cases that Cliff primarily relies on concerns judicial power, not executive power. *See* Cliff Opp. 10–11 (quoting *Bank Markazi v. Peterson*, 578 U.S. 212, 228 (2016) and *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992)). Cliff cites no case extending this line of cases from Article III courts to executive agencies and has conceded that none exists. *See also* Tr. at 26:14–19; 29:14–19, Dkt. 243, *California v. United States*, No. 4:25-cv-04966-HSG (N.D. Cal. Mar. 18, 2026). These cases are inapposite because administrative agencies are fundamentally different from Article III courts. *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018); *SEC v. Jarkesy*, 603 U.S. 109, 148 (2024) (Gorsuch, J., concurring).

3. Even if Congress lacked power to "merely nullify" some category of administrative adjudications—and the Supreme Court has repeatedly rejected that proposition—these preemption waivers are not adjudicatory orders for constitutional purposes, much less a type of adjudicatory order that Congress lacked the power to nullify. Cliff's argument also fails because he never defines "adjudicatory order[]" for constitutional purposes. Cliff Opp. 10. Instead, he simply refers to the APA's statutory definition of "order." *Id.* Cliff's theory thus seems to be that Congress may never constitutionally invalidate any APA-defined agency order. That analysis is unsupported and unsupportable.

Unlike Article III courts, administrative agencies undertake a vast array of agency proceedings, from "formal adjudication[s]" to "adversary adjudication[s]," *Ardestani v. INS*, 502 U.S. 129, 133 (1991), to an endless variety of "informal adjudication[s]," *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994), to both formal and informal rulemaking. Along that spectrum, EPA's preemption waivers are not the sort of agency action that would implicate any relevant constitutional concerns. The petitioner requesting a waiver is the State of California, not an individual with due process rights. *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966)

Reply in Support of the United States' Motion for Summary Judgment                    6

(States lack due process rights). There is no trial-like adjudication, no adversary proceeding, no "Smith v. Jones." *Bank Markazi,* 578 U.S. at 231.  The waivers address no individual right or anything in the realm of a damages claim. Thus, unlike the immigration order in *Chadha*, or the workers' compensation claim in *Paramino Lumber*, there is no potential due process concern that Congress is "unilaterally . . . impos[ing] a substantial deprivation on one person." *Chadha*, 462 U.S. at 962 (Powell, J., concurring); *accord Plaut*, 514 U.S. at 242 (Breyer, J., concurring).

3. Finally, even assuming (incorrectly) that *Bank Markazi* applies to administrative agencies and to EPA's preemption waivers, its "amend the law" test would be easily satisfied here. Under *Bank Markazi*, "Congress . . . may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative." 578 U.S. at 215. Although Congress may not "compel judicial findings or results under old law," *id.* at 225 (brackets omitted), a statute must be upheld if it does not "direct any particular findings of fact or applications of law . . . to fact." *Robertson*, 503 U.S. at 438. Courts must afford "a high degree of judicial tolerance for an act of Congress that is intended to affect litigation so long as it changes the underlying substantive law in any detectable way." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 991 (9th Cir. 1999).

The Supreme Court has been extremely deferential to Congress in applying these principles. In *Bank Markazi*, for example, the Court upheld a statute that identified a "District Court's docket number," "designate[d] a particular set of assets," and "render[ed] them available to satisfy the liability and damages judgments" in the specific case. 578 U.S. at 215. The Court rejected the "flawed" argument that "there is something wrong with particularized legislative action," citing valid statutes that, for example, applied to "a single bridge," a "single oil tanker," or "abrogated [a] specific settlement agreement." *Id.* at 233-34. The Court has elsewhere upheld statutes directing a federal court to "promptly dismiss[]" a pending suit over a specific piece of property, *Patchak v. Zinke*, 583 U.S. 244, 251 (2018) (plurality opinion), identifying pending cases by docket number and specifying how statutory requirements are met, *Robertson*, 503 U.S. at 434-35, and legalizing a specific bridge that the Court had previously deemed a nuisance, *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421 (1855) ("*Wheeling Bridge*").

Reply in Support of the United States' Motion for Summary Judgment                    7

Under these cases—even if they applied to executive action instead of Article III courts, which they do not—the Resolutions would easily be upheld. The Resolutions do not "direct any particular findings of fact or applications of law . . . to fact." *Robertson*, 503 U.S. at 438. They instead amend the law by depriving the corresponding EPA waivers of any "force or effect." *See, e.g.*, Pub. L. No. 119-15, 139 Stat. 65 (2025). It cannot be fairly disputed that this amends the law because the Ninth Circuit has squarely held, in rejecting a separation of powers claim, that a CRA joint resolution "amend[s] the substantive environmental law," and is "enforceable as a change to substantive law, even though it d[oes] not state that it constitute[s] an amendment." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 (9th Cir. 2019). The same reasoning applies here. Before the Resolutions, CARB's regulations were not preempted because it had obtained a waiver under Section 209(b) of the Clean Air Act. After the Resolutions, the regulations are preempted as a matter of law, *regardless* of whether CARB satisfies the criteria under Section 209(b).

**B. Cliff's "political process" defense is a political complaint, not a legal one.**

Cliff asserts a baseless "political process" theory based on the procedures the Senate employed in passing the disapproval resolutions. California admits that "this theory has never actually been applied to invalidate legislation," and for good reason. Tr. at 56:23–25, Dkt. 243, *California v. United States*, No. 4:25-cv-04966-HSG. First, this Court lacks subject matter jurisdiction to hear this defense, because it is premised on actions taken under the CRA and presents a nonjusticiable political question. Cliff does not try to hide that he challenges internal legislative procedures, as he expressly seeks to elevate the Senate parliamentarian's and GAO's interpretation of the CRA over that of the Senate itself. Cliff Opp. 11-12. But neither the Senate parliamentarian nor the GAO is mentioned in the Constitution and thus neither has the last word on Senate procedure—the Senate does.

"A controversy is nonjusticiable—i.e., involves a political question—where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it." *Nixon v. United States,* 506 U.S. 224, 228 (1993) (citation modified). Here, "the Constitution textually commits the

question of legislative procedural rules to Congress." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1172 (9th Cir. 2007); *see* U.S. Const. art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings . . . ."). And "no judicially manageable standards exist against which to review the Senate's [or House's] rules governing debate." *Common Cause v. Biden*, 909 F. Supp. 2d 9, 30 (D.D.C. 2012), *aff'd on other grounds,* 748 F.3d 1280 (D.C. Cir. 2014).

There are no manageable judicial standards because the only relevant Constitutional provision is the Rules Clause, which grants Congress exclusive power to "determine the Rules of its Proceedings." U.S. Const. art. I, § 5; *Consejo*, 482 F.3d at 1172. No other relevant constitutional provisions speak to procedures for debating legislation, and judicial review in this context would create untenable interference with legislative prerogative. *See, e.g.*, *Common Cause*, 909 F. Supp. 2d at 31 (challenge to filibuster rule "would require an invasion into internal Senate processes at the heart of the Senate's constitutional prerogatives as a House of Congress, and would thus express a lack of respect for the Senate as a coordinate branch of government"); *Metzenbaum v. FERC*, 675 F.2d 1282, 1288 (D.C. Cir. 1982) ("To invalidate Pub. L. No. 97-93 on the ground that it was enacted in violation of House rules would be to declare as erroneous the understanding of the House of Representatives of rules of its own making, binding upon it only by its own choice. We must assume that the House acted in the belief that its conduct was permitted by its rules, and deference rather than disrespect is due that judgment.").

Second, this argument fails as a matter of law. Cliff's own lead case holds that, under the Tenth Amendment, "States must find their protection from congressional regulation through the national political process," not the courts. *South Carolina v. Baker*, 485 U.S. 505, 512 (1988). In dicta, the Court suggested the "possibility" that "extraordinary defects in the national political process" might render a statute invalid, but it could not "identify or define the defects that might lead to such invalidation." *Id.* The Court then rejected the State's claim because it had "not even alleged that it was deprived of any right to participate in the national political process or that it was singled out in a way that left it politically isolated and powerless." *Id.* at 513.

No court to the government's knowledge has invalidated any statute under *Baker*'s

Reply in Support of the United States' Motion for Summary Judgment                    9

dictum, and the Ninth Circuit has repeatedly rejected such claims. *See Nevada v. Watkins*, 914 F.2d 1545, 1556 (9th Cir. 1990); *Nevada v. Skinner*, 884 F.2d 445, 452 (9th Cir. 1989). In *Watkins*, the Ninth Circuit rejected Nevada's claim that a statute applicable only to Yucca Mountain in Nevada was invalid because Nevada lacked representation on a congressional committee. 914 F.2d at 1549, 1556–57. In doing so, the court questioned whether establishing a "political process" claim is even "possible," noting the view that *Baker* "unequivocally repudiate[ed] the suggestion that the tenth amendment requires any substantive or qualitative analysis of the national political process." *Id.* at 1556.

And Cliff cannot plausibly contend that California was "deprived of [the] right to participate in the national political process." *Baker*, 485 U.S. at 513. For example, in the House, California's 52 representatives are more than any other state. Not only did California's representatives vote on the Resolutions, but at least 9 voted *in favor* of both. *See* House Roll Call Votes 111 & 112 (2025). In the Senate, California's senators both fully participated in debate, voted on the procedural rules, voted on each motion to proceed with debate, and voted on the final decision to enact the Resolutions into law.[3] As for Cliff's argument that California was deprived of the right to participate in the Executive Branch's supposed "reclassification of adjudicatory orders into 'rules,'" Cliff Opp. 13, the political process for the Executive Branch happens every four years during a presidential election.

Nor was California "singled out in a way that left it politically isolated and powerless." *Baker*, 485 U.S. at 513. Dozens of senators and over a hundred representatives from states across the country voted against the Resolutions. Far from being politically isolated, California and its supporters simply lost a vote. And "the tenth amendment does not protect a State from being outvoted in Congress." *Watkins*, 914 F.2d at 1556.

---

[3] *See, e.g.*, 171 Cong. Rec. S3017, S3032 (statement of Sen. Padilla); *id.* at S3033–34 (Sen. Schiff); *id.* at S3050–51 (roll call on points of order); *id.* at S3105 (roll call on Resolution disapproving Advanced Clean Trucks waiver); *id.* at S3109–10 (roll call on Resolution disapproving Omnibus waiver).

Reply in Support of the United States' Motion for Summary Judgment                    10

**C. Cliff's nondelegation challenge to the Senate's procedural rule fails.**

Cliff's claim that the Senate adopted a procedural rule that unconstitutionally delegates to the Executive Branch the power to decide whether its preemption waivers are rules for purposes of the Senate's procedures for debating legislation under the CRA fails for three independent reasons. First, Section 805 bars review of this claim. Second, this purported defense presents a nonjusticiable political question. Third, it fails on the merits.

    1.  <u>Section 805 of the CRA bars this defense.</u>

The claim is barred by statute because it is premised on an assumption that EPA incorrectly determined its preemption waivers are rules under the CRA, and "[n]o determination . . . under [the CRA] shall be subject to judicial review." 5 U.S.C. § 805. The text of Section 805 is express and unequivocal.

Cliff contends that the jurisdiction-stripping provision of the Congressional Review Act does not bar Cliff's constitutional defenses. *See* Cliff Opp. 8 (citing *Bernhardt*, 946 F.3d at 561). But the Ninth Circuit's decision in *Bernhardt* does not address or apply to a constitutional claim (like this one) premised wholly on a statutory determination. 946 F.3d at 561. *See Dalton v. Specter*, 511 U.S. 462, 472 (1994) ("Our cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution. On the contrary, we have often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority."). Under *Dalton*, faux constitutional claims are barred by Section 805's jurisdiction stripping provision.

    2.  <u>This defense also presents a nonjusticiable political question.</u>

This defense is also nonjusticiable because it challenges Senate procedures for debating legislation. *See supra* § II.B.

Cliff's nondelegation defense thus falls squarely within this "absolute," unreviewable authority of Congress, because it depends on an allegation that Congress violated or misapplied its own procedural rules for debating legislation. *Consejo*, 482 F.3d at 1172. Indeed, the bottom-line grievance is that the Senate wrongly applied expedited procedures for debating legislation rather than adhering to the filibuster, and that the Resolutions are therefore invalid. This defense presents

a nonjusticiable political question.

### 3. This defense also fails on the merits.

The defense is also wrong on the merits for multiple reasons. It ignores the votes of the full Senate, misrepresents the congressional record, and conflicts with existing precedent.

Contrary to Cliff's core assertion, the Senate did not delegate authority to EPA to decide whether to use the CRA's fast-track procedures. For each Resolution, Senator Thune put that choice to the Senate by moving to proceed with debate using the CRA's fast-track procedures, and the full Senate voted to approve those motions. 171 Cong. Rec. S3099, S3102, S3105 (daily ed. May 22, 2025, H.R.J. Res. 87, 89). After debate, the full Senate then voted again to enact the Resolutions into law. *Id.* at S3099, S3105, S3109–10. These votes necessarily constitute the full Senate's independent determination that these waivers were properly subject to the CRA's fast-track debate procedures. The Senate voted for itself.

A separate problem is that the procedural rule does not say what Cliff alleges. The "second point of order" states, in full:

> Joint Resolutions that meet all the requirements of section 802 of the Congressional Review Act or are disapproving of Agency actions which have been determined to be rules subject to the CRA by a legal decision from the [Government Accountability Office] [are] entitled to expedited procedures under the Congressional Review Act.

171 Cong. Rec. S3017, S3051 (daily ed. May 21, 2025, H.R.J. Res 88). This says nothing about the Executive or delegating discretion to the Executive to require the Senate to use the CRA. Cliff cherry-picks snippets of legislative history for its assertion that EPA's submission of the waivers to Congress was the sole trigger for using fast-track debate procedures rather than adhering to the filibuster. Cliff Opp. 13-14. Not only do "floor statements by individual legislators rank among the least illuminating forms of legislative history," *Trump v. Hawaii*, 585 U.S. 667, 692 (2018), but this argument is incorrect as a matter of law: the trigger was the Senate's vote, without which the CRA would never have been used. Cliff would have this Court ignore the Senate's vote and use a smattering of inapposite floor statements to misconstrue a Senate procedural rule, all to create a supposed constitutional conflict. These arguments are woefully inadequate to strike down

Reply in Support of the United States' Motion for Summary Judgment                12

two statutes passed by the Senate and the House and signed by the President. *See Citizens for Const. Integrity v. United States*, 57 F.4th 750, 768 (10th Cir. 2023) (rejecting claim that a CRA resolution was unconstitutional because "the statements of a few legislators concerning their motives for voting for legislation is a reed too thin to support invalidation of a statute"); *NFIB v. Sebelius*, 567 U.S. 519, 563 (2012) ("[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality").

Insofar as Senate floor statements are relevant, the record refutes Cliff's telling. The dispute in the Senate was about whether the GAO or the Senate would have the final say as to whether these preemption waivers could be reviewed under the CRA fast-track procedures.[4] It was not about whether the Senate would defer to the Executive, but about whether it would defer to GAO or instead decide for itself.[5] The second point of order constituted the Senate's decision to decide for itself. As Senator Thune explained, "it [was] appropriate for the Senate to speak as a body to the question—something the Senate does when questions over application of the rules arise." 171 Cong. Rec. S3017, S3047. The full Senate would therefore "vote[] on what qualifies for th[e] fast-track procedure." *Id.* at S3048. And the full Senate did vote, first to adopt a rule that it would not defer to "GAO staff," *id.* at S3088 (statement of Sen. Capito), then to proceed with fast-track debate on each of the Resolutions, and then again to enact each Resolution into law. Along the way, Senator Thune recorded his own independent conclusion that the waivers "are clearly rules in substance given their nationwide impact and scope." *Id.* at S3047 (statement of Sen. Thune).

---

[4] 171 Cong. Rec. S3017, S3088 (statement of Sen. Capito) ("[T]he procedural issue before the Senate was simply whether GAO staff should be able to block resolutions of disapproval against Agency-submitted rules."); *id.* at S3047 (statement of Sen. Thune) ("[I]n an unprecedented move, the Government Accountability Office has inserted itself into this situation and declared that these rules submitted to Congress by the EPA as rules are not, in fact, rules.").

[5] 171 Cong. Rec. S3099, S3102 (statement of Sen. Fischer) ("GAO's role is just an advisory one and . . . it is up to us—it is up to Congress—to determine what constitutes a rule. . . . We are reclaiming our congressional authority under the Congressional Review Act."); 171 Cong. Rec. S3017, S3088 (statement of Sen. Capito) ("Delegating to the unelected GAO staff the authority to determine if Members of Congress can use the CRA against Agency-submitted rules turns the statute completely on its head.").

Finally, even if the claim were justiciable, and even if Cliff's interpretation of the legislative history were accurate and relevant, no constitutional principle or precedent bars Senators from considering EPA's submissions when deciding on procedures for debating legislation. In truth, Congress has plenary power to conduct inquiries and receive reports "concerning the administration of existing laws as well as proposed or possibly needed statutes." *Watkins v. United States*, 354 U.S. 178, 187 (1957); *cf. Trump v. Mazars USA, LLP*, 591 U.S. 848, 862 (2020) ("The congressional power to obtain information is broad and indispensable. It encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them.") (cleaned up). And courts have upheld far greater intrusions into legislative procedure than Cliff asserts here, including a rule allowing non-members to *vote* in committee. *Michel v. Anderson*, 14 F.3d 623, 624 (D.C. Cir. 1994).

Here, EPA voted on nothing; it simply sent reports to Congress. Congress made its own decision to use the CRA to repeal EPA's waivers, and Congress is always free to pass legislation according to whatever procedural rules it chooses, as long as it stays within the bounds of bicameralism and presentment set by Article I, Section 7 of the Constitution.

## III. The United States Is Not Equitably Estopped from Challenging the Adoption of the Preempted Standards.

Cliff halfheartedly contends that the United States is equitably estopped from challenging the adoption of the preempted standards. Opp. 19-20. This contention fails at every level. "A party seeking to estop the government must carry a 'heavy burden.'" *United States v. Shampang*, 987 F.2d 1439, 1444 (9th Cir. 1993) (quoting *Yerger v. Robertson*, 981 F.2d 460, 466 (9th Cir. 1992)). In addition to the four traditional requirements of equitable estoppel, the "party asserting equitable estoppel against the government must also establish that (1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government's wrongful acts will cause a serious injustice; and (3) the public's interest will not suffer undue damage by imposition of estoppel." *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir. 2011).

Cliff does not attempt to establish *any* element of estoppel against the government except,

Reply in Support of the United States' Motion for Summary Judgment                    14

apparently, that EPA made a "pattern of false promises." *See* Cliff Opp. 20. But Cliff fails to demonstrate a pattern or a promise, false or otherwise. Rather, Cliff relies on the preamble of a Federal Register notice—not a rule in the Code of Federal Regulations—that explained how EPA interpreted Section 209(b) in the context of a rulemaking regarding Section 209(e), which governs off-road engine and vehicle emission standards. *See* Cliff Opp. 19. But Cliff fails to explain how EPA purportedly actively misled Cliff. And to the extent Cliff contends EPA has changed interpretations, he has not demonstrated the change is impermissible. Agencies may always change their interpretations. *Cf. Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) (agency may change an interpretative rule without undergoing notice-and-comment rulemaking). Thus, Cliff's affirmative estoppel defense fails.

Cliff's argument that EPA "waive[d] application of the 'adopt' part of Section 209(a)" (Cliff Opp. 20) is baseless. EPA cannot waive statutory requirements absent express statutory authorization to do so. CARB cannot adopt emissions standards under Section 209(a) of the Clean Air Act without an EPA preemption waiver. 42 U.S.C. § 7543(a).

**IV.    The United States Seeks Relief Only Against Enforcement of the Preempted Standards.**

Ignoring the relief the United States has requested, *see* Mot. 22, Cliff argues that this Court should not order anything beyond "enjoining enforcement of the regulation(s) unless and until preemption is waived by EPA." Cliff Opp. 20. The United States has requested a declaration that: (1) the challenged emission standards are void and unenforceable, (2) that Cliff may not retroactively enforce its emission standards, (3) that Cliff must provide manufacturers with the statutorily required lead time, (4) and an injunction prohibiting implementation or enforcement (including retroactive enforcement) of the preempted standards and attempts to enforce those standards. *See* Mot. 22. The United States simply seeks to prevent Cliff from enforcing its preempted standards such that they do not impact the heavy-duty vehicle market *today*.

**V.    The CTP is Preempted Because California Acts as a Regulator, Not a Market Participant.**

The reason CTP is an illegal "attempt to enforce" preempted emissions standards is obvious: The CTP seeks to secure compliance with the preempted Clean Trucks, Omnibus and the Clean Fleets electric truck mandate through promises of regulatory relief that only CARB can provide,

Reply in Support of the United States' Motion for Summary Judgment                    15

and threatens consequences only CARB can impose. Mot. 18-21. That is acting in a regulatory capacity, not as a participant in a market. Cliff's arguments to the contrary attempt to obscure this simple conclusion and should be rejected.

Cliff argues that preemption does not apply because the CTP is a voluntary "contract." Even if that were true, it is irrelevant. Preemption applies based on whether the State "acts as a regulator" and not as "*a market participant*." *Airlines for Am. v. City and County of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023) (emphasis added); *see also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–30 (1995) (finding Airline Deregulation Act preemption provision did not apply to market transaction); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641, 655 (2013) ("*ATA*") (requirements in contract between Port of Los Angeles and trucking company preempted); *see also Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 874 (9th Cir. 2006) (Pipeline Safety Act preempts safety provisions in agreements between Seattle and pipeline company). Cliff thus cannot avoid preemption merely because the truck manufacturers purportedly entered into the CTP voluntarily.

And Cliff's attempts to characterize the CTP as non-regulatory fail. Cliff does not argue that CARB entered the CTP as a market participant. Cliff Opp. 23-30. Nor can he. "A state . . . functions as a market participant when it acts (1) in pursuit of the efficient procurement of needed goods and services or (2) with a sufficiently narrow scope so as to defeat an inference that its primary goal was to encourage a general policy rather than to address a specific proprietary problem." *United States v. King County*, 122 F.4th 740, 759 (9th Cir. 2024). CARB is not procuring goods and services or trying to address a specific proprietary problem with the CTP. CARB entered the CTP to "preserv[e] and protect[] the environment;" "ensur[e] current and future CARB regulations affecting new [heavy-duty] vehicles and engines will achieve significant reductions of air pollutants from such vehicles and engines;" "promot[e] the transition of the [heavy-duty] commercial vehicle industry to zero-emissions;" "maintain[] a strong and viable industry;" and "provid[e] certainty and stability for the [heavy-duty] industry and its customers." CTP at 1. These are policy goals, not proprietary ones. Cliff does not argue otherwise. Instead, he asks this Court to ignore the CTP's policy purpose. Cliff Opp. 29-30. That argument is plainly wrong. *See King County*, 122

Reply in Support of the United States' Motion for Summary Judgment                    16

F.4th at 759.

Indeed, the CTP is regulatory through and through. "Federal law generally preempts state or local government action that has the force and effect of law." *Airlines for Am.*, 78 F.4th at 1150 (citation modified). Such an action has the force and effect of law when the state or local government exercises regulatory authority—including the imposition of criminal or civil penalties—"as part and parcel of a governmental program." *ATA*, 569 U.S. at 650; *see also Airlines for Am.*, 78 F.4th at 1154–55 (civil penalties enforceable against private parties contracting with airport authority "render[] the City a regulator rather than a market participant").

The CTP requires the truck manufacturers to comply with "the relevant provisions of the CARB regulations set forth" in the appendices to the agreement, "irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations." CTP at 2 ¶ 2. And those provisions require certification to Omnibus and Clean Trucks, among other things, *see* CTP App. B. at i–ii ¶¶ 1–2. Moreover, the CTP threatens to label vehicle sales as "non-compliant" if the truck manufacturers do not follow the Omnibus regulation. *Id.* App. A at i nn.1–2. CARB thus is "exercis[ing] classic regulatory authority." *ATA*, 569 U.S. at 650. The CTP promises the exercise of regulatory power (e.g., regulatory relief) and CARB will implement its terms through regulatory power (e.g., vehicle certification).

Cliff's protests that its vehicle certification program exists independently of the CTP (Cliff Opp. 26-27) miss the point. CARB will certify vehicles that are CTP compliant for sale in California. CARB again promises the use of its regulatory power to implement the CTP. CARB's obligations under the CTP are actions only a government can wield. That is not participating in the truck market; it is regulation. *See ATA*, 569 U.S. at 651.

Cliff's argument that the CTP does not qualify as an "emissions standard" under Section 209(a) of the Clean Air Act is a non-sequitur. Cliff Opp. 23-24. The United States has never argued that. There can be no dispute that Clean Trucks, Clean Fleets, and Omnibus are (preempted) standards, unilaterally imposed by CARB. The CTP is preempted because it is a blatant "attempt to enforce" those standards through regulatory power. *See* Mot. 18-21 (showing that the CTP is an unlawful attempt to enforce CARB's emissions standards). The United States does not need to

Reply in Support of the United States' Motion for Summary Judgment                    17

show that the CTP is a "standard" to prevail on its second claim. *See* 42 U.S.C. § 7543(a).

Finally, Cliff's argument that the United States does not have standing to "interpret" the CTP (Cliff Opp. 25) is plainly wrong. The terms of the CTP are relevant to the United States' preemption claim. This Court obviously has the authority to interpret the CTP in resolving this claim, and the United States can argue its terms in support of its preemption claim. The case Cliff cites in arguing otherwise is irrelevant as it is about whether the plaintiff was an "intended beneficiary" who could sue for recovery under a contract. *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033-35 (9th Cir. 2012).

CARB entered the CTP as a regulator, not a market participant. That is what is relevant here. Thus, the United States is entitled to summary judgment on its second claim.

## CONCLUSION

The United States has carried its burden to obtain a permanent injunction and declaration. The Court should grant summary judgment in favor of the United States.

Dated: August 6, 2026    Respectfully submitted,

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
JOHN K. ADAMS
*Deputy Associate Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

*/s/ David Mitchell*

ERIC GRANT                     DAVID D. MITCHELL
*United States Attorney*         United States Department of Justice
501 I Street, Suite 10-100      Environment & Natural Resources Div.
Sacramento, California 95814    P.O. Box 7611
(916) 554-2821                  Washington, D.C. 20044-7611
                                (202) 598-9737
                                david.mitchell@usdoj.gov

*Counsel for the United States*

Reply in Support of the United States' Motion for Summary Judgment                     18